U.S. Department of Housing and Urban Development

Illinois State Office
77 West Jackson Boulevard
Chicago, Illinois 60604-3507

APR - 3 2001

**CERTIFIED RETURN RECEIPT**

John Hayes, General Partner
P.M. Group
1050 Corporate Office Drive
Suite 150
Milford, MI 48381

Dear Mr. Hayes:

SUBJECT: Application Deficiencies
South Pointe Towers
FHA No. 071-35681

We have screened your application for a Firm Commitment pursuant to Section 221(d)(4). After reviewing your application, this office has serious concerns about the level of repairs being proposed; the continuation of the existing management, and many issues relative to the application itself. HUD has allowed you 23 months from the date of the initial Real Estate Assessment Center (REAC) Inspection, conducted on April 28, 1999, and your Management Improvement Operating (MIO) Plan submitted to our Enforcement Center on December 8, 1999, to bring this property into compliance.

In December 1999, we held a pre-application meeting and invited submission of your application. Because of your slowness in submitting an application for mortgage insurance, we requested another meeting, which took place on October 18, 2000. During this meeting, your plans for refinancing were discussed in detail, as were HUD's concerns that your plans adequately address all of the deficiencies. HUD emphasized that the entire property must be surveyed by the owner, and that all of the physical problems be addressed. The application which was finally submitted on March 19, 2001 for mortgage insurance does not address all of our concerns and is being rejected due to the deficiencies listed below:

EXHIBIT J

1. **Repairs:** The repairs outlined in your application are inadequate when compared to the needs of the property. Construction Analyst Raymond Etzkorn of our staff inspected the property on March 22nd and 23rd of this year. His repair estimate and scope of work are substantially higher than what is proposed in your application. He estimates the needs of the project in excess of $6 million. This level of repair needs was based on his visit, your application, and an engineering report provided by management during the on-site visit.

2. **As-is value:** The appraisal estimated an as-is value of $6,750,000. This estimate was based on 3 approaches to value: the Income Approach ($6,000,000), the Direct Sales Comparison Approach ($6,300,000), and the Effective Gross Income Multiplier Approach($7,500,000). The appraisal chose to base the as-is value at the mid-point of the value range. However, the estimated value is overstated. The annual operating expenses ($1,858,050 or $6,132 PUPA) used on the as-is 92264 is far below the actual reported expenses for the last 2 years, and the overall average over the last 3 years. In the year 2000, the reported expenses were $2,117,214, or $6,988 PUPA. In the year 1999, the reported expenses were $2,138,830, or $7,059 PUPA. The overall average over the last 3 years was $2,021,010, or $6,670 PUPA. Given the expenses for prior years, the as-is operating expenses should be at least $2,121,000, or $7,000 PUPA for determining the as-is value via the Income Approach,. Therefore, the increase to expenses would decrease the net operating income from $663,945 to $400,994. The appraisal used an as-is capitalization rate of 11%, which appears reasonable. After capitalization, the result would be a revised as-is value of $3,645,000. Given that there is solid data available on the subject's income and expenses, we feel this approach is the most useful.

3. **Management:** P.M. One is listed as the management agent for this property. During a meeting on March 8, 2001, between your organization and ours, Edward Hinsberger expressly stated that we would not process this refinancing with P.M. One remaining in the position of management agent due to their poor past performance. Your application indicated that P.M. One would continue to manage the project.

4. **The Property Insurance Schedule** is missing.

5. **The Independent Cost Analysis** is missing.

6. **The Architecture and Engineering Report** is missing.

7. **The Property Survey** is missing.

8. **The Contractors Cost Breakdown**, form HUD-2328, is unsigned and therefore, invalid.

9. **The underwriting summary,** which requires a discussion of major conclusions and recommendations is missing. Since the project previously received tax credits, the discussion must include such items as the amount of time remaining on the use restriction, whether or not all of the proceeds from the sale of the tax credits have been received, and whether the owners are in compliance with Section 42 of the internal revenue code.

10. **The Statement Indicating the Contractual and Financial Relationship** of the principals to the mortgagor entity is required at firm commitment, as well as prior to closing. This statement was not included in the application.

11. **Owner Architect Agreement.** Article 11.2.1 should state that the supervisory fee will be paid out based upon the percentage of completion of the construction work as determined by HUD. HUD handbook 4460.1 REV-2 requires that compensation for additional services be specified.

12. **The Analysis of Contractor's Working Capital** is incomplete with regard to projects in progress, completion date and contract balance remaining.

13. **Request for Verification of Deposits (VOD).** None of the deposit forms were completed by banks. The VODs are required to be bank verified.

14. **Financial Statements.** Although a Form 2417 was submitted for the general contractor, it is strictly intended for the use of an individual. Since the general contractor is a corporation rather than an individual, the last three years of full financial statements (i.e., balance sheets, operating statements, etc.), certified by the general contractor, are missing.

15. **Personal and Commercial Credit Reports.** All of the credit reports are missing. Additionally, any report submitted would have to comply with the requirements from chapter 2 of HUD handbook 4470.1, REV-2.

16. **Partnership Agreement.** Our guidelines require that the partnership agreement be submitted with the firm application, as well as prior to closing.

17. **Incumbency Certificates and 2530 Clearance.** The 2530s indicate that Cheveron, U.S.A., Inc., is the 99% limited partner. However, none of the other exhibits in the firm application address their participation. Without incumbency certificates, it is unknown whether all participants who require 2530 approval are represented.

18. **The Resume of the General Contractor** is missing.

You may pick up your application within 10 days of the date of this letter. Any applications not retrieved after that time will be dismantled and recycled.

Please direct any questions regarding this application to Marlese Adams at (312) 353-6236, Ext. 2184. Please direct any questions regarding the pending status of your existing project to your HUD Project Manager, Gwendolyn Thomas at Ext. 2246

Sincerely,

Edward J. Hinsberger
Director
Chicago Multifamily Hub

Enclosures

cc: Alan R. Cravitz
Developer's Mortgage Corporation
Suite 3010
221 North LaSalle Street
Chicago, IL 60601-1505