**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **ENGLEWOOD TERRACE LIMITED PARTNERSHIP, a Michigan limited partnership,** | |
| **Plaintiff,** | **No. 01 C 8285** |
| **v.** | **Judge Ruben Castillo** |
| **UNITED STATES OF AMERICA, MEL MARTINEZ, Secretary of the United States Department of Housing and Urban Development, and CHAC, INC., an Illinois corporation,** | |
| **Defendants.** | |

## ORDER

Plaintiff Englewood Terrace Limited Partnership ("Englewood") moves this Court for an order, pursuant to Federal Rule of Civil Procedure 65, preliminarily enjoining Defendants, United States of America ("United States"), Secretary Mel Martinez of the United States Department of Housing and Urban Development ("HUD") and CHAC, Inc. ("CHAC") from issuing or continuing to issue vouchers under Section 8 of the National Housing Act, 42 U.S.C. § 1437f. For the reasons contained herein, Englewood's emergency motion for preliminary injunction is denied. (R. 2-1.)

## RELEVANT FACTS

Englewood owns and operates South Pointe Towers, a low-income multifamily housing project located at 6425 South Lowe in Chicago, Illinois. On October 29, 2001, Englewood filed a complaint against Defendants United States, Secretary Mel Martinez and CHAC seeking a declaratory judgment that Defendants: (1) failed to renew the Housing Assistance Payments

EXHIBIT

contract ("HAP contract"); and (2) issued Section 8 vouchers to tenants in violation of the Multifamily Assisted Housing Reform and Affordability Act (MAHRA). (R. 1-1, Compl. at ¶¶ 32-34.) Englewood also seeks mandamus relief to compel Defendants to comply with MAHRA before terminating its HAP contract and to cease the issuance of vouchers to the South Pointe Tower residents. (*Id.* at ¶¶ 35-38.) Currently before this Court is Englewood's emergency motion for preliminary injunction seeking an order enjoining Defendants from continuing to issue Section 8 vouchers to South Pointe Tower residents. We hereby deny Englewood's motion, for the reasons that follow. Furthermore, we see no need to proceed with an evidentiary hearing because, in issuing this order, we have accepted as true all of the facts contained in Englewood's pleadings.

## ANALYSIS

### I. Legal Standards for a Preliminary Injunction

A preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant carries the burden of persuasion by a clear showing. *See Boucher v. Sch. Bd. of Greenfield*, 134 F.3d 821, 823 (7th Cir. 1998). In order to obtain a preliminary injunction, the movant must show that: (1) its case has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) it will suffer irreparable harm if the injunction is not granted. *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). If these requirements are met, the Court "must then consider the balance of hardships between the plaintiffs and the defendants, adjusting the hardships for the probability of success on the merits," *Planned Parenthood v. Doyle*, 162 F.3d 463, 473 (7th Cir. 1998), and "the public interest, meaning the consequences of granting or denying the injunction to non-parties," *Abbott*

*Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11-12 (7th Cir. 1992).

**II. Englewood Cannot Meet the Legal Standards for a Preliminary Injunction**

First, Englewood cannot show a likelihood of success on the merits. Englewood argues that it could likely succeed in showing that HUD never provided sufficient notice under MAHRA that it had terminated or was terminating the HAP contract, resulting in Englewood's inability to assert its procedural rights to challenge the termination. We disagree. Despite Englewood's extensive citation to MAHRA and its argument that "[t]here is no question that the HAP contract has been abated," (R. _, Pl.'s Reply Mem. in Supp. of Emergency Mot. at 2-4), HUD never formally terminated Englewood's HAP contract. Rather, HUD provided Englewood with notice that it was in continuing default under the HAP contract and that HUD would begin the process of providing vouchers for relocation of eligible tenants. (R. 6, Gov't's Resp. to Emergency Mot., Exs. B2, B4, B6.) If HUD decides to terminate the HAP contract, then its actions will be governed by the MAHRA and it must provide Englewood with the proper notice and the opportunity to assert procedural rights. At this time, however, Englewood has no likelihood of succeeding on its allegations that HUD did not provide Englewood with notice that it had terminated or was terminating the HAP contract because the HAP contract, in fact, has not been terminated and is not yet in the process of being terminated.

Second, Englewood cannot show irreparable harm. Englewood claims that, unless the Court enjoins the issuance of vouchers to South Pointe Tower residents, it would irreparably lose its opportunity to challenge HUD's decision to terminate the HAP contract. As stated above, the HAP contract has not been terminated. Moreover, the harm that Englewood asserts is not irreparable because it is a loss of project-based revenue provided by the HAP contract which,

should Englewood prevail, may be compensated at the conclusion of this litigation. *See Goldie's Bookstore, Inc. v. Super. Ct.*, 739 F.2d 466, 471-72 (9th Cir. 1984) (holding that "[m]ere financial injury, however, will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation").

Third, Englewood cannot show the inadequacy of a remedy at law. Englewood contends that its legal remedies are inadequate because the dispute involved unique real estate and an economic loss so great that it would put Englewood out of business. As shown above, however, while real property is often judicially perceived as unique, the loss of commercial, and not residential, property threatens only an economic loss which is compensable in damages. *See id.* Furthermore, despite Englewood's citation to a HUD email stating that "once the housing authority issues vouchers, the Sec 8 contract dies," (R. 6, Gov't's Resp. to Emergency Mot., Ex. C4), the Court is not convinced at this time that Englewood will go out of business, because if Defendants terminate the HAP contract, Englewood will have thirty days within which to dispute this decision and cure any deficiencies, as well as to exhaust any subsequent appeal through the administrative process.

Fourth, the balance of equities does not favor granting the preliminary injunction. Englewood maintains that it has more to lose than HUD because it is seeking to protect its sole meaningful asset, South Pointe Towers, whereas the only burden that would be placed on Defendants is that they cease the issuance of Section 8 vouchers to the residents until this case is resolved. We disagree. Without issuing any findings of fact, we believe that, given the dispute between the parties over whether South Pointe Towers is in suitable condition and in compliance with the HAP contract, the balance of equities does not favor Englewood. *See, e.g., Geneva Ltd.*

*Partners v. Kemp*, 779 F. Supp. 1237, 1241-42 (denying plaintiff's motion for a preliminary injunction and finding that the balance of hardships does not tip sharply in plaintiff's favor).

Finally, the public interest of the South Pointe Tower residents weighs against an order of injunction. Englewood claims that an injunction would be in the best interests of the residents and the surrounding community because it would prevent the effective shutdown of South Pointe Towers, resulting in the loss of 303 apartment units and the creation of a "large white elephant" in the community. (R. 2-1, Emergency Mot. at 11.) Again, given the dispute between the parties over the conditions of South Pointe Towers, this Court believes that all of the residents, including those who have already received vouchers and those who may be hoping to receive them, have a very real interest in finding the best housing available right now. *See Geneva Ltd. Partners*, 779 F. Supp. at 1241-42. Therefore, we encourage the parties to communicate the proposed South Pointe Towers renovation plan to the residents, but we conclude that the public interest would best be served by continuing the issuance of Section 8 vouchers to those residents in order to give them the opportunity to improve their living conditions immediately.

## CONCLUSION

For the foregoing reasons, Englewood's emergency motion for preliminary injunction is denied. (R. 2-1.) Englewood has not made a clear showing of need for the extraordinary remedy of the type of broad and mandatory preliminary injunction it has requested.

**ENTERED:**

**Judge Ruben Castillo**
**United States District Court**

**Dated: November 15, 2001**