U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

DEPARTMENTAL ENFORCEMENT CENTER
Chicago Satellite Office
77 W. Jackson Blvd., Suite 2207
Chicago, Illinois 60604-3507

Tel (312) [illegible] Fax (312) [illegible]

H

November 30, 2001

Englewood Terrace Limited Partnership
P.M. Group, Inc., General Partner
John Hayes, President
1050 Corporate Office Drive, Suite 150
Milford, MI 48381
Via Facsimile and Certified and Regular Mail

Re: Notice of Abatement and Termination of
Housing Assistance Payments Contract
South Pointe Towers Apartments, Chicago, IL
Contract No. IL06-E000-034

Dear Mr. Hayes:

On April 9, 2001, HUD gave Englewood Terrace Limited Partnership (Owner), owner of South Pointe Towers Apartments (Project), formal notice that it was in default of its Housing Assistance Payments (HAP) Contract for failure to maintain the Project's units and related facilities in decent, safe and sanitary condition, as defined by Owner's HAP Contract and HUD's Physical Condition Standards, 24 C.F.R. Part 5 Subpart G. The notice provided 30 days from its date for Owner to correct all the stated events of default. During that time, Owner instead attempted to obtain an acquirer and new management for the Project but failed to correct the events of default complained of in the notice.

On May 16, 2001, HUD advised Owner in writing that its efforts to obtain an acquirer and new management for the Project did not cure Owner's default of the HAP Contract. HUD again emphasized its ongoing concern for the condition of the Project and the risks to its residents. HUD urged Owner to provide timely information describing the immediate efforts made to address the HAP default. HUD reminded Owner that its default of the HAP Contract was uncured and continued, and that HUD intended to proceed with its process to secure vouchers for relocation of eligible residents.

To date, Owner has not cured the conditions complained of in the notice of default issued on April 9, 2001 and as more fully described in HUD's May 16, 2001 writing. Owner has failed to maintain the property according to the physical conditions standards acceptable to HUD despite Owner's receipt of the notice of default and a reasonable opportunity (almost 240 days since the notice of default) to cure. Accordingly, pursuant to paragraph 20(b)(3) of the HAP Contract, this is Owner's notice that HUD intends to abate the HAP Contract.

Further, pursuant to Section 516(a) and (b) of the Multifamily Assisted Housing Reform and Affordability Act of 1997 ("MAHRA") HUD will terminate the HAP Contract upon HUD's determination that the relocation process of eligible residents at the Project is concluded.

Pursuant to MAHRA, this is Owner's notice to provide, within 30 days from receipt of this notice, written objection to this notice of termination of HAP or to cure the underlying basis for the default. If the Owner does not submit a written objection or cure the underlying basis for the default to the satisfaction of HUD during this 30-day period, HUD's decision to terminate the HAP Contract will become a final determination under Section 516(c) of MAHRA and is not subject to judicial review.

EXHIBIT 1

EXHIBIT P

As Owner has been previously notified, HUD will abate the HAP subsidy for the Project's units as eligible residents receive their vouchers and timely opt to use those vouchers at the Project, if possible, or elsewhere. HUD also intends to abate the subsidy for ineligible residents, if any, and other residents that do not timely act with respect to their vouchers, at the time that HUD terminates the HAP Contract. As units are abated from the HAP Contract, the owner may not again lease those units to project-based Section 8 residents.

The HAP Contract will be terminated when HUD has, in concert with CHAC, completed its voucher and relocation process for all eligible residents at the Project. The foregoing description of HUD's intended method of abatement provides the course that HUD has determined best serves the interests of the residents as of the date of this notice. HUD does not intend that this notice limit the actions that HUD may otherwise properly take in protection of the residents. For example, if Owner fails to continue to provide basic necessary services for the residents, HUD may elect to redirect HAP Contract payments for particular uses in protection of the residents.

Please also be advised that the voucher and relocation process may extend beyond the expiration date of the current HAP Contract Renewal. To safeguard the residents, and not affecting HUD's determinations as set forth above, HUD will provide Owner with a HAP Contract Renewal with Addendum. Please execute the extension and return it to HUD promptly.

Owner may submit its objection or notification of cure to Edward Hinsberger, Director of the Chicago Multifamily Hub.

Sincerely,

Edward Hinsberger, Director
Chicago Multifamily Hub

Margarita Maisonet, Director
Chicago Satellite Office
Departmental Enforcement Center

cc: Peter Silverman