No. 03-2209C
(Judge Wolski)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ENGLEWOOD TERRACE LIMITED PARTNERSHIP,

Plaintiff,

v.

THE UNITED STATES,
Defendant.

# DEFENDANT'S MOTION TO DISMISS

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

BRIAN M. SIMKIN
Assistant Director

LISA B. DONIS
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-6288
Attorneys for Defendant

OF COUNSEL:

GREGORY G. GUSTIN
MARIA BAGUIO
Department of Housing and Urban Development
Departmental Enforcement Center
Chicago, IL

DECEMBER 22, 2003

# TABLE OF CONTENTS

**PAGES**

DEFENDANT'S MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . 1

DEFENDANT'S BRIEF . . . . . . . . . . . . . . . . . . . . . . . . 1

Nature Of The Case . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I. The Jurisdiction Of The United States Court Of Federal Claims Is Limited . . . . . . . . . . . . . . 7

II. Englewood's HAP Contract Was Entered Into Pursuant To The Housing Act Of 1937 And Is Subject To The Administrative Procedures In The Multifamily Assisted Housing Reform And Affordability Act (MAHRA) . . . . 10

A. MAHRA Provides Only for an Administrative Remedy . . . . . . . . . . . . . . . . . . . . 10

B. If Judicial Review is Appropriate, It Would Properly Be Conducted In Accordance With the Administrative Procedures Act . . . . . . . . . 13

III. To the Extent That Englewood's Complaint Asserts That The Government Acted In A Negligent Manner, This Claim "Sounds In Tort," And Is Not Cognizable In This Court . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## TABLE OF AUTHORITIES

**FEDERAL CASES** **PAGES**

Aetna Casualty & Surety Co. v. United States,
228 Ct. C 655 F.2d 1047 (1981) . . . . . . . . . . . . . . . . . 8

Anaheim Gardens v. United States,
33 Ct. Cl. 24, 37 (1995) . . . . . . . . . . . . . . . . . . 15

Aulston v. United States,
823 F.2d 510 (Fed. Cir. 1987) . . . . . . . . . . . . . . . 13

Consumer Product Safety Commission v. GTE Sylvania, Inc.,
447 U.S. 102 (1980) . . . . . . . . . . . . . . . . . . . . 12

Dynalectron Corp. v. United States,
4 Cl. Ct. 424 (1984), aff'd,
758 F.2d 665(Fed. Cir. 1984) . . . . . . . . . . . . . . . . . 7

Eastport Steamship Corp. v. United States,
372 F.2d 1002 (Ct. Cl. 1967) . . . . . . . . . . . . . . . . . 9

Fidelity Construction Co. v. United States,
700 F.2d 1379 (Fed. Cir. 1983) . . . . . . . . . . . . . . . . 8

Florida Power Corp. v. United States,
33 Fed. Cl. 107 (1995) . . . . . . . . . . . . . . . . . . . 9

Florida Rock Industries, Inc. v. United States,
791 F.2d 893 (Fed. Cir. 1986),
cert. denied, 479 U.S. 1053 (1987) . . . . . . . . . . . . . 15

Gross v. United States,
205 Ct. Cl. 605, 615-18 . . . . . . . . . . . . . . . . . . 12

Hafen v. United States,
30 Fed. Cl. 470 (1994), aff'd,
47 F.3d 1183 (Fed. Cir. 1995) . . . . . . . . . . . . . . . 13

Heagy v. United States,
12 Cl. Ct. 694 (1987), aff'd,
848 F.2d 1288 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . 7

International Air Response v. United States,
302 F.3d 1363 (Fed. Cir. 2002) . . . . . . . . . . . . . . . 13

LeBlanc v. United States,
50 F.3d 1025 (Fed. Cir. 1995) . . . . . . . . . . . . . . . 14

McClary v. United States,
775 F.2d 280 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . 14

Merrifield v. United States,
14 Cl. Ct. 180, 184-85 (1988) . . . . . . . . . . . . . . . . 12

Montego Bay Imports, Ltd. v. United States,
10 Cl. Ct. 806, 809 (1986) . . . . . . . . . . . . . . . . . . 15

Samish Indian Nation v. United States,
58 Fed. Cl. 114 (2003) . . . . . . . . . . . . . . . . . . . . 13

Simons v. United States,
25 Ct. Cl. 685, 696 (1992) . . . . . . . . . . . . . . . . . . 12

Soriano v. United States,
352 U.S. 270 (1956) . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Connolly,
716 F.2d 882 (Fed. Cir. 1983), cert. denied,
465 U.S. 1065 (1984) . . . . . . . . . . . . . . . . . . . . . 9

United States v. John C. Grimberg Co.,
702 F.2d 1362 (Fed. Cir. 1983) . . . . . . . . . . . . . . . . 12

United States v. King,
395 U.S. 1 (1969) . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Mitchell,
445 U.S. 535 (1980) . . . . . . . . . . . . . . . . . . . 8, 9

United States v. Sherwood,
312 U.S. 584 (1941) . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Testan,
424 U.S. 392 (1976) . . . . . . . . . . . . . . . . . . . . 8, 9

## FEDERAL STATUTES

### United States Code

5 U.S.C. § 701(a) . . . . . . . . . . . . . . . . . . . . . . . . 13

5 U.S.C. § 706 . . . . . . . . . . . . . . . . . . . . . . . . . 13

28 U.S.C. § 1491 (1982) . . . . . . . . . . . . . . . . . . . . . 8

28 U.S.C. §1491(a) . . . . . . . . . . . . . . . . . . . . . . . 14

42 U.S.C. 1437f . . . . . . . . . . . . . . . . . . . . . . . 2, 10

42 U.S.C. § 1437f note, § 516(a)(2)(H)(3) . . . . . . . . . . . 10

**Code of Federal Regulations**

42 C.F.R. § 401.652 . . . . . . . . . . . . . . . . . . . . . . 11

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ENGLEWOOD TERRACE LIMITED PARTNERSHIP, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 03-2209C (Judge Wolski) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS

Pursuant to RCFC 12(b)(1), defendant respectfully moves the Court to dismiss the plaintiff's complaint upon the grounds that the Court is without jurisdiction to entertain this matter. In support of this motion, defendant relies upon the following brief and appendix.

DEFENDANT'S BRIEF

Nature Of The Case

Plaintiff, Englewood Terrace Limited Partnership, claims that the United States breached a Housing Assistance Payment contract ("HAP") it had with the Government, by improperly terminating it, and seeks damages of "at least 3 million." Englewood Contract, Prayer for Relief.

South Pointe Towers, also known as New Englewood Terrace ("Englewood"), is a 303-unit property located in Chicago, Illinois. In April 1990, ownership of the project was assigned to Englewood Terrace LP ("Owner") together with Englewood's project-based 15-year HAP contract. Pl. Compl. at Ex. M. The project-based HAP contract was periodically renewed to provide project-based Section 8 assistance to Englewood's residents.

On April 9, 2001, HUD declared that the Owner's project-based HAP contract was in default for failure to keep and maintain Englewood in a decent, safe and sanitary condition as required by the HAP contract, applicable law, and HUD regulations. Pl. Compl. at Ex. 1. Because the Owner failed to return Englewood to a decent, safe and sanitary condition, as required by HUD's notice, HUD determined to abate the HAP contract and ultimately issue voucher-based Section 8 assistance to eligible residents.[1] Pl. Compl. at Ex. P. HUD periodically renewed Englewood's HAP contract while it completed issuing vouchers to eligible residents. Pl. Compl. at Ex. P. After the Section 8 voucher process was completed, the HAP contract was terminated.

Twice, the Owner unsuccessfully challenged HUD's termination determination before the United States District Court for the Northern District of Illinois. Englewood now brings this current action despite having exhausted its administrative appeal pursuant to the Multifamily Assisted Housing Reform and Affordability Act of 1997 ("MAHRA"), 42 USC 1437f (note). See Pl. Compl. at Ex. Q.

STATEMENT OF THE FACTS

---

[1] HUD provides Section 8 Rental Assistance in two primary manners: voucher and project-based assistance. See 42 U.S.C. § 1437f. Voucher holders have the choice to use their assistance at any eligible housing, thus providing the resident with mobility and a choice of housing. In contrast, project-based assistance is provided to the owner of eligible housing.

HUD first determined that Englewood was in unacceptable physical condition when HUD inspected the property on April 28, 1999. Pl. Compl. at Ex. I. On December 8, 1999, the Owner submitted a Management Improvement and Operating (MIO) plan that proposed how it would bring Englewood into physical compliance. Pl. Comp. at Ex. J. However, because the Owner did not identify a source of funds to complete the proposed physical repairs, that same month, HUD met with the Owner and invited submission of a loan application. On October 18, 2000, HUD met again with the Owner regarding the not-yet submitted loan application, the ongoing physical deficiencies and HUD's concern that Englewood's physical condition continued to decline. Pl. Compl. at Ex. J.

On March 2, 2001, HUD inspected Englewood and found 14 exigent health and safety (EHS) issues that required immediate repairs. Among these findings were: missing breakers, exposed wiring, roach infestation, ponding upon the roof, and inoperable fire exits. Englewood received a score of 31 out of a possible 100 points. Pl. Compl. at Ex. F. On March 6, 2001, the Owner certified that all EHS deficiencies were corrected. HUD, though, visited Englewood on March 9, 2001, and found the certification to be false. Pl. Compl. at Ex. L.

The Owner's loan application was finally submitted on March 19, 2001, together with the Owner's intended repair and cost estimates. Compl. at Ex. M. On March 22 and 23, 2001, HUD visited Englewood and determined that the loan application did

not adequately address Englewood's needs. Pl. Compl. at Ex. J. As an example, to properly resolve Englewood's physical deficiencies, over $6 million dollars was needed to repair, among other things: exterior walls and foundations, roofing systems, floors, carpets, tiles, cabinetry, electrical systems, plumbing fixtures, heating and air conditioning, elevator maintenance, and roach extermination. Pl. Compl. at Ex. N. HUD rejected Englewood's loan application on April 3, 2001. Pl. Compl. at Ex. J.

On April 9, 2001, HUD declared the Owner in default of its HAP contract for its failure to keep and maintain the property in decent, safe and sanitary condition, as required by its HAP contract, applicable law and regulations. HUD warned the Owner that, if the Owner failed to bring Englewood into compliance within thirty days of the date of the Notice, HUD could suspend or abate the HAP contract as a remedy. Pl. Compl. at Ex. I.

On April 13, 2001, HUD met with the Owner again to discuss Englewood's needed repair, and the funding to affect the repairs. HUD told the Owner that it must obtain a new general partner and

new management agent.[2] Pl. Compl. at ¶ 38, Pl. Compl. at Ex. L.

In October 2001, HUD informed the Owner that HUD, through its HAP contract administrator, intended to issue vouchers to eligible Englewood residents. Pl. Compl. at ¶ 53. On October 29, 2001, the Owner filed suit in the United States District Court for the Northern District of Illinois against HUD and its HAP contractor administrator. The suit sought, among other things, injunctive relief to stop the issuance of HAP vouchers. Pl. Compl. at ¶ 55.

The court denied the Owner's motion for injunctive action by order dated November 15, 2001, and subsequently dismissed the complaint without prejudice. Pl. Compl. at Ex. O, In denying the injunction, the court found that the suit was premature because HUD had not formally terminated the HAP contract. Pl. Compl. at Ex. O. The court also stated that "[I]f HUD decides to terminate the HAP contract, then its actions will be governed by the MAHRA and it must provide Englewood with the proper notice and the opportunity to assert procedural rights." Pl. Compl. at Ex. O, p. 3. Accordingly, the court stated that it "believes that all of the residents, including those who have already

[2] DSSA Management succeeded as Englewood's management agent in October 2002. In December 2002, a modified transfer of physical assets was executed, replacing the Owner's general partner - PM Group, Inc. - with DSSA Management. A new $11.7 million dollar loan, insured by HUD, pursuant to Section 221(d)(4) of the National Housing Act, was executed with the Owner's new general partner to fund repairs at Englewood without the assistance of a Project-based subsidy.

received vouchers and those who may be hoping to receive them, have a very real interest in finding the best housing available right now." Pl. Compl. at Ex. O, p. 5. Further, the court declared: "[W]e conclude that the public interest would be best served by continuing the issuance of Section 8 vouchers to those residents in order to give them the opportunity to improve their living conditions immediately." Pl. Compl. at Ex. O, p. 5.

On November 30, 2001, with reference to MAHRA, HUD issued its Notice of Abatement and Termination of the HAP contract to the Owner. Pl. Compl. at Ex. P.

On December 21, 2001, the Owner objected to HUD's November 30, 2001 determination (Compl. at ¶ 62) and, with reference to MAHRA's appeal process, HUD notified the Owner that its decision was final. The owner appealed the final decision pursuant to MAHRA, and, on January 22, 2002, HUD met with the Owner and considered its objections. On February 7, 2002, HUD rejected the Owner's appeal. Pl. Compl. at ¶ 63. On February 13, 2002, the Owner sought appeal before an independent reviewing HUD official. Pl. Compl. at ¶ 64.

On April 16, 2002, HUD's designated reviewing official, Howard Mayfield, the Deputy Director for Asset Management, heard the Owner's appeal. Pl. Comp. at ¶ 65. On May 2, 2002, Mr. Mayfield issued his Notice of Reviewing Official's Appeal Decision, affirming HUD's decision to terminate the HAP contract. Pl. Compl. at Ex. Q. Pursuant to MAHRA, the reviewing official's

decision was a final determination and was not subject to judicial review. Pl. Compl. at Ex. Q.

In June 2002, the Owner filed suit against HUD in the Northern District of Illinois for essentially the identical issues as had been alleged in the 2001 lawsuit. The Owner's counsel withdrew from the suit in August 2002, and the court dismissed the case with prejudice in March 2003 for want of prosecution. App. 1-3.[3] HUD and its contract administrator completed the voucher process, and the HAP contract was thereafter terminated pursuant to HUD's notices. Pl. Compl. at Ex. P.

The Owner has now filed suit in this Court, for the identical issues brought to suit in 2001, 2002, and exhausted through a final, unreviewable decision in accordance with the MAHRA review process.

## ARGUMENT

### I. The Jurisdiction Of The United States Court Of Federal Claims Is Limited

The United States Court of Federal Claims is a court of limited jurisdiction. E.g., Heagy v. United States, 12 Cl. Ct. 694, 697 (1987), aff'd, 848 F.2d 1288 (Fed. Cir. 1988) (Table); Dynalectron Corp. v. United States, 4 Cl. Ct. 424, 428 (1984), aff'd, 758 F.2d 665 (Fed. Cir. 1984) (table); see Soriano v. United States, 352 U.S. 270, 273 (1956). Absent congressional

[3] "App." refers to the appendix filed with this brief.

consent to entertain a claim against the United States, the Court lacks authority to grant relief. United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941).

Congressional consent to suit in the Court of Federal Claims, thereby waiving the Government's traditional immunity, must be explicit and strictly construed. United States v. Mitchell, 445 U.S. 535, 538 (1980); Fidelity Construction Co. v. United States, 700 F.2d 1379, 1383 (Fed. Cir. 1983). A waiver of sovereign immunity, therefore, cannot be implied, but must be expressed "unequivocally" by Congress. United States v. Testan, 424 U.S. at 339; United States v. King, 395 U.S. 1, 4 (1969).

In this case, the waiver at issue is the Tucker Act, 28 U.S.C. § 1491, which Englewood asserts gives the Court jurisdiction to entertain its claim. Pl. Comp. ¶ 18, 19. The Tucker Act is the central provision granting consent to suit in the Court. United States v. Testan, 424 U.S. at 397; Aetna Casualty & Surety Co. v. United States, 228 Ct. Cl. 146, 151, 655 F.2d 1047, 1051 (1981). Pursuant to the Tucker Act, an action may be maintained in the Court only if it is "founded either upon the Constitution or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491 (1982).

This provision, however, does not create any substantive right of recovery against the United States for money damages. United States v. Testan, 424 U.S. at 398; Eastport Steamship Corp. v. United States, 372 F.2d 1002, 1007-09 (Ct. Cl. 1967). Rather, it merely confers jurisdiction upon the Court of Federal Claims whenever the substantive right exists. United States v. Testan, 424 U.S. at 398; United States v. Connolly, 716 F.2d 882, 885 (Fed. Cir. 1983) (en banc), cert. denied, 465 U.S. 1065 (1984).

To state a claim within the jurisdiction of the Court, therefore, a claimant must look beyond this jurisdictional statute and establish some substantive provision of law, regulation or the Constitution, which can be construed fairly as mandating compensation. United States v. Mitchell, 445 U.S. at 538; United States v. Connolly, 716 F.2d at 885; Florida Power Corp. v. United States, 33 Fed. Cl. 107 (1995). In this case, as we discuss below, Englewood's contract was entered into pursuant to a statutory scheme which provides only for an administrative, not a judicial, remedy.

## II. Englewood's HAP Contract Was Entered Into Pursuant To The Housing Act Of 1937 And Is Subject To The Administrative Procedures In The Multifamily Assisted Housing Reform And Affordability Act (MAHRA)

### A. MAHRA Provides Only for an Administrative Remedy

The HAP contract between Englewood and HUD was entered into pursuant to the Lower Income Housing Assistance provision of the United States Housing Act of 1937, 42 U.S.C. § 1437f, and is subject to the administrative procedures in MAHRA. In accordance with section 516 of MAHRA, the Government has the right either not to renew, or to terminate, a HAP contract if an owner or purchaser of a housing project has engaged in "material adverse financial or managerial actions," which include: "[M]aterially failing to maintain the property according to housing quality standards after receipt of notice and a reasonable opportunity to cure." 42 U.S.C. § 1437f note, § 516(a)(2)(H). Moreover, the statute also provides that the Government may act to cancel the HAP contract if:

> [T]he owner or purchaser of the property materially failed to follow the procedures and requirements of this subtitle, after receipt of notice and an opportunity to cure; or . . . the poor condition of the project cannot be remedied in a cost effective manner, as determined by the participating administrative entity.

42 U.S.C. § 1437f note, § 516(a)(2)(H)(3).

In addition, section 524(a) of MAHRA, "Renewal of Expiring Project-Based Section 8 Contracts," also provides authority for the Secretary of HUD not to renew assistance for a project if it is determined that the project owner has violated section 516 of the Act.

Once the Government makes the decision to terminate or not renew a HAP contract, then the statute provides the owner an opportunity to dispute the findings through an administrative procedure. The statute allows the owner to "dispute the basis for the rejection and an opportunity to cure," within 30 days from the date upon which the owner received the notification from the Government. Section 516(b). After the owner has the opportunity to dispute the Government's decision, MAHRA states that the Secretary of HUD "shall establish an administrative review process to appeal any final decision under this paragraph." Section 516(b)(2)(a)(C). Finally, the statute states: "Any final determination under this section shall not be subject to judicial review." Section 516(c) (emphasis added).

Moreover, the regulations that were promulgated pursuant to MAHRA also make clear that no judicial review is allowed. "The reviewing official's decision under § 401.651 is a final determination for purposes of section 516(c) of MAHRA and is not subject to judicial review." 42 C.F.R. § 401.652.

The statute is plain upon its face. Congress has clearly expressed its view that there is no judicial remedy for disputes

arising under contracts entered into pursuant to MAHRA. This passage is not ambiguous, and has no other reasonable interpretation. As the Supreme Court articulated, unless there is a "clearly expressed" legislative intention to the contrary, a statute's plain meaning will be given effect. Consumer Product Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980). Accord United States v. John C. Grimberg Co., 702 F.2d 1362, 1368 (Fed. Cir. 1983).

It is also well within congressional authority to limit remedy options. "Congress has the power to make administrative decisions unreviewable." Simons v. United States, 25 Ct. Cl. 685, 696 (1992). See Gross v. United States, 205 Ct. Cl. 605, 615-18 (Congress can make the rejection of a claim final and conclusive.). Moreover, in Merrifield v. United States, 14 Cl. Ct. 180, 184-85 (1988), this Court found that a provision in two military statutes which did not allow judicial review of administrative decisions deprived the Court of jurisdiction.

Unless Congress waives the Government's immunity to suit, no lawsuit can be entertained against the United States. Here, Congress has provided a remedy for disputes arising pursuant to MAHRA contracts. It is an administrative, and not judicial, remedy. By enacting MAHRA and promulgating its implementing regulations, Congress has spoken. By entering the contract with the United States, Englewood has agreed to those terms.

In accordance with the provisions of its contract, Englewood pursued its dispute through the administrative process. The complaints that Englewood pressed administratively, are the same as it is pressing in this case. It is apparent, then, that Englewood recognized that its remedy, if any, lay with HUD, and not with the judicial system. Because of this, it appears as if what Englewood actually wants this Court to do is review HUD's final administrative decision. The Court however, may not do this.

B. If Judicial Review is Appropriate, It Would Properly Be Conducted In Accordance With the Administrative Procedures Act

Assuming, for the sake of argument only, that a challenge to the administrative decision is subject to review at all, the review would be undertaken in accordance with the Administrative Procedures Act, 5 U.S.C. § 706. ("APA").[4] This Court is not the appropriate forum for APA review. Rather, the proper forum is in a United States district court. See Aulston v. United States, 823 F.2d 510 (Fed. Cir. 1987), Hafen v. United States, 30 Fed. Cl. 470 (1994), aff'd 47 F.3d 1183 (Fed. Cir. 1995). But, even that avenue is precluded in this case. As we explained above,

[4] It is questionable, however, whether Englewood would even be entitled to APA review. Pursuant to 5 U.S.C. § 701(a), an agency action is not subject to review when a "statue preclude[s] judicial review," or when an agency action "is committed to agency discretion by law." Moreover, Englewood's previous attempt to bring its case in district court was dismissed with prejudice and may be barred by the doctrine of *res judicata*. See Int'l Air Response v. United States, 302 F.3d 1363, 1368 (Fed. Cir. 2002); Samish Indian Nation v. United States, 58 Fed. Cl. 114, 121 (2003).

Englewood has twice attempted to bring its case in the United States district court for the Northern District of Illinois. On June 5, 2002, Englewood filed a complaint seeking a preliminary injunction against HUD for the non-renewal of the HAP contract. On March 11, 2003, the district court dismissed Englewood's suit with prejudice for failure to prosecute.[5] App. 1-3.

III. To the Extent That Englewood's Complaint Asserts That The Government Acted In A Negligent Manner, This Claim "Sounds In Tort," And Is Not Cognizable In This Court

Further, to the extent that Englewood's claim implies that the Government acted negligently in failing to read, review, and consider Englewood's responses when it terminated Englewood's HAP contract, this action sounds in tort, and is not cognizable in this Court. As we cited above, the Tucker Act, 28 U.S.C. § 1491(a), provides that an action in this Court can be "founded . . . for liquidated or unliquidated damages in cases not sounding in tort." (Emphasis added). LeBlanc v. United States, 50 F.3d 1025, 1030 (Fed. Cir. 1995); McClary v. United States, 775 F.2d 280, 283 (Fed. Cir. 1985).

A reading of Englewood's complaint suggests that it is attempting to challenge the correctness of the Government's non-renewal of its HAP contract. This Court has held that, "challenges to the propriety of government action sound in tort."

[5] In its complaint, Englewood repeatedly describes the dismissal of this case as "without prejudice." This is not accurate. The dismissal was with prejudice.

Montego Bay Imports, Ltd. v. United States, 10 Cl. Ct. 806, 809 (1986). Accord Florida Rock Industries, Inc. v. United States, 791 F.2d 893, 898 (Fed. Cir. 1986), cert. denied, 479 U.S. 1053 (1987); Anaheim Gardens v. United States, 33 Ct. Cl. 24, 37 (1995).

Accordingly, because MAHRA provided that Englewood pursue any disputes through an administrative process and could not seek judicial review, this Court is without jurisdiction to entertain Englewood's complaint and should dismiss Englewood's complaint.

## CONCLUSION

For the foregoing reasons, the United States respectfully submits that defendant's motion to dismiss should be granted, and Englewood's complaint and this action should be dismissed with prejudice.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

S/Kathryn A. Bleecker for
BRIAN M. SIMKIN
Assistant Director

OF COUNSEL:

GREGORY G. GUSTIN
MARIA BAGUIO
Department of Housing
and Urban Development
Departmental Enforcement
Center
Chicago, IL

S/Lisa B. Donis
LISA B. DONIS
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-6288
Attorneys for Defendant

DECEMBER 22, 2003

CERTIFICATE OF FILING

I hereby certify that, on December 22, 2003, a copy of the foregoing "DEFENDANT'S MOTION TO DISMISS," was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Lisa B. Donis