No. 03-2209C
(Judge Victor J. Wolski)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ENGLEWOOD TERRACE LIMITED
PARTNERSHIP, a Michigan Limited Partnership,

Plaintiff,

v.

UNITED STATES OF AMERICA
and MEL MARTINEZ,
Secretary of the Department
of Housing and Urban Development,

Defendants.

---

PLAINTIFF ENGLEWOOD'S RESPONSE TO MOTION TO DISMISS

---

Peter V. Baugher
Schopf & Weiss LLP
312 West Randolph Street
Suite 300
Chicago, IL 60606
312.701.9300
baugher@sw.com

January 21, 2004

# TABLE OF CONTENTS

Page


Table of Contents .......... i

Table of Authorities .......... ii

INTRODUCTION .......... 1

FACTS .......... 1

ARGUMENT .......... 2

I. This Court Has Jurisdiction Over Breach of Contract Claims .......... 2

II. Judicial Review of HUD's Breach of Contract is Available .......... 3

A. Judicial Review of HUD's Breach of Contract is Supported by Precedent. .......... 3

B. Judicial Review of HUD's Breach of Contract Is Not Foreclosed .......... 5

C. Judicial Review of HUD's Breach of Contract is Supported by Contract Law. .......... 8

D. Judicial Review of HUD's Breach of Contract is Consistent With Congressional Intent .......... 10

III. Judicial Review of HUD's Breach of Contract is Not Precluded by Prior Litigation .......... 11

IV. Englewood's Complaint Sounds in Breach of Contract, Not Tort .......... 12

CONCLUSION .......... 13

# TABLE OF AUTHORITIES

**Cases** **Pages**

Aetna Casualty & Surety Co. v. United States, 228 Ct. Cl. 146, 655 F.2d 1047 (1981) ................ 4

Anaheim Gardens v. United States, 33 Fed. Cl. 24 (1995) ........................................................ 12

Brighton Village Associates v. United States, 52 F.3d 1056 (Fed. Cir. 1995) ............................ 4

California v. United States, 271 F.3d 1377 (Fed. Cir. 2001) ..................................................... 7-8

Christopher Village L.P. v. United States, 53 Fed. Cl. 182, 188 (2002) .............................. 1,4,11

Crest A Apartments v. United States, 52 Fed. Cl. 607 (2002) ...................................................... 4

Dynalectron Corp. v. United States, 4 Ct. Cl. 424 (1984), aff'd, 758 F.2d 665 (Fed. Cir. 1984) ........................................................................................................ 4

Fidelity Construction v. United States, 700 F.2d 1379 (Fed. Cir. 1983) ...................................... 4

Florida Rock Industries v. United States, 791 F.2d 839 (Fed. Cir. 1986) .................................. 12

Gross v. Unites States, 505 F.2d 1271, 205 Ct. Cl. 605 (1974). ................................................. 7,9

Heagy v. United States, 12 Cl. Ct. 694 (1987), aff'd, 848 F. 2d 1288 (Fed. Cir. 1988) ........................................................................................................ 4

Lawlor v. National Screen Services, 349 U.S. 322, 75 S.Ct. 865 (1955) .................................... 11

Lindahl v. Office of Personnel Management, 470 U.S. 768, 105 S.Ct. 1620 (1985) .................... 7

Massie v. United States, 166 F.3d 1184 (Fed. Cir. 1999) ............................................................ 9

Merrifield v. United States, 14 Cl. Ct. 180, n. 4 (1988) ........................................................ 7,9

Montego Bay Imports v. United States, 10 Cl. Ct. 806 (1986) .................................................. 12

New Valley Corporation v. United States, 119 F.3d 1576 (Fed. Cir. 1997) ................................. 9

Ronald A. Torncello and Soledad Enterprises, Inc. v. United States, 681 F.2d 756, (Ct. Cl. 1982) ........................................................................................................ 9

Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683 (1974) ............................................................ 3

Simons v. United States, 25 Cl. Ct. 685 (1992) ...................................................................... 7,9

Soriano v. United States, 352 U.S. 270, 77 S. Ct. 269 (1956) ........ 4

Synthetic Organic Chemical Manufacturer's Association v. Brennan, 503 F.2d 1155 (3d Cir. 1974) ........ 8

Trauma Services Group v. United States, 104 F.3d 1321 (Fed. Cir. 1997) ........ 3

United States v. Connolly, 716 F.2d 882 (Fed. Cir. 1983) ........ 4

United States v. King, 395 U.S. 1, 89 S.Ct. 1501 (1969) ........ 4

United States v. Mitchell, 445 U.S. 535, 100 S.Ct. 1349 (1980) ........ 4

United States v. Testan, 424 U.S. 392, 96 S.Ct. 948 (1976) ........ 4

W.R. Cooper Gen. Contractor, Inc. v. United States, 843 F.2d 1362 (Fed. Cir. 1988) ........ 3

**Statutes**

12 U.S.C. § 17151(a) ........ 10

28 U.S.C. § 1491(a)(1) ........ 2

42 U.S.C. §§ 1437 ........ 3

42 U.S.C. § 1437(f) (Supp V 1999) ........ 3,6

**IN THE**
**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ENGLEWOOD TERRACE LIMITED PARTNERSHIP, a Michigan Limited Partnership, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 03-2209C |
| UNITED STATES OF AMERICA, and MEL MARTINEZ, Secretary of the Department of Housing and Urban Development, | ) | Judge Victor J. Wolski |
| Defendants. | ) | |

**PLAINTIFF ENGLEWOOD'S RESPONSE TO MOTION TO DISMISS**

Plaintiff Englewood Terrace Limited Partnership ("Englewood"), responds to the Motion to Dismiss of the defendant United States of America as follows:

## INTRODUCTION

Englewood has sued the United States and the Secretary of the Department of Housing and Urban Development's ("HUD") for breach of HUD's Housing Assistance Project ("HAP") contract with Englewood. The Court of Federal Claims has exclusive jurisdiction over Englewood's breach of contract damage suit. Christopher Village L.P. v. United States, 53 Fed. Cl. 182, 188 (2002). Therefore, this court should deny HUD's Rule 12(b)(1) motion to dismiss for lack of jurisdiction.

## FACTS

Englewood owns a 303-unit apartment building in the Englewood community on the south side of Chicago. (Complaint ¶ 1.) Since 1992, Englewood has provided housing to low-income residents. (Complaint ¶ 2.) HUD provided subsidies to Englewood through a series of HAP contracts. (Complaint ¶ 2.)

In October 2000, HUD entered into a HAP contract with Englewood for the period from October 1, 2000 to September 30, 2001 with three automatic one-year renewals. (Complaint ¶ 2.) However, on December 6, 2000, HUD informed Englewood that it was unilaterally amending the contract by reducing its term from one year to three months and by eliminating the automatic renewals. Englewood did not acquiesce. (Complaint ¶ 4.)

Rather than honor its contractual obligations to Englewood, HUD manufactured various excuses to avoid them. In particular, in order to justify a finding that Englewood was in default, HUD exaggerated the physical deficiencies of the site and refused to even consider evidence to the contrary. (Complaint ¶¶ 5-7.) HUD improperly tied its consideration of the claimed HAP contract default to its separate negotiations with Englewood regarding a rehabilitation loan and refused to follow its own procedures. (Complaint ¶¶ 33-35.) HUD further sought to avoid its contractual obligation to pay housing subsidies by abating the HAP contract and subsidizing the tenants with vouchers. (Complaint ¶¶ 49, 58.)

HUD also breached its contract with Englewood by refusing to consider Englewood's request for a rent increase. Instead, HUD again improperly delayed its response so as to tie a rent increase to the rehabilitation loan. (Complaint ¶¶ 50-54.) In addition, HUD improperly refused to consider Englewood's claim for special funding for extraordinary increase in utility costs. (Complaint ¶¶ 94-95.)

## ARGUMENT

### I. This Court Has Jurisdiction Over Breach of Contract Claims

This court has jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1):

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

To show jurisdiction under the Tucker Act, a party must simply plead the existence of a contract with the United States, its breach, and resulting damages. Trauma Services Group v. United States, 104 F.3d 1321 (Fed. Cir. 1997). Although the Tucker Act does not itself create substantive rights giving rise to jurisdiction, Englewood's substantive right here is to recover for breach of contract under the National Housing Act of 1937, 42 U.S.C. §§ 1437, et seq.

When determining jurisdiction, the court must accept as true any undisputed factual allegations made by the nonmoving party and draw all reasonable inferences in a light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974). If the undisputed facts reveal any possible basis upon which the nonmoving party might prevail, the court must deny the motion. Scheuer, 416 U.S. at 236, 94 S.Ct. 1683; W.R. Cooper Gen. Contractor, Inc. v. United States, 843 F.2d 1362, 1364 (Fed. Cir. 1988).

Englewood has adequately pled jurisdiction. There was a contract. There was a breach. There were damages. There is a statutory scheme mandating compensation (42 U.S.C. § 1437f) (Supp. V 1999). Therefore, this court has jurisdiction over Englewood's breach of contract claim.

## II. Judicial Review of HUD's Breach of Contract is Available

### A. Judicial Review of HUD's Breach of Contract is Supported By Precedent

HUD mistakenly asserts that judicial review of its breach of contract is foreclosed by Multifamily Assisted Housing Reform and Affordability Act of 1997, Pub.L. No. 105-65, 111 Stat. 1344 (reprinted in 42 U.S.C. § 1437f) ("MAHRA") § 516(c):

> (c) Final determination.--Any final determination under this section shall not be subject to judicial review.

Section 516(c) is only a recent addition to the underlying Housing Act and does not foreclose judicial review of HUD's breach. Breaches of HAP contracts can be reviewed by this court and frequently are. Christopher Village v. United States, 53 Fed. Cl. 182 (2002) (Court of Claims has jurisdiction over claimed breach of HAP contract); Crest A Apartments v. United States, 52 Fed. Cl. 607 (2002) (Court of Claims has jurisdiction over claimed breach of HAP contract); Brighton Village Associates v. United States, 52 F.3d 1056 (Fed. Cir. 1995) (Court of Claims has jurisdiction over claimed breach of HAP contract). There is simply no blanket prohibition on judicial review of HUD's breach of a HAP contract.

HUD cites to no case law for the proposition that HUD's breach of contract is unreviewable in the Court of Federal Claims. The decisions to which HUD does refer are either irrelevant[1] or actually support Englewood's position. The only pertinent case cited by HUD holds that there **is** jurisdiction in the Court of Federal Claims for a claim by an owner that HUD breached its contract. Heagy v. United States, 12 Cl. Ct. 694, 698 (1987), aff'd, 848 F.2d 1288 (Fed. Cir. 1988) (table), recognized that this court has jurisdiction over a building owner's breach of contract claim against HUD but found that there was no breach.

[1] Aetna Casualty & Surety Co. v. United States, 228 Ct. Cl. 146, 151, 655 F.2d 1047, 1052 (1981) (no Tucker Act jurisdiction because the United States was not a party to a contract with the plaintiff); Dynalectron Corp. v. United States, 4 Ct. Cl. 424, 428 (1984) aff'd, 758 F.2d 665 (Fed. Cir. 1984) (table) (no jurisdiction under the Tucker Act because an unsuccessful bidder to a contract with the United States cannot bring implied contract suit and was not a party to an express contract with the United States); Soriano v. United States, 352 U.S. 270, 273, 77 S. Ct. 269, 272 (1956) (no jurisdiction over a claim brought more than six years after its accrual); United States v. Testan, 424 U.S. 392, 400, 96 S.Ct. 948, 954 (1976) (no jurisdiction under the Tucker Act where "the respondents do not rest their claims upon a contract"); United States v. Mitchell, 445 U.S. 535, 100 S.Ct. 1349 (1980) (no Tucker Act jurisdiction over tribal claims of timber mismanagement which were not brought under a breach of contract theory); United States v. King, 395 U.S. 1, 89 S.Ct. 1501 (1969) (no Tucker Act jurisdiction to issue declaratory judgment to change military records); United States v. Connolly, 716 F.2d 882, 885 (Fed. Cir. 1983) (claim of a probationary postal employee does not sound in breach of contract); Fidelity Construction v. United States, 700 F2d 1379, 1383 (Fed. Cir. 1983) (Contract Dispute Act does not authorize payment of interest until after a claim is certified).

Indeed, that is the law in this case. In agreeing with the Government and denying Englewood's 2001 motion for a preliminary injunction in the U.S. District Court, Judge Ruben Castillo ruled that "the harm Englewood asserts is not irreparable because it is a loss of project-based revenue provided by the HAP contract which, should Englewood prevail, may be compensated at the conclusion of the litigation." (Complaint, Exhibit O, Order of Nov. 15, 2001, pp. 3-4.) The court's language is taken word for word from the Government's brief, and HUD should not be heard to say that Englewood cannot now seek compensation for loss of project-based revenue in this court. (Federal Government's Response to Emergency Motion for Preliminary Injunction, filed in No. 01 C 8285, Nov. 8, 2001, p. 10.)

**B. Judicial Review of HUD's Breach of Contract Is Not Foreclosed**

Section 516 provides HUD with the authority to make certain discretionary determinations. Section 516(c) precludes court review of these determinations. Englewood does not contest HUD's discretionary power. It challenges HUD's breach of contract. The decision to ignore or act in a way that violates a HAP contract is <u>not</u> a discretionary determination permitted under Section 516.

Section 516 does not immunize HUD's breach of a HAP contract. Instead, it describes circumstances under which HUD may elect not to consider either (1) a mortgage restructuring and rental assistance plan, or (2) a request for contract renewal. Section 516(a) outlines circumstances under which HUD "may" choose non-renewal. As a threshold matter, HUD did not choose "not to renew" Englewood's HAP contract. It "abated" and "terminated" that contract. (Complaint ¶ 58, Exhibit P, "Notice of Abatement and Termination".) And it failed to make required rent increases and energy cost reimbursements, among other payments, also contrary to its obligations under the HAP contract. (Complaint ¶¶ 94-95, Exhibit S.)

Nonreviewability of HUD's "final determinations" may mean that a court cannot, by injunction or mandamus for example, reverse HUD's choice.[2] However, Section 516 does not authorize HUD to breach its contract. Under Section 516(c) this Court may not have jurisdiction to compel HUD to reinstate Englewood's Section 8 subsidy, overruling the Agency's

---

[2] Section 516 provides, in pertinent part, as follows (42 U.S.C. § 1437(f), app. § 516):

> Sec. 516. Prohibition on restructuring.
>
> (a) Prohibition on restructuring.--The Secretary may elect not to consider any mortgage restructuring and rental assistance sufficiency plan or request for contract renewal if the Secretary or the participating administrative entity determines that--
>
> (1)(A) the owner or purchaser of the project has engaged in material adverse financial or managerial actions or omissions with regard to such project; or
>
> (B) the owner or purchaser of the project has engaged in material adverse financial or managerial actions or omissions with regard to other projects of such owner or purchaser that are federally assisted or financed with a loan from, or mortgage insured or guaranteed by, an agency of the Federal Government;
>
> (2) material adverse financial or managerial actions or omissions include—
>
> * * *
>
> (H) materially failing to maintain the property according to housing quality standards after receipt of notice and a reasonable opportunity to cure; or
>
> (I) committing any actions or omissions that would warrant suspension or debarment by the Secretary;
>
> (3) the owner or purchaser of the property materially failed to follow the procedures and requirements of this subtitle, after receipt of notice and an opportunity to cure; or
>
> (4) the poor condition of the project cannot be remedied in a cost effective manner, as determined by the participating administrative entity.
>
> * * *
>
> (c) Final determination.--Any final determination under this section shall not be subject to judicial review.

determination. But that does not deprive the Court of Federal Claims of its fundamental jurisdiction as a forum in which to remedy government breaches of contract.

HUD points to no authority suggesting that Congress intended to limit review of legal issues on contract breach, including HUD's use or abuse of its own procedures or terminations, rent increases, or mandated reimbursements. HUD does not suggest any decision or legislative history that supports its interpretation of Section 516(c). Further, Section 516(c), unlike the statutes in Simons v. United States, 25 Cl. Ct. 685, 696 (1992), Gross v. United States, 505 F.2d 1271,1273, 205 Ct. Cl. 605 (1974), and Merrifield v. United States, 14 Cl. Ct. 180, 184 n. 4 (1988)), cited by HUD, does not provide that HUD's decisions are "final and conclusive." Section 516(c) limits judicial review of the agency's determination, which is solely that a HAP contract will not be renewed or a mortgage restructured.

In interpreting Section 516(c) the court must answer: determination of what? HUD did not make a determination that Englewood was or was not entitled to damages. If anything, it made a determination not to renew the HAP contract. Thus, Englewood cannot (and does not) seek to force HUD to reconsider that determination. Englewood merely seeks adjudication of the resulting legal consequences of that determination. HUD may breach a contract, but it cannot do so with impunity.

It is to be presumed that Congress intended to preserve judicial review of the legality of agency action. Lindahl v. Office of Personnel Management, 470 U.S. 768, 773, 791, 105 S.Ct. 1620, 1624, 1633 (1985) (even under a statute declaring agency decisions to be "final and conclusive and . . . not subject to review," questions of law and procedure would still remain open). Lindahl reiterates that judicial review should not be restricted without clear and convincing evidence of legislative intent. Such evidence is absent here. California v. United

States, 271 F.3d 1377, 1380-83 (Fed. Cir. 2001) (statutory provision that "no liability of any kind shall attach to or rest upon the United States for damage from or by floods" did not deprive the Court of Claims of jurisdiction to hear claim of breach of flood control contract action against the United States).

Section 516(a)(1)(A)-(I), moreover, prescribes the reasons why HUD may choose not to renew a HAP contract. The limitations Congress placed on the reasons for non-renewal imply that HUD's decision must be based upon a legitimate reason outlined in the statute and, if not, that the owner be able to seek damages in court. Synthetic Organic Chemical Manufacturer's Association v. Brennan, 503 F.2d 1155, 1160 (3d Cir. 1974) ("The requirement [in the Act] that [the Secretary] state reasons strongly suggest that those reasons, whether policy judgments or factual findings, may be subject to judicial review.").

**C. Judicial Review of HUD's Breach of Contract is Supported by Contract Law**

Were HUD's failures to fulfill its contract obligations shielded from legal scrutiny by any authority outside the agency, its contracts would be illusory and unenforceable. Under basic contract law, a contract allowing one party unlimited and unreviewable power to breach would be illusory:

> [I]n general consideration requires a bargained-for benefit or detriment. Where an illusory promise is made, that is, a promise merely in form, but in actuality not promising anything, it cannot serve as consideration. Even if it were recognized by law, it would impose no obligation, since the promisor always has it within his power to keep his promise and yet escape performance of anything detrimental to himself or beneficial to the promisee. In such cases, where the promisor may perform or not, solely on the condition of his whim, his promise will not serve as consideration.
>
> 3 Richard A. Lord, Williston on Contracts § 7.7 (4th ed. 2003).

Contracts with the United States are subject to the general law of contracts. Under longstanding contract law, the consequence of a rule prohibiting judicial review of HUD's

breach of contract would be untenable. If HUD can breach contracts without consequence, then HUD contracts are illusory. In Ronald A. Torncello and Soledad Enterprises, Inc. v. United States, 681 F.2d 756, 760 (Ct. Cl. 1982), the Court of Claims (now the U.S. Court of Appeals for the Federal Circuit) "note [d] as one of the most elementary propositions of contract law that a party may not reserve to itself a method of unlimited exculpation without rendering its promises illusory and the contract void." Torncello, 681 F.2d at 760. The court held that to allow the Navy to terminate its contract for the convenience of the government would have rendered the government's promises illusory and would have "destroy[ed] the contract." Torncello, 681 F.2d at 760; New Valley Corporation v. United States, 119 F.3d 1576, 1583-84 (Fed. Cir. 1997) (clause in contract providing that administrative decision would be final and conclusive did not preclude judicial review of claim that Agency's failure to use its best efforts to perform resulted in breach).

Here, if HUD were correct in its assertion of absolute, unlimited and unreviewable power to exculpate itself from its promises in the HAP contract, HUD would be under no obligation to do anything as a result of this contract. The HAP contract would be illusory and void. HUD does not—and could not—make this argument.[3]

---

[3] HUD cites no case for the proposition that this court lacks the jurisdiction to grant a remedy for HUD's breach of contract. HUD's citation of Simons v. United States, 25 Cl. Ct. 685, 693 (1992) is unavailing given that the Simons court held that "[c]learly, the court has jurisdiction over the plaintiff's claim." See, Gross v. United States, 505 F.2d 1271,1279, 205 Ct. Cl. 605 (1974) (Department of Agriculture decisions reviewable as to questions of law and if alleged to be arbitrary and capricious). While Congress may (and, in the Military Claims Act, did) provide that a retiring serviceman cannot seek review of a denial of property damage and personal injury payments even when he incorrectly alleges a breach of an oral contract to provide insurance (Merrifield v. United States, 14 Cl. Ct. 180 (1988)), it cannot insulate HUD from the consequences of a breach of contract. Judicial deference to agency determinations, even if appropriate, does not give HUD a "get out of contract damages free" card. Massie v. United States, 166 F.3d 1184 (Fed. Cir. 1999) (although claim itself unreviewable, plaintiff may seek breach of contract damages in Court of Federal Claims for breach of contract to pay claim under Military Claims Act).

### D. Judicial Review of HUD's Breach of Contract is Consistent With Congressional Intent

Foreclosing breach of contract actions against HUD would burden project owners and discourage their continued participation. This is contrary to the intent of Congress.

The purpose of the National Housing Act (the "Act") is to "assist private industry in providing housing for low and moderate income families and displaced families." 12 U.S.C. § 1715l(a). Added to the Act in 1997, MAHRA was designed to protect the rights of property owners and tenants while reducing HUD's administrative costs and returning some housing rental rates to the market rate. MAHRA was not intended to drive private industry out of the public housing market by eliminating the property rights of owners. Instead, its purpose is to "protect the interest of project owners and managers, because they are partners of the Federal Government in meeting the affordable housing needs of the Nation through the Section 8 rental housing assistance program." MAHRA § 511(b)(7).

Allowing review of HUD's breach of HAP contracts is necessary to protect the rights of property owners from unreasonable agency action. Under the HAP contract, HUD approves rent schedules. These rent schedules are intended to be adequate to meet the needs of the property and the owner maintains the property in decent, safe and sanitary condition as defined by HUD. Where, as here, the tenants of a subsidized property are very poor, HUD pays most of the rent through the HAP subsidy. This increases a property owner's dependence on the HAP subsidies and, effectively, gives HUD a stranglehold on a property. If HUD stops paying the owner the subsidies, it becomes impossible for the property owner to pay its expenses and maintain the property. HUD can then terminate the HAP contract.

As alleged in the Complaint, HUD abated the HAP subsidy for Englewood Terrace claiming improper maintenance. Yet, all of the so-called violations not only were minor,

but also had been corrected—as HUD knew. The abatement of the HAP payments, coupled with HUD's refusal to consider a rent increase, insured that Englewood would be unable to pay the operating and maintenance expenses. HUD's illegal abatement thus subverted Congress' intent as outlined in the Act and MAHRA.

## III. Judicial Review of HUD's Breach of Contract is Not Precluded by Prior Litigation

HUD obliquely raises the issues of *res judicata* and collateral estoppel by asserting that the U.S. District Court would have exclusive jurisdiction but for the dismissal for want of prosecution of Englewood's 2002 suit in the Northern District of Illinois. (Motion 13-14.) This argument is directly contrary to defendant's position before the District Court. There, HUD asserted "inasmuch as this action involves a claim from [sic] money damages over $10,000 resulting from an alleged breach of the HAP contract, jurisdiction would appear to lie with the Court of Federal Claims." (Federal Government's Response to Emergency Motion for Preliminary Injunction, filed in No. 02 C 4033, June 20, 2002, p. 8.)

*Res judicata* does not bar this action. Under the doctrine of *res judicata*, a final judgment on the merits prevents further claims by parties or their privies based on the same cause of action. Because the Court of Federal Claims has exclusive jurisdiction over breach of contract claims against the federal government, however, Englewood's damage claims could not have been litigated and decided in the District Court, so *res judicata* cannot apply. Christopher Village L.P. v. United States, 53 Fed. Cl. 182, 188 (2002).

Nor does the doctrine of collateral estoppel apply to preclude this claim. This doctrine attaches to matters actually litigated. Where, as here, the matter before U.S. District Court was dismissed for want of prosecution (whether with or without prejudice) there is nothing to which the doctrine may attach. A dismissal with prejudice does not bar claims not decided. Lawlor v. National Screen Services, 349 U.S. 322, 327, 75 S.Ct. 865, 868 (1955). Other than the

want of prosecution, no matter was determined by the District Court. Therefore, Englewood is not collaterally estopped from proving the facts necessary to prevail in its breach of contract action.

**IV. Englewood's Complaint Sounds in Breach of Contract, Not Tort**

HUD cites no case for the extraordinary proposition that this court can ignore the plain language of the complaint--"This is a breach of contact action by Englewood against HUD" (Complaint § 1)[4]--in favor of a strained and convoluted interpretation leading to tort. On the contrary, the cases cited by HUD do not involve breach of a contract at all. Montego Bay Imports v. United States, 10 Cl. Ct. 806 (1986) (claim for unlawful destruction of a vessel and for the failure of the Government to conduct forfeiture proceedings sounded in tort); Florida Rock Industries v. United States, 791 F.2d 839 (Fed. Cir. 1986) (Tucker Act jurisdiction will not lie to consider the propriety of the denial of a permit); Anaheim Gardens v. United States, 33 Fed. Cl. 24 (1995) (HUD's inability to comply with timetable set forth in Low Income Housing Preservation and Resident Homeownership Act did not give rise to a taking under the Tucker Act because it was illegal rather than merely unreasonable or extraordinary). None of these cases support the nonsensical notion that a breach of contract sounds in tort.

[4] See the first paragraph of HUD's description of the "Nature of the Case" (Motion 1): "Plaintiff, Englewood Terrace Limited Partnership, claims that the United States breached a Housing Assistance Payment contract ('HAP') it had with the Government, by improperly terminating it, and seeks damages of 'at least 3 million.' Englewood Complaint, Prayer for Relief."

## CONCLUSION

Where the Government breaches a contract, it should be held to account for damages. Congress has assigned to this Court the jurisdiction to adjudicate disputes concerning such claims. Englewood's Complaint is not an exception. The Defendant's Motion to Dismiss should be denied.

Dated: January 21, 2004

s/Peter V. Baugher
One of the Attorneys for Plaintiff
Englewood Terrace Limited Partnership

Peter V. Baugher
Schopf & Weiss LLP
312 West Randolph Street
Suite 300
Chicago, IL 60606
312.701.9300

## CERTIFICATE OF SERVICE

I, Peter V. Baugher, one of the attorneys for Plaintiff Englewood Terrace Limited Partnership, state that on January 21, 2004, I caused a copy of **Plaintiff Englewood's Response to Motion to Dismiss,** to be served by facsimile and first class mail on:

Ms. Lisa B. Donis
Commercial Litigation Branch
Civil Division, United States Department of Justice
11 L Street, N.W.
Room 10130
Washington, DC 20005
(202) 514-8640

s/Peter V. Baugher
Peter V. Baugher