IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ENGLEWOOD TERRACE LIMITED PARTNERSHIP, Plaintiff, | ) | |
| v. | ) | No. 03-2209C<br>Judge Horn |
| THE UNITED STATES, Defendant. | ) | |

**JOINT STATUS REPORT**

Pursuant to conferences with the Court's Law Clerk and the Court's order dated November 14, 2005, which directed the parties to file a joint status report to indicate the status of their settlement negotiations, the parties respectfully submit the following report.

**Plaintiff's Position**

The litigation has been suspended for last two months so that the parties could engage in settlement negotiations. Plaintiff was hopeful at the outset that a resolution could be reached, believing that its case on the facts and law (and on damages) was compelling, and that a forthright exchange of views with appropriate decision makers would lead to a compromise satisfactory to Englewood and tolerable to HUD. Since the parties' first and only face-to-face meeting in late September, however, the settlement communications have been one-sided--

almost exclusively from Englewood to HUD. Plaintiff summarized what had transpired in the last status report, filed November 10, 2005.

From Englewood's standpoint now in early December (having sued in September 2003 for events that mostly took place in 2001), it appears that trial is the most efficient means of ending this dispute. And no party can or should be forced to give up its right to present its evidence in court. Nonetheless, it may be that a more managed process could overcome the impediments that have for two months blocked any effective negotiations:

(1) HUD's designated settlement representative seems to be an inopportune channel to report to HUD's senior management and reflect the views of the department's actual decision makers, especially given her own involvement since 2001 in overseeing the principals in HUD's Chicago office who will be witnesses at trial.

(2) While parties in a negotiation can of course trade numbers, hoping to build some momentum toward a middle ground, principled negotiations require both sides to state (and be willing to explain and debate) their positions, which HUD has largely

declined to do except by reference to "the pleadings."

(3) Earlier this week Mr. Wellons disclosed that HUD is abandoning the position in its June 2005 summary judgment motion that it is entitled to judgment on its declaration that Englewood defaulted on the four-year HAP Contract. Nevertheless, the prospect that the Government might obtain judgment short of trial seems to have diminished serious consideration of settlement by HUD, just as the Government's earlier unsuccessful motion to dismiss led HUD to rebuff Englewood's proposals to discuss settlement in 2003-4.

The basic facts are these:

Since the end of September, Englewood has presented its legal positions and fact assumptions, and sent HUD three, detailed written settlement proposals, along with accompanying damages analyses and exhibits--significantly reducing its damage demand in each of the succeeding letters.

Unfortunately, there have been no substantive discussions or exchanges between the parties since Plaintiff's presentation in Washington on September 29. The second, and last telephone conference call on November 17, involved Mr. Wellons, Ms. Beverly Miller, two HUD lawyers, and HUD staff from Chicago

(where the problems at issue in the litigation arose, and two of the witnesses who will be called to testify at trial, Edward Hinsberger and Gregory Gustin).

The Court's Order of November 14 directed that someone at HUD senior to Ms. Miller was to participate in the settlement negotiations. There is no evidence that anyone at HUD senior to Ms. Miller participated in the negotiations. None was present in any conversation with Englewood.

A telephone conference involving Ms. Janet Golrick, the Assistant Deputy Assistant Secretary for Multifamily Housing was scheduled for November 17. Mr. Wellons characterized her participation as a "courtesy" to the Plaintiff and the Court. In any event, Ms. Golrick first reset, then cancelled her "courtesy" attendance shortly before the scheduled phone call.

Counsel for Defendant offered as an alternative a conference call several hours later on that same day involving Ms. Beverly Miller and him. Two HUD lawyers were in the room with Mr. Wellons and Ms. Miller. One began the call by stating that no one except the Assistant Secretary had the power to agree on the terms of a settlement.

Ms. Miller was asked to state HUD's position. She said that she had listened to Plaintiff's presentation in Washington on September 29, that she had seen the materials presented by Plaintiff, and that she believed HUD had acted properly. Her

statement lasted less than a minute. It was followed by a long period of total silence. Plaintiff's counsel asked: "Is that it"? Defendants answered: "That's it." Although the call continued for a while thereafter, that was the extent of the "negotiations" between the parties.

Ms. Miller's reticence may have stemmed from her concern that she had a record to defend. She oversaw the decisions made by the Chicago Multifamily Office (Mr. Hinsberger) in Chicago in the summer and fall of 2001 that led to this lawsuit. There were numerous phone calls and email messages between Ms. Miller and Mr. Hinsberger during this period discussing the decision to continue issuing vouchers and to stop Englewood's HAP payments. The HUD official who was supposed to conduct HUD's "independent" administrative review was her deputy, Howard Mayfield. As discovery revealed, Mr. Mayfield's decision was written for him by Greg Gustin, Mr. Hinsberger's lawyer in Chicago. In effect, Ms. Miller added a "no comment" to the negotiations.

At the end of the day on November 17, there had been no sign of any review of, or participation in the settlement negotiations by anyone in the Office of the Secretary, the Assistant Secretary for Housing, or the Deputy Assistant Secretary for Multifamily Housing, the three management levels at HUD senior to Ms. Miller.

On November 18, counsel for Plaintiff sent Mr. Wellons a revised settlement proposal with a lower dollar demand, requesting that it be circulated to HUD senior management for their consideration. Several days later, Mr. Wellons informed Mr. Baugher that Plaintiff's offer had been rejected. There was no indication as to whether or how HUD senior management had participated in, "concurred with" or "approved" this decision.

Plaintiff has not yet had the opportunity to talk with anyone at HUD senior to the level of Ms. Miller. Ms. Miller has chosen not to discuss any issue related to liability or damages or a process to arrive at a settlement amount.

Mr. Wellons has likewise been unwilling to say much about substance, stating that the Government's position is clear from the pleadings and its motion for summary judgment. Earlier this week, November 29, he informed Plaintiff's counsel that HUD was going to drop the physical condition and default arguments that were the foundation of its June 2005 motion for summary judgment. But even as to this obviously important matter, the Government has so far declined to state its position with any specificity.

Plaintiff has been frustrated by Defendant's unwillingness to articulate its legal theories, to meet in person, or to engage in any meaningful discussion of facts or law. The call for which Mr. Samuelson was criticized at the last court session

was in fact simply to offer that to enhance an exchange of views he was willing to travel to Washington to be present in person.

Plaintiff believes that because Defendant takes the position that there are no genuine issues of material fact, and that HUD is entitled to judgment as a matter of law, useful settlement discussions have not been possible. Plaintiff believes, however, that the questions set out in Exhibit A supported by pleadings, documents, depositions, answers to interrogatories and declarations, represent genuine issues of material fact sufficient to defeat the Defendant’s motion for summary judgment, assuming HUD intends to persist in some form of that motion.

Because Plaintiff believes the legal standards and facts of this contract case are straightforward, it has been willing to settle or mediate this case from the inception of this litigation. By contrast, HUD has challenged the Court’s jurisdiction (arguing that there is no judicial review), moved for reconsideration, and has advanced a shifting set of partially explained legal theories to support its motion for summary judgment.

Plaintiff still believes that serious, law and fact based, structured/moderated settlement discussions involving principals could resolve this dispute for the benefit of everyone. (The November 7 letter from Lionel Nixon of the Englewood Black

Chamber of Commerce to the Secretary of HUD urging settlement has not "hampered the settlement process," and its attachments were, from Defendant's description, communications previously sent by Plaintiff to Defendant. Mr. Nixon, a long time community activist and former HUD official, is a consultant and frequent commentator on housing and other public issues in Chicago. Englewood's and Mr. Samuelson's efforts to make South Pointe a showplace, and HUD's retributive action toward them, have been matters of considerable local, political discussion and debate. Mr. Nixon's letter to the HUD's highest political official has not impacted settlement in any way that Englewood is aware.)

Plaintiff requests that the Court schedule a teleconference at its earliest convenience to review settlement efforts to date, to explore ways in which meaningful settlement negotiations between the parties might be facilitated, and if such further settlement discussions occur but fail, to set a short schedule for resolving any summary judgment motion and moving toward trial.

**Defendant's Position**

Defendant believes that many of plaintiff's statements, which constitute "statements made in compromise negotiations," would not be admissible at trial and are inappropriate to include in a status report filed with the Court. See FRE 408.

Defendant also refutes plaintiff's statements regarding the merits of the case and all matters unrelated to the status of settlement talks.

Plaintiff's stated frustration with HUD's conduct during negotiations is unfounded. After plaintiff expressed dissatisfaction with the prospect of settlement discussions conducted solely with officials representing HUD's Chicago office, HUD designated Beverly Miller, Director, Office of Multifamily Asset Management, as its representative for purposes of settlement discussions. Ms. Miller is a senior official responsible for overseeing HUD's asset management of all 30,000 multifamily housing properties in the United States. Despite these duties, she has devoted considerable time to the settlement process. This has included meeting with plaintiff's representatives for hours in person and over the telephone, reviewing plaintiff's submissions, and discussing the case with Department of Justice and HUD attorneys.

Pursuant to the conference call held with the Court on November 14, 2005, HUD assigned Ms. Janet Golrick, Assistant Deputy Assistant Secretary for Multifamily Housing, to participate in the settlement process. As the Court is aware, the parties had tentatively scheduled a teleconference involving Ms. Miller for November 17, 2005. Defendant's counsel had represented to the Court that he would endeavor to involve

additional senior HUD officials in the scheduled call if any were available on short notice. Accordingly, the parties attempted to schedule a call involving Ms. Golrick; however, Ms. Golrick’s schedule required her to cancel her intended participation in the call. As a result, the parties’ conducted the originally scheduled call involving Ms. Miller. The call lasted more than one hour, and defendant considered the talks to be substantive.

Further, HUD has provided Ms. Golrick with copies of all materials submitted to it during the settlement process, including materials that plaintiff’s counsel specifically requested that she receive.

In fact, the parties have exchanged multiple settlement figures intended to form the basis of an agreement that defendant’s counsel could recommend to the appropriate settlement authority and that plaintiffs’ counsel could recommend to his client. However, the parties have not agreed to a settlement amount. On November 23, 2005, plaintiff’s counsel wrote to defendant’s counsel indicating that plaintiff wished to terminate settlement talks.

Finally, defendant’s counsel has learned that on November 14, 2005, HUD received a letter from Lionel Nixon, an

independent consultant contractor to Plaintiff.[1] Exhibit B. This letter, dated November 7, 2005, was addressed to Alphonso Jackson, Secretary of the U.S. Department of Housing and Urban Development, as well as to other high level HUD officials. The letter forwarded e-mails regarding the parties' settlement discussions sent from Mr. Samuelson to Mr. Nixon as well as e-mails sent from plaintiff's counsel to defendant's counsel.

Defendant acknowledges that this letter appears to have been sent before the Court's instruction to the plaintiff to refrain from any additional attempts at ex parte communications with HUD officials. Defendant discloses the letter consistent with the Court's instruction that it be kept apprised of all such communications and because such communications have hampered the settlement process. Defendant has not attached the referenced e-mails because they contain proposed settlement figures.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

[1] During his deposition, Mr. Samuelson acknowledged reimbursing Mr. Nixon for his services as a "consultant" in this litigation.

s/ BRIAN M. SIMKIN
BRIAN M. SIMKIN
Assistant Director

s/ PETER V. BAUGHER
PETER V. BAUGHER
Schopf & Weiss LLP
312 West Randolph St.
Chicago, IL 60606
Tel: (312) 701—9300

Attorney for Plaintiff

December 2, 2005

s/ PAUL R. WELLONS
PAUL R. WELLONS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 Street, N.W.
Washington, DC 20530
Tel: (202) 616-8253
Fax: (202) 307-0972

Attorneys for Defendant

December 2, 2005

**CERTIFICATE OF FILING**

I hereby certify that on December 2, 2005, a copy of the foregoing “JOINT STATUS REPORT” was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ PAUL R. WELLONS