**IN THE**
**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ENGLEWOOD TERRACE LIMITED PARTNERSHIP,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 03-2209C** <br> **Judge Marian Blank Horn** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**JOINT STIPULATIONS REGARDING ISSUES**

Pursuant to the Court's order dated February 10, 2006, the parties agree to the following stipulations regarding issues.

1. Whether HUD illegally terminated any contract between it and plaintiff.

2. Whether HUD breached or repudiated any contract between it and plaintiff.

3. Whether HUD breached any duty of good faith and fair dealing it owed to plaintiff.

4. Whether Englewood's claims are barred by prior material breach.

5. Whether Englewood's claims are barred by waiver.

6. Whether the HAP renewal contracts executed by the parties in 2001 and 2002 are bilateral amendments, modifications, or corrections to the parties' previous contracts.

7. Whether the parties' HAP renewal contracts concluded their previous contractual obligations to one another under the doctrine of accord and satisfaction.

8. Whether Englewood is entitled to contract damages from HUD.

9. Whether Englewood is entitled to attorneys fees and litigation costs under the Equal Access to Justice Act or otherwise.

## PLAINTIFF'S STATEMENT OF ISSUES

### THE CENTRAL ISSUE

There is one central issue in this case. Were the three automatic one-year renewal provisions in the 2000 HAP Renewal Contract ever eliminated as HUD contract obligations?

### OTHER ISSUES

1. What legal decisions relevant to the dispute between the parties were made by Judge Wolski (a) in his August 10, 2004 Opinion denying HUD's motion to dismiss, (b) in his August 31, 2004 Order denying HUD's motion for reconsideration?

2. Which contract governs the enforceability of the three years of automatic renewals? The 2000 HAP Renewal Contract, or the 2001 90-Day HAP Renewal Contract?

3. What were the project-related purposes to be served by the parties entering into a multi-year HAP Contract in 2000? To support the underwriting criteria for a rehab loan to complete the improvements in the agreed upon MIO Plan? To refinance a new loan with dramatically less burdensome principal payment provisions?

4. What were the key new provisions of the 2000 HAP Renewal Contract? The three years of automatic renewal? The additional termination provisions provided for in the REAC Addendum?

5. Were the basic terms in the 2000 HAP Renewal Contract changed? Were there "errors" in the Contract? Was the Contract "amended"?

6. Was HUD excused from its contract obligations in the 2000 HAP Renewal Contract? Were its obligations terminated under the provisions of Paragraph 20 of the 1998 HAP Contract? Were its obligations terminated under the provisions of the REAC Addendum? Were its obligations terminated because HUD declared the physical conditions at South Pointe to be not "decent, safe and sanitary"?

7. Did HUD breach and repudiate its contract obligations (a) by unilaterally altering key terms in the contract, (b) by refusing to respond substantively to Englewood's proposed plan of correction developed in response to the March 8, 2001 REAC Report, (c) by refusing to process in good faith Englewood's periodic requests for customary HAP Contract benefits, (d) by initiating a voucher program encouraging residents to leave South Pointe while Englewood was making good faith efforts to complete its MIO Plan and to respond to REAC Reports, (e) by refusing to honor the automatic renewal provisions of the 2000 HAP Renewal Contract?

8. Did HUD breach its Implied Covenant of Good Faith and Fair Dealing?

9. What were the categories and amounts of damages suffered by Englewood as a result of HUD's refusal to honor the automatic renewal provisions of the 2000 HAP Renewal Contract and to process in good faith Englewood's requests for customary HAP Contract benefits?

10. Is Englewood entitled to attorneys' fees and litigation costs under the Equal Access to Justice Act?

**DEFENDANT'S STATEMENT OF ISSUES OF LAW**

1. Whether HUD breached any contract or violated any money mandating provision of law by denying Englewood's requests for reimbursement for unpaid rent for vacant units.

2. Whether any contract or money mandating provision of law confers jurisdiction upon this Court to entertain Englewood's "special claims" pertaining to excess energy costs, unpaid rent, and tenant-caused damage to units.

3. Assuming the Court possesses jurisdiction to entertain Englewood's "special claims," whether HUD wrongfully denied any such claims.

4. Whether the Court possesses jurisdiction to entertain Englewood's claims that HUD improperly failed to implement requested rent increases.

5. Assuming the Court possesses jurisdiction to entertain Englewood's claims for requested rent increases, whether HUD improperly failed to implement any requested rent increase.

6. Whether Englewood's claims are barred by estoppel.

7. Whether the decision of the Federal District Court for the Northern District of Illinois dated November 14, 2001 precludes Englewood's claim that HUD illegally terminated the parties' 2000 HAP Renewal Contract.

8. Whether Englewood's pleadings before the Federal District Court for the Northern District of Illinois preclude Englewood from alleging that HUD illegally terminated the parties' 2000 HAP Renewal Contract.

9. Whether Englewood's letter to the Court dated April 1, 2004 (in which plaintiff acknowledged that "Englewood's HAP Contract was renewed with the express incorporation of all the provisions related to this lawsuit—breach, notice, default, remedies") precludes Englewood from alleging that HUD illegally terminated the parties' 2000 HAP Renewal Contract.

10. Whether Englewood may seek damages in this case by claiming that HUD repudiated any HAP contract by making a cardinal change to its terms, when Englewood raised this claim for the first time in response to the Government's first motion for summary judgment.

11. Assuming Englewood seeks damages in this case for its alleged inability to make payments towards a HUD-insured mortgage, whether Englewood may obtain such damages when Englewood failed to plead such damages in its complaint.

12. Assuming Englewood seeks damages in this case for its alleged inability to make payments towards a HUD-insured mortgage, whether Englewood may obtain such damages in this case when Englewood obtained its mortgage in a collateral undertaking entered into after the parties' HAP renewal contracts ended.

13. Assuming Englewood seeks damages in this case for its alleged inability to make payments towards a HUD-insured mortgage, whether Englewood may obtain such damages in this case when Englewood's application for a mortgage indicated that Englewood would rely upon no HAP contract payments with which to repay the mortgage.

14. Assuming Englewood's former or current general partners or owners seek damages in this case for collateral business opportunities allegedly lost as a result of HUD's issuance of internal program participant "flags," whether the Court possesses jurisdiction to entertain such claims.

15. Assuming Englewood's former or current general partners or owners seek damages in this case for collateral business opportunities allegedly lost as a result of HUD's issuance of internal program participant "flags," whether such damages are recoverable in this case when Englewood failed to plead such damages in its complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/BRIAN M. SIMKIN
BRIAN M. SIMKIN
Assistant Director

/s/Peter V. Baugher
PETER V. BAUGHER
Schopf & Weiss LLP
312 West Randolph Street, Suite 300
Chicago, IL 60606-1720
Tel: (312) 701-9315
Fax: (312) 701-9335

Attorneys for Plaintiff

February 16, 2006

/s/PAUL R. WELLONS
PAUL R. WELLONS
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1001 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
Tel: (202) 616-8253
Fax: (202) 307-0972

Attorneys for Defendant

**CERTIFICATE OF FILING**

I hereby certify that on February 16, 2006, a copy of the foregoing **"JOINT STIPULATIONS REGARDING ISSUES"** was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ PAUL R. WELLONS