RECEIVED

OCT 29 2001

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ENGLEWOOD TERRACE LIMITED PARTNERSHIP, a Michigan limited partnership,

Plaintiff,

v.

UNITED STATES OF AMERICA, MEL MARTINEZ, Secretary of the United States Department of Housing and Urban Development, and CHAC, INC., an Illinois corporation,

Defendants.

Case No. 01C 8285

JUDGE CASTILLO

MAGISTRATE JUDGE SCHENKIER

## COMPLAINT

Plaintiff, Englewood Terrace Limited Partnership, by its attorneys, for its Complaint against Defendants, United States of America, Mel Martinez, Secretary of the United States Department of Housing and Urban Development, and CHAC, Inc., states as follows:

### Introduction

1. Plaintiff in this action is the owner and operator of South Pointe Towers Apartments ("South Pointe"), a low income multifamily housing project with 303 apartment units located at 6425 South Lowe, Chicago, Illinois. The involvement of the United States Department of Housing and Urban Development ("HUD") is limited to providing subsidies to the Plaintiff for the low income residents of South Pointe pursuant to Section 8 of the

National Housing Act, 42 U.S.C. § 1437f. Section 8 has two forms of subsidizing housing for low income households, by which HUD pays the difference between 30% of the household's income and the unit's rental cost. The first is project-based contracts that provide direct subsidies to specific properties such as South Pointe. The other form is a tenant-based program in which households are provided vouchers to be used in arranging their own housing on the open market. Plaintiff has been operating under a project-based contract, also known as a Housing Assistance Payment or HAP contract since 1992.

2. HUD has demanded that Plaintiff obtain both new ownership and property management for South Pointe and new financing so that repairs and improvements can be made at South Pointe.

3. Plaintiff has arranged for the new ownership and property management and the required financing with HUD's encouragement. In August 2001, the proposed new owner and manager submitted a detailed plan to extensively renovate and repair South Pointe, conditioned on the continuation of project-based Section 8 assistance.

4. Despite these actions, HUD and its Section 8 housing program agent in Chicago, CHAC, Inc. ("CHAC"), have begun issuing Section 8 vouchers to South Pointe residents and threaten to continue doing so. As HUD's Chicago Multifamily Housing Director has admitted, "once the housing authority issues vouchers, the [project-based] Section 8 contract

dies." Although HUD recognizes that the proposed plan to renovate South Pointe is preferable to vouchering, it will not stop the vouchering process.

5. South Pointe residents, not having been informed by HUD of the planned improvements at the complex, are likely to leave South Pointe and utilize their vouchers elsewhere -- a result that would financially cripple Englewood and prevent realization of the planned repairs and improvements.

6. Plaintiff's project-based Section 8 contract with HUD cannot be terminated by HUD until HUD provides formal notice of termination and Plaintiff has been provided with an opportunity to cure any alleged defects. No such notice or cure period has been provided and these requirements will ultimately be rendered meaningless if HUD and CHAC continue issuing Section 8 vouchers.

7. Plaintiff's project-based Section 8 contract with HUD also cannot be terminated without abrogating the Use Agreement it entered into with Plaintiff in 1992. Under this agreement, Plaintiff is required to make available 292 of the 303 apartments to Very Low Income residents (persons or families with income at or below 50% of median income in Chicago) and HUD is required to provide them with Section 8 assistance at South Pointe.

8. If vouchers continue to be issued, the revitalization and repair of South Pointe will be impossible and will cause irreparable injury to Plaintiff, the residents and the surrounding community. Plaintiff seeks a declaration that it has not received the required notice and opportunity to cure, and that

the HAP contract may not be terminated and that vouchers may not be issued.

## Parties

9. Plaintiff, Englewood Terrace Limited Partnership ("Englewood"), a limited partnership organized and existing pursuant to the laws of the State of Michigan, is in the business of owning and operating South Pointe, a low income multifamily housing project located at 6425 South Lowe, Chicago, Illinois, pursuant to a Housing Assistance Payments Contract under Section 8 of the National Housing Act, 42 U.S.C. § 1437f.

10. Defendants, the United States of America ("United States") and Mel Martinez, Secretary of the United States Department of Housing and Urban Development (the "Secretary") are named as parties pursuant to the waiver of sovereign immunity contained in 5 U.S.C. § 702.

11. Defendant, CHAC, Inc. ("CHAC"), is a corporation organized and existing under the laws of the State of Illinois. CHAC runs the Section 8 program for the City of Chicago pursuant to agreements entered into with the United States Department of Housing and Urban Development ("HUD").

## Jurisdiction and Venue

12. This action is brought for violations by HUD and the Secretary of the National Housing Act, 42 U.S.C. § 1437f, *et seq.*, and regulations promulgated thereunder. Based on the federal questions concerning these violations, jurisdiction exists in this Court pursuant to 28 U.S.C. § 1331.

13. Sovereign immunity has been waived for this action against the United States and the Secretary under 42 U.S.C. § 1404a and Section 10 of the Administrative Procedures Act, 5 U.S.C. § 702.

14. Venue in this district is proper for the action against the United States and the Secretary pursuant to 28 U.S.C. § 1391(e)(2) because a substantial part of the events giving rise to the claim occurred in the district and the property that is the subject of the action is situated in the district. Venue in this district is proper for the action against CHAC pursuant to 28 U.S.C. § 1391(b) because CHAC resides in the district and a substantial part of the events giving rise to the claim occurred in the district and the property that is the subject of the action is situated in the district.

**Facts Common to Each Cause of Action**

15. South Pointe is financed pursuant to a mortgage loan from Community Investment Corporation ("CIC"), a not-for-profit corporation. HUD's involvement is limited to providing subsidies to Englewood for the low income residents of South Pointe pursuant to Section 8. In April 1992, Englewood entered into a Housing Assistance Payments contract ("HAP Contract") with HUD. This contract has been renewed at various times, with the most recent renewal covering the period from October 1, 2001 through December 31, 2001. A true and correct copy of the current renewed HAP Contract is attached hereto and incorporated herein as Exhibit A.

16. Englewood and the Secretary also entered into a Use Agreement on April 14, 1992 (a copy of which is attached hereto and incorporated herein as Exhibit B). Under this agreement, Englewood is required to provide 292 apartments to Very Low Income families (persons or families with income at or below 50% of median income in Chicago) for at least 50 years. Under the Use Agreement, HUD is required to provide these "current *and future*" Very Low Income tenants at South Pointe with Section 8 assistance (Use Agreement at ¶ 4(c)).

17. Prior to the recent renewal of the HAP Contract, HUD stated that Englewood needed to take immediate action to make repairs and improvements at South Pointe and to change project ownership and property management.

18. In early July 2001, Englewood informed HUD that it had reached a preliminary agreement for new ownership and property management of South Pointe by DSSA Management, Inc. ("DSSA").

19. In August 2001, Englewood and DSSA submitted a detailed and extensive workout program to HUD that described an improvement program costing $6.5 million (see August 6, 2001 DSSA Plan attached hereto and incorporated herein as Exhibit C). The Plan is specifically conditioned on continuation of the HAP Contract. The Plan notes the significant part renovation of South Pointe will play in the rehabilitation of the neighborhood:

> The Antioch Church has upgraded 63rd Street from the Dan Ryan to the elevated through its various townhouse and

apartment programs. The Kennedy King Community College is planned to be relocated to 63rd and Halsted. The City has committed some significant resources to the areas surrounding 63rd and Halsted. Were South Pointe to be successfully rehabilitated as planned, and its efforts connected to the primary school across the street and the adult education programs at Englewood High Scholl and Kennedy King College, it could act as a powerful community development engine that could help the efforts of the apartment development to its south and the CHA senior building to the southwest of the property. The HUD Neighborhood Networks program would be designed to connect residents of South Pointe to all of the educational, training and health support systems available in the area between the Dan Ryan and Halsted Streets, between 59th and 67th Streets.

20. Despite these actions by Englewood and DSSA and the subsequent renewal of the HAP contract, CHAC, at the direction of HUD, began processing Section 8 vouchers at South Pointe in late September or early October 2001. HUD has also informally indicated that it will not renew the HAP Contract and that, in lieu thereof, all Section 8 benefits to South Pointe residents will be transferred to vouchers.

21. As noted above, Section 8 has two forms of subsidizing housing for low income families by which it pays the difference between 30% of the household's income and the unit's rental cost. The first is project-based contracts, which provide subsidies for specific properties such as South Pointe. The other form is a tenant-based program in which households are provided vouchers to be used in arranging their own housing on the open market.

22. Edward Hinsberger, HUD's Chicago Multifamily Housing Director, noted in an e-mail to Englewood and DSSA that "once the housing authority issues vouchers, the [project-based] Sec[tion] 8 contract dies."

23. If HUD and CHAC are allowed to kill the HAP Contract applicable to South Pointe by issuing vouchers, Englewood will be denied its statutory right to first receive formal notice of termination and a period to cure the allege defects.

24. In 1997, Congress enacted new legislation, the Multifamily Assisted Housing Reform and Affordability Act of 1997 ("MAHRA"), Title V of Pub. L. 105-65, 111 Stat. 1385 (Oct. 27, 1997), addressing expiring project-based Section 8 contracts such as the HAP Contract relating to South Pointe. Section 524 of MAHRA provides that HAP contracts must be renewed unless certain specified violations exist. Sections 516 and 524 of MAHRA and the regulations and handbook implementing the Act specify the violations upon which HUD may refuse to renew a HAP contract (a true and correct copy of Chapter 13 of the *Section 8 Renewal Handbook* issued by HUD's Office of Multifamily Housing is attached hereto and incorporated herein as Exhibit D).

25. If HUD determines that a HAP contract should not be renewed, it is required to provide the owner with a Notice giving the reason(s) for rejection. Beginning in the spring of 2001, HUD has demanded that Englewood find a new owner/manager for South Pointe and that it make the

required repairs at the property. While HUD made several threats that it "*may* seek any and all available remedies" if various actions were not taken by Englewood, it failed to provide notice of termination that would trigger Englewood's procedural rights to challenge the determination and protect its interests. Instead, HUD continued to accept Englewood's diligent efforts to comply with HUD's demands, including its arrangement for a new owner/manager and for the refinancing required to pay for the repairs and improvements outlined in the August 6 Plan. As a result of these actions, HUD renewed Englewood's HAP Contract for 90 days.

26. Since issuance of the Plan in August 2001 and the renewal of the HAP Contract in September 2001, HUD has not provided Englewood with a notice giving the reason(s) for rejecting future renewals of the HAP Contract and preventing the renovation plan from being effectuated. At no time did HUD advise Englewood that it must complete the change of ownership by a certain date. Without knowledge of any such deadline, Englewood proceeded to meet HUD's demands with the reasonable expectation that HUD would renew the HAP Contract pursuant to the requirements of Section 8. Furthermore, HUD understands that such renewal is necessary for the change in ownership to occur and the renovation plan to be implemented.

27. Because HUD has not provided the required formal notice to Englewood concerning defects or rejection of the Plan, Englewood has not

been able to invoke numerous procedural rights triggered by such a notice. Under MAHRA, the owner is allowed 30 calendar days from receipt of adequate and proper notice to provide written objections or cure the problems identified. If the owner submits written objections or asserts that the problems identified have been cured, HUD must consider the matter, review the owner's actions, and send the owner a final decision affirming, modifying or reversing the rejection and setting forth the rationale for the final decision. *See* Exhibit D at pp. 2-3 (Section 8 Handbook).

28. Further procedural rights are provided under MAHRA. Within 10 days of receiving the final decision, the owner may submit a written appeal to HUD contesting the decision and requesting a conference to discuss the issues with the Hub that has jurisdiction over the project; a Hub representative is required to confer with the owner within 10 days after such a request. The owner is allowed to provide additional information to HUD concerning the dispute. Within 20 days after the conference (or 20 days after any agreed-upon extension of time for submission of additional materials), the Hub must advise the owner in writing of the decision to reverse, modify or affirm the original decision. *See* Exhibit D at p. 3 (Section 8 Handbook).

29. Englewood has been denied all of these procedural rights due to HUD's failure to provide proper notice of the termination or rejection of its HAP Contract. At the same time, HUD had commenced issuance of Section

8 vouchers to South Pointe residents, a move HUD acknowledges will kill efforts to repair and improve South Pointe.

30. If HUD fails to renew the HAP Contract, it will also be abrogating the Use Agreement it entered into with Plaintiff in 1992. Under this agreement, HUD is required to provide 292 current and future Very Low Income tenants with Section 8 assistance at South Pointe.

31. In meetings with Englewood and DSSA, HUD has recognized that termination of project-based Section 8 support for South Pointe is not in the best interests of the residents or the surrounding community. The likely result of HUD's intended course of action is foreclosure and abandonment of the property.

**COUNT I**
**(Declaratory Judgment)**

32. Englewood realleges and incorporates by reference herein paragraphs 1 through 31 as paragraph 32 of this Count I.

33. Section 10 of the Administrative Procedure Act, 5 U.S.C. § 702, provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

34. An actual controversy exists regarding (a) HUD's threatened non-renewal of Englewood's HAP Contract without complying with the procedural requirements of MAHRA and (b) HUD's issuance of Section 8

vouchers to South Pointe residents, the effect of which will be to deny Englewood the ability to exercise its procedural rights.

WHEREFORE, Englewood requests the following relief:

(a) a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 declaring that defendants may not fail to renew Englewood's HAP Contract without complying with the procedural requirements of MAHRA.

(b) a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 declaring unlawful the issuance of Section 8 vouchers by HUD and CHAC to South Pointe residents pending compliance with the procedural requirements of MAHRA.

(c) an award of Englewood's reasonable attorney's fees and costs associated with this dispute and litigation; and

(d) such other and further relief as this Court deems just and equitable.

**COUNT II**
**(Mandamus)**

35. Englewood realleges and incorporates by reference herein paragraphs 1 through 34 as paragraph 35 of this Count II.

36. Pursuant to 28 U.S.C. § 1361, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

37. HUD owes a duty to Englewood to comply with the procedural requirements of MAHRA prior to the termination or effective termination of the HAP Contract.

38. HUD and its agent, CHAC, have breached that duty by threatening non-renewal of Englewood's HAP Contract without complying with the procedural requirements of MAHRA and issuing Section 8 vouchers to South Pointe residents, the effect of which will be to deny Englewood the ability to exercise its procedural rights.

WHEREFORE, Englewood requests the following relief:

(a) the issuance of a writ of mandamus pursuant to 28 U.S.C. § 1361 requiring that HUD comply with the procedural requirements of MAHRA before Englewood's HAP Contract is not renewed.

(b) the issuance of a writ of mandamus pursuant to 28 U.S.C. § 1361 requiring that HUD and CHAC cease issuing Section 8 vouchers to South Pointe residents pending compliance with the procedural requirements of MAHRA.

(c) an award of Englewood's reasonable attorney's fees and costs associated with this dispute and litigation; and

(d) such other and further relief as this Court deems just and equitable.

Date: October 29, 2001

ENGLEWOOD TERRACE
LIMITED PARTNERSHIP

By: _______________
One of its attorneys

James R. Figliulo
Peter A. Silverman
James H. Bowhay
FIGLIULO & SILVERMAN, P.C.
10 South La Salle Street
Suite 3600
Chicago, Illinois 60603
Ph: 312-251-4600
Fax: 312-251-4610