IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
JUN 0 6 2002

ENGLEWOOD TERRACE LIMITED PARTNERSHIP, a Michigan limited partnership,

Plaintiff,

v.

UNITED STATES OF AMERICA, and MEL MARTINEZ, Secretary of the United States Department of Housing and Urban Development,

Defendants.

Case No. 02C 4033

JUDGE GRADY

MAGISTRATE JUDGE NOLAN

FILED-ED5
02 JUN -5 PM 3:43
CLERK
U.S. DISTRICT COURT

## COMPLAINT

Plaintiff, Englewood Terrace Limited Partnership, by its attorneys, for its Complaint against Defendants, United States of America and Mel Martinez, Secretary of the United States Department of Housing and Urban Development, states as follows:

### Overview

1. An affordable housing nightmare will occur on July 1, 2002 unless this Court enjoins the defendants from taking actions that will displace hundreds of poor and under-privileged families, leaving many of them homeless. The United States Department of Housing and Urban Development has wrongfully decided to transition from project-based housing subsidies to tenant-based subsidies without providing proper notice, counseling or education to residents, which has scared and confused residents and unnecessarily placed them at risk of devastating upheaval.

1-1

2. Plaintiff, Englewood Terrace Limited Partnership ("Englewood") is the owner and operator of South Pointe Towers Apartments ("South Pointe"), a 303 unit low income multifamily housing project with 40 years remaining on a 50 year use restriction for "Very Low Income" families. It is located in Englewood at 6425 South Lowe, Chicago, Illinois. The United States Department of Housing and Urban Development ("HUD") provides subsidies to the Plaintiff for the benefit of the Very Low Income families of South Pointe pursuant to Section 8 of the National Housing Act, 42 U.S.C. § 1437f.

3. South Pointe has been operating under a project-based housing subsidy contract, also known as Housing Assistance Payment or HAP contract, since 1992. With it, HUD pays the difference between 30% of the household's income and the unit's fair market rent.

4. In November 2001, HUD terminated the HAP contract effective June 30, 2002 because South Pointe allegedly did not comply with HUD's physical conditions standards. Englewood has filed this action to enjoin the termination because HUD has failed to provide Englewood with the procedural protections mandated by federal law, including notice of default and the opportunity to cure. Englewood also seeks damages arising from the wrongful termination.

5. In November 2001, there were 20 vacant units at South Pointe. Today, six months later, there are 70 vacant units. Only 50 residents have used vouchers issued to them at HUD's direction to move away during the past six months. But, **there are still 250 residents with 500 children living at South Pointe**. Their overwhelming and virtually universal fears and concerns caused by the impending termination of the HAP

contract are evidenced by a petition to extend the HAP contract, give them time, resources and access to meaningful choices, **signed by 125 residents**. A true and correct copy of the petition is attached hereto as Exhibit 1.

6. Effective June 30, 2002, project-based housing subsidy assistance will end at South Pointe. The residents have three options. They can pay the unsubsidized monthly rate (which no resident can afford). They can try to find voucher housing in a crowded and competitive market place. Or they can try to meet the deadline and process their voucher to continue to live at South Pointe. The overwhelming response of the residents is that they need help and time. The residents are in a trick-box and don't know what to do. For example (and there are about 250 of them): Delsalon Spencer in Unit 1 says that she may need to be separated from her children if something doesn't change; C. Smith in unit 803 is ill and so is her daughter, they fear going backwards with their lives; Myeshia Cobley in unit 1101 is having great difficulty finding another place to live because she cannot afford a security deposit; and, Shanneta Short in unit 1212 doesn't know what to because it is so hard to find an apartment. The residents' letters are attached hereto as exhibit 2.

7. There is an alternative, if project-based assistance continues, South Pointe will be renovated by new management under a loan approved by HUD. For the benefit of the residents and the community, that is the only logical, reasonable and fair choice.

8. HUD sees it differently. In April 2001, HUD issued a notice of default" to Englewood, asserting that South Pointe failed to meet physical condition standards. Under federal law and the terms of the HAP contract, HUD was obligated to provide

Englewood with specific notice of default and Englewood was entitled to cure any defaults. Englewood cured the deficiencies that were identified by HUD.

9. Notwithstanding that Englewood cured any known defaults at South Pointe, HUD decided in June 2001, at the latest, to terminate the HAP contract and it began the process of issuing tenant based assistance vouchers to residents. As of September 2001, HUD advised Englewood that the HAP contract was "dead" and it began issuing vouchers to residents.

10. Englewood filed a complaint in the United States District Court for the Northern District of Illinois to enjoin the termination because of a denial of notice and opportunity to cure, in order to protect its investment as well as residents who would be placed at significant risk if the HAP contract was terminated. That action is captioned Englewood Terrace Limited Partnership v. United States of America, Case No. 01 C 8285, assigned to Judge Castillo.

11. On November 15, 2001, Judge Castillo issued an Order denying Englewood's motion for a preliminary injunction because, among other things, the HAP contract had not been terminated and "if Defendants terminate the HAP contract, Englewood will have thirty days within which to dispute this decision and cure any deficiencies, as well as to exhaust any subsequent appeal through the administrative process." Judge Castillo's Memorandum Opinion is attached hereto as Exhibit 3.

12. Judge Castillo strongly suggested that the parties openly communicate with residents about their options going forward (Exhibit 3, at 5). Instead, on November 30, 2001, without any consultation with residents or updated physical inspection of the property, HUD terminated Englewood's HAP contract effective June 30, 2002 on the

grounds that Englewood allegedly failed to maintain the premises according to HUD's physical conditions standards.

13. Englewood spent over five months exhausting its administrative remedies through an appeal process within HUD. On May 2, 2002, HUD rejected Englewood's last administrative appeal and deemed its termination of the HAP contract "final."

14. The termination of the HAP contract was not "final" as Englewood has been denied procedural protections afforded under the Multifamily Assisted Housing Reform and Affordability Act of 1997 (MAHRA) and regulations promulgated thereunder, including its right to notice of default and opportunity to cure.

15. In terminating the HAP contract, HUD claimed that an inspection of South Pointe in March 2001 revealed physical defects, which justified the termination. Although HUD listed specific physical defects in March 2001, Englewood submitted a comprehensive response within 30 days reflecting identified violations had been cured or were in the process of being cured. Englewood further certified at that time that all health and safety violations had been cured.

16. Since the March 2001 inspection, HUD has not provided notice to Englewood of any other physical defects or an opportunity to cure any other such physical defects.

17. The effect of the wrongful termination of the HAP contract on Englewood – the loss of past program support and future subsidy income - will push South Pointe into foreclosure, resulting in the loss of a scarce resource in the Chicago area—affordable subsidized housing for Very Low Income families.

18. HUD has approved a significant loan to South Pointe to permit it to become a state-of-the-art facility, under the planning management and ownership of Don

Samuelson, a local lawyer, developer and academic who has pioneered in the development of service enriched government housing, with HUD and the CHA. He has FHA insurance. He has a loan commitment. However, if the HAP contract does not continue, Englewood will not be able to operate South Pointe and the property will be lost through the foreclosure which has already been started.

19. The effect of the wrongful termination of the HAP contract on South Pointe residents and the redeveloping Englewood community will be devastating. There are 250 families with children living at South Pointe. The typical South Pointe family consists of a single parent female in her early to mid-20s, with 2-4 children, without a job, a high school degree or work experience. There are 6 seniors and 6 adult males living at South Pointe. The rest are young women and children. South Pointe is a community of young families at risk.

20. While most of the residents at South Pointe have been given housing vouchers, they have not been given counselling, transportation, child care, financial assistance or adequate training in the ways to exercise vouchers. The vouchers are only housing "options." The residents still have to find and secure the housing in an extremely tight affordable market place.

21. These young South Pointe families have not fully informed of the urgency or implications of the pending loss of their HAP housing subsidy and have been placed by HUD in a perilous situation. South Pointe seeks an Order from this Court enjoining HUD from terminating its HAP contract unless and until it provides all affected partes with fair and proper notice and the opportunity to cure any default under the current HAP contract.

Absent such an Order, South Pointe, its tenants and the community will be irreparably harmed.

**Parties**

22. Englewood is a limited partnership organized and existing pursuant to the laws of the State of Michigan. It is in the business of owning and operating South Pointe, a very low income multifamily housing project located at 6425 South Lowe, Chicago, Illinois, pursuant to a Housing Assistance Payments Contract under Section 8 of the National Housing Act, 42 U.S.C. § 1437f.

23. Defendants, the United States of America ("United States") and Mel Martinez, Secretary of the United States Department of Housing and Urban Development (the "Secretary") are named as parties pursuant to the waiver of sovereign immunity contained in 5 U.S.C. § 702.

**Jurisdiction and Venue**

24. This action is brought for violations by HUD and the Secretary of the National Housing Act, 42 U.S.C. § 1437f, *et seq.*, and regulations promulgated thereunder. Based on the federal questions concerning these violations, jurisdiction exists in this Court pursuant to 28 U.S.C. § 1331.

25. Sovereign immunity has been waived for this action against the United States and the Secretary under 42 U.S.C. § 1404a and Section 10 of the Administrative Procedures Act, 5 U.S.C. § 702.

26. Venue in this district is proper for the action against the United States and the Secretary pursuant to 28 U.S.C. § 1391(e)(2) because a substantial part of the events giving rise to the claim occurred in the district and the property that is the subject of the

action is situated in the district. Venue in this district is proper for the action against CHAC pursuant to 28 U.S.C. § 1391(b) because CHAC resides in the district and a substantial part of the events giving rise to the claim occurred in the district and the property that is the subject of the action is situated in the district.

**The HAP Contract and Use Agreement**

27. In April 1992, Englewood entered into a HAP Contract with HUD. This contract has been renewed continually since then, with the most recent renewal covering the period from December 31, 2001 to June 30, 2002. A true and correct copy of the HAP Contract and the current renewed HAP Contract are attached hereto and incorporated herein as Exhibits 4 and 5, respectively.

28. Englewood and the Secretary also entered into a Use Agreement on April 14, 1992 (a copy of which is attached and incorporated herein as Exhibit 6). Under this agreement, Englewood is required for 50 years to provide 292 apartments to Very Low Income families (persons or families with income at or below 50% of median income in Chicago). Under the Use Agreement, HUD is required to provide these "current *and future*" Very Low Income tenants at South Pointe with Section 8 assistance (Use Agreement at ¶ 4(c)).

**Alleged Default Under HAP Contract**

29. On November 30, 2001, HUD, after receiving the Order of Judge Costillo, simply renewed its earlier Abatement and Termination of the HAP contract ("Notice of Termination"). A true and correct copy of the Notice of Termination is attached hereto and incorporated herein as Exhibit 7.

30. The basis stated for the termination was HUD's April 9, 2001 Notice of Default and the non-specific statement that South Pointe failed to meet applicable physical conditions standards.

31. Physical condition standards for HUD housing require that the housing be "decent, safe, sanitary and in good repair." 24 CFR § 5.703. Housing is decent, safe and sanitary if it meets the physical condition requirements of 24 CFR part 5, subpart G (section 5.703). 24 CFR § 886.302. The REAC Process is HUD's vehicle for making such determinations through annual inspections.

32. On March 2, 2001 HUD conducted its annual inspection and issued a report on March 8, 2001 advising Englewood of relatively minor physical deficiencies at South Pointe, and requesting that Englewood prepare a plan of corrective action report within 30 days A true and correct copy of the inspection report is attached hereto as Exhibit 8.

33. On April 5 2001, Englewood provided HUD with a plan of corrective action. The plan of corrective action reflects that the deficiencies cited in HUD's March 8 inspection report had been cured or were in the process of being cured. A true and correct copy of the plan of corrective action is attached hereto as exhibit 9.

34. On April 8, 2001, Englewood provided HUD with certification that emergency health and safety violations had been corrected. A true and correct copy of the certification is attached hereto as exhibit 10.

35. On April 9, 2001, HUD issued its "notice of default" based on the March 2nd inspection and March 8th report. A true and correct copy of the April 9, 2001 "Notice of Default" is attached hereto as Exhibit 11.

**Termination of HAP Contract**

36. As reflected in internal HUD communications, the Chicago Office of HUD decided by June 11, 2001 to terminate the HAP contract, targeted for October 1, 2001. A true and correct copy of "Housing Choice Vouchers Calculation of BA for Enhanced Funding Increments" is attached hereto as Exhibit 12.

37. On October 1, 2001, HUD informed Englewood that it would not renew the HAP Contract and that all eligible South Pointe tenants would receive housing vouchers. A true and correct copy is attached as Exhibit 13 hereto.

38. Englewood sought a preliminary injunction against the enforcement of the termination in October of 2001. The Court denied the motion on November 15, 2001, concluding that HUD had not terminated the HAP contract and that if and when it did Englewood would be entitled to notice and an opportunity to cure.

39. On November 30, 2001, HUD issued its Notice of Abatement and Termination (Exhibit 7 hereto)

**Exhaustion of Administrative Proceedings**

40. Englewood exhausted its administrative remedies pursuant to 24 CFR § 401.651. On December 21, 2001, Plaintiff appealed the decision to the HUD office in Chicago. A true and correct copy of the appeal is attached hereto as Exhibit 15. HUD Chicago denied the appeal on February 7, 2002. A true and correct copy of the denial is attached hereto as Exhibit 16. Plaintiff appealed the decision to HUD Washington on February 13, 2002. A true and correct copy of the appeal is attached hereto as Exhibit 17. An appeal conference was held on April 16, 2002 in Washington. On May 2, 2002, HUD's Deputy

Director of Asset Management affirmed the prior decisions of the Chicago HUD office. A true and correct copy of the affirmation is attached hereto as Exhibit 18.

**Damage to Englewood, the residents and the community**

41. If the HAP contract is not continued, at least until South Pointe residents wanting to stay can process their applications through CHAC or other voucher holders have time to apply for housing at South Pointe, the development will not have funds to operate, and this affordable housing resource will be lost through foreclosure. HUD has summarily rejected compromise proposals by Englewood to extend the HAP contract through the summer to give residents evidence of the improvement program, give them access to HUD program resources and help provide residents with "service coordinators" to help them receive vouchers, make informed decisions about their housing choice and help them design and implement housing strategies most appropriate to the needs of the residents and their families.

42. In addition to the termination of the HAP contract, HUD's erroneous determination that South Pointe is not "in good standing", without notice or an opportunity to cure, has resulted in the denial of normal HUD financial support for: (a). the extraordinary utility costs of the winter of 2000-2001: (b) the "special claims" for vacancy, rent loss and tenant damage; and, (c). the first rental increase since 1998 that was approved by HUD in September of 2001. These items total more than $430,000.

43. The already precarious financial condition of the property was compounded this spring when HUD failed to make the April and May HAP payments to South Pointe in a timely manner because of problems with HUD's computerized payment methods. This delay and the absence of the funds described in Paragraph 42 forced Englewood to

default on its first mortgage leading to the beginning of foreclosure proceedings by the local community investment corporation.

44. HUD's decision to terminate this HAP contract will result in significant loss to South Pointe residents and to the Englewood community.

**COUNT I**
**(Declaratory Judgment)**

45. Englewood realleges and incorporates by reference herein paragraphs 1 through 44 as paragraph 45 of this Count I.

46. Section 524 of MAHRA provides that HAP contracts must be renewed unless certain specified violations exist. Sections 516 and 524 of MAHRA and the regulations and handbook implementing the Act specify the violations upon which HUD may refuse to renew a HAP contract (a true and correct copy of Chapter 13 of the *Section 8 Renewal Handbook* issued by HUD's Office of Multifamily Housing is attached and incorporated herein as Exhibit 19.

47. If HUD determines that a HAP contract should not be renewed, it is required to provide the owner with a Notice giving the reason(s) for rejection and opportunity to cure.

48. All of the operational problems at South Pointe during 2001 and 2002 relate to the absence of adequate financial resources. South Pointe operated for five years without a rental increase. It ran operating deficits of $100,000 and $200,000. Financial resources were also denied to South Pointe in 2001 because of HUD's position that South Pointe was "not in good standing." This position had to be premised on the physical deficiencies described in the March 8, 2001 REAC report. The physical deficiencies were minor and correctable. In fact, they were corrected within the appropriate time limit.

49. Section 10 of the Administrative Procedure Act. 5 U.S.C. § 702. provides that "[a] person suffering legal wrong because of agency action. or adversely affected or aggrieved by agency action within the meaning of a relevant statute. is entitled to judicial review thereof."

50. An actual controversy exists regarding whether Englewood was provided with requisite notice and an opportunity to cure prior to the termination of the HAP contract

WHEREFORE. Englewood requests the following relief:

(a) a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 declaring that defendants have failed to comply with MAHRA and may not terminate Englewood's HAP Contract.

(b) a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 declaring unlawful the determination that South Pointe is "not in good standing" thereby denying to it the financial resources that are necessary to provide resident counseling, moving, the preparation of temporary housing at South Pointe pending rehabilitation and other financial needs required for residents and the proper operation of South Pointe.

(c) an order enjoining HUD from taking any action to terminate the HAP contract and compelling HUD to renew the HAP contract.

(d) an award to Englewood of damages related to lost program resources arising from HUD's unlawful determination that South Pointe is "not in good standing."

(e) an award of Englewood's reasonable attorney's fees and costs associated with this dispute and litigation.

(f) such other and further relief as this Court deems just and equitable.

## COUNT II
(Mandamus)

51. Englewood realleges and incorporates by reference herein paragraphs 1 through 50 as paragraph 51 of this Count II.

52. Pursuant to 28 U.S.C. § 1361, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

53. HUD owes a duty to Englewood to comply with the procedural requirements of MAHRA prior to the effective termination of the HAP Contract. HUD has breached that duty by terminating the HAP Contract without complying with the procedural requirements of MAHRA and issuing Section 8 vouchers to South Pointe residents, the effect of which will be to deny Englewood the ability to exercise its procedural rights.

WHEREFORE, Englewood requests the following relief:

(a) the issuance of a writ of mandamus pursuant to 28 U.S.C. § 1361 requiring that HUD comply with the procedural requirements of MAHRA before Englewood's HAP Contract is not renewed.

(b) the issuance of a writ of mandamus pursuant to 28 U.S.C. § 1361 requiring that HUD provide residents with such assistance and support as may be required to enable residents to understand their current housing options and to act on them in ways that are beneficial to the leaseholders and their families.

(c) an award of Englewood's reasonable attorney's fees and costs associated with this dispute and litigation.

(d) such other and further relief as this Court deems just and equitable.

Date: June 5, 2002

ENGLEWOOD TERRACE
LIMITED PARTNERSHIP

By: ______________________
One of its attorneys

Peter A. Silverman
James H. Bowhay
FIGLIULO & SILVERMAN, P.C.
10 South La Salle Street
Suite 3600
Chicago, Illinois 60603
Ph: 312-251-4600
Fax: 312-251-4610