**Englewood v. United States**
**03-2209**
**Joint Appendix**

# JA 029

Back To REMS

# Property Referral

**800040489. South Pointe Towers**

**Primary FHA:** 07135696 **Property Active:** Yes **Watch List:** No
**Troubled Status:** Troubled **DEC Status:** Active

Property Referral

| | | | |
|---|---|---|---|
| **Referral ID** | 1 | **Referral Date:** | 9-13-1998 |
| **DEC Status:** | Closed/Returned to Hub | **DEC Status Effective/Change Date:** | 2-16-2000 |
| **Referral Source:** | HUB | | |
| **HUB Office:** | Chicago | **Servicing Site:** | Chicago |
| **Project Manager:** | GWENDOLYN THOMAS | **Satellite Office Assigned:** | Chicago |
| **DEC Analyst:** | | **Referral Type:** | Physical |
| **DEC Attorney:** | | **Referral Priority:** | Priority |
| **Referral Closed Date:** | 2-16-2000 | **Resolution of Closed Referral:** | |

Type of Families Protected:

| Type of Families | Number of Families | Date Updated |
|---|---|---|

DEC Participants

**Community Builder:**

**Sec Rep:**

**Executive Summary:**

**Problem Statement:**

DEC Task Management

DEC Action Plan

High-Level Tracking Date List

High-Level Tracking Indicators List

Page 779

Recovered Funds List

D 0993

**Englewood v. United States**
**03-2209**
**Joint Appendix**

# JA 030

H

# DRAFT TEAM REPORT

PROJECT NAME: South Pointe Towers a.k.a., Englewood Terrace Apts.
LOCATION: Chicago, Illinois
REMS Number: 800040489
FHA Number: N/A
HAP Contract Number: IL06-E000-034

## Ownership/Management History:

South Pointe Towers a.k.a. Englewood Apartments, is an uninsured property located at 6425 S. Lowe Avenue in the City of Chicago, State of Illinois 60621. The partnership for this property was formed as a limited partnership under the laws of the State of Michigan on September 01, 1989 for the purpose of acquiring an interest in real property located in Chicago, Illinois and operating as apartment complex under the Section 8 of the National Housing Act. Business activity of the project began ion 04/01/90. The project consists of 303 units and currently operates under its new name South Pointe Towers. When PM One purchased the property in 1990 it was a distressed property, with numerous building code violations and apparently ridden with gang, drug and criminal activity. Knowing the needs of the building PM One worked with management and owners to complete a moderate rehabilitation of the property and improve the resident profile. The cost for the partnership to rehabilitate the property in April 1990 was $8,303,937. The rehab work was finished in May 1993 all 303 units had been remodeled and all building code violations cured and was finally 100% occupied. $5,000,000 of the funds for the rehabilitation cost were obtained through an adjustable rate mortgage loan from the Community Investment Corporation of Chicago. Another $5,000,000 was received from contribution of capital from Chevron USA Inc. They are 99% limited partners. This will be done in eight installments of $625,000. As of June 1999 seven installments will have been made totaling $4,375,000 The last installment will be given in June 2000.

The property is eligible for low income credits totaling $872,693 per year under Section 42 of the Internal Revenue Code. The credit period is ten years that began in 1993 and ends in 2003. Income and loss of income are allocated between the general partner and the limited partner (1% to the general partner and 99% to the limited partners). AFS is not required for this property because it is non-insured. Building types consist of townhouse and high-rise/elevator.

General Partner owns maintenance and management company that provides services for the property. General Partner is PM One, Ltd. President Robert Pendergast. He is also one of the limited partners. Chevron USA is the other limited partner. There is a total of 303 units.

1 bedrooms - 60

2 bedrooms - 157

3 bedrooms - 86

The initial original contract term of the Section 8 HAP was 09/22/82 originally it was for a 15 year term, which expired 10/21/97. It was renewed three times in increments of one year. Maximum Annual Contract Commitment is $2,394,000..

This project was previously foreclosed on in 1981. In 1982 Englewood Terrace Apartments a limited partnership secured this property under a purchase money mortgage in a property disposition sale. The effective date of their contract was September 22, 1982, as of this date the contract authority was $1,244,448.00 and budget authority was $18,666,720.00. At this time, purchase, use, and contract management plans, were put in place at the time of purchase by Englewood Terrace Apartments.

Owner and management agent signed a Certification as to the Purchasing Practices and Reasonableness of Expenses but in reviewing high cost items recorded for maintenance and administrative expense per unit month cost is escalated. The certification was signed January 16, 1996. In recent years there were several tenant complaints as to the management agent secured for this project. The building is a 100% Section 8 assisted property. The building also received Special Rent increase for purchase of crime prevention items and services. Special claims were submitted to HUD for payment. Several of the claims were rejected by the HUB Project manager for not being legitimate claims. With relentless efforts by the owners, management and others the pace of the property destruction is moving faster than our attempts to control and improve them. Daily schedules are roller coasted depending on what happens in the evening. In October 1993 this project was awarded a Drug Elimination Grant from HUD for Drug Elimination, Prevention and Education. This area still has a prevalent problem with vandalism, crime and drugs. Move outs occur on a regular basis. There is also a very serious problem with rodents (rats) in the areas that get into the building because the property is in need of serious external major repairs.

**Physical Maintenance:**

The physical conditions of South Pointe Towers a.k.a. Englewood Terrace Apartments are in unsatisfactory condition. Between 1994 and the present time many inspections were completed. The results are cited as:

1) 1994 - Inspections completed by Thomas Hickey & Associates.

Many of the units did not pass HQS inspection. Items identified as in need of major repair work were: a) sign of gang activity (graffiti), b) trashed stairwells, c) roof in need of repair, d) extermination needed, e) bathrooms - plumbing problems, f) windows, g) doors, h) door locks.. Rating unsatisfactory

1) 1995 - Inspection revealed the property was in need of major repairs. Exterior areas were not inspected. Interior - Unsatisfactory

Property Improvements proposed: a) replace roof curb, b) handrails, c) fire hoses in cabinets, d)replace deadbolts, e)repair trash chutes, f) extermination, and g) repair boiler.

2) 1996 - Unit Inspections conducted by management many apartments left abandoned and tenants moved out without notice or because of dissatisfaction of property up keep. A No trespassing order was done through the Cook County Court System.

3) 1997 - Units Re-Inspected by Leroy Fishleigh (HUD staff) Overall ratinn Below Average (Physical Condition).

Maintenance Policies and Practices - Below Average a) Floors and hallways were found to be dirty, littered and stairwells were in same condition of disarray. b) air handler needs repair, c) boiler room needs cleaning/maintenance d) repair fire extinguisher cases and install missing extinguishers.

The owner/management agent prepared a MIO Plan 3/97.

The property is in need of an 100% comprehensive HQS inspection and environmental review. In addition a revised complete MIO Plan should be completed after inspection addressing all deficiencies/repairs needed.

## Financial Management

The financial condition of South Pointe Towers is poor. The limited partner does not have the money needed for all the necessary major repairs. It is possible that the general partners do, along with one of the limited partners Chevron USA. In 1994 the project received a Special Rent Increase Adjustment for the purpose of securing tax consulting services. In 1993 project received a Drug Elimination grant for the purpose of Drug Elimination, Prevention and Education, and to assist them in decreasing the amount of criminal activity, and gang and drug traffic in and around the property. Special Claims also submitted for 76 tenants. Nine out of 76 of the claims were denied. These claims were substantiated by the owner.

In 1995 the property's budget reflected that the expenses did not exceed the income. Most of the income received was paid out and reported as property expenses. The budget also reflects that reserve funds are low. A new security system was installed. The owner/management agent asked HUD for a Special rent increase in subsidy to cover this cost. The amount received was $52.00 per unit 303 x $52.00 = $15,756

The building in this year was 97% occupied and the security cost for the building increased.

In 1996 the property's expenses exceeded its income, at the end of the year the project had a deficit. Total of non-operating expenses for this year =$54,759.00 This is money that was disbursed for other reasons than property maintenance and administration.

In this year the property received yet another special rent increase for Crime Prevention Activities in the amount of $200,570.

Payment plans were made with delinquent tenants but the plans were not reasonable, because they were over 50% of their income.

The property has 4 (four) outstanding mortgage and/or collateral loans.

1st Mortgage $59,116 x 12 = $709,392

2nd Mortgage $4500 x 12 = $54,000

Old Kent bank check collateral $750,000

Note Due PM One due 1/1/96 $1,437,900

**Page 782**

Loan made to replace elevators CNP Trust $16,380.

Collateral came from partnerships of individuals who put up money for various loans.

The property had accumulated some CD's. They had to be cashed in, to pay for non-payment of loans to MI National Bank. The CD's were worth $190,773 and $28,287. Only the CD for $190,773 is secured by the project.

In 1997 collection service activity was made active on a number of tenants' accounts. They were deemed as not collectible. Individuals moved leaving no forwarding address or notifying the management.

An increase in tenant transfers has occured almost every month, this contributed to the large turn over of tenants moving in and out which effected the income of the property.

The property was given a rent adjustment for non-drug related crime activity. Again special claims were submitted to HUD for payment and were denied by HUD Representative Thelma Delarosa on 08/20/97.

In June 1998, the property received a rent increase of 5%, this amount totaled $2,681,268. In reviewing the budget for this project the financial position of the property is not good. Partners within the company continue to lend the project money to repair critical items. The expenses exceeded income in this year, the property was left in a deficit position.

A short term loan is payable to Capitol National Bank that is due, December 30, 1998, with interest at 7.3%. A Capital Bank CD is pledged as collateral. Face value is $33,000. Note balance is $33,000. Also a long term debt is owed to Community Investment Corporation, the monthly payments are $57,785 (principal + interest) based upon 132 (11) years that began in 1993 - 2003. The property is pledged as collateral. The mortgage note balance is $3,466,667.

A promissory note is payable to Michigan National Bank in the amount of $5,000 with the note balance being $1,010,324. The note payable by the partnership in the amount of $119,000 was paid to the P.M. Group, Inc. (the general Partner), on June 10, 1997. During 1997, the partnership incurred $9,206 in interest on this and other notes that were paid off during 1997. Notes are also payable by the Partnership to CMP Trust (a Michigan trust) owned by the spouse of a significant shareholder of the PM Group Inc., in the amount of $63,348. In addition the partnership owes the PM Group, Inc. $295,035 in cash advances also paid Palco, Inc., for paint and painting services and $5,290 to PM One LTD for credit applications and other fees. The stockholders of the PM Group have direct and indirect stockholder interests in Palco, Inc. and PM One Ltd. Also the partnership owes the PM One Group Ltd., (the general Partner), a development fee totaling $1,454,000 for its services in supervising the project in 1993 while under moderate rehab..

Compensation of Partners Audits from 94,95, and 96 reveal that there is no compensation of partners. This is not true because they have some identity of interest companies conducting work for South Pointe Towers. The general partner is acting as a loan agent for the limited partner. Chevron USA is a major gas/oil company.

A large amount of the property's fiscal funds are going to PM One Group (General Partner). The project's security deposits are being used as collateral for a short term loan. Since 1994. Management regularly states every year that it intends to change the collateralization of security deposits as soon as acceptable alternate collateral is available.

## Environmental

The only cited problem here in this section is the continuation of the problem with rats entering the building. There is rodent infestation throughout the building and community area. 09/11/98 the HUB Office reported to us that a resident in apt 1212 (reported that rats were crawling over children) building infested with rats. She also received other calls.

## Management

The general partners for South Pointe Towers are:

- David Halasz, PM Equities, Inc.
- Robert Pendergast of PM Equities, Inc.
- Limited partners are Kellie Seman, Financial Manager PM One LTD,
- Daniel D. Armistead - Stockholder 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
- Michael G. McGhie - Officer/Stockholder 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, PM One Ltd. , Manager

- John R. Morrisey Officer/Stockholder 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
- Robert Pendergast, Stockholder 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
- PM Group, Inc. Stockholder 38-2016683
- Englewood Terrace Limited Partnership 38-2904963
- Ms. Linda J. Brockway (Director of Finance)

The management agent for this property is contracted with the general partner.

The property pays for the services of employees of general partner. Tenants have made numerous complaints of the site manager at the property. HUD FHEO were brought in regarding eviction of tenants.

## Legal

The only legal issues the administrative file revealed were the numerous evictions and court proceedings due to eviction. In addition a court order had to be acquired for no trespassing.

This case has a possibility of equity skimming:

Identity-of-Interest Companies exist -

PM One Equities, Inc. (General Partner)

PM One Group, Inc. (General Partner)

PM One Ltd., (Limited Partner)

Palco, Inc.

The administrative file reveals excessive profits for goods and Services provided, and goods and services not being provided.

Also within the file and audits, various inappropriate expenses exist, such as many of the second, third etc., mortgages are being charged to the property. Property finances are going to pay off debts to the general partners. In addition, the reimbursement of subsequent owner advances has occured in this case. Along with excessive maintenance and management fees

Money was received from HUD to pay tax consulting fees; this is considered an inappropriate expense. Some of the identity-of-interest employees are being paid by the project such as maintenance staff, and administrative staff.

Section 8 HAP Contracts requires decent, safe and sanitary conditions this is not being done. (False Claims Act) Section 1001, Title 18, USC Fraud & False Statement

## Project File Deficiencies

The project should have a 100% comprehensive inspection. An Environmental Review for the rodent manifestation problems should be completed. (What can be done to secure safety for residents. Were residents were interviewed about this problem? Was Management staff interviewed?

Still awaiting a REAC inspection and visit from Pinnacle (contractor).

Work with community builders and public housing closely on this case.

In case of relocation issues!

Full scale fiscal audit.

## Visitation Reports

. Enforcement Center visited the site in April 1999. We found that the property was in very bad and severe physical conditions. We are going to recommend abatement of Section Units. There were serious health hazards present. A recent REAC inspection was performed that confirmed the conditions, but we feel the score should have been lower than what it was scored by REAC.

## Project Photos

Project photos were taken on the site visit in April 1999.

Part of the administrative file. The pictures affirm the severe physical condition complaints made by residents. This is also a very high crime and drug area and building.

## Additional Contractor Services Needed

Environmental Review needed

Safety Assessment and Analysis

Complete fiscal audit

Structural Analysis

## Problem Statement - Incl. Add HUD Resources Needed



STATEMENT OF PROBLEM

*Physical condition: The owners, general partners, and/or limited partners have not maintained the property in good repair and condition as required by the Section 8 HAP contract. Additionally, for 4 years straight in all inspections the property has received a rating of below average, and unsatisfactory for not passing*

*housing quality standards inspections. This trend has continued despite tremendous rent increases, special claims and special rent increases given for major repairs and/or reasons of safety for residents.*

*Additionally, the project is a safety and sanitary hazard because of the problem the tenants are having with rat infestation.*

*Books and Records The owners have repeatedly used project finances to pay second, third etc.., mortgages on property as well as pay unreasonable expenses on budget line items such as: maintenance, administrative and other personnel services for employees employed by the general partners.*

*Additional HUD resources would be to conduct a full management review including inspections besides REAC.*

It is recommended to the Director of the Satellite Chicago Enforcement Center that this property/project be accepted in the Enforcement Center for further review and possible sanctions.

---

PREPARED BY:

Freddie Batchelor, Enforcement Analyst:______________________ Date: ________

---

NCURRENCES:

Joan M. Kiening, Team Leader:______________________ Date: ________

Gregory Gustin, Satellite Attorney:______________________ Date: ________

Gwen Thomas, Chicago MF Project Managerr:______________________ Date: ________

---

APPROVALS:

James P. Zale, Satellite Office Director:______________________ Date: ________

---

**Englewood v. United States**
**03-2209**
**Joint Appendix**

# JA 031

GT
#2

# P.M. 1 ONE

FIRST IN PROPERTY MANAGEMENT

March 23,1999

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
77 WEST JACKSON BLVD., 23RD FLOOR
CHICAGO, ILLINOIS 60604-3507

ATTN: GWEN THOMAS

RE: SOUTH POINTE TOWER APARTMENTS A.K.A. ENGLEWOOD TERRACE
FHA PROJECT NO. 071-55028/CONTRACT NO. IL06-E000-034

DEAR MS. THOMAS:

PLEASE FIND ENCLOSED THE 1999 BUDGET SUBMISSION FOR SOUTH POINTE TOWER APARTMENTS.

THE FOLLOWING ITEMS ARE INCLUDED:

* HUD BUDGET WORKSHEET
* HUD RENT SPREAD SHEET
* BUDGET NOTES
* CERTIFICATION AS TO PURCHASING PRACTICES AND REASONABLENESS OF EXPENSES
* UTILITY ALLOWANCE DATA

THIS BUDGET SUBMISSION INCLUDES A 5% RATE INCREASE ALLOWED PURSUANT TO THE CURRENT CONTRACT SECTION 405A. THE INCREASE EFFECTIVE DATE IS OCTOBER 1, 1998, THE CONTRACT TIME FRAME.

IF YOU HAVE ANY QUESTIONS CONCERNING THIS SUBMISSION, PLEASE CONTACT MR. CARL SANDERS AT (773) 324-9010, EXT. 204.

RESPECTFULLY,

Mary Harth

MARY HARTH
FINANCIAL SUPERVISOR
P.M. ONE, LTD.

EXHIBIT #2

ENCLOSURE

CC: 975.13 O/S-CHICAGO
DEBBIE GRAY, HUD
SHEILA AUSTIN, P.M.GROUP
MARLENE DAU, P.M.ONE, LTD.
C. SANDERS, P.M.ONE, LTD.

Page 787