**Englewood v. United States**
**03-2209**
**Joint Appendix**

# JA 056

Back To REMS

# Project Action Detail

800040489. South Pointe Towers
Primary FHA: 07135696 Property Active: Yes Watch List: No
Troubled Status: Troubled DEC Status: Active

| | |
|---|---|
| Action Entered Date: | 06/20/2000 |
| Action Type: | |
| Current Action: | Other |
| Action Group: | Housing Program |
| Type of Plan: | Housing |
| Action Start Date: | 6-7-2000 |
| Person/Role Responsible for Action: | GWENDOLYN THOMAS - Role: PM |
| Target Completion Date: | 6-7-2000 |
| Amended Target Date: | 7-1-2001 |
| Date Amended: | 6-20-2000 |
| EC Concurrence: | N |
| EC Concurrence Date: | -- |
| Closed Date: | 6-20-2000 |
| Reason for Closure: | |
| Estimate of Hours Spent on Activity: | 0 |

Comments:
6/20/00-L. Simmons--Received update (6/7/00) on the status of the corrective action plan repairs. Amended target completion date: 7/1/01.

Action Start date MonthAction Start date dayAction Start date Year Action Start Time HourAction Start Time MinuteAction Start Time Target Completion date Mon

D 1020

**Englewood v. United States**
**03-2209**
**Joint Appendix**

# JA 057

PM ONE, LTD.

July 10, 2000

Ms. Veronica Coleman, Director
Program Management
Chicago Multifamily Hub
77 West Jackson Boulevard
Chicago, Illinois 60604-3507

Subject: Occupancy Review - 2000
South Pointe Tower Apartments
Contract No. IL06-E000-034

Dear Ms. Coleman:

This is our response to the above captioned Occupancy review pursuant to your dated June 16, 2000:

Part A - Maintenance and Security

Exterior Items

Finding 1:

During our review it was noted that there were a number of torn and missing screens. It was stated by management, that the cause was due to vandalism by the residents and bad weather conditions. This is a security, health and safety risk to the residents. Your HAP Contract and the Code of Federal Regulations, Section 886.113 requires that the Owners shall maintain the premises in Decent, Safe and Sanitary Conditions.

Corrective Action:

All screens must be repaired immediately. Owner/Management must provide our office with written confirmation that this repair has been completed.

Management Response:

All screens noted during Occupancy Review have been repaired and/or replaced. See Exhibit #1, invoice for screen repairs. As pointed out during the Occupancy Review, this is an ongoing problem due to vandalism and management is winning the battle with the help of our social service initiative along with charging the residents when it is irrefutable that the damage is caused by vandalism.

1621 E. 55th Street • Chicago, IL 60615
773-324-9010 • Fax 773-324-9082 • www.pmone.com

Page 2,
Veronica Coleman cont.
July 10, 2000

**Finding No.2:**

During the review it was noted that the landscaping and grounds were in poor condition. This finding is in a result of high traffic, loitering and deferred maintenance. This gives the property poor curb appeal. Your HAP Contract and the Code of Federal Regulations, requires that the Owners shall maintain the premises in Decent, Safe and Sanitary Conditions.

**Management Response:**

This condition has greatly improved. We have been successful in getting Southpointe declared a no loitering zone by the city of Chicago which will enhance our efforts to keep the bad element away. Also, we have designated play areas for the resident children along with social programs. Finally, floor captains have been assigned to all floors. Exhibit # 2 is a copy of the floor captain's checklist.

**Interior Items**

**Finding No. 1:**

The stairwells had graffiti on the walls, the floors were dirty and some of them smelled of urine. There were a number of exit signs in the hall areas broken and graffiti written on the walls. This finding is a result of continuous vandalism and deferred maintenance. This is a health & safety risk. Your HAP Contract and the Code of Federal Regulations, Section 886.113 requires that the Owners shall maintain the premises in Decent, Safe and Sanitary Conditions.

**Corrective Action:**

Management must follow the maintenance schedule in place daily to ensure that the stairwells are cleaned on a daily basis. Also, we suggest that the security, monitors the halls more often to reduce the vandalism of the exit signs and the graffiti on the walls.

**Management Response:**

All conditions noted during the Occupancy Review have been corrected. See Exhibit # 3; invoices for materials and labor to repair exit signs, etc. We now have floor captains on the floors and this has greatly reduced the graffiti and loitering in the stairwells.

Page 3,
Veronica Coleman cont.
July 10, 2000

**Finding No. 2:**

The laundry room does not have a smoke detector and is missing floor tiles. This finding is due to deferred maintenance and normal wear and tear. This is a health & safety risk. Your HAP Contract and the Code of Federal Regulations, Section 886.113 requires that the Owners shall maintain the premises in Decent, Safe and Sanitary Conditions.

**Corrective Action:**

Owner/Management must provide our office with written documentation certifying that this work has been completed.

**Management Response:**

The smoke detector and floor tiles were installed and replaced by our in-house maintenance staff.

**Finding No. 3:**

Unit inspections were conducted at the time of the review. Some of the conditions cited are caused by deferred maintenance. Listed below are the detailed violations cited on the units.

1. Infestation problems, tenants stated that they have mice.
2. Water damage and peeling paint in bathroom showers.
3. Units need redecorating.
4. Broken or cracked floor tiles.
5. No, tub stoppers, shower knobs, overflow covers.
6. Dry-rotted kitchen cabinets.
7. Torn or missing screens.
8. Loose or missing baseboards with holes in the walls.
9. Water damage in closet ceilings.
10. Poor housekeeping.
11. Rust in bathtubs
12. Missing ceramic tiles around bathtubs.

This finding is in a result of deferred maintenance and inadequate monitoring of housekeeping through periodic unit inspections (see enclosed pictures). Also, because there is an infestation problem, this is an indication that either a new contractor be hired or alternative methods be used. The Housing Assistance Payment Contract, state "The Owner warrants that the rental units to be leased under the terms of this contract are in decent, safe and sanitary condition, as defined by HUD."

Corrective Action:

Owner/Management must provide our office with documentation showing that of all deficiencies have been repaired. In addition, you must provide our office with a copy of your paint cycle for units and documentation showing that you have changed extermination procedures to rectify the infestation problem.

Management Response:

All violations noted have been replaced and/or repaired by our in-house maintenance staff with the exception of exhibit numbers 4 and 5. Exhibit # 4 is a copy of the updated MIO dated June 7, 2000 which includes the paint cycle; exhibit # 5 is the new extermination contract.

Miscellaneous Items

Finding No. 1:

The elevators are not working and/or not working properly. During our review the elevator dropped three floors and skipped several floors while HUD and management staff were on it. Also, we waited approximately twenty (20) minutes for an elevator. This finding is a result of normal wear and tear and deferred maintenance. Because this building is a 22-story high rise, this is a serious health and safety risk to the residents. Your HAP Contract and the Code of Federal Regulations, Section 886.113 requires that the Owners shall maintain the premises in Decent, Safe and Sanitary Conditions.

Corrective Action:

Although the elevator repair contractor was out at the building the day of the review, the working elevators were not functioning properly. Repairs to the elevators must be completed immediately. Please provide our office with confirmation when the repairs have been completed.

Management Response:

The elevator technician explained to management and HUD that he was riding and testing the elevator from top control switches. Also, management explained to HUD that all three (3) elevators are currently being replaced. Two (2) elevators have been completely replaced and is in good working condition. The third elevator is scheduled for completion by August 31, 2000. Exhibit [illegible] a copy of the elevator replacement contracts.

Page 5,
Veronica Coleman cont.
July 10, 2000

**Finding No. 2:**

The Main garbage room was dirty and dirty and the dumpsite inside and outside was overflowing with garbage. It was stated by management that the sanitation company had not arrived to empty the outside dumpsite, therefore the inside dumpsite could not go out. This is a health and safety risk and contributes to the infestation problem in the building. Your HAP Contract and the Code of Federal Regulations, Section 886.113 requires that the Owners shall maintain the premises in Decent, Safe and Sanitary Conditions.

**Corrective Action:**

Management must provide our office with a corrective action to address the sanitation problem to reduce the garbage. Because there are 303 families in this 22-story building, we suggest that you start a recycle program and get a larger garbage dumpsites. You can contact the city of Chicago streets and sanitation on how to start one.

**Management Response:**

The condition noted is not consistent because the sanitation company usually pickup earlier than they did on March 14, 2000. However, in order to eliminate the potential for this condition recurring daily pickups have been implemented. Also, we are currently working with the city of Chicago streets and sanitation on starting a recycling program.

**Security and Drug Free Housing**

**Finding No. 1:**

The property has a drug and security problems. The drug problem is due to the area being drug infested, some of the residents are involved with drugs, large amounts of traffic and the security problem. These problems put the residents at safety risk. Your HAP Contract and the Code of Federal Regulations, Section 886.113 requires that the Owners shall maintain the premises in Decent, Safe and Sanitary Conditions.

**Corrective Action:**

Owner/Management must continue to work with the CAPS programs and provide our office with documentation of other methods of curing the drug problems. We suggested that you apply for the upcoming Drug Elimination and New Approach Anti-Drug Grants, which can assist you in your fight against Drugs.

Page 6,
Veronica Coleman cont.
July 10, 2000

**Management Response:**

We have applied for the Drug Elimination and New Approach Anti-Drug Grant and we greatly appreciate your suggestion. As pointed out in finding number 2 under exterior items, Southpointe has now been declared a no-loitering zone. The Chicago Police Department district commander has committed to enforcing this ordinance and we are confident that this will greatly enhance our efforts to get rid of drugs and gangs in this building.

**Leasing and Occupancy**

The section 8 tenant files that were reviewed had the following findings:

1. No third party verification of income, medical allowances and assets.
2. No move-in inspections in the files.
3. Incomplete or no declarations of citizenship.
4. No Move-in/annual/periodic unit inspections being conducted.
5. Markisha Willis - Apt. 811 - over charged security deposit at move-in. Charged $110 - should have been $71.
6. Tonja Knowles - Apt. 701 over charged security deposit and incorrect calculation of income and rent.
7. Waiting list needs to be updated.
8. Missing verifications of Social Security Number.

These findings are due to the management agent not following the guidelines set forth in HUD Handbook 4350.3. The HAP Contract requires that the Owner/Management determine the rents in accordance with guidelines set fourth in HUD Handbook 4350.3.

**Corrective Action:**

Owner/Management must conduct an audit on all the tenant files to assure that all the findings have been corrected and regulations followed in accordance with HUD Handbook 4350.3.

At the next management review a portion of the resident files will be reviewed for completeness. Failure to comply will constitute a violation of the HAP contract and further action may be taken.

**Management Response:**

The violations noted have been corrected. Also, all residents files are in the process of being 100% audited and this audit will be completed by October 1, 2000.

Page 7
Veronica Coleman cont.
July 10, 2000

**Tenant/Management Relations**

**Observation 1:**

There have been a number of telephone complaints alleging that Management staff is rude and unprofessional. Although tenant complaints can become complicated, Management and staff should be professional at all times. If the tenant becomes unprofessional with management, management has the rights to enforce HUD lease policies.

**Management Response:**

It is management position that a professional decorum has been maintained with the residents. However, there have been several situations where management had to defend themselves by calling security and/or the Chicago police. Management has responded in writing to HUD regarding some residents complaints.

In finding number 1 under Security and Drug Free Housing, it was pointed out that some of the residents are involved in drugs and management concurs as well as offering the drugs as a major reason for the complaints. Finally, management has taken your observation and concern under advisement.

**General Management Practices**

**Observation 1:**

Maintenance staff does not appear to be adequate for this size property. We suggest that you re-evaluate the number of maintenance staffs to assure that the maintenance schedule can be followed completely on a daily basis.

**Management Response:**

The number of maintenance personnel conforms to HUD's guideline. Nevertheless, management is in the process of re-evaluating the number of maintenance personnel vs. the effectiveness and productivity of the current personnel.

I can be reached at 773/324-9010 X 204 if you have any questions.

Sincerely,

Carl E. Sanders

CES/

Exhibits attached

cc: Ken Horton, P. M. Group
Gwendolyn Thomas, HUD
Marlene Dau, P. M. One, Ltd.
975.10 OS/Chicago

**Englewood v. United States**
**03-2209**
**Joint Appendix**

# JA 058

Developers
Mortgage
Corporation

Su 333
221 North LaSalle Street
Chicago, Illinois 60601-1505
312/332-2013
FAX: 312/332-0406

July 20, 2000

Ms. Veronica Coleman
U.S. Department of Housing and Urban Development
77 West Jackson Boulevard
23rd Floor
Chicago, Illinois 60604

RE: South Pointe Apartments / I(06-E000-034
Chicago, Illinois

Dear Ms. Coleman:

As you are aware we have been working with the PM Group to establish a plan correcting a number of the physical problems identified at the property. Once we have completed the scope of work, it is our current intention to submit to your office an application for mortgage insurance under Section 221(d)4 requesting a loan to complete these repairs and to pay off the existing mortgages currently in place.

Several months ago, at your urging, Henry Chiano, an experienced property inspector and former HUD employee, and Brad Mathes, President of Linn-Mathes Inc., visited the property. Messrs. Chiano and Mathes prepared a preliminary list of project deficiencies but asked that an engineering report be commissioned to evaluate various building systems. This report has now been completed and a meeting with the PM Group representative, Keri Horton, has been scheduled for Monday, July 31, to prepare a final list of work items and to determine a rehab budget.

It is our intention at that time to meet with you and your staff to discuss our findings and to review our rehab plans. Once we have reached an agreement on the scope of work, we are hoping to submit our d(4) application within 45 days which should allow work to commence within approximately four months.

We hope that this brief outline is useful to you. I am optimistic that we can meet all of our objectives and will report back to you frequently with the status of our progress.

Very truly yours,

DEVELOPERS MORTGAGE CORPORATION

Alan R. Cravitz

Alan R. Cravitz
President

ARC:dlb

A 2189