**Englewood v. United States**
**03-2209**
**Joint Appendix**

# JA 090

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
WASHINGTON, D.C. 20410-8000

OFFICE OF THE ASSISTANT SECRETARY
FOR HOUSING-FEDERAL HOUSING COMMISSIONER

APR 20 2001

MEMORANDUM FOR: Multifamily Hub Directors, Multifamily Program Center Directors, Supervisory Project Managers, Project Managers, Contract Administrators, Senior Community Builders

FROM: Sean G. Cassidy, General Deputy Assistant Secretary for Housing - Deputy Federal Housing Commissioner, H

SUBJECT: Guidance for Processing Rental Adjustments for Escalating Energy Costs

Utility companies have recently been passing on to property owners and residents increasingly higher gas, fuel oil and electric costs. It is not known how long these higher energy costs will continue. However, it is clear that some property owners will need to request rental adjustments to cover these higher energy costs and also submit updated utility surveys in order to adjust utility allowances for residents who pay their own utility bills.

This guidance provides procedures for the Field to use when owners submit these requests that may be attributed to an increase in utility rates (per unit of energy) as well as increased utility usage because of the long cold winter.

For the purpose of this guidance, the rent adjustment procedures will cover the following categories: 1) Units under HAP contracts that have been renewed under Section 524 of the Multifamily Assisted Housing Reform and Affordability Act of 1997 (MAHRA); 2) Units under HAP contracts that have not expired and where rents are adjusted by the Automatic Annual Adjustment Factor (AAF), and 3) Units where rents are adjusted by the budget-based method.

1. UNITS WITH HAP CONTRACTS RENEWED UNDER MAHRA

Effective immediately, the Department will consider providing temporary, emergency utility cost relief, at HUD's discretion, for units where contract rents are paid pursuant to a HAP contract that has been renewed under MAHRA, no matter whether the contract rents were last adjusted by an OCAF or on a budget-basis.

NET 00174

In the following cases, the existing Section 8 renewal HAP contract does not provide for HUD approval of a budget-based adjustment of the contract rents: 1) a restructured project subject to a HAP contract renewed under Option 3, and 2) Mark Up to Market units covered by a HAP contract renewed under Option 1. To receive a utility lump sum adjustment for units in these two categories only, the owner must execute Attachment 2, a supplement to the Section 8 HAP Renewal HAP Contract between the owner and the contract administrator.

Increases in contract rent for most Section 8 units renewed under the MAHRA Renewal Guidebook Options 1, 2, 3 and 5 is subject to comparability (rent reasonableness). For Section 8 units under MAHRA for which the contract rent is subject to comparability, the total of the utility lump sum amount plus the current Section 8 rent potential may not exceed the comparable rent potential. "Current Section 8 rent potential" for a HAP contract is the sum of all current Section 8 contract rents for the contract units. "Comparable rent potential" is the sum of the maximum reasonable rents for the contract units as specified in the latest Rent Comparability Study (RCS) for the contract units submitted by the owner in accordance with HUD requirements.

Non-Section 8 units will continue to have their rents adjusted based on outstanding guidance.

Option 1, Mark Up to Market:

For those owners who have renewed under Option 1, Mark Up to Market, if comparable rent potentials have increased faster than the rent potentials determined by applying the OCAF, the owner may submit an update of the last RCS. The lump sum amount added to the current rent potential must not result in a rent potential exceeding comparable rent potential.

The owner must execute and submit the supplement to HAP contract (Exhibit 2 of this memorandum).

Option 2, At or Below Comparable Market Rents:

For owners that renewed under Option 2 of the Section 8 renewal guidance, the lump-sum amount added to the current rent potential also must not result in the rent potential exceeding comparable rent potential. Owners whose current rent potential is already at comparable rent potential may also submit an update of their last RCS. The utility lump sum amount can be applied up to the new, adjusted comparable market rent potential level only.

Option 3, Referred to OMHAR:

The Owner is not eligible to receive a utility lump sum adjustment while the property is at OMHAR for processing for either a Lite or Full Restructuring. Once the property has been returned to the Field by OMHAR, however, an owner whose rents

NET 00175

The updated RCS mentioned above is not to be construed as a new RCS submission. Appraisers should obtain the adjusted rents of comparable properties used in the last study. The adjusted, updated RCS must be certified by an appraiser and will be at the owner's expense.

2. UNITS WHERE RENTS ARE ADJUSTED BY THE BUDGET-BASED METHOD

There is no change to the procedures for processing budget-based rent increases for units without HAP contracts or with HAP contracts that have not yet been renewed under MAHRA.

Units without Section 8 contracts should continue to follow existing guidance on budget-based rent increases found in Chapter 7 of HUD Handbook 4350.1 or Notice 99-13.

Units with Section 8 HAP contracts that have not yet expired must continue to follow outstanding guidance based on the HAP Contracts.

Properties with Rent Supplement and RAP contracts that are FHA-insured cannot be amended and thus the Department cannot provide relief similar to that provided for properties with Section 8 rental assistance. However, Rent Supplement and RAP contracts in non-insured projects can be amended. The Department is investigating the possibilities of providing relief to these projects.

Owners must submit recommended updated changes to the utility allowances for Section 8 subsidized residents according to guidance in HUD Handbook 4350.1, Chapter 7.

3. UNEXPIRED HAP CONTRACTS WHERE RENTS ARE ADJUSTED BY THE AUTOMATIC ANNUAL ADJUSTMENT FACTOR (AAF)

There is no change to the procedures for processing AAFs for a HAP contract that has not expired. The HAP contract contains a provision permitting HUD to approve a special rent increase, at any time, based upon substantial and general documented increases in utilities, real estate taxes or hazard insurance. Existing guidance is found in HUD Handbook 4350.1, Chapter 34. Owners must submit recommended updated changes to utility allowances, if applicable, according to guidance in HUD Handbook 4350.1, Chapter 7.

In order for owners to take advantage of the opportunity for a utility lump sum adjustment, properties must be acceptably managed and the owner must be in good standing with all Business Agreements signed with the Department.

# ENERGY LUMP SUM COST WORKSHEET
## Attachment 1

Project Name: ______________________________

Project Owner: ______________ FHA Project #: __________

Section 8 #'s: ______________ No. of Units __________
______________ No. of Units __________
______________ No. of Units __________

Total Number of Units in Property: __________

Date of Last Rent Adjustment: __________ [ ] OCAF or [ ] Budget Based

Check One: [ ] OPTION 1 [ ]OPTION 2 [ ] OPTION 3 [ ] OPTION 4 [ ] OR [ ] OPTION 5

INDICATE WHICH UTILITY IS TENANT PAID, IF APPLICABLE __________

IF TENANT PAID, INDICATE DATE UTILITY ALLOWANCES LAST UPDATED__________

Indicate Previous Cost Per Billing Unit:

$__________ (MCF/GAL./KW HOUR)
(Circle One That Applies) Indicate Base Month: __________

Indicate Increased Cost Per Billing Unit:

$__________ (MCF/GAL./KW HOUR)
(Circle One That Applies) Indicate Base Month: __________

Indicate increased amounts for each of the following months:
(Attach invoices to support increased usage)

October, 2000__________ January, 2001 __________

November, 2000__________ February, 2001 __________

December, 2000__________ March, 2001 __________

TOTAL INCREASE = $__________

NET 00177

**Englewood v. United States**
**03-2209**
**Joint Appendix**

# JA 091

May 2, 2001

Mr. Edward Hinsberger
Director
US Department of Housing and Urban Development
Office of Housing
Chicago Multifamily Division
77 West Jackson Boulevard
23rd Floor
Chicago, IL 60604

**DELIVERED VIA FACSIMILE (312) 353-9563**
**AND FIRST CLASS MAIL**

Re: **Southpointe Tower (Englewood Terrace Limited Partnership)**

Dear Ed:

As promised at our last meeting, I am working diligently on the transfer of ownership of PM Group, Inc. to another ownership entity that would in turn take over property management from PM One, Ltd. As stated in our meeting, this is not an easy task and will require a period of due diligence by any potential ownership entity. Please be advised that I am working with the following groups:

- DSSA, Inc. (Don Samuelson)
- Metroplex Companies (Sheldon Baskin)
- Prairie Management (Tony Augustine)

These groups have received financial information and have scheduled walkthroughs of the property as part of their due diligence process. I am reasonably hopeful that I will be able to enter into a satisfactory agreement with one of the entities within the next thirty days. It is critical to this transaction that you agree to keep the project based Section 8 contract in place during this period. Should you wish to discuss this further, please contact me directly at (248) 529-2217 or jhayes@pmgroup.com.

Very Truly Yours,

John J. Hayes
PM Group, Inc.

cc: Veronica Coleman, Director, Project Management
Marlene Dau
Mike McGhie

**Englewood v. United States**
**03-2209**
**Joint Appendix**

# JA 092

Illinois State Office
77 W. Jackson Blvd.
Chicago, Illinois 60604-3507

MAY 10 2001

MEMORANDUM FOR: Owners and/or Agents of Multifamily Housing Projects

FROM: Edward J. Hinsberger, Director, Chicago Multifamily Hub

SUBJECT: Guidance for Processing Rental Adjustments for Escalating Energy Cost

Transmitting herewith is information that should be used by owners and/or agents of multifamily housing projects who have experienced an increase in utility cost during the months of October 2000 - March 2001.

Sean G. Cassidy, General Deputy Assistant Secretary for Housing - Deputy Federal Housing Commissioner, has issued the attached memorandum and the applicable documents in an effort to assist you in dealing with escalating energy costs.

The guidance provides for a **one-time, lump sum adjustment** that will be used for increased utility cost. If you qualify for this adjustment, you must submit your request before September 30, 2001.

Please carefully review this information prior to submitting your request. If you have any questions concerning this matter, contact your respective project manager.

Attachments

NET 00173

**Englewood v. United States**
**03-2209**
**Joint Appendix**

# JA 093

MAY 15 2001

U.S. Department of Housing and Urban Development
Illinois State Office
77 W. Jackson Blvd.
Chicago, Illinois 60604-3507

CERTIFIED RECEIPT

John Hayes, General Partner
PM Group
1050 Corporate Office Drive
Suite 150
Milford, MI 48381

Dear: Mr. Hayes:

SUBJECT: South Pointe Tower Apartments
Contract No. IL06-E000-034
REAC Inspection - March 2, 2001

We are receipt of the plan to correct the deficiencies identified in the subject Real Estate Assessment Center (REAC) inspection. The response to that inspection was submitted by Ms. Kelly Brown, Regional Property Manager for P.M. One. Ms. Brown's response will not be accepted due to impending negotiations with HUD (Departmental Enforcement Center and Chicago Multifamily Hub) concerning your proposed refinance and substantial rehabilitation of the property. Although the letter from REAC directs you to prepare a Management Improvement and Operating (MIO) Plan subject to our approval, the condition of this property is beyond that point as acknowledged by your application to refinance that we rejected due to major deficiencies. Currently, we are awaiting your response from the meeting that was conducted on April 13th, 2001 with the Departmental Enforcement Center.

Please advise Ms. Brown of the issues and your plans to resolve. We are returning her package.

If you have any questions regarding this matter, please call your Project Manager, Gwendolyn Thomas, (312) 353-6236 extension 2246.

Sincerely,

Veronica Coleman
Director of Project Management
Chicago Multifamily Hub

Enclosure:

EXHIBIT K

**Englewood v. United States**
**03-2209**
**Joint Appendix**

# JA 094

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

DEPARTMENTAL ENFORCEMENT CENTER
Chicago Satellite Office
77 W. Jackson Blvd., Suite 2207
Chicago, Illinois 60604-3507

May 16, 2001

CERTIFIED MAIL - RETURN RECEIPT REQUESTED
AND FIRST CLASS MAIL, POSTAGE PREPAID

Englewood Terrace Limited Partnership
P.M. Group, Inc., General Partner
Attention: Mr. John Hayes, President
1050 Corporate Office Drive, Suite 150
Milford, MI 48381

Dear Mr. Hayes:

SUBJECT: Continuing Default of Housing Assistance Payments (HAP) Contract
South Pointe Towers Apartments, Chicago, IL
Contract Number: IL06-H000-034

In response to HUD's April 9, 2001, notice of HAP Contract default, your May 2, 2001, letter to Ed Hinsberger, Multifamily Hub Director, described the status of your efforts. You listed three possible acquirers and felt that a satisfactory acquisition agreement might be reached among the Owner and the acquirer within the next 30-days. Your letter did not indicate that any efforts had been taken to contain the declining physical condition of the property or to address ongoing site management deficiencies.

While HUD may appreciate that the due diligence process you reference in your letter could delay implementing a resolution preferred by the Owner, HUD must emphasize its ongoing concern for Owner and manager delays that affect, among others, the tenants. Your letter describes yet another event of delay in complying with your business agreements with HUD:

- The Project was last inspected by HUD's Real Estate Assessment Center (REAC) on March 2, 2001. Of a possible 100 points, the Project scored a 31c*.
- A notice of the EHS deficiencies was left by REAC with the Owner's agent during the inspection. REAC mailed a copy of the inspection to the Owner by a cover letter, which emphasized that an acceptable plan to return the Project to decent, safe, and sanitary condition should be delivered to HUD within the 30-days.
- In response to the Owner's March 6, 2001, certification that all EHS deficiencies were corrected, HUD staff visited the Project. On March 9, 2001, the Chicago Multifamily Hub sent the Owner a letter expressing HUD's grave concern that, despite its certification, HUD confirmed that many of the EHS items remained outstanding. Those items were to have been repaired within 72-hours of REAC's inspection. The letter again advised the Owner that since the Project remained in unacceptable physical condition, the Owner remained in violation of the Owner's HAP Contract.
- The Chicago Housing Office received the Owner's response letter dated March 16, 2001. In addition to claiming, it seems, that the EHS items were corrected, the letter further stated that with respect to any outstanding EHS and other concerns in HUD's last letter, the Owner's General Partner "does not have the ability to monitor on a daily basis specific site inspections to validate compliance with required repairs from physical inspectors." Continuing, the letter stated that the General Partner relies "solely on information received from the property management company." Last, with respect to the most recent REAC inspection, the letter provided that the Owner "will begin the process of responding



EXHIBIT L

05/29/2003 15:30 2485292891 APG SERVICES INC PAGE 06/06

007/007

FROM US DEPT OF HUD DEPARTMENTAL ENFORCEMENT (WED)10. 10' 01 16:45/ST. 16:44/NO. 4860305095 P 6

to [the March 2, 2001, REAC inspection report] within the thirty day period."

- HUD did not receive an acceptable plan addressing all the physical deficiencies from either the Owner or the Owner's Identity-of-interest Project managing agent. Instead, on April 3, 2001, the Chicago Multifamily Hub rejected the Owner's application for a firm commitment of funding pursuant to Section 221(d)(4).
- In rejecting the application, HUD noted that "the repairs outlined in your application are inadequate when compared to the needs of the property." The letter emphasized that HUD has allowed 23 months from the date of an April 28, 1999, REAC inspection for the Owner to bring the Project into compliance with its HUD business agreements. In 1999, the Project scored a 43b*. Over that 23-month period, the Project's physical condition declined to a score of 31c*.
- HUD issued its notice of HAP Contract default on April 9, 2001.
- HUD met with you and amplified your need for immediate action; including the need to change Project ownership and management.
- You have responded to the notice of default and the subjects of the meeting on May 2, 2001, stating you may have an acquirer in 30-days.

The Owner's default of the HAP Contract is uncured and continues. HUD urges you to provide adequate, timely information describing the immediate efforts that the Owner is making to address the HAP default and the sale of the Project and proposed assumption of the HAP Contract. In the interim, HUD intends to contact the potential acquirers you have listed to determine their interest and ability to succeed the current Owner and management for the Project. Because of HUD's ongoing concerns for your delays and for the tenants, HUD is proceeding with its process to secure vouchers for relocation of eligible tenants.

If you have further information or concerns in these regards, please contact us immediately.

Sincerely,

Edward Hinsberger, Director
Chicago Multifamily Hub

Margarita Maisonet, Director
Chicago Satellite Office
Departmental Enforcement Center

10/11/01 THU 10:34 [TX/RX NO 8093]