**Englewood v. United States**
**03-2209**
**Joint Appendix**

# JA 111

Edward Hinsberger

10/01/2001 04:15 PM

To: JHayes@pmgroupinc.com
cc: alcrav@aol.com, dsnyder@swbta.com, DSSA310@aol.com, kab@pmchgo.com, DSSA310@aol.com, Veronica Coleman/HSNG/CHI/HUD@HUD, Mary Anderson/HSNG/CHI/HUD@HUD, Margarita Maisonet/DEC/CHI/HUD@HUD, Gregory G. Gustin/DEC/CHI/HUD@HUD, Maggie O'Connor/HSNG/CHI/HUD@HUD, Gwendolyn X. Thomas/HSNG/CHI/HUD@HUD, Edward Hinsberger/HSNG/CHI/HUD@HUD
Subject: Re: FW: South Pointe

John,
For many many months we have told you that unless the problems and physical conditions at the building were resolved, the Sec. 8 contract would be abated. We agreed to allow you to submit a mortgage application to finance the rehab. We waited for that application for long period of time, approximately 23 months from the time of the initial REAC inspection. We finally had to give you a deadline and the last day of that period an application was submitted that was substantially incomplete. Below is part of a message that was sent to the PM group back on 1/23/01 addressing the same issue:

" Let me encourage you to expedite this process with your Contractor and Architect. Please keep in mind that we gave you a 3 month extension on your contract pending an enforcement action, due to the physical condition of your property and the fact that we do not have your loan application in-house. Your plan to correct the problems at Southpointe was to submit an application for mortgage insurance and substantially repair the property. Submission of this loan application has taken far too long. A pre-application conference was held December, 1999 and we are now into January, 2001. The property continues to deteriorate and we are still paying subsidy with the anticipation that this property will be restored to fiscal and physical soundness. The only reason that we've continued to pay subsidy is to protect the tenants. Abating the contracts would stop the bulk of project revenue which would result in bills being unpaid and tenants would suffer by not having normal routine maintenance services. Also, it would take approximately 6 months or more for residents to receive vouchers, not to mention relocation efforts for approximately 303 families. The Department has been extremely tolerant with this matter; however, we will not continue down the same road in 2001. While you are working to submit your loan application, I will concurrently be working to get vouchers. I feel it necessary at this point to pursue vouchers due to the lack of progress to date.

When you submit your loan application, be sure that the rents reflect the market. Alan Cravitz has discussed this with our Appraiser, John Schneider and a comparable rent has been determined. I advised you during our October meeting, that the scope of work must be comprehensive addressing the needs of the entire project. Your original plan was to only address a percent of the units and this was unacceptable.

The Department will continue to work with you, but is imperative that we are prepared to issue vouchers should the need arise. Confirming your statement below, I will expect the loan application on or before March 19, 2001. If the application is not submitted by this date, I will make the request to our Office of Public Housing to secure vouchers for the residents at South Pointe."

After your application for mortgage insurance was rejected, the Sec. 8 vouchers were ordered. You were aware of this. There were many different conversations that ensued after that, but the constant message was unless the physical conditions were resolved, the Sec. 8 would be abated and that we would not stop the process while waiting for you to develop a plan. To accommodate you further, we even allowed you the opportunity to sell the project and were willing to let the purchaser use mortgage insurance to finance the rehab. Throughout the many months that we have been waiting, I have constantly said that if there is not a plan in place that is fully documented and approved by us, the abatement process would not be stopped. In email messages as recent as August 6th and September 21, 2001, I reminded you that you were running out of time that when vouchers were issued, the contract would end. The HAP was extended to protect the residents, not the owners. The desire was to keep funds flowing to allow for the

A 1614

basic services that the tenants are entitled to receive. We have been advised by the HA that vouchers are being issued to the residents. We are doing what we told you many many times we would do. We are abating the Sec. 8 contract.

However, again to accommodate you, and the prospective purchaser, we are willing to continue to process the mortgage insurance application once a complete application is received that addresses the deficiencies identified the letter dated 9/25/01. Since the rents being proposed in the application are market comparable, there should be little problem attracting residents who are either market or voucher holders to the building, especially if it is rehabbed to the level we are requiring.

John Hayes <JHayes@pmgroupinc.com>



John Hayes
<JHayes@pmgroupinc.com>
10/01/01 02:13 PM
Please respond to "JHayes@pmgroupinc.com"

To: "Ed Hinsberger (E-mail)" <Edward_Hinsberger@HUD.GOV>
cc: "David Snyder (E-mail)" <dsnyder@swbta.com>, "kab@pmchgo.com" <kab@pmchgo.com>, "DSSA310@aol.com" <DSSA310@aol.com>, "Alan R Cravitz (E-mail)" <alcrav@aol.com>
Subject: FW: South Pointe

Ed, this is very disappointing. I don't understand how you and I can execute on Sept. 26, 2001 a Section 8 contract extension for 90 days effective Oct. 1, 2001 and then have the Chicago Housing Authority issue vouchers on Oct. 1. This seems unconscionable and unfair based on our most recent discussions on the application for financing which was submitted in early Sept. and is in process as evidenced by your letter dated Sept. 25 to Alan Cravitz at Developers Mortgage. I will be calling you. John Hayes

-----Original Message-----
From: Edward_Hinsberger@HUD.GOV [SMTP:Edward_Hinsberger@HUD.GOV]
Sent: Monday, October 01, 2001 11:16 AM
To: DSSA310@aol.com; jhayes@pmgroupinc.com
Cc: alcrav@aol.com; Gwendolyn_X._Thomas@HUD.GOV; Kathy_McMahon@HUD.GOV; Maggie_O'Connor@HUD.GOV; Mary_Anderson@HUD.GOV; Veronica_Coleman@HUD.GOV; Beverly_E._Bishop@HUD.GOV
Subject: South Pointe

John/Don,
The Housing Authority has advised us that they will begin issuing vouchers for the residents at South Pointe today. The residents have been advised that they will be receiving them beginning today. As a result, the Sec. 8 contract will be terminated once all of the residents receive their vouchers. The residents can remain in the project if their individual units pass the CHAC inspection. If they care to move, the voucher is portable and they will be able to do that too.

We will continue to process the loan application for the refinance unless you advise otherwise. Since the rents that we would approve in a refinance would be the street rents, the absence of project based Section 8 should have little impact on the success of the project. Good screening and good management will determine the success of the project.

Ed

A 1615

**Englewood v. United States**
**03-2209**
**Joint Appendix**

# JA 112

basic services that the tenants are entitled to receive. We have been advised by the HA that vouchers are being issued to the residents. We are doing what we told you many many times we would do. We are abating the Sec. 8 contract.

However, again to accommodate you, and the prospective purchaser, we are willing to continue to process the mortgage insurance application once a complete application is received that addresses the deficiencies identified the letter dated 9/25/01. Since the rents being proposed in the application are market comparable, there should be little problem attracting residents who are either market or voucher holders to the building, especially if it is rehabbed to the level we are requiring.

John Hayes <JHayes@pmgroupinc.com>

John Hayes
<JHayes@pmgroupinc.com>
10/01/01 02:13 PM
Please respond to "JHayes@pmgroupinc.com"

To: "Ed Hinsberger (E-mail)" <Edward_Hinsberger@HUD.GOV>
cc: "David Snyder (E-mail)" <dsnyder@swbta.com>, "'kab@pmchgo.com'" <kab@pmchgo.com>, "'DSSA310@aol.com'" <DSSA310@aol.com>, "Alan R Cravitz (E-mail)" <alcrav@aol.com>
Subject: FW: South Pointe

Ed, this is very disappointing. I don't understand how you and I can execute on Sept. 26, 2001 a Section 8 contract extension for 90 days effective Oct. 1, 2001 and then have the Chicago Housing Authority issue vouchers on Oct. 1. This seems unconscionable and unfair based on our most recent discussions on the application for financing which was submitted in early Sept. and is in process as evidenced by your letter dated Sept. 25 to Alan Cravitz at Developers Mortgage. I will be calling you. John Hayes

-----Original Message-----
From: Edward_Hinsberger@HUD.GOV [SMTP:Edward_Hinsberger@HUD.GOV]
Sent: Monday, October 01, 2001 11:16 AM
To: DSSA310@aol.com; jhayes@pmgroupinc.com
Cc: alcrav@aol.com; Gwendolyn_X._Thomas@HUD.GOV; Kathy_McMahon@HUD.GOV; Maggie_O'Connor@HUD.GOV; Mary_Anderson@HUD.GOV; Veronica_Coleman@HUD.GOV; Beverly_E._Bishop@HUD.GOV
Subject: South Pointe

John/Don,
The Housing Authority has advised us that they will begin issuing vouchers for the residents at South Pointe today. The residents have been advised that they will be receiving them beginning today. As a result, the Sec. 8 contract will be terminated once all of the residents receive their vouchers. The residents can remain in the project if their individual units pass the CHAC inspection. If they care to move, the voucher is portable and they will be able to do that too.

We will continue to process the loan application for the refinance unless you advise otherwise. Since the rents that we would approve in a refinance would be the street rents, the absence of project based Section 8 should have little impact on the success of the project. Good screening and good management will determine the success of the project.

Ed

A 1615

**Englewood v. United States**
**03-2209**
**Joint Appendix**

# JA 113

DSSA310@aol.com

10/02/01 06:28 AM

To:Edward_Hinsberger@hud.gov, jhayes@pmgroupinc.com
cc:Alcrav@aol.com, Gwendolyn_X._Thomas@hud.gov, Kathy_I
Maggie_O'Connor@hud.gov, Mary_Anderson@hud.gov,
Veronica_Coleman@hud.gov, Beverly_E._Bishop@hud.gov
Subject:Re: South Pointe

In a message dated 10/01/2001 10:23:30 AM Central Daylight Time,
Edward_Hinsberger@HUD.GOV writes:

<<
John/Don,
The Housing Authority has advised us that they will begin
issuing vouchers
for the residents at South Pointe today. The residents have
been advised
that they will be receiving them beginning today.

I had been asking about the timing and logistics of the voucher
process since
I first became interested in South Pointe. I raised the point
again since at
the site meeting with Ray a woman came in and asked about the
location of the
voucher meeting. In talking with Jennifer O'Neill of CHAC late
last week,
she informed me they did not have an ACC to fund the vouchers and
that their
preference would be NOT to issue vouchers.

As a result, the Sec. 8
contract will be terminated once all of the residents receive
their
vouchers.

I presume that the termination of the Section 8 contract - rather
your
decision not to extend the 90 day extension - follows a set of
delineated due
process procedures.

The residents can remain in the project if their individual
units pass the CHAC inspection. If they care to move, the
voucher is
portable and they will be able to do that too.

What work in the units - and in the building - do you presume
needs to be
done to pass the CHAC inspection?

A 1713

We will continue to process the loan application for the refinance unless you advise otherwise.

I'll need a little time to digest the situation. Meanwhile, we're still working with architect/engineers and Babco to provide further details to the "plan" we first submitted on August 6th.

Since the rents that we would approve in a refinance would be the street rents, the absence of project based Section 8 should have little impact on the success of the project.

Ed, our experience with CHAC at Stateway was that 180 out of 239 residents chose the Section 8 option to move from Stateway even given new good quality make ready units on site (for which DSSA did the rehab work through minority subcontractors) and counseling describing the "new Stateway" and a host of resident services. The short term and neighborhood problems were the motivations. But it might be useful for you to talk with Jennifer about our common experience at Stateway. My sense is that there may be numbers of residents interested in leaving Englewood, and that the immediate market will be for other voucher tenants rather than residents paying the "market" rents, particularly given the percentage of the rent that is currently being applied to the repayment of principal on the CIC mortgage. I think there will be problems.

Good screening and good management will determine the success of the project.

These are important factors. So are planning, community connections and the financial restructuring of the project. A very complicated matter.

I look forward to talking with you on Tuesday at 1:00.

DonEd

A 1714

**Englewood v. United States**
**03-2209**
**Joint Appendix**

# JA 114



DSSA310@aol.com
10/11/01 10:30 PM

To: Edward_Hinsberger@hud.gov
cc: Alcrav@aol.com, jhayes@pmgroupinc.com, Gregory_G._Gustin@hud.gov
Subject: Re: South Pointe

In a message dated 10/11/2001 2:38:20 PM Central Daylight Time, Edward_Hinsberger@HUD.GOV writes:

<<
Don,
This issue was discussed with the HQ folks last week when it was initially proposed. The answer was no.
>>

Ed:

Under the circumstances, I'm surprised with the rigidity of your position. It is completely at odds with the Section 8 renewal assumptions we were all making in August and September. Conceding of course that there was the possibility of the use of vouchers.

Don

A 1743