**Englewood v. United States**
**03-2209**
**Joint Appendix**

# JA 115

cc: Margie Maisonet
Maria Baquio

Lillye R. Simmons

10/22/01 11:02 AM

To: Veronica Coleman/HSNG/CHI/HUD
cc: Gwendolyn X. Thomas/HSNG/CHI/HUD, Debbie Gray/HSNG/CHI/HUD, Kathy Merritt/HSNG/CHI/HUD
cc: Gwendolyn X. Thomas/HSNG/CHI/HUD, Debbie Gray/HSNG/CHI/HUD, Kathy Merritt/HSNG/CHI/HUD
Subject: South Pointe Towers ---- October 19, 2001

On Friday, October 19, 2001, an inspection of some of the units and common areas was conducted on the above property. Listed below are some of the observed deficiencies.

COMMON AREAS & HALLWAYS

smell of urine throughout the building
missing hard wired smoke detectors, hardware and casings on some floors
missing, broken light fixtures-some fixtures missing light bulbs
non-functioning emergency lighting
broken garbage chute doors-some doors to the trash rooms are missing
exit lights missing bulbs, some exit signs broken and/or missing
roaches in the hallways and on the walls
hallway floors are paint splattered with green paint
tags on the fire extinguishers are missing
broken fire-rated doors
conduit pipes in the ceiling on some floors are missing
light covers missing
flammable cannisters (janitorial supplies) stored on shelves instead of a metal, insulated fire cabinet
garbage/trash room needs to be deodorized and cleaned

STAIRWELLS

missing fire hoses
broken light fixtures
missing and broken stairwell doors
missing and broken panic bars
graffiti on the floor/steps and walls

UNITS

some GFCIs (ground fault circuit interrupter) not working
some electrical outlets not working
units need to be painted
id number for the primary entry door missing, door not painted
closet doors are broken and missing
floor tile is missing, broken, mismatched in bedrooms, bathrooms
window screens are missing and torn
holes are in the walls
countertops, cabinets and cupboards need replacing
water damaged ceilings in the bathrooms
damaged bedroom doors
wall switch cover missing, wires exposed
kitchen and bathroom vents need to be cleaned/replaced
exposed re-bar in the living room window, appears to be water damaged
bathroom hardware/accessories missing
electrical outlets are painted over

A 2378

repaired walls not painted
old hardware such as smoke detectors and intercom racks not removed from the walls
bathtubs need to be recaulked, glazed, etc.
legs missing from the pedestal sinks
hardware on the primary entrance doors damaged

ELEVATORS

interior of the elevator has burn marks
needs to be cleaned

ATTENDEES:

Michelle Gee, Management Staff
Security, South Pointe
John Schneider, HUD
Kathy Merritt, HUD
Lillye R. Simmons, HUD

A 2379



Maintenance Area



Maintenance Area



Dumpsters



A 2380


Front View


Employee Rest Room


Rear View

A 2381



Lowe Street Facing North



Parking Area



Lowe Street Facing South



Playground

A 2382


Unit 1313 Cracked Floor Tile


Unit 1313 Damaged Bedroom Door


Missing Switchplate


Damaged Wall

A 2383



Unit 1313 Closet Door



Unit 1313 Bedroom Wall



Unit 1313 Peeling Paint Ceiling



Unit 1313 Shower Area

A 2384



Unit 1307 Damage Door



Unit 1307 Peeling Paint Ceiling



Unit 1307 Shower Area



Unit 1307 Damaged Wall

A 2385


Unit 1307 Missing Closet Doors


Unit 1307 Damaged Wall


Exposed Wiring


Evidence of Rodent Infestation

A 2386

**Englewood v. United States**
**03-2209**
**Joint Appendix**

# JA 116

**Edward Hinsberger**
11/20/2001 08:23 AM

To: DSSA310@aol.com
cc: alcrav@aol.com, Gregory G. Gustin/DEC/CHI/HUD@HUD, Maria T. Baguio/DEC/CHI/HUD@HUD, Veronica Coleman/HSNG/CHI/HUD@HUD, Gwendolyn X. Thomas/HSNG/CHI/HUD@HUD
Subject: Re: South Pointe

Don,
Glad your trip was good. I thought of you sipping margaritas.

At this time it is not appropriate for us to meet. We are prepared to continue processing the FHA insurance application once we receive the needed information. You need to, through your mortgagee, clarify the rehab concerns that we cited in our most recent letter, and get us the missing data previously requested. If you no longer wish to pursue the FHA insurance because of the litigation, then you need to tell the mortgagee so that they can rescind their application.

Ed

DSSA310@aol.com

**DSSA310@aol.com**
11/20/01 04:42 AM

To: Edward_Hinsberger@hud.gov
cc:
Subject: South Pointe

Ed:

I returned from Los Cabos Sunday night. Refreshed. In times to see the Bears win.

On Monday, Alan sent me a copy of the letter sent to him on construction comments.

John Hayes sent me a copy of Judge Castillo's Order.

Bob Sova gave me a Sun Times clip indicating that a woman was thrown out of the 9th floor window on an apartment building in the 6400 block of South Lowe. We later learned that she had been shot in the head, and then dropped out of the window.

Is it possible for me to meet with you on Tuesday, early afternoon? I have ideas on how we can get through this whole thing.

Don

Englewood v. United States
03-2209
Joint Appendix

# JA 117

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

DEPARTMENTAL ENFORCEMENT CENTER
Chicago Satellite Office
77 W. Jackson Blvd., Suite 2207
Chicago, Illinois 60604-3507

[illegible]

November 30, 2001

Englewood Terrace Limited Partnership
P.M. Group, Inc., General Partner
John Hayes, President
1050 Corporate Office Drive, Suite 150
Milford, MI 48381
Via Facsimile and Certified and Regular Mail

Re: Notice of Abatement and Termination of
Housing Assistance Payments Contract
South Pointe Towers Apartments, Chicago, IL
Contract No. IL06-E000-084

Dear Mr. Hayes:

On April 9, 2001, HUD gave Englewood Terrace Limited Partnership (Owner), owner of South Pointe Towers Apartments (Project), formal notice that it was in default of its Housing Assistance Payments (HAP) Contract for failure to maintain the Project's units and related facilities in decent, safe and sanitary condition, as defined by Owner's HAP Contract and HUD's Physical Condition Standards, 24 C.F.R. Part 5 Subpart G. The notice provided 30 days from its date for Owner to correct all the listed events of default. During that time, Owner instead attempted to obtain an acquirer and new management for the Project but failed to correct the events of default complained of in the notice.

On May 16, 2001, HUD advised Owner in writing that its efforts to obtain an acquirer and new management for the Project did not cure Owner's default of the HAP Contract. HUD again emphasized its ongoing concern for the condition of the Project and the risks to its residents. HUD urged Owner to provide timely information describing the immediate efforts made to address the HAP default. HUD reminded Owner that its default of the HAP Contract was uncured and continued, and that HUD intended to proceed with its process to secure vouchers for relocation of eligible residents.

To date, Owner has not cured the conditions complained of in the notice of default issued on April 9, 2001 and as more fully described in HUD's May 16, 2001 writing. Owner has failed to maintain the property according to the physical conditions standards acceptable to HUD despite Owner's receipt of the notice of default and a reasonable opportunity (almost 240 days since the notice of default) to cure. Accordingly, pursuant to paragraph 20(b)(3) of the HAP Contract, this is Owner's notice that HUD intends to abate the HAP Contract.

Further, pursuant to Section 516(a) and (b) of the Multifamily Assisted Housing Reform and Affordability Act of 1997 ("MAHRA") HUD will terminate the HAP Contract upon HUD's determination that the relocation process of eligible residents at the Project is concluded.

Pursuant to MAHRA, this is Owner's notice to provide, within 30 days from receipt of this notice, written objection to this notice of termination of HAP or to cure the underlying basis for the default. If the Owner does not submit a written objection or cure the underlying basis for the default to the satisfaction of HUD during this 30-day period, HUD's decision to terminate the HAP Contract will become a final determination under Section 516(c) of MAHRA and is not subject to judicial review.

EXHIBIT
EXHIBIT
P

As Owner has been previously notified, HUD will abate the HAP subsidy for the Project's units as eligible residents receive their vouchers and timely opt to use these vouchers at the Project, if possible, or elsewhere. HUD also intends to abate the subsidy for ineligible residents, if any, and other residents that do not timely act with respect to their Vouchers, at the time that HUD terminates the HAP Contract. As units are abated from the HAP Contract, the owner may not again lease those units to project-based Section 8 residents.

The HAP Contract will be terminated when HUD has, in concert with CHAC, completed its voucher and relocation process for all eligible residents at the Project. The foregoing description of HUD's intended method of abatement provides the course that HUD has determined best serves the interests of the residents as of the date of this notice. HUD does not intend that this notice limit the actions that HUD may otherwise properly take in protection of the residents. For example, if Owner fails to continue to provide basic necessary services for the residents, HUD may elect to redirect HAP Contract payments for particular uses in protection of the residents.

Please also be advised that the voucher and relocation process may extend beyond the expiration date of the current HAP Contract Renewal. To safeguard the residents, and not affecting HUD's determinations as set forth above, HUD will provide Owner with a HAP Contract Renewal with Addendum. Please execute the extension and return it to HUD promptly.

Owner may submit its objection or notification of cure to Edward Hinsberger, Director of the Chicago Multifamily Hub.

Sincerely,

Edward Hinsberger, Director
Chicago Multifamily Hub

Margarita Maisonet, Director
Chicago Satellite Office
Departmental Enforcement Center

cc: Peter Silverman