**Englewood v. United States**
**03-2209**
**Joint Appendix**

# JA 118

**Edward Hinsberger**

12/06/2001 04:07 PM

To: Mary Anderson/HSNG/CHI/HUD@HUD
cc: Veronica Coleman/HSNG/CHI/HUD@HUD, Gwendolyn X. Thomas/HSNG/CHI/HUD@HUD, Gregory G. Gustin/DEC/CHI/HUD@HUD, Maria T. Baguio/DEC/CHI/HUD@HUD
Subject: Extension of HAP on Southpointe

You need to extend the HAP at Southpointe for another 90 days. It expires 12/31/01. The vouchers will not be in place by then so extend the contract again. Is there money in the contract to cover another 90 days or will this be a problem? thank you.

B 5104

**Englewood v. United States**
**03-2209**
**Joint Appendix**

# JA 119

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

DEPARTMENTAL ENFORCEMENT CENTER
Chicago Satellite Office
77 W. Jackson Blvd., Suite 2207
Chicago, Illinois 60604-3507

Tel. (312)353-5895 Fax (312)886-1405

BY TELECOPY ONLY
December 7, 2001

Peter A. Silverman, Esq.
Figliulo & Silverman PC
10 South LaSalle Street
Suite 3600
Chicago, IL 60603

SUBJECT: South Pointe Towers Apartments
Chicago, IL
HAP Contract Number: IL06-E000-034

Dear Mr. Silverman:

Your letter of December 5, 2001, to Assistant US Attorney Jack Donatelli has been forwarded to me for a response. I also appreciated your call that same day and the questions and clarifications you provided.

HUD rejects the settlement proposals set forth in your letter. HUD shall proceed as set forth in HUD's letter of November 30, 2001, to John Hayes with respect to the residents, their relocation, and the abatement and termination of the HAP Contract. HUD has not been able to determine any intermediate position that adequately satisfies HUD's concerns, the residents' needs, and Messrs. Hayes' and Samuelson's current plans.

As we discussed, and as HUD's November 30th letter references, HUD expects that the HAP Contract will need to be extended to accommodate HUD's actions in protection of the residents. HUD will act in that regard in due course.

HUD remains willing to process any loan application that Mr. Samuelson and his company may ultimately deliver to HUD. Likewise, HUD will appropriately act upon any request that Mr. Samuelson or his company may make to succeed Mr. Hayes and his company for management of the project pursuant to the project's defaulted Use Agreement and pending the termination of the HAP Contract. Thereafter, HUD will consider the change of management if HUD may insure a new loan for the project. In any event, a request has not been made, although HUD does understand that Mr. Samuelson's company succeeded Mr. Hayes' company as manager on December 3, 2001.

With reference to the proposal and HUD's payment of Section 8 subsidy for vacant units, in our telephone call we discussed, and I agreed to review, the HAP Contract in that regard. 1947
Paragraph 5(b) describes conditions allowing HUD's payment of a portion of the contract rent for 60-days, not 6-months as proposed. The duration, however, is irrelevant since a

default of the HAP Contract remains uncured and outstanding. This Paragraph does not provide the authority for HUD to act as suggested.

Last, your letter sought reimbursement of the owner's prior alleged request for energy reimbursement in the approximate amount of $55,000. By memorandum dated May 10, 2001, HUD informed project owners, generally, of this program availability. Eligibility required that the owner be in good standing with all its business agreements with HUD. HUD declared that the South Pointe project's HAP Contract was in default on April 9, 2001. Even assuming the owner otherwise submitted a proper reimbursement request, the owner was not and is not eligible to receive it.

We trust this is responsive.

Very truly yours,

Gregory G. Gustin
Lead Enforcement Attorney
Chicago Satellite Office

cc: Jack Donatelli, Esq.
Edward J. Hinsberger
Margarita Maisonet

A 1948

**Englewood v. United States**
**03-2209**
**Joint Appendix**

# JA 120

Edward Hinsberger
12/19/2001 03:16 PM

To: Gregory G. Gustin/DEC/CHI/HUD@HUD, Maria T. Baguio/DEC/CHI/HUD@HUD, Steve Shelley/HSNG/CHI/HUD@HUD, Margarita Maisonet/DEC/CHI/HUD@HUD, Veronica Coleman/HSNG/CHI/HUD@HUD, Mary Anderson/HSNG/CHI/HUD@HUD, Victor Taylor/HSNG/CHI/HUD@HUD
cc:
Subject: Re: Extension of HAP on Southpointe

Please extend the contract for 180 days. As you can see from Eileen's message below, there will be sufficient money to cover the 6 month period. I am concerned about losing money when they do the sweeps, so I'd rather have it under contract and eliminate that possibility. I took a look at the Sec 8 guidebook. Greg pointed out that the guidebook indicated that extensions should be for 120 days to cover the time period for ordering vouchers. Unfortunately it takes CHAC much longer than that period to get the vouchers issued. Out of the 303 units at the project, CHAC still hasn't completed the process for even a third of the tenants. So I am making the decision to go the six month extension June 30, 2002. Gwen will be putting the info into REMS and getting whatever the paperwork is together for Victor. thank you.

Ed

----- Forwarded by Edward Hinsberger/HSNG/CHI/HUD on 12/19/01 02:57 PM -----

Eileen Y. Walker
12/19/01 02:24 PM

To: Edward Hinsberger/HSNG/CHI/HUD@HUD
cc: Mary Anderson/HSNG/CHI/HUD@HUD, Steve Shelley/HSNG/CHI/HUD@HUD, Margarita Maisonet/DEC/CHI/HUD@HUD, Maria T. Baguio/DEC/CHI/HUD@HUD, Gregory G. Gustin/DEC/CHI/HUD@HUD
Subject: Re: Extension of HAP on Southpointe

Ed,
Your e-mails are all I have on the Southpointe funding issue; no follow-up from your staff. It's quite possible that they have contacted someone else here in Washington. However, in the interest of assisting you in expediting completion of your processing, and to try to help in avoiding any nasty consequences due to simple miscommunication, I am responding to your note without the benefit of any additional information which may have been provided by your staff to their HQs contact.

I've pieced together your note from earlier today with the messages I received from you on 12/7. Referring to Steve Shelley's and Mary Anderson's input at that time, FY2002 renewal funds of $1.3+ million were acknowledged. While Steve erred in his computation of need, we had retrieved the payment history and computed the funding based on a monthly amount of $205,000, the appropriateness of which Mary confirms in her note. The $1.3 million reservation was intended to supplement another $1+ million remaining in the HAP reserve as of 10/31. Although the HAP reserve carried over from prior years could already support an extension of subsidy for 90 days and most of 180 days, the total from both sources gives you a year's worth of budget authority to work with. If an increase is needed, but less than the $1.3 million, simply enter the correct amount of increase on the funding notification form.

If I have correctly assessed the status, then you should not need anything more from HQs. Admittedly we did not get the instructions completed over the 12/1 weekend, but when I looked at the sheer volume of transactions and the expertise required to make sense of them, made the decision to take a few extra days to develop processing tools and draft instructions around them. When I did a quick count, we have funded over 5,500 contracts since September, a third of the HUD-administered/PBCA portfolio, and the funding for most of them involves multiple accounting strips. Even though we work most nights and weekends, there just aren't enough of us to always respond in as timely fashion as desired. I'll also admit that it's somewhat disheartening for me, to be so often named personally, and so emphatically, as the sole cause of disfunction in the renewal budget process. But such is life.

A 1623

**Englewood v. United States**
**03-2209**
**Joint Appendix**

# JA 121

Thomas

SULLIVAN • WARD • BONE
TYLER & ASHER, P.C.
ATTORNEYS AND COUNSELORS AT LAW

PROFESSIONAL CORPORATION

SWB T&A

25800 NORTHWESTERN HIGHWAY
1000 MACCABEES CENTER
POST OFFICE BOX 222
SOUTHFIELD, MICHIGAN 48037-0222
(248) 746-0700
FAX (248) 746-2760
WEB SITE ADDRESS: www.swbta.com

DAVID S. SNYDER
dsnyder@swbta.com
(248) 746-2770

December 21, 2001

Mr. Edward Hinsberger, Director
Chicago Multifamily Hub
U.S. Department of Housing and Urban Development
Departmental Enforcement Center
Chicago Satellite Office
77 W. Jackson Blvd. Suite 2207
Chicago, IL 60604-3507

Re: Notice of Abatement and Termination of
Housing Assistance Payments Contract
South Pointe Towers Apartments, Chicago, IL
Contract No. IL06-e000-037
Our File No. PMG-24329

Dear Mr. Hinsberger:

The following is forwarded to you on behalf of our client, Englewood Terrace Limited Partnership (Englewood), the owner of the Multifamily Housing Development above referenced. Please consider this letter as our procedural response pursuant to Chapter 13 of MAHRA.

We have carefully reviewed the contents of the abatement and termination letter of November 30, 2001 (Exhibit 1) concerning the above referenced development. Englewood objects to the notice of non-renewal and seeks to exercise its right to cure, as required pursuant to Chapter 13 of MAHRA.

You are urged to consider the written objections as stated through the following chronology of events which are material and instructive:

I. On April 28, 1999, HUD conducted a REAC Inspection. The report inspection (Exhibit 2), however was not forwarded to the owner until August 1999.

SULLIVAN • WARD • BONE • TYLER & ASHER, P.C.



2. In response thereto, an MIO Plan (Exhibit 3) was submitted on December 8, 1999 with subsequent updates of June 7, 2000 (Exhibit 4), July 27, 2000 (Exhibit 5), October 17, 2000 (Exhibit 6), and December 8, 2000 (Exhibit 7).

3. HUD, however, suggested that Englewood apply for refinancing pursuant to the Section 221(d)(4) program. The purpose was to produce sufficient funds for a comprehensive re-hab in addition to the funds necessary to address the REAC report.

4. To facilitate a refinancing application Englewood commissioned an appraisal and a market study. Alan Cravitz of Developer's Mortgage, Inc. was retained and the refinancing process was set in motion.

5. On March 8, 2001 HUD issued a new report (Exhibit 8) of a subsequent REAC Inspection conducted on March 2, 2001. This REAC Inspection listed several EHS issues. However, on March 6, 2001, prior to receiving the foregoing communication, Englewood had filed its certification (Exhibit 9) to the effect that the EHS items had been properly resolved.

6. On March 19, 2001 the owner submitted its application for refinance to HUD.

7. On April 8, 2001 the owner submitted an MIO Plan (Exhibit 10) referencing the REAC Inspection Report of March 8, 2001. The MIO Plan dealt with each and every item of the REAC Inspection. A review of the MIO Plan, as submitted to Veronica Coleman on that date, will indicate that most of the items had been completed. Surprisingly, HUD issued a letter (Exhibit 11) dated May 15, 2001 refusing to accept the MIO Plan claiming that it was superseded by the pending application for 221(d)(4) refinancing.

8. On April 9, 2001 HUD issued its letter (Exhibit 12) to Englewood declaring it to be in default of its obligations under the HAP Contract. That letter recites a chronology of events all of which are dealt with in the preceding paragraphs.

9. On April 3, 2001 HUD issued its letter (Exhibit 13) setting forth numerous deficiencies in the March 19, 2001 refinancing application. Upon receipt of that letter Mr. Hayes, a member of the general partnership of Englewood requested a meeting with HUD to discuss the issues raised in the April 3, 2001 letter. That meeting took place on April 13, 2001 at your offices. However, prior to the April 13, 2001 meeting, Englewood received a letter from HUD dated April 9, 2001 declaring it to be in default of its obligations under the HAP Contract (the "Default Letter").

SULLIVAN • WARD • BONE • TYLER & ASHER, P.C.



10. At the meeting of April 13, 2001 HUD refused to discuss the REAC inspection report of March 8, 2001 or the deficiencies in the March 19, 2001 refinancing application. At the meeting HUD stated that it wanted a new owner, a new managing agent, and an increase in the wish-list of re-hab items.

11. Promptly after the April 13, 2001 meeting Mr. Hayes began a search for a new general partner, a new managing agent, and an analysis of an increase in the scope of the re-hab work, not a simple task.

12. In August 2001 Mr. Hayes advised your office that he had made satisfactory arrangements with DSSA, Inc. of Chicago, Illinois to take over the management of the Project and to replace the current general partner of Englewood as a new general partner.

13. It is important to note that HUD had refused rental increases since 1998 thereby depriving the owner of necessary funds to do even minimal repairs caused by the tenants. However in September 2001 HUD approved a rental increase effective on the closing of the refinancing.

14. On September 11, 2001 Mr. Alan Cravitz of Developers Mortgage Company submitted a new application for refinancing, with HUD under Section 221(d)(4). Later in September HUD replied asking for additional information.

Englewood recognizes that certain deficiencies exist in this Project. Englewood however strongly rejects the need for the extensive re-hab demanded by HUD. All deficiencies pursuant to the March 8, 2001 REAC inspection report were addressed in the April 8, 2001 MIO Plan as either completed or to be completed by a date certain.

Englewood's position is further supported by separate inspections by the Illinois Housing Development Authority (Exhibit 14) and by CIC, Inc. the mortgage lender, each of which list far fewer deficiencies (Exhibit 15). In fact each of those inspections make the property suitable for occupancy with some relatively minor repairs. The owner, of course, agrees with HUD that an ideal wish list would include a substantial re-hab as suggested by HUD. More importantly, DSSA the new general partner and managing agent is ready, willing, able and anxious to proceed with such refinancing

Englewood recognizes the causes of frustration but strongly believes that all of the deficiencies cited by HUD in the Default Letter have been addressed and complied with, leaving no cause for termination of the project based Section 8 contract for Englewood.

SULLIVAN • WARD • BONE • TYLER & ASHER, P.C.



Your consideration as provided for under Chapter 13 of the MAHRA regulations is respectfully requested to preserve 303 low income housing units on the south side of Chicago.

We await your response.

Sincerely,

David S. Snyder,
Attorney for and on behalf of
Englewood Terrace Limited Partnership

cc: John Hayes, PM Group (w/o encl)

W0197078