**Englewood v. United States**
**03-2209**
**Joint Appendix**

# JA 123

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

DEPARTMENTAL ENFORCEMENT CENTER
Chicago Satellite Office
77 W. Jackson Blvd., Suite 2207
Chicago, Illinois 60604-3507

Tel. (312)353-5895 Fax (312)886-1405

BY TELECOPY AND BY REGULAR MAIL
February 7, 2002

David S. Snyder, Esq.
Sullivan Ward Bone Tyler & Asher
25800 Northwestern Highway, 1000 MacCabees Center
PO Box 222
Southfield, MI 48037-0222

SUBJECT: South Pointe Towers Apartments, Chicago, IL
HAP Contract Number: IL06-E000-034
Notice Affirming Hub's Original "Final Decision"

Dear Mr. Snyder:

On behalf of HUD, thank you and Mr. Hayes for meeting with Mr. Hinsberger, Ms. Coleman, Ms. Thomas, Ms. Baguio and me on January 22, 2002, with respect to HUD's November 30, 2001, Notice of Abatement and Termination of the subject project's HAP Contract and the subsequent, related, communications. As you know, that meeting was in pursuance of HUD's Renewal Guide provisions in this regard, and specifically the "final decision" of the Chicago Multifamily Hub (the "Hub") with respect to the termination of the HAP Contract.

The Hub's final decision was conveyed to the owner by HUD's letter of January 4, 2002. The owner timely appealed that decision, and the parties agreed to meet with regard to the appeal on January 22nd. That meeting allowed the Hub to consider any further information, positions, and documents the owner chose to provide. Thereafter, within 20-days after the conference, the Hub is to affirm, modify, or reverse its final decision and provide notice ("Notice") of the same to the owner. This letter constitutes that Notice.

At the January 22nd meeting, the owner's concerns for the final decision were presented, and HUD also understood that the owner intended to supplement the owner's record on appeal by adding a copy of the project's Use Agreement. HUD understood at the meeting that the owner claimed that HUD is prohibited from terminating the project-based Section 8 subsidy for the project because of the Use Agreement. No further documentary supplement of the appeal record was offered at the meeting, and no extensions were sought to do so.

On behalf of HUD and its Hub, please be advised that the Hub affirms its original final decision in this regard without modification or reversal. Accordingly, HUD shall continue to act as it stated in its November 30, 2001, Notice of Abatement and Termination.

The Hub's decision is based upon its determination that the concerns, requests and claims stated by the owner at the January 22nd merely duplicate those already provided and addressed by HUD before the United States District Court in Englewood Terrace Limited Partnership v. United States of America, et al., (Case No. 01 C 8285, N. Dist. Ill.) and the other communications among HUD and the owner and their counsel. With respect to the Use Agreement, enclosed is HUD's letter to Attorney Peter Silverman dated December 7, 2001.

A 2506

In accord with the aforementioned Renewal Guide provisions, and with reference to 24 CFR Part 401, Subpart F, the owner may appeal the Hub's determination stated in this Notice if, within 10-days of the receipt of this Notice the owner submits a written appeal to HUD. The Hub's decision stated in this Notice is a final decision for the purposes of 24 CFR 401.645(b) and 24 CFR 401.650(a). If an appeal is not timely made by the owner, the Hub's decision stated in this Notice is a final determination for purposes of Section 516(c) of MAHRA.

If the owner timely appeals the Hub's decision stated in this Notice, we draw your attention to 24 CFR 401.651 with respect to the appeal procedures. As such, if the owner so elects, please direct the written appeal, and any further communications in this matter to Edward J. Hinsberger, Director, Chicago Multifamily Hub; with copies to Margarita Maisonet, Director, Departmental Enforcement Center, Chicago Satellite Office, and the undersigned.

Very truly yours,

Gregory G. Gustin
Lead Enforcement Attorney
Chicago Satellite Office

Enclosure

cc: Edward J. Hinsberger
Margarita Maisonet
Jack Donatelli, Esq.

A 2507

**Englewood v. United States**
**03-2209**
**Joint Appendix**

# JA 124

Developers
Mortgage
Corporation

Suite 3333
221 North LaSalle Street
Chicago, Illinois 60601-1505
312/332-7013
FAX: 312/332-0406

4/29/2002
Schneider

April 26, 2002

Mr. Ed Hinsberger
U.S. Department of Housing and Urban Development
77 West Jackson Blvd., 23rd Floor
Chicago, Illinois 60604

RE: FHA #071-35696
South Pointe Towers
Chicago, Illinois

Dear Mr. Hinsberger:

We are submitting of for your approval a revised Firm Commitment Application for the captioned project requesting a loan in the amount of $11,684,300. We have enclosed with this request a revised HUD-92013, Application for Multifamily Housing Project.

The figures shown in this application remain unchanged from your Firm Commitment dated 4/19/02 with the following exceptions:

1. the interest rate for the permanent and construction loan(s) have been reduced from 7.25% to 6.93% based on current market conditions;
2. the estimate of annual operating expenses are shown as $1,724,827 ($5,692 PUPA) based on the anticipated reduction in real estate taxes. We have included as support for this request a letter from Fisk, Kart, Katz and Regan, tax attorneys, explaining the current tax situation and discussing the availability of Class 9 tax assessments which would provide tax relief substantially below the amount shown in our application; and
3. changes in various soft cost amounts based on the increase loan request.

We appreciate your cooperation to date in processing our loan application. This request for an increase in the loan amount is an important component for the project to proceed to closing.

Please feel free to call with any questions or if you require any additional information.

Sincerely,

DEVELOPERS MORTGAGE CORPORATION

Alan Cravitz

CC: Don Samuelson

Section E - Estimate of Income

| Unit Type | No. of Living Units | No. of Units Assisted | Living Area (Sq. Ft.) | Composition of Units | PBE Not in Rent ($) *Sec. F-1) | Unit Rent per Mo. ($) | Total Monthly Unit Rent |
|---|---|---|---|---|---|---|---|
| 1BR | 60 | 60 | 577 | LR-DA, BR, K, Ba | 25 | $ 650 | $ 39,000 |
| 2BR | 140 | 140 | 800 | LR-DA, 2BR, K, Ba | 31 | $ 775 | $ 108,500 |
| 2BR | 17 | 17 | 930 | LR-DA, 2BR, K, 2Ba (Townhouse) | 38 | $ 900 | $ 15,300 |
| 3BR | 80 | 80 | 938 | LR-DA, 3BR, K, Ba | 43 | $ 900 | $ 72,000 |
| 3BR | 6 | 6 | 1055 | LR-DA, 3BR, K, 2Ba (Townhouse) | 52 | $ 1,025 | $ 6,150 |
| | | | | | | | $ - |
| Employee(s) Liv. Unit(s) | | | | | | | |
| Totals | 303 | 303 | | 2. Total Estimated Monthly Rentals for All Living Units $ | | | 240,950 |

3. Number of Parking Spaces
☐ Attended
☐ Self Park
Total Spaces 200

4. Parking and Other Income (Not Included in Rent)
Open Spaces ____ @ $ ____ per month =$
Covered Spaces ____ @ $ ____ per month =$ 0
Laundry 303 Sq. Ft. or Living Units @ 10 per month =$ 3,030
Other Miscellaneous - 303 Living Units @ $ per month =$ 1,515
Total Ancillary Income $ 4,545

Commercial Space (Describe)
Area-Ground Level 696 sq. ft. @ $ 1.06 per sq. ft./month = $ 738
Other Levels ____ sq. ft. @ $ ____ per sq. ft./month = $ ____
Total Commercial $ 738

Total Estimated Monthly Gross Income at 100 Percent Occupancy $ 246,233
Total Annual Rent (Item 6 times 12 months) $ 2,954,796

8. Gross Floor Area 351,868 Sq. Ft.
9. Net Rentable Residential Area 243,800 Sq. Ft.
10. Net Rentable Commercial Area 696 Sq. Ft.

Section F - Equipment and Services (Check items Included in the Rent, Listed Below)

Equipment
☑ Range and Oven
☐ Microwave Oven
☑ Refrigerator
☑ Laundry Facilities
☑ In Common Area
☐ In Living Unit
☐ L.U. Hookup Only
☐ Carpet
☑ Drapes mini-blinds
☐ Swimming Pool
☐ Air Conditioning Equip.
☑ Trash Compactor
☑ Disposal
☐ Other

Services (Gas / Elect / Oil)
☑ Heat — Gas ☑ Elect ☐ Oil ☐
☑ Hot Water — Gas ☑ Elect ☐ Oil ☐
☑ Cooking — Gas ☐ Elect ☑
☐ Air Conditioning — Gas ☐ Elect ☐
☐ Lights, etc., in Units
☑ Cold Water
☐ Other
☑ Parking

Section F-1 - Utilities (Not in Rent)
*Personal Benefit Expenses (PBE)
Check Utilities and Services Not Included in the Rent and Paid Directly by the Tenant.
☑ Electricity ☐ Heating ☐ Gas
☐ Decorating ☐ Repairs ☐ Water
Other

Remarks

Page 1218



form HUD-92013

NO.

## Section G - Estimate of Replacement Cost

| | | | |
|---|---|---|---|
| **Land Improvements** | | | |
| 1. Unusual Land Improvements | | $ | |
| 2. Other Land Improvements | | $ | |
| 3. Total Land Improvements | | | $ 282,000 |
| **Structures** | | | |
| 4. Main Building | | $ | |
| 5. Accessory Building | | $ | |
| 6. Garage | | $ | |
| 7. All Other Buildings | | $ | |
| 8. Total Structures | | | $ 5,826,210 |
| 9. Subtotal (Line 3 plus Line 8) | | | $ 6,108,210 |
| 10. General Requirements | (Line 9 x ____ ) | | $ 332,500 |
| 11. Subtotal (Line 9 plus Line 10) | | | $ 6,440,710 |
| **Fees** | | | |
| 12. Builder's General Overhead | (Line 11 x ____ ) | | $ 182,574 |
| 13. Builder's Profit | (Line 11 x ____ ) | | $ 260,118 |
| 14. Subtotal (Sum of Lines 11 through 13) | | | $ 6,863,402 |
| 15. Bond Premium | | | $ 54,000 |
| 16. Other Fees | | | $ 30,000 |
| 17. Estimated Total Cost of Construction | | | $ 6,947,402 |
| 18. Architect's Fee-Design | (Line 14 x ____ ) | | $ 110,000 |
| 19. Architect's Fee-Supervisory | (Line 14 x ____ ) | | $ 30,000 |
| 20. Total For All Improvements (Sum of Lines 17 through 19) | | | $ 7,087,402 |
| 21. Cost per Gross Square Foot (Line 20 divided by Item 8, Section E) | | $ | |
| 22. Construction Time 12 Months Plus 2 = 14 Months | | | |
| **Charges and Financing During Construction** | | | |
| 23. Interest on $ ____ @ 6.93% for 14 Months | | $ 618,232 | |
| 24. Taxes | | $ 250,000 | |
| 25. Insurance | | $ 120,000 | |
| 26. HUD/FHA Mtg. Ins. Pre. | ( 1.0% ) | $ 116,483 | |
| 27. HUD/FHA Exam Fee | ( 0.3% ) | $ 34,945 | |
| 28. HUD/FHA Insp. Fee | ( 0.5% ) | $ 36,238 | |
| 29. Financing Fee | ( 2% ) | $ 232,966 | |
| 30. Permanent Placement Fee | ( 1.5% ) | $ | |
| 31. AMPO | ( 0.0% ) | $ | |
| 32. Contingency (Sec. 202) | ( 0.0% ) | $ | |
| 33. Title and Recording | | $ 10,000 | |
| 34. Total Charges and Financing | | | $ 1,418,862 |
| **Legal, Organization and Audit Fee** | | | |
| 35. Legal | | $ 28,000 | |
| 36. Organization | | $ 5,000 | |
| 37. Cost Certification Audit Fee | | $ 7,000 | |
| 38. Total Legal, Organization and Audit Fee | | | $ 40,000 |
| 39. Builder's and Sponsor's Profit and Risk | | | $ 159,866 |
| 40. Consultant Fee (Nonprofit only) | | | $ |
| 41. Supplemental Management Fund | | | $ |
| 42. Contingency Reserve (Rehabilitation Only) | | | $ 644,071 |
| 43. Relocation Expenses (Rehabilitation Only) | | | $ |
| 44. Other | | | $ |
| 45. Total Estimated Development Costs (Lines 20 + 34 + 38 through 44) | | | $ 9,350,221 |
| 46. Land (Estimated Market Price of Site) ____ sq. ft. @ $ ____ per sq. ft. | | | $ 3,645,000 |
| 47. Total Estimated Replacement Cost of Project (Line 43 plus Line 44) | | | $ 12,995,221 |
| 48. Average Cost per Living Unit (Line 45 divided by Total in Sec. C, Item 7) | | $ 30,859 | |

## Section H - Annual Income Computations

| | |
|---|---|
| 1. Estimated Project Gross Income (Line 7, Sec. E, Pg. 2) | $ 2,954,796 |
| 2. Occupancy (Entire Project) | 94.95480% |
| 3. Effective Gross Income (Line 1 x Line 2) | $ 2,746,809 |
| 4. Total Project Expenses (Line 30, Section I) | $ 1,724,827 |
| 5. Net Income to Project (Line 3 minus Line 4) | $ 1,021,982 |
| 6. Expense Ratio (Line 4 divided by Line 3) | 62.80% |

## Section I - Estimate of Annual Expense. See Firm Commitment

| | | |
|---|---|---|
| **Administrative** | | |
| 1. Advertising | $ | |
| 2. Management Fee ( ) | $ | |
| 3. Other | $ | |
| 4. Total Administrative | | $ 390,870.00 |
| **Operating** | | |
| 5. Elevator maintenance Exp. | $ | |
| 6. Fuel - Heating | $ | |
| 7. Fuel - Domestic Hotwater | $ | |
| 8. Lighting and Misc. Power | $ | |
| 9. Water | $ | |
| 10. Gas | $ | |
| 11. Garbage and Trash Removal | $ | |
| 12. Payroll | $ | |
| 13. Other (Security) | $ | |
| 14. Total Operating | | $ 865,368.00 |
| **Maintenance** | | |
| 15. Decorating | $ | |
| 16. Repairs | $ | |
| 17. Exterminating | $ | |
| 18. Insurance | $ | |
| 19. Ground Expense | $ | |
| 20. Other | $ | |
| 21. Total Maintenance | | $ 113,019 |
| 22. Replacement Res.: New Const. = (.006 x Line 8, Sec. G Total Struct.) Rehab = (.004 x Mort/Loan Requested in Sec. M | | $ 46,593 |
| 23. Subtotal Expenses (Sum of Lines 4, 14, 21 and 22) | | $ 1,415,850 |
| 24. Real Estate: Est. Assessed Value = $ ____ at $ ____ per $1000 = | $ 235,651 | |
| 25. Personal Prop. Est. Assessed Value = $ ____ at $ ____ per $1000 = | $ | |
| 26. Employee Payroll Tax | $ 32,724 | |
| 27. Other Comp | $ 40,602 | |
| 28. Other Benefits | $ | |
| 29. Total Taxes | | $ 308,977 |
| 30. Total Expenses (Line 23 plus Line 29) | | $ 1,724,827 |
| 31. Avg. exp. per unit per annum (PUPA) (Line 30 divided by Total Item 7 Sec. C) | | $ 5,692 |

Page 1219

**Section J - Total Settlement Requirements**

| | | | | |
|---|---|---|---|---|
| 1. Development Costs (Line 45, Section G) | $ 9,350,221 | Funds Available for Cash Requirements | | |
| 2. Cash Req. for Land Debt/Acquisition (est.) | $ 2,300,000 | 15. Source of Cash | | |
| 3. Subtotal (Lines 1 plus 2) | $ 11,650,221 | a. SPRA | $ 159,885 | |
| 4. Mortgage Amount $ 11,648,300 | | b. Cash l/c | $ 528,870 | |
| 5. Development/Cash (Lines 3 minus 4) +/- | $ 1,921 | c. | $ | |
| 6. Initial Operating Deficit(L OF C) | $ 453,869 | Subtotal (a+b+c) | $ 688,756 | |
| 7. Discount Costs | $ | 16. Source of Fees and Grants: | | |
| 8. Interest Yield Costs | $ | a. | $ - | |
| 9. Working Capital (L OF C) | $ 232,966 | b. | $ | |
| 10. Min. Capital Investment (Sec. 202) | $ | c. | $ | |
| 11. Off-Site Construction Costs | $ | Subtotal (a+b+c) | $ - | |
| 12. Non-Mortgagable Relocation Expenses | $ | 17. Total Cash, Fees and Grants | | |
| 13. Other | $ | (Sum of Items 15 plus 16) | | $ 688,756 |
| Total Estimated Cash Required 14. (sum of Lines 5 through 13) | $ 688,758 | Note: Line 17 must equal or exceed Line 14 | | |

**Section K - Principal Participants**

1. ☐ Sponsor, ☐ Mortgagor, ☑ Borrower, ☐ Owner — Name
Englewood Terrace Limited Partnership
Address (include zip code)
Don Samuelson
310 North Milwaukee, Lake Villa, IL 60046
Telephone Number: 773-205-6410 — SSN/EIN: 38-2904963

2. Name
Address (include zip code)
Telephone Number — SSN/EIN

3. ☐ Consultant, ☐ Agent, ☑ Other Authorized Representative — Name
Address (include zip code)
Telephone Number — SSN/EIN

4. General Contractor Name
Babco Construction, Inc.
Address (include zip code)
1723 Howard Street
Evanston, IL 60202
Telephone Number: (847)869-2100 — SSN/EIN

5. Sponsors Attorney Name
Address (include zip code)
Telephone Number — SSN/EIN (Optional)

6. Architect Name
T.D. Dunaj, AIA
Address (include zip code)
310 South Michigan Avenue, Suite 1404
Chicago, IL 60604
Telephone Number: (312)356-0310 — SSN/EIN (Optional)

**Section L - Application (SAMA and Feasibility Letter)**

The Undersigned certifies that : (1) He/She is legally authorized to represent the entity(ies) identified below with respect to all transactions pertaining to this application and all matters related to it; (2) Any and all action(s) by the undersigned is/are legally binding on the principal(s) and the entity(ies) being represented; (3) He/She is familiar with the provisions of the regulations issued by the Department of Housing and Urban Development (HUD) pursuant to the above-identified section(s) of the respective Housing Act(s);(4)To the best of his/her knowledge and belief, the entity(ies) identified below has/have complied, or will be able to comply, with all the requirements of the regulations which are a prerequisite with respect to participation in the program(s) selected; (5) The principal(s) is/are aware that disclosure of certain financial information will be required by HUD in the course of processing this application; (7) That he/she has made a physical inspection of the property and, in his/her opinion, the site plan submitted conveys a concept which can be reasonably followed in practice; (8) The proposed construction will not violate recorded zoning ordinances and restrictions; (9) To the best of his/her knowledge and belief no information or data contained herein or in the exhibits or attachments submitted herewith, are in any way false or incorrect and that they are truly descriptive of the project or property which is intended as security for the proposed mortgage loan and/or is presented for consideration with respect to the request for approval of a Housing Assistance Payments Contract.

The Undersigned assures and agrees that: (1) Pursuant to the regulations and the related requirements of HUD neither the entity(ies) identified below nor anyone authorized to act on its/their behalf, will decline to sell, rent or otherwise make available any of the property or housing in the project, identified herein, to a prospective purchaser or tenant because of race, color, religion, sex or national origin; (2) The entity(ies) identified below will comply with Federal, State and local laws and ordinances prohibiting discrimination; and (3) Failure or refusal to comply with the requirements of either (1) or (2) shall constitute sufficient basis for the Commissioner to reject requests for future business with the identified entity(ies) or to take any other action that may be appropriate.

☐ Herewith is a check for $ ______ in payment of the required fee for a SAMA letter.

| Principal Contact | Signed | Date |
|---|---|---|
| Telephone Number | On Behalf of: ☐ Sponsor, ☐ Mortgagor | ☑ Borrower ☐ Owner |

**Page 1220**



form HUD-92013

Section M - To the Federal Housing Commissioner

☑ 1. Request for Mortgage Insurance:

Request is hereby made for a ☐ Conditional Commitment ☒ Firm Commitment to provide mortgage insurance on a loan, which will involve: ☒ Insurance Advances During Construction ☐ Insurance Upon Completion, with respect to a principal loan of $11,848,300 which will bear interest at the rate of 6.83 % on the Construction Loan and 6.93 % on the Permanent Loan. The undersigned mortgagee requests consideration for mortgage insurance pursuant to the provision of Section 221(d)4 of the National Housing Act, and the HUD regulations applicable thereto. Said insurance is being requested to cover a loan which is to be secured by a first mortgage on the property described herein. After examining the proposed security, the undersigned considers such project to be desirable and is interested in making a loan in the principal amount and at the interest rate stated above. The loan will require repayment of the principal over a period of 480 months ( 40 years) in accordance with an amortization plan acceptable to you. It is understood and agreed that the actual financing fee (Item G-29) will not exceed 2.0 % of your commitment amount Presented herewith is a check for $ 2,366.00* which is in payment of the application fee required by HUD regulations. * 31,576.90 previously paid

☐ 2. Request for Approval of Housing Assistance Payments Contract (Section 8):

The undersigned owner requests your consideration with respect to approving a Housing Assistance Payments Contract pursuant to Section 8 of the U.S. Housing Act of 1937, as amended, and the related regulations applicable thereto. Submitted herewith is a proposal which defines the scope of the improvements and the type and quality of the housing which will be provided on the property described herein. Said property, upon completion of the improvements, will comply with the applicable standards and related regulations of the Department of Housing and Urban Development. Such proposed housing is being offered for lease, to eligible tenants at the stated contract rents, pursuant to the provisions of the regulations pertaining to the above-referenced U.S. Housing Act.

☐ 3. Request for a Section 202 Loan: Principal Amount $______ @ Permanent Interest Rate of ____%

Pursuant to Section 202 of the Housing Act of 1959, as amended, and the regulations applicable thereto, the undersigned borrower hereby requests a loan in the principal amount and at the interest rate stated above. The proceeds of the loan are to be used for development of the property described herein. The scope of the development of the property will be consistent with that information pertaining to improvements, submitted for your consideration. The loan is to be secured by a first mortgage on the property described herein. The principal amount of the loan will be repaid over a period of _____ months ( ____ years) in accordance with an amortization plan acceptable to you.

| Name and Address of Mortgagee | | Principal Contact |
|---|---|---|
| Developers Mortgage Corporation<br>221 North LaSalle Street, Suite 3333<br>Chicago, Illinois 60601 | | Alan R. Cravitz<br>Telephone Number<br>(312)332-2013 |
| Signed (Proposed Mortgagee (Use with Item 1)<br>[signature] | Date<br>4/26/2002 | Signed (Owner Item 2)(Borrower Item 3) | Date |

**Englewood v. United States**
**03-2209**
**Joint Appendix**

# JA 125

| | | | | | |
|---|---|---|---|---|---|
| 992. | 5/24/2002 | Gustin | Email to Maisonet re: Congressional: South Pointe | E2272-2273 | AC |
| 993. | 5/1/2002 | Gustin | Email to Mayfield re: South Pointe: Draft Decision Letter | E2274 | AC |
| 994. | 4/29/2002 | Gustin | Email series to Mayfield re: Follow-up on Southpointe | E2275-2276 | AC |
| 995. | 4/29/2002 | Mayfield | Email series to Gustin re: Follow-up on Southpointe | E2277 | AC |
| 996. | 4/29/2002 | Gustin | Email series to Hinsberger re: Follow-up on Southpointe | E2278 | AC |
| 997. | 4/9/2002 | Gustin | Email to Thomas re: South Pointe: Moving residents | E2279-2281 | AC |
| 998. | 4/9/2002 | Thomas | Email series to Gustin re: Moving residents | E2282 | AC |
| 999. | 3/8/2002 | Maisonet | Email to Gustin re: South Pointe Package | E2283 | AC |
| 1000. | 3/8/2002 | Hinsberger | Email series to Gustin re: South Pointe Appeal | E2284 | AC |
| 1001. | 3/8/2002 | Gustin | Email to Maisonet re: South Pointe Memo – revised | E2285 | AC |
| 1002. | 3/7/2002 | Gustin | Email to Hinsberger re: South Pointe Appeal | E2286 | AC |
| 1003. | 3/7/2002 | Gustin | Email to Hinsberger re: South Pointe | E2287 | AC |
| 1004. | 3/5/2002 | Hinsberger | Email series to Gustin re: Letter re Abatement, Excess Payment, Appeal | E2288 | AC |
| 1005. | 3/4/2002 | Maisonet | Email to Gustin re: Letter re Abatement, Excess Payment, Appeal | E2289 | AC |
| 1006. | 3/4/2002 | Gustin | Email to Thomas re: Letter re Abatement, Excess Payment, Appeal | E2290 | AC |
| 1007. | 2/27/2002 | Miller | Email series to Gustin re: South Pointe Appeal | E2291-2292 | AC |
| 1008. | 2/27/2002 | Gustin | Email to Miller re: South Pointe Appeal | E2293 | AC |
| 1009. | 2/26/2002 | Gustin | Email series to Maisonet re: South Pointe Letter | E2294-2296 | AC |

**Englewood v. United States**
**03-2209**
**Joint Appendix**

# JA 126

04/30/2002 15:19 3132275555 PM ONE SULLIVAN WARD PAGE 03
05/03/02 14:08 FAX 248 746 2760 NO.345 D02
NORTHFIELD PGT + 1 248 746 2760
05/02/02 14:53

U. S. Department of Housing and Urban Development
Washington, D.C. 20410-8000

MAY 2 - 2002

OFFICE OF THE ASSISTANT SECRETARY
FOR HOUSING-FEDERAL HOUSING COMMISSIONER

David S. Snyder, Esquire
Sullivan Ward Bone Tyler & Asher
25800 Northwestern Highway, 1000 MacCabees Center
PO Box 222
Southfield, MI 48037-0222

SUBJECT: South Pointe Towers Apartments, Chicago, IL
HAP Contract Number: IL06-E000-034
NOTICE OF REVIEWING OFFICIAL'S APPEAL DECISION

Dear Mr. Snyder:

HUD appreciates your attendance (as counsel to the subject project's owner), John Hayes' attendance (as a principal for the owner), and Don Samuelson's attendance (as the principal for the current managing agent for the project and as its proposed acquirer) at the appeal conference held at HUD's Washington D.C., offices, on April 16, 2002. In addition to myself as the HUD conference official designated to review the appeal, conduct the conference, and issue the written decision, Chicago Hub Director Edward Hinsberger and Chicago DEC Lead Attorney Gregory Gustin also attended the conference that lasted approximately 90 minutes.

In addition to the materials that you submitted to HUD with your client's notice of appeal, at the conference you also delivered a letter dated April 16, 2002, addressed from Mr. Hayes to me. Mr. Samuelson also delivered a package of nine letters, including his letter dated April 8, 2002, to Steve Gladden of the IHDA Trust fund. Subsequent to the meeting, Mr. Samuelson provided additional copies of some materials delivered for the appeal conference. Neither you, your client, nor Mr. Samuelson, submitted other materials for me to consider in reaching my decision as reviewing official. No additional time to do so or to confer was, to date and upon my query at the conference, requested. Therefore, my decision is reached upon the record provided and the statements of the several participants attending the appeal conference.

05/02/02 THU 15:49 (TX/R
05/03/02 FRI 14:08 (TX/RX

EXHIBIT Q

04/30/2002 15:15 3132275385 PM CHE PAGE 04
05/03/02 14:05 FAX 245 745 2759 SULLIVAN BANK NO 345 P07
05/02/02 14:55 PORTFOLIO MGT + 1 245 745 2759

As you know, the appeal conference was convened as a result of your client's February 13, 2002, appeal of the Chicago Hub's February 7, 2002, final decision to terminate the Section 8 assistance for the project as it stated in its November 30, 2001, Notice of Abatement and Termination and related communications and notices. The purpose and method of the conference is set forth at 24 CFR Part 401, Subpart F, and pertinent sections of the Department's Renewal Guide. The effect of my decision, as reviewing official, is a final determination for the purposes of Section 516(o) of MAHRA and is not subject to judicial review. 24 CFR Part 401, Subpart F, Section 401.652.

On behalf of the Department, as the reviewing official as aforesaid, please be advised that the Department affirms the Chicago Hub's final decision in this regard without modification or reversal. The project owner and its representatives did not present any new material or other adequate information for me to conclude otherwise. Contrary to the owner's claims, the Department's lengthy efforts in this matter were not confused. Rather, the record discloses the successive, untimely, and failed efforts of the project's owner and prior management to satisfactorily resolve ongoing breaches of their business agreements with HUD which, among other things, posed ongoing risks to the project's residents. Accordingly, in affirming the Chicago Hub's final decision, it is my opinion that the actions taken and intended to be taken by the Department in this regard are affirmed as being appropriate and reasonable and should not be reversed or modified.

Again, the Department appreciates your efforts and the gravity of this matter. We appreciate your cooperation and the courtesies that have been extended.

Sincerely,

Howard D. Mayfield
Deputy Director
Office of Asset Management

cc: Edward J. Hinsberger
Margarita Maisonet
Gregory G. Gustin

05/02/02 THU 16:43 [TX/RX NO 5535]

05/03/02 FRI 14:09 [TX/RX NO 5005]