U.S. Department of Housing and Urban Development

Illinois State Office
77 West Jackson Boulevard
Chicago, Illinois 60604-3507

Thomas

MAY 03 2002

Mr. Alan Cravitz
Developers Mortgage Corporation
221 North LaSalle Street Suite 3010
Chicago, Illinois 60601

Dear Mr. Cravitz:

SUBJECT: Amended Commitment for Insurance of Advances
Project No. 071-35696
South Pointe Towers
Chicago, Illinois

This letter transmits the original and duplicate copies of the amended Firm Commitment for Insurance of Advances in the amount of $11,648,300, issued on the date of this letter together with a copy of FHA forms 92264, 92264A.

You should contact this office not less than two weeks prior to the start of construction to determine if a wage conference for your project is necessary. If a wage conference is deemed necessary, you or your representative, the general contractor, and any subcontractors who may be available should attend. Please call Mr. David Richardson, Office of Labor Relations at (312) 353-6236 extension 2236, to discuss this issue.

In your commitment conditions, you will note that Previous Participation, FHA Form 2530, clearance is required for all project participants as they are defined in HUD Handbook 4065.1 We will not set a closing date for your project until all required clearances have been obtained. When you submit your closing documents, you should obtain a copy of our record of 2530 clearances for this project so that you can correct any omissions.

A 2300

Thank you for your cooperation in these matters. We look forward to the development of your project. If you should have any questions regarding this matter, please contact your housing representative, Maggie O'Connor, at (312) 353-6236 extension 2193.

Sincerely,

Edward J. Hinsberger
Director, Chicago Multifamily HUB

Edward Hinsberger
Director
Chicago Multifamily HUB

Enclosures

A 2301

DOC:G:southpointefirm
CC: O'Connor
Etzkorn
Schneider
Tessler
Vahl
Coleman
Jensen – Legal
King

____________________ ____________________
O'Connor Anderson

A 2302

ADDITIONAL COMMITMENT CONDITIONS

Project No: 071-35696

1. Construction shall not start prior to initial closing of the project unless specifically so authorized by this Administration.

2. Unless the mortgagor has in his possession a determination of prevailing wages issued by the Secretary of Labor, in effect at the time of closing, and a wage conference with respect thereto has been held between all parties of interest, the initial closing shall not occur, nor shall construction of the project commence.

3. Prior to HUD's Initial Closing, submit written evidence from the authorities that have jurisdiction (municipality, county, and state), that public sanitary sewer and public water systems are adequate to serve the subject project.

4. Prior approval of the FHA is required on Commercial leases.

5. The closing documents submitted to HUD prior to the time of Initial Endorsement must include both the construction and operating permits issued by the Illinois Environmental Protection Agency.

6. Fifteen (15) days prior to initial endorsement, the mortgagee shall submit evidence that it has a commitment for the permanent loan, or some other firm written assurance demonstrating that permanent financing will be available at the rate shown in the Firm Commitment Application. Any form of assurance must address, but is not limited to, the source of the financing, the term, interest rate, extension provisions, date for delivery of the permanent mortgage, and any conditions which are, will be part of, or will impact on the permanent financing arrangements.

7. The third sentence of paragraph 6 of the Commitment should be amended to read:

   "All changes in the Drawings and Specifications may be effected only with the prior written approval of the Lender and the Commissioner."

8. The reference to "Substantial Completion" under Article 2G of the Construction Contracts (2442 and 2442A) should be changed to "completion." Paragraph D under Article 2 of those contracts should be changed to read as follows:

   "The date of completion shall be the date the HUD Representative signs the HUD Representatives' trip report (HUD-5379) which indicates construction is complete and which report is subsequently endorsed by the Chief Architect as being the final inspection report."

A 2303

9. Prior to Initial Endorsement, the Mortgagor, Mortgagee, and the General Contractor (if there is an identity of interest with the mortgagor entity) must submit and execute the "Statement for Loan Guarantee and Loan Insurance" as required by HUD Notice #90-27. Additionally, disclosure of any payments for lobbying with other than federally appropriated funds must be made on the disclosure form contained in Notice #90-27.

10. So as to ensure the contractual association of the sponsor to the project:

    A. The withdrawal of any individual/firm relied on for financial capacity requires prior HUD approval.

    B. The following have been relied on for financial capacity:

       Don S. Samuelson

    C. The withdrawal of any individual/firm relied on for financial capacity could result in HUD declaring the commitment null and void.

    D. Closing documentation, i.e. organizational documents, shall reflect such continuing contractual relationships.

11. Previous participation clearance, Form HUD 2530, is required for all project principals prior to initial endorsement.

12. At least 10 days prior to HUD's initial endorsement/closing, provide evidence, if appropriate, that identity of interest requirements set forth in HUD Handbook 4450.1 have been met.

13. If the project has not proceeded to initial endorsement within 1 year from the date of issuance of the original firm commitment, said endorsement may not occur until the market needs analysis has been reviewed and approved again by HUD. Should the updated analysis be found unacceptable, the commitment may be subject to termination.

14. Prior to HUD's Initial Closing, submit written evidence of compliance with Section 404 of the Clean Water Act. Such written evidence must be obtained from the Department of the Army, Corps of Engineers in the form of a Wetlands permit or a determination that no such permit is required.

15. All secondary financing shall comply with HUD Handbooks 4470.1, Rev-2, Chg. 1, Chapter 16 and 4435.1, Rev-1, Chapter 1, regarding Grants and Loans.

16. 15 days prior to Initial Endorsement, the mortgagee shall submit written assurance demonstrating that permanent financing will be available at the rate shown in the Firm Commitment Application. Any form of assurance must address, but is not limited to, extension provision, date of delivery of the permanent mortgage, and any conditions which are, will be part of, or will impact on, the permanent financing arrangements.

17. Prior to initial endorsement, there shall be compliance with Handbooks 4470.1, Rev-2, Chapter 18, 4430.1, paragraph 1-42, and HUD Notice H95-4, regarding Low Income Housing Tax Credits.

18. This commitment is subject to a review of the relevant management documents.

19. Provide a certification at the time of Initial Endorsement that the property is in substantially the same physical condition as it was at the time that this commitment was issued.

20. In as much as the Section 8 Contract has been abated and is being replaced by vouchers issued by the Chicago Housing Choice (CHC), and the rent structure used in underwriting this mortgage is based on said voucher but has not to date been approved by CHC, this commitment shall be subject to reprocessing if CHC does not approve the rent structure.

21. Rehabilitation plans for the building must incorporate noise attenuation measures designed to reduce noise levels below 30 STC.

22. An ongoing asbestos operations and maintenance plan is required.

23. Prior to Initial Endorsement, the owner must have an approved Affirmative Fair Housing Marketing Plan for South Pointe Towers.

24. The underwriting conclusions set forth in this commitment are based on the property attaining a Class 9 real estate tax status, which would result in lower real estate taxes than would otherwise be applicable. Should such a status not be obtained prior to initial endorsement, this commitment shall be subject to reprocessing.

A 2305

# Commitment for Insurance of Advances

Sections 207, 220, 221, 231, 232, 242 and 810; and Title XI

U.S. Department of Housing and Urban Development
Office of Housing
Federal Housing Commissioner

| | |
|---|---|
| Project Number: 071-35696 | Name of sponsor: Don S. Samuelson |
| To (Borrower): Englewood Terrace Limited Partnership | Street address: 310 North Milwaukee |
| Street Address: 310 North Milwaukee | City & State: Lake Villa, Illinois |
| City & State: Lake Villa, Illinois | Name of proposed Lender: Developers Mortgage Corporation |

The Federal Housing Commissioner, acting herein on behalf of the Secretary of Housing and Urban Development, will endorse for insurance under the provisions of Section 221d4 of the National Housing Act, and the Regulations thereunder now in effect, a mortgage note in the amount of $ 11,648,300, to be secured by a mortgage, on the property locate at 6425 South Lowe, Chicago, Illinois and consisting of approximately 171,000 square feet. The insurance endorsement will be subject to compliance with the requirements of the Regulations, and the terms and conditions set forth below. The mortgage amount, however, is subject to reduction prior to final insurance endorsement of the mortgage note as provided in the Regulations.

1. The mortgage note shall be payable in monthly installments in accordance with the payment provision checked and completed below:

(a) ☐ **Combination Declining Annuity Plan**

The loan shall bear interest at the rate of ______ percent per annum payable on the first day of each month on the outstanding balance of principal. The first payment to principal (commencement of amortization) shall be due on the first day of the ________ month following the month in which the mortgage is dated. The mortgage shall provide that the first payment to principal shall be in the amount of $______________. Thereafter, on the first day of each succeeding month until the ________ installment has been paid, an installment of principal shall be paid in an amount equal to ________ percent of the principal payment which became due on the first day of the next preceding month. The ________ payment and, until the mortgage is paid in full, each succeeding payment shall be in an amount equal to ________ percent of the last preceding payment. The maturity and final payment date shall be ________ years and ________ months following the due date of the first payment to principal (commencement of amortization).

(b) ☐ **Accelerating Curtail Declining Annuity Plan**

The loan shall bear interest at the rate of ______ percent per annum payable on the first day of each month on the outstanding balance of principal. The first payment to principal (commencement of amortization) shall be due on the first day of the ________ month following the month in which the mortgage is dated. The mortgage shall provide that the first payment to principal shall be in the amount of $______________. Thereafter, on the first day of each succeeding month until the entire indebtedness has been paid, an installment of principal shall be paid in an amount equal to ________ percent of the principal payment which became due on the first day of the preceding month. The maturity and final payment date shall be ______ years and ________ months following the due date of the first payment to principal (commencement of amortization).

(c) ☒ **Level Annuity Monthly Payment Plan**

The loan shall bear interest at the rate of 6.93 percent per annum payable on the first day of each month on the outstanding balance of principal. The first payment to principal (commencement of amortization) shall be due on the first day of the fourth month following ~~XXXXXXXXXXXXXXXXXXXXXXXXXX~~ completion of construction. The loan shall be payable on a level annuity basis by 480 monthly payments of principal and interest in the amount of $ 71,794.68. The maturity and final payment date shall be ________ years and ________ months following the due date of the first payment to principal (commencement of amortization).

(d) ☐ **Level Annuity Monthly Payment Plan** (Sec. 221(d)(3) Below Market Interest Rate Mortgage)

The loan shall bear interest at the rate of ______ percent per annum payable on the first day of each month on the outstanding balance of principal up to and including the date of final endorsement of the secured note. Thereafter, the loan shall bear interest at the rate of ________ percent per annum payable on the first day of each month on the outstanding balance of principal. The first payment to principal (commencement of amortization) shall be due on the first day of the ________ month following the month in which the mortgage is dated. The loan shall be payable on a level annuity basis by monthly payments of principal and interest in the amount of $______________. The maturity and final payment date shall be ______ years and ________ months following the due date of the first payment to principal (commencement of amortization).

2. A project shall be constructed on the mortgaged property in accordance with Drawings and Specifications filed with the Commissioner and designated as south Pointe Towers FHA Project No. 071-35696 dated 2-11-2002. The Drawings and Specifications, which include "General Conditions of the Contract for Construction" (AIA Document A 201) and "Supplementary Conditions of the Contract for Construction (form HUD-2554), shall be identified in a manner acceptable to the Commissioner by the following parties or their authorized agents: Mortgagor, Design Architect, Architect administering the Construction Contract, Contractor and the Contractor's Surety.

3. At least 15 days prior to the anticipated date for initial insurance endorsement of the mortgage note, two draft copies of each of the following documents and exhibits shall be submitted to the Commissioner. After review, the place and date of the initial closing will be designated, at which time the following documents and exhibits in final form shall be delivered to the Commissioner for approval:

(a) The mortgage and the note evidencing the debt secured.

(b) The Building Loan Agreement (form HUD-92441) between the Mortgagee and the Mortgagor governing advances of the mortgage proceeds.

(c) The Construction Contract (form HUD-92442 or 92442A) between the Mortgagor and the General Contractor whereby the project is to be built.

(d) Contractor's Certification of Labor Standards and Prevailing Wage Requirements.

(e) Agreement and Certification executed by the Mortgagee and Mortgagor.

(f) Owner-Architect Agreement (appropriate HUD form).

(g) Title evidence in conformity with the Regulations which shall show that title to the property on the date of initial endorsement of the mortgage for insurance is vested in the Mortgagor free of all encumbrances other than the mortgage, and free of all reservations of title (either junior or prior to said mortgage), except such as are specifically determined to be acceptable by the Commissioner. If such title evidence is in the form of a title insurance policy, it shall by its terms inure to the benefit of the Mortgagee and the Secretary of Housing and Urban Development, as interest may appear. Such title evidence must be accompanied by a survey of the property, together with the Surveyor's Certificate showing that there are no easements or encroachments upon the subject property except those acceptable to the Commissioner, which survey will be extended from time to time during construction to show that the improvements on the site have been erected solely upon the land covered by the mortgage and within the building restriction lines, if any, on said land and do not encroach upon or overhang any land not covered by the mortgage nor upon any easement or right-of-way. Evidence will be required to show that the premises are not zoned or restricted so as to prevent the construction of the improvements, and that building and other permits have been issued by legally constituted authorities having jurisdiction.

(h) Assurance of the completion of the project. 100% each Performance & payment bond or 25% Completion* Assurance Agreement.

(i) Assurance that adequate sewer, water, gas, and electric facilities will be fully installed prior to completion of the project and that necessary public streets, sidewalks, and curbing outside the project site, if not yet constructed, will be fully completed within a reasonable time after completion of the project.

(j) The Mortgagee's Certificate itemizing the charges made by you in connection with the mortgage transaction and evidencing the collection by you or your nominee from the Mortgagor of the following sums to be applied to the following items:

(1) Deposit to meet cost of equipping and renting the project subsequent to completion of the entire project or units thereof, and to be applied to taxes, mortgage insurance premiums, property insurance premiums and assessments required by the terms of the mortgage accruing subsequent to initial endorsement of the mortgage for insurance, and not included in the proceeds of the mortgage ...... $ 232,966. (Note: For Section 232 Nursing Home Projects this deposit is required only for accruals of taxes, mortgage insurance premiums, property insurance premiums and assessments.)

(2) Funds, if any, required over and above mortgage proceeds for completion of the project $ 0. This sum represents the difference between the Commissioner's estimate of the total cash required for carrying charges, financing, and for construction of the project, including builder's fees (or builder's and sponsor's profit and risk allowance, if any), architect's fees, and the maximum amount of the mortgage to be insured. These funds may be reduced by so much of the profit and risk allowance and fees, up to a maximum of $ 0, as the closing documents show are not to be paid in cash.

(3) Escrow deposit, if any, to cover off-site utilities and streets... $ 0.

(4) The Mortgagor shall establish to the Commissioner's satisfaction that, in addition to the proceeds of the insured mortgage, the Mortgagor has funds in the amount of $ 458,850, or has made financial arrangements acceptable to the Commissioner in order to meet the expenses of the project from the date of initial occupancy until 12 months after the date of final endorsement as the Commissioner estimates is necessary to establish a profitable operation. The funds shall be deposited with the Mortgagee or other depository acceptable to the Commissioner on or before the date of initial endorsement, and such funds shall be held in a special account under an agreement approved by the Commissioner.

(k) The Escrow Agreement providing for the deposit, if any, required by Item (i)(3) of this paragraph and covering off-site utilities and streets.

(l) The Mortgagor's Certificate certifying to the priority of the mortgage and to other matters set forth therein.

(m) The instrument under which the Mortgagor entity is created, unless the Mortgagor is an individual.

4. The Mortgagor must possess the powers necessary for operating the project and meeting all the requirements of the Secretary of Housing and Urban Development for insurance of the mortgage. At the initial insurance endorsement of the mortgage note, there shall be filed with the Commissioner copies of all instruments or agreements necessary under the laws of the applicable jurisdiction to authorize the execution of the mortgage and the other closing documents, and a Regulatory Agreement or other instrument to permit the Commissioner's regulation of the Mortgagor as to rents, charges, and methods of operation. Such instrument shall provide, among other things, for the establishment of a Reserve Fund for Replacements under control of the Mortgagee by payment of $ 46,662 per annum, to be accumulated monthly commencing on the date of the first payment to principal as established in the insured mortgage, unless a later date is agreed to by the Commissioner.

5. (a) Approval of advances in accordance with the Building Loan Agreement must be obtained on a form prescribed by the Commissioner prior to the date of each advance to be insured. A Contractor's Prevailing Wage Certificate will be filed with the request for approval of each advance which includes a payment for construction costs.

(b) During the course of construction, the Commissioner and his representatives shall at all times have access to the property and the right to inspect the progress of construction, and an inspection fee in the amount of $ 36,300 shall be paid upon the initial insurance endorsement of the mortgage note. The inspection of construction by a representative of the Commissioner shall be only for the benefit and protection of the Secretary of Housing and Urban Development.

(c) Upon completion of the project in accordance with the Drawings and Specifications the mortgage note will be finally endorsed for insurance to the extent of the advances of mortgage proceeds approved by the Commissioner, subject to reduction as provided in the Regulations.

A 2307

6. Any change in the Drawings and Specifications or in the conditions upon which this commitment is based, which may occur after the date hereof, shall be explained in writing, or in a supplementary application if required by the Commissioner, and must be approved by the ...missioner prior to initial endorsement. Any such change occur... ...ubsequent to initial endorsement must be brought to the attention ...e Commissioner immediately upon occurrence, and, except for such changes in the Drawings and Specifications which may be authorized by the Architect, must be approved by the Commissioner prior to the date on which the Commissioner is requested to approve any further advance for insurance. Changes in the Drawings and Specifications which result in any net construction cost increase, or will, change the design concept, or will result in a net cumulative construction cost decrease of more then 2% of the contract amount may be effected only with the prior written approval of the Lender and the Commissioner. The Commissioner's approval of any change described above may be subject to such conditions and qualifications as the Commissioner in his discretion may prescribe.

7. If under the laws of the jurisdiction in which the project is located, the personal property of the Mortgagor, which is used in the operation of the project, is not covered by and subject to the real estate mortgage, the Mortgagee shall require and receive from the Mortgagor, prior to the final insurance endorsement of the mortgage note, a Security Agreement and a Financing Statement or such other security instrument as may be necessary to effect a first lien on such personal property in favor of the Mortgagee.

8. Any change in the sponsorship upon which this commitment is predicated must be requested in writing by the Mortgagee on behalf of any proposed substitute sponsor, and such request must be approved in writing by the Commissioner. Any sponsor or principal (including the principals of any parent entity of such sponsor or principal), who is ...or who may later become involved in this project by way of ...ial interest, employment or otherwise, and who has not filed a ...ertificate with the Commissioner fully disclosing his previous par...ipation in FHA mortgage insurance programs, shall file such certifi...ate on the form prescribed by the Commissioner and must be approved by the Commissioner.

9. All certificates, documents and agreements called for by this commitment shall be on forms approved or prescribed by the Commissioner and shall be completed, executed and filed in the number of copies and in such manner as he shall prescribe.

10. This commitment shall terminate ________________ days from the date hereof unless renewed or extended by the Commissioner. Prior to any renewal or extension of this commitment, the Commissioner may, at his option, reexamine the commitment to determine whether it shall be extended in the same amount, or shall be amended to include a lesser amount.

11. A request for the reopening of this commitment within 90 days of its termination must be accompanied by the reopening fee prescribed by the Regulations.

12. The Design Architect and the Architect administering the construction contract shall each be covered by a policy of professional liability insurance in an amount consistent with insurance industry practice. At initial closing, there shall be provided for each Architect the writing agent's certificate in substantially the following form:

To: Mortgagee and Secretary of Housing and Urban Development

I certify that ____________________(Name of Architect) is insured in the amount of $____________________ under ____________________(Name of Insurer) Policy No. ______________ of Architect and/or Engineers Professional Liability Insurance.

Your attention is directed to the Regulations covering the assignment or the transfer of the insured mortgage, in whole or in part, and the transfer of your rights, privileges, and obligations under the contract of mortgage insurance.

Special conditions set forth below or attached hereto and identified as additional numbered paragraphs are made a part hereof.

See additional conditions.

Dated 5/3/2002

Secretary of Housing and Urban Development
By: Federal Housing Commissioner

By: Edward Hnsbaje[?]
Authorized Agent

A 2308

...eplaces FHA-2432, which may be used



HUD-92432 (5/79)
ref. Handbooks 4571.4 & 4571.5

# Supplement to Project Analysis

U.S. Department of Housing and Urban Development
Office of Housing
Federal Housing Commissioner

OMB Approval No. 2502-0331 (exp. 4/30/5

Section ~~or Title Number~~ 221(d)(4)

[ ] Valuation Trial [ ] Conditional [X] Firm AMENDED

See last page for Public Reporting burden statement before completing this form

Name of Mortgagor (Borrower): ENGLEWOOD TERRACE LIMITED PARTNERSHIP

Project Number: 071-35696

Name of Project: SOUTH POINTE TOWER

Location of Project (street, city & state): 6425 SOUTH LOWE AVENUE, CHICAGO, ILLINOIS

**Type of Borrower**

[X] Private [X] Profit [ ] Public [ ] Nonprofit [ ] State or Federal Instrumentality, etc
[ ] Management Coop. [ ] Sales Coop. [ ] Investor-Sponsor [ ] Builder-Seller [ ] Limited Distribution

**Type of Project**

[X] Rental Housing [ ] Mobile Home Court [ ] Board and Care [ ] New Construction [ ] Non-Elevator
[ ] Cooperative [ ] Nursing Home [ ] Single Rm. Occupancy [X] Rehabilitation [X] Elevator
[ ] Condominium [ ] Intermediate Care Facility [ ] Redevelopment [ ] Existing
[ ] Capital Advance 202/811 [ ] Housing for the Elderly [ ] Supplement Loan [ ] ______

## I. Determination of Maximum Insurable Mortgage

| Criteria | | column 1 | column 2 | column 3 |
|---|---|---|---|---|
| 1. Mortgage or Loan Amount Requested in Application | | | | $ 11,648,300 |
| 2. Reserved | | | | $ |
| 3. Amount Based on ~~Value or~~ Replacement Cost | | | | |
| a. ~~Value~~ (Replacement Cost) ~~in Fee Simple~~ | $ 12,995,291 x 90 % | | $ | |
| b. (1) Value of Leased Fee | $ | | | |
| (2) Grant/Loan funds attributable to R. C. items | $ | | | |
| (3) Excess Unusual Land Improvement | $ | | | |
| (4) Cost Containment Mortgage Deduction | $ | | | |
| (5) Total lines (1) to (4) | $ x % | $ | | |
| c. Unpaid Balance of Special Assessment | | $ | | |
| d. Total line b plus line c | | | $ | |
| e. Line a minus line d | | | | $ 11,695,700 |
| 4. Amount Based on Limitations Per Family Unit | | | | |
| a. Number of no Bedroom Units | x $ | $ | | |
| Number of one Bedroom Units | 60 x $ 98,404 | $ 5,904,240 | | |
| Number of two Bedroom Units | 157 x $ 119,656 | $ 18,785,992 | | |
| Number of three Bedroom Units | 86 x $ 154,791 | $ 13,312,226 | | |
| Number of four or more Bedroom Units | x $ | $ | | |
| b. Cost Not Attributable to Dwelling Use | $ x % | $ | | |
| c. Site Not Attributable to Dwelling Use | $ x % | $ | | |
| d. Total lines a through c | | | $ | |
| e. Total Number of Spaces | x $ | | $ | |
| f. Sum: Value of Leased Fee and Unpaid Balance of Special Assessment(s) | | | | $ |
| g. Line d or line e, whichever is applicable, minus line f | | | | $ 38,002,200 |
| 5. Amount Based on Debt Service Ratio | | | | |
| a. Mortgage Interest Rate | | 6.93 % | | |
| b. Mortgage Insurance Premium Rate | | .50 % | | |
| c. Initial Curtail Rate | | .466240 % | | |
| d. Sum of Above Rates | | | 7.896240 % | |
| e. Net Income | $ 1,022,133 x 90 % | | $ 919,920 | |
| f. Annual Ground Rent $ ______ + Annual Spec. Assmt. $ ______ | | | $ | |
| g. Line e minus line f | | | $ | |
| h. Line g divided by line d | | | | $ |
| i. Annual Tax Abatement Savings $ ______ divided by ______ % | | | | $ |
| j. Line h plus line i | | | | $ 11,650,100 |

A 2309

Previous editions are obsolete



form HUD-92264-A (2/9
ref Handbooks 4480.1 & 4470

## I. Determination of Maximum Insurable Mortgage (cont.)

| Criteria | column 1 | column 2 | column 3 |
|---|---|---|---|
| **6. Amount Based on Estimated Cost of Rehabilitation Plus (i) "As Is" Value, or (ii) Acquisition Cost, or (iii) Existing Mortgage Indebtedness Against the Property Before Rehabilitation:** | | | |
| a. Total Estimated Development Cost | $ | | |
| b. Estimated Cost of Off-Site Construction | $ | | |
| c. Sum of lines a & b | | $ | |
| d. Grant/Loan funds attributable to R. C. items | $ | | |
| e. Line c minus line d | | $ | |
| f. "As Is" Value of Prop. Before Rehab. $ ____ X ____ % | $ | | |
| g. Existing Mortgage Indebtedness (Property Owned) or Purchase Price of Property (to be Acquired) ____ | $ | | |
| h. Line e plus line f or line g, whichever is less | | $ | |
| i. Line h X ____ % | | | $ |
| **7. Amount Based on Borrower's Total Cost of Acquisition Section 223(f)** | | | |
| a. Purchase Price of Project | $ | | |
| b. Repairs and Improvements, if any | $ | | |
| c. Other fees | $ | | |
| d. Loan Closing Charges * | $ | | |
| e. Sum of lines a through d | | $ | |
| f. Enter the Sum of any Grant/Loan and Reserves for Replacement and Major Movable Equipment to be purchased as an asset of the project | | $ | |
| g. Line e minus line f | | $ | |
| h. Line g X ____ % | | | $ |
| **8. Amount Based on Sum of Unit Mortgage Amounts** | | | $ |
| **9. Amount Based on Estimated Cost to Borrower** | | | |
| a. Total Estimated Cost (Exclusive of Site and Required Construction Off the Site) | $ | | |
| b. Purchase Price of Site | $ | | |
| c. Total Cost of Clearing Site, if any | $ | | |
| d. Expense of Relocating Occupants, if any | $ | | |
| e. Cost of Off-Site Construction, if any | $ | | |
| f. Sum of line a through line e | | $ | |
| g. Line f X ____ % | | | $ |
| **10. Amount Based on Existing Indebtedness, Repairs, and Loan Closing Charges Section 223(f)** | | | |
| a. Total Existing Indebtedness | $ | | |
| b. Required Repairs | $ | | |
| c. Other Fees | $ | | |
| d. Loan Closing Charges * | $ | | |
| e. Sum of line a through line d | | $ | |
| f. Enter the Sum of any Grant/Loan and Reserves for Replacement and Major Movable Equipment on Deposit | | $ | |
| g. Line e minus line f | | $ | |
| h. 70% of Value $ ____ X 70% | | $ | |
| i. Greater of line g or line h | | | $ |

* Attach format for computing loan closing charges.

A 2310

Maximum Insurable Mortgage (Lowest of the Foregoing Criteria) $ 11,648,300

Previous editions are obsolete



form HUD-92264-A (2/...
ref Handbooks 4480.1 & 447...

## II. Total Requirements for Settlement

**Part A**

| | | |
|---|---|---|
| 1. Fees Not to be Paid in Cash | | |
| a. BSPRA/SPRA | | $ |
| b. Builder's Profit | | $ |
| c. Other | | $ |
| Total (enter in part B on line 5) | | $ |
| 2. Commitment, Mktg., Fees and Discounts and Escrows | | |
| a. Fees | GNMA | $ |
| | Other | $ |
| b. Discounts | Permanent Loan | $ |
| | Construction Loan | $ |
| c. Escrows | Debt Service Reserve (Board & Care) | $ |
| | Other | $ |
| Total (enter in part B on line 9) | | $ |
| 3. Working Capital | | |
| a. Working Capital | | $ |
| b. Minimum Capital Investment (Sec. 202 & Sec. 811) | | $ |
| c. Non-Realty Items Not Included in Mortgage | | $ |
| Total (enter in part B on line 10) | | $ |

**Part B**

| | | |
|---|---|---|
| 1. a. Development Cost | $ 9,350,291 | |
| b. Adjustment for Contracted Amounts in Excess of form HUD-92264 Estimates | | |
| (1) Construction Contract | $ | |
| (2) Architect's Contract | $ | |
| (3) Other | $ | |
| c. Total of lines a & b | | $ 9,350,291 |
| 2. Land Indebtedness (or Cash Required for Land Acquisition) | | $ 2,300,000 |
| 3. Subtotal (lines 1c + 2) | | $ 11,650,291 |
| 4. a. Mortgage Amount | $ 11,648,300 | |
| b. Grant/Loan | $ | |
| 5. Fees Not to be Paid in Cash | $ 159,893 | |
| 6. Subtotal (lines 4a + 4b + 5) | | $ 11,808,193 |
| 7. Cash Investment Required (line 3 minus line 6) | | $ (157,902) |
| 8. Initial Operating Deficit * | | $ 458,850 |
| 9. Commitment, Marketing Fees, Discounts and Escrows | | $ |
| 10. Working Capital | | $ 232,966 |
| 11. Offsite Construction and Demolition Costs ($ + $ ) | | $ |
| 12. Total Estimated Cash Requirement (sum of lines 7 + 8 + 9 + 10 + 11) | | $ 533,914 |
| Front Money Escrow, If Any, (subtract line 6 from line 1) | | $ 0 |

* **Note:** for Section 223(f) cases, attach the format for computing the operating deficit.

## III. Source of Funds to Meet Cash Requirements

| Source | Funds Available |
|---|---|
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| **Total Available Cash for Project** | $ |

## IV. Recommendations, Requirements and Remarks

☐ Recommend Approval; Subject to Conditions Stated Below, If Any

☐ Recommend Rejection for Reasons Stated Below (If more space is needed, continue on page 4).

A 2311

Signature of the Mortgage Credit Examiner

x [signature]

Date 5/3/2002

Previous editions are obsolete



form HUD-92264-A (2/9
ref Handbooks 4480.1 & 4470

# Financial Requirements for Closing

Project Mortgage - Section 221(d)(4)

U.S. Department of Housing and Urban Development
Office of Housing
Federal Housing Commissioner

Project: SOUTH POINTE TOWER
Project Number: 071-35696

Mortgagor: ENGLEWOOD TERRACE LIMITED PARTNERSHIP

Mortgagee: DEVELOPERS MORTGAGE CORPORATION

Type of Project:
☒ Rental Housing ☐ Mobile Home Court ☐ Condominium ☐ New Construction ☐ Other (specify) ______
☐ Housing for Elderly ☐ Cooperative ☐ Nursing Home ☒ Rehabilitation

**I. Requirements for Completion**

1. HUD Total for All Improvements (including Mortgageable Equipment $ ______, if any) $ 7,087,402
2. Less Difference Between Fees Per Form 2264 and Cash Fees as Agreed To by:
   (a) Builder $ ______, (b) Architect $ ______ (c) Total $ ______
3. **HUD Estimate of Cash Required for Construction, Equipment (if any), and Fees** $ 7,087,402
4. Cash Required by Construction Contract, Including Builder's Cash Fee, Bond and Other Fees $ 6,947,402
5. Cash Required by Equipment and Furnishings Contract(s) $ ______
6. Architect's Declared Cash Fee:
   (a) Design $ 115,000, (b) Supervisory $ 25,000, (c) Total $ 140,000
7. Mortgagor's Other Fees $ ______
8. **Cash Required by Mortgagor's Contracts and Fees** $ 7,087,402
9. **Total Cash Required for Construction, Equipment (if any), and Fees (greater of item 3 or 8)** $ 7,087,402
10. Interest During Construction $ 618,232
11. Taxes During Construction $ 250,000
12. Insurance During Construction $ 120,000
13. HUD Mortgage Insurance Premium $ 116,483
14. HUD Examination Fee $ 34,945
15. HUD Inspection Fee $ 36,300
16. Financing Fee ( 2 %) $ 232,966
17. Allowance to Make Project Operational/Project Contingency (if applicable) $ ______
18. Permanent Lender Fee (______ %) $ ______
19. Title and Recording Expense $ 10,000
20. **Total Carrying Charges and Financing** $ 1,418,926
21. Legal, Organization, and Audit Expenses Legal $ 28,000 + Organization $ 5,000 + Audits $ 7,000 = $ 40,000
22. Housing Consultant Fee (Nonprofit only) $ ______
23. Contingency Reserve (if applicable) $ 644,071
24. **Total for On Site Improvements (Sum of Items 9, 20, 21, 22 and 23)** $ 9,190,399
25. (a) Mortgage Loan $ 11,648,300 plus (b) Grant/Loan $ ______
    minus (c) $ ______ = funds Available During Construction $ 11,648,300
26. **Cash to be Deposited in Escrow by Mortgagor (item 24 minus item 25)** $ -0-

A 2312

Replaces FHA-2283 which is obsolete



form HUD-2283 (1/95)
ref Handbook 4460.1