**Englewood v. United States**
**03-2209**
**Joint Appendix**

# JA 144

U.S. Department of Housing and Urban Development

Illinois State Office
77 W. Jackson Blvd.
Chicago, Illinois 60604-3507

cc: Dave Snyder
RJP
DDA
Mike McGhie
John Morrissey

AUG 22 2001

CERTIFIED MAIL - RETURN RECEIPT REQUESTED

Mr. John Hayes, General Partner
P.M. Group
1050 Corporate Office Drive
Suite 150
Milford, Michigan 48381

SUBJECT: 2530 Previous Participation Clearance
South Pointe Towers
Contract No. IL06-E000-034

Dear Mr. Hayes:

This letter serves to notify you that the form HUD-2530, Previous Participation Certification clearance has been adversely flagged for the participants listed below. This flag will affect your ability to participate in HUD programs nationwide.

Robert Pendergast
(General Partner)

John Hayes
(Partner)

Daniel D. Armstead
(Stockholder)

Michael G. McGhie
(Stockholder/Officer)

John R. Morrissey
(Stockholder/Officer)

P.M. Group, Inc.
(Stockholder)

P.M. One, Ltd.

P.M. One Equities, Inc.

Englewood Terrace
(Limited Partnership)

5251 Building Partnership
(General Partner)

Listed below are the reasons for the 2530 flag:

1. Unsatisfactory Physical Conditions of the subject property, which is a violation of your Housing Assistance Payment (HAP) Contract.

2. Failure to comply with the plan that you executed with the Departmental Enforcement Center (DEC).

In order to have this flag "lifted", the physical condition of the property must be brought up to HUD's satisfactory standards.

Thank you for your attention to this serious matter. Please direct any questions regarding this correspondence to Gwendolyn Thomas, Project Manager, at (312) 353-6236, Ext. 2246.

Sincerely,

Veronica Coleman

Veronica Coleman x 2121
Director, Project Management
Chicago Multifamily Hub

Greg Gustin x 2055

**Englewood v. United States**
**03-2209**
**Joint Appendix**

# JA 145

Edward Hinsberger
10/11/01 09:29 AM

To: Gregory G. Gustin/DEC/CHI/HUD@HUD
cc:
Subject: South Pointe

----- Forwarded by Edward Hinsberger/HSNG/CHI/HUD on 10/11/01 09:35 AM -----

Edward Hinsberger
10/01/01 10:15 AM

To: DSSA310@aol.com, jhayes@pmgroupinc.com
cc: alcrav@aol.com, Gwendolyn X. Thomas/HSNG/CHI/HUD@HUD, Kathy McMahon/HSNG/CHI/HUD@HUD, Maggie O'Connor/HSNG/CHI/HUD@HUD, Mary Anderson/HSNG/CHI/HUD@HUD, Veronica Coleman/HSNG/CHI/HUD@HUD, Beverly E. Bishop/CB/CHI/HUD@HUD
Subject: South Pointe

John/Don,
The Housing Authority has advised us that they will begin issuing vouchers for the residents at South Pointe today. The residents have been advised that they will be receiving them beginning today. As a result, the Sec. 8 contract will be terminated once all of the residents receive their vouchers. The residents can remain in the project if their individual units pass the CHAC inspection. If they care to move, the voucher is portable and they will be able to do that too.

We will continue to process the loan application for the refinance unless you advise otherwise. Since the rents that we would approve in a refinance would be the street rents, the absence of project based Section 8 should have little impact on the success of the project. Good screening and good management will determine the success of the project.

Ed

Edward Hinsberger

Edward Hinsberger
09/21/01 12:34 PM

To: DSSA310@aol.com, jhayes@pmgroupinc.com
cc: alcrav@aol.com, Edward Hinsberger/HSNG/CHI/HUD@HUD, Mary Anderson/HSNG/CHI/HUD@HUD, Maggie O'Connor/HSNG/CHI/HUD@HUD, Kathy McMahon/HSNG/CHI/HUD@HUD, Veronica Coleman/HSNG/CHI/HUD@HUD, Gwendolyn X. Thomas/HSNG/CHI/HUD@HUD
Subject: South Pointe

Don,
I got your email message this morning marked confidential, for that reason I am not forwarding it to everyone, although there was nothing in it that could not be shared with others. Please be aware, that there will be no confidential or secret agreements made with anyone or by anyone here at HUD.

Don/John,
1) A couple of weeks ago Veronica and I met with PM One. They were complaining about being left out of the information pipeline. They claimed that they didn't know about the pending sale or that there would be new management at the project. They felt that the conditions at the project were the direct result of the identity of interest ownership lack of involvement. In a subsequent

A 1810

letter they told us that they left a verbal message for Mr. Hayes informing him that PM One, Ltd. would be terminating their management of South Pointe Tower effective October 1, 2001 and that they would be giving written notification on 9/10/01. My staff has not received any management certification or profile for the new management entity. This morning a message was left on Ms. Coleman's voice mail from Mr. Morrissey asking if PM could continue managing for another month at the request of Mr. Hayes.

2) There was no agreement that the PM One management 2530 flag would be lifted. We listened to the argument that some individuals in PM One were not responsible for the actions of the parent group. We told them that HUD would CONSIDER any information that would be provided and MIGHT CONSIDER removing the flag from individuals that had no control over the actions of PM One or the ownership entity.

3) The funding for the Sec 8 contract is in place for an additional 90 days. The contract either has been/will be mailed to the owner for execution.

4) The loan application is in the office. There are deficiencies that need to be addressed. The survey and survey report needs to be updated so the cost analysis can be completed; the contractor's cost breakdown is not legible; a summary sheet with the total scope of work showing the number of line items plus cost breakdown needs to be submitted. Ray Etzkorn met with Don on the scope issue. If we proceed we need to know specifically what the contractor will be doing. From what was submitted, this would not be possible.

5) Back in June when a sale was first being discussed, HUD had already started the abatement of the Sec. 8 contract and vouchers were ordered for the residents. You were informed back then that we would not stop the abatement process unless we had a complete, approvable plan in place. We still don't have such a plan in place. Let me reiterate, once the housing authority issues vouchers, the Sec 8 contract dies. Back when discussions first started, it was going to be a couple of weeks before a plan would be submitte, that grew to a month and now we are approaching 4 months. Be on notice that you are very very quickly running out of time. The housing authority is getting ready to issue vouchers.

6) We have had no contact with the tax credit investor.

Ed

Edward Hinsberger

**Edward Hinsberger**
09/06/01 11:53 AM

To: DSSA310@aol.com
cc: Veronica Coleman/HSNG/CHI/HUD@HUD, Gwendolyn X. Thomas/HSNG/CHI/HUD@HUD, alcrav@aol.com, Mary Anderson/HSNG/CHI/HUD@HUD, Kathy McMahon/HSNG/CHI/HUD@HUD, Maggie O'Connor/HSNG/CHI/HUD@HUD, Edward Hinsberger/HSNG/CHI/HUD@HUD
Subject: South Pointe Apartments - Rent Comparability Study

Don,
The rent comp study supports the proposed rents. The submission was made by you. It needs to be signed by the owner or the current managing agent. There was a spot on your 8/21/01 letter authorizing you to submit, but Mr. Hayes didn't sign it. Please resubmit the 8/21/01 letter with John Hayes' signature. We will allow the new rents to kick in at the time of closing.

A 1811

The current management company was in the office today. They had no knowledge of what was going on or that DSSA might be co-managing for an interim period of time with them. Mr. Hayes needs to tell the management staff what is going on so there is absolutely no confusion. They also indicated that they were ready and willing to give up management within 30 days.

The HAP contract is being extended with a short term renewal for 90 days past the expiration at the end of Sept. 2001.

In your August 31st letter, there was some question about elevator repairs. Has this issue been discussed with Ray Etzkorn? Our experience in the past indicates that there were tenant complaints about the elevators. Ray is out of the office this week so I haven't been able to check with him.

The FHA application is in the office. I spoke with Alan Cravitz this morning about the continuing role of John Hayes or others from PM in the refinance. I reminded Alan that if parties change roles then there would need to be 2530 submission for their new roles and because of the current flag they would not be approved. Alan will be submitting an incumbency certificate or ownership structure showing old role and new roles.

Since we just got the application yesterday I have no comments on its contents at this point in time. As staff review it they will be in direct contact with Alan Cravitz.

Ed

----- Forwarded by Edward Hinsberger/HSNG/CHI/HUD on 09/06/01 11:21 AM -----

**Paul J. Seliga**
09/05/01 12:35 PM

To: Kathy McMahon/HSNG/CHI/HUD@HUD
cc: Edward Hinsberger/HSNG/CHI/HUD@HUD
Subject: South Pointe Apartments - Rent Comparability Study

I have desk reviewed the Rent Comparability Study for the above captioned project submitted by Renzi & Associates and find that it appears acceptable based on the information provided. Five comparables were used by the appraiser, and appear to reflect and relate to the subject property. I have telephoned each of the property contact persons to verify the current rents and information listed on the Hud Form 92273 - S8. Other than minor differences, the information appears to be correct.

According to Hud Notice Hoo-12, Section 8 Renewal Policy, Section 9-8, Page 10, Appraiser's Qualifications, an appraisal assistant may contribute to any of the tasks of preparing the Rent Comparability Study as long as the Certified General Appraiser reviews, signs and then takes full responsibility for the report. This is the situation that has taken place for the above captioned project.

I have requested and received a letter from Renzi and Associates explaining the use of market rate comparables in subsidized and rent restricted properties. Also the names and telephone numbers of the individuals contacted at these properties. Attached to the Rent Comparability Study is the letter from the appraiser.

In summary, it appears that Renzi and Associates is in compliance with Hud Notice Hoo-12 and that the Rent Comparability Study is acceptable for the above captioned project.

A 1812

**Englewood v. United States**
**03-2209**
**Joint Appendix**

# JA 146

Chapter Thirteen

# HUD's Refusal to Renew Section 8 Contracts/ Owner's Dispute and Appeal of Rejection

## HUD's REFUSAL TO RENEW A SECTION 8 CONTRACT

### Section 13-1

A. Under Sections 516 of and 524 of MAHRA:

1. HUD/CA may refuse to renew a contract if it is determined that:

    a. The Owner or Purchaser of the project has engaged in material adverse financial or managerial actions or omissions with regard to such project;

    b. The Owner or Purchaser of the project has engaged in material adverse financial or managerial actions or omissions with regard to other projects of such Owner or purchaser that are federally assisted or financed with a loan from, or mortgage insured or guaranteed by, an agency of the Federal Government;

    c. The project does not meet the physical condition standards for HUD housing that is decent, safe, sanitary, and in good repair, unless HUD determines the project will meet the standards within a reasonable time after renewal.

2. Material adverse financial or managerial actions or omissions include:

a. Materially violating any Federal, State, or local law or regulation with regard to this project or any other federally assisted project, after receipt of Notice and an opportunity to cure;

b. Materially breaching a contract for assistance under Section 8 of the United States Housing Act of 1937, after receipt of Notice and an opportunity to cure;

c. Materially violating any applicable regulatory or other agreement with the Secretary or a participating administrative entity, after receipt of Notice and an opportunity to cure;

d. Repeatedly and materially violating any Federal, State, or local law or regulation with regard to the project or any other federally assisted project;

e. Repeatedly and materially breaching a contract for assistance under Section 8 of the United States Housing Act of 1937;

f. Repeatedly and materially violating any applicable regulatory or other agreement with the Secretary or a participating administrative entity;

g. Repeatedly failing to make mortgage payments at times when project income was sufficient to maintain and operate the property;

h. Materially failing to maintain the property according to housing quality standards after receipt of Notice and a reasonable opportunity to cure;

i. Committing any actions or omissions that would warrant suspension or debarment by the Secretary.

j. The Owner or Purchaser of the property materially failed to follow the procedures and requirements of MAHRA, after receipt of Notice and an opportunity to cure.

**NOTE: The Hub Director must contact Willie Spearmon, Director, Office of Housing Programs and Grant Administration in Headquarters as early as possible before terminating the contract. A detailed summary of the actions taken on behalf of the project should also be provided to Headquarters.**

B. Owner's Dispute and Appeal of Rejection. If HUD/CA refuses to renew an Owner's contract, the following appeal process should be followed. In the case of an appeal, HUD/CA staff should take all steps necessary to protect the families. This includes executing a short-term contract to complete the appeal process and issue vouchers if necessary.

12/13/01

1. HUD/CA will provide a Notice to the Owner giving the reason(s) for rejection.

1/31/02 (30)

2. The Owner has 30 calendar days from receipt of this Notice to provide written objections or cure the problems identified. If the Owner does not submit written objections or cure the problems identified during that period, the decision will become a final determination under Section 516(c) of MAHRA and is not subject to judicial review.

2/1/02
2/25/02

3. If the Owner submits written objections or asserts that the problems identified have been cured, HUD/CA will consider the matter, review the Owner's action, if any, and send the Owner a final decision affirming, modifying, or reversing the rejection and setting forth the rationale for the final decision.

3/15 +10

4. Within 10 days of receiving the final decision, the Owner may submit a written appeal to HUD/CA contesting the decision and requesting a conference to discuss the issues with the Hub that has jurisdiction over the project.

3/25

5. A representative of the Hub will meet with the Owner at a mutually agreeable time, but no later than 10 calendar days after request by Owner for meeting.

6. If the Owner wants to provide additional information, establish a mutually agreeable deadline for submission of the material.

+20

7. Within 20 days after the conference, or 20 days after any agreed-upon extension of time for submission of additional materials, the Hub will advise the Owner in writing of the decision to either reverse, modify or affirm the original decision.

8. HUD will designate an official to review any appeal, conduct the conference, and issue the written decision. The official designated will be one who was not directly involved in making the decision being appealed.

The reviewing official's decision is a final determination and is not subject to judicial review.