IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **ENGLEWOOD TERRACE LIMITED PARTNERSHIP,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 03-2209C** |
| | ) | **(Judge Marian Blank Horn)** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL**

Pursuant to Rule 37 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits this opposition to plaintiff, Englewood Terrace Limited Partnership's ("Englewood"), motion to compel additional discovery.[1]

The United States Department of Housing and Urban Development ("HUD") has previously submitted sworn testimony from senior officials within its organization that responded to the issues raised in Englewood's motion. On March 24, 2006, HUD duly filed declarations from Gregory G. Gustin, Associate Regional Counsel for Program Enforcement, regarding production of concurrences, and from Edward J. Hinsberger, Director of the Chicago, Region 5, HUD Office of Multifamily Housing, regarding his authority for those Housing Assistance Payments ("HAP") contracts.

Englewood now contends that the declarations were insufficient because: 1) HUD failed to adequately account for its failure to produce additional concurrences that Englewood wrongly contends exist, and, 2) Mr. Hinsberger's declaration raises "new issues" regarding

[1] In this response, we will refer to Englewood's motion to compel, which was filed electronically on April 28, 2006, as "Pl. Mot." or "Englewood's motion."

Mr. Hinsberger's delegated authority. Since neither allegation is correct, the Court should deny Engelwood's motion, including its attempt to re-open discovery on these erroneous claims.

## ARGUMENT

### I. HUD Provided Englewood With All Of Its Known Written Concurrences

Englewood argues that the declaration of Associate Regional Counsel Gregory Gustin ("Gustin Decl.") did not comply with the Court's directive because it fails to "account for its failure to produce concurrences." Englewood claims that it cannot be sure that HUD has produced all concurrences because Mr. Gustin's declaration did not "definitively state" that concurrences did not exist, or never existed, or that a "full and complete search" failed to reveal additional concurrences. Pl. Mot. p. 4.

Englewood's contention here is wrong, and Englewood mischaracterizes the contents of Mr. Gustin's declaration. On March 17, 2006, this Court directed that HUD provide a declaration that it had searched its records and provided Englewood with all concurrences. HUD has done so. To the extent that HUD had any written concurrences in its files, or any other documents responsive to discovery requests, Mr. Gustin's declaration reiterates that those documents were gathered and submitted to HUD's Department of Justice ("DOJ") counsel for DOJ's production.[2] Def. App.[3] 52-53, Gustin Decl. ¶¶ 8-12. Furthermore, previously assigned

---

[2] Englewood's motion assumes that all concurrences were in written format and ignores the fact that concurrences may also have occurred orally, (see Deposition Transcript of Margarita Maisonet p. 111), or may not have been needed to issue the correspondence in dispute. See Deposition Transcript of Veronica Coleman p. 273. Englewood's failure to conclude discovery in those regards, as it may now belatedly wish, does not provide an appropriate basis to compel the Government to indulge Plaintiff's error.

[3] "Def. App." refers to the appendix that is attached to this response.

Government counsel has repeatedly informed Englewood that all concurrences were produced. Def. App. 1-8, Letters to Englewood's counsel.

HUD cannot produce documents it does not have, and Gustin's declaration cannot state this fact any more fully. Hagemeyer North America, Inc. v. Gateway Data Sciences Corp., 222 F.R.D. 594, 598 (E.D.Wis. 2004)("A party need not produce documents or tangible things that are not in existence or within its control." citing Norman v. Young, 422 F.2d 470 (10th Cir.1970)). Additionally, it is sufficient that HUD responded by declaring in its affidavit "that a document or tangible thing is not in existence." Id. citing 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure: Civil § 2213 (2d ed.1994). As Associate Regional Counsel, Mr. Gustin "supervised the gathering of all records, including all documents and electronic media, from all departments within HUD that were reasonably known or suspected to have media that was responsive to Plaintiff's discovery requests." Def. App. 52, Gustin Decl. ¶ 5. Multiple requests were made, and all media located in response to those requests were delivered to his legal section's staff, and forwarded to DOJ for review and production. Id., Gustin Decl. ¶ 7-9. Mr. Gustin's Declaration goes even further and specifically rejects Englewood's inference that HUD improperly withheld or destroyed responsive documents. These statements clearly address the concerns Englewood raises here, i.e. that HUD did not conduct a full and complete search of its records.

At bottom, a senior official with HUD has unequivocally testified that all concurrences were gathered and produced for Englewood. No written concurrences have been withheld. It is long-settled that Government officials, like Mr. Gustin, are presumed to have carried out their duties in an appropriate manner. See United States v. Chem. Found., Inc., 272 U.S. 1 (1926)

("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."); see also Schism v. United States, 316 F.3d 1259, 1302 (Fed. Cir.2002) (citations omitted) ("This presumption of regularity is the supposition that public officers perform their duties correctly, fairly, in good faith, and in accordance with law and governing regulations, and is valid and binding unless 'well-nigh irrefragable proof rebuts or overcomes it.' "). Englewood has not produced any, let alone "well-nigh irrefragable" proof that Mr. Gustin was acting in any other manner when overseeing HUD's search. Accordingly, this aspect of plaintiff's motion must be denied.

## II. Mr. Hinsberger's Declaration Complies With The Court's Direction, And Englewood Is Not Entitled to Depose Hinsberger after Discovery Closure

Englewood next alleges that Region 5 Multifamily Hub Director Edward Hinsberger's declaration ("Hinsberger Decl.")[4] does not comply with the Court's instructions because it fails to explain the source of his authority with respect to the HAP contracts at issue in this case. Englewood contends that because Mr. Hinsberger's delegated authority is a "new issue," Englewood's counsel should have an opportunity to depose Mr. Hinsberger[5] so that he may explain, among other matters, the procedures for "renewing and 'not renewing'" the HAP contracts and the circumstances of drafting the Notices of Default. Pl. Mot. pp. 3, 8. In effect, Englewood's motion is seeking additional discovery long after the May 2, 2005 closing date

---

[4] Mr. Hinsberger's declaration is reproduced for ease of referencing in the appendix accompanying this response at pages 54-55.

[5] Curiously, although the document production and the record are replete with documents and communications by Mr. Hinsberger acting in an authoritative manner, Englewood never sought to depose Mr. Hinsberger during the entire discovery period.

ordered by the Court by manufacturing an issue where one does not exist. Mr. Hinsberger's declaration raised no new issues and complied with the Court's direction. Thus, Englewood should not be permitted to reopen discovery and depose Mr. Hinsberger.

As the Court is aware, HUD was directed to provide a declaration that the actions taken with respect to Englewood's HAP contracts at issue in this case were accomplished under the direction or with the approval of the appropriate HUD authority. Accordingly, HUD provided Mr. Hinsberger's declaration to affirm that HUD's actions occurred under his delegated authority as Hub Director, notwithstanding the presence or absence of any written concurrence pages. Except for the purpose of creating an illusory fact issue to aid a defense of the Government's pending motion for summary judgment, Englewood cannot now challenge whether the appropriate HUD personnel had authority to take any adverse action on Englewood's HAP contracts, including Mr. Hinsberger. Indeed, Englewood has never previously disputed any HUD employee's authority, much less Mr. Hinsberger's, and to the extent that there was, prior to bringing this action, a challenge regarding Mr. Hinsberger's decision to take action, the decision to terminate or non-renew Englewood's HAP contract was affirmed by an independent reviewing official, through an appeal process that Englewood selected, but now, when convenient, maintains is inapplicable.[6]

[6] Englewood appealed HUD's decision to "terminate" the HAP contract pursuant to the Multifamily Assisted Housing Reform and Affordability Act ("MAHRA"), 42 U.S.C. §1437f (note)(2000). In his decision upon HUD's motion to dismiss, Judge Wolski later ruled that MAHRA did not apply because HUD opted to terminate, not non-renew Englewood's contract. Interestingly, Englewood now cites HUD Circular 99-36, part XX, which is the very application of MAHRA that Judge Wolski found inapplicable, for the proposition that HUD did not follow the appropriate appeal process.

Englewood argues that Mr. Hinsberger's declaration raises new issues in that his statement that decisions to "non-renew, renew, modify, amend, or terminate the South Pointe HAP Contract . . . were within my delegated authority," Hinsberger Decl. ¶ 8, is unsupported by any documentation and fails to provide "explanation for these broad assertions or how these decisions were subdelegated to others or reviewed as to their consistency with HUD contracts and regulations." Pl. Mot. p. 5. Englewood goes on to complain that it has been attempting since the "inception of this litigation" to determine how authority was vested in the Chicago Hub to make decisions for at least 10 matters challenged by Englewood and for which Englewood maintains HUD has never produced information. Pl. Mot. p. 6.

However, Mr. Hinsberger's declaration does not provide any "new issue" because it merely reaffirms and restates HUD's March 30, 2005 Answer to Englewood's Interrogatory 1. Specifically, in response to Englewood's request to "describe the respective roles and responsibilities of the Chicago Satellite Office ("CSO") of the Departmental Enforcement Center ("DEC") and the Chicago Office of Multifamily Housing ("MFH")", HUD answered:

> With respect to the project at issue . . . MFH generally provided all oversight of operations and compliance with [HUD] business agreements. MFH referred instances of non-compliance with business agreements to the DEC.
>
> All delegated authority for actions taken in relation to the project's business agreements for the periods at issue in this dispute rested with MFH . . .

Def. App. 10-11, Defendant's Objections and Responses to Plaintiff's Interrogatories, Answer to Interrogatory No. 1.

There is no "new issue" for Englewood here. Indeed, Englewood has been well aware of Mr. Hinsberger's role in affecting HUD's program elections as they pertain to this case. After all,

Mr. Hinsberger signed, as Director, each of the HUD notices to Englewood. See Def. App. 13, 15, 17. Furthermore, in its own Answers to Defendant's Interrogatory 7, Englewood charges Mr. Hinsberger with rejecting its request for reinstatement of the HAP Contract and not granting Englewood's rent increase request. See Def. App. 19-22. Plaintiff Englewood's Answers to Defendant's First Set of Interrogatories, Answer to Interrogatory No. 7.

Finally, Englewood had more than ample opportunity to depose Mr. Hinsberger, and any other HUD employee involved in this matter, and question Mr. Hinsberger's authority.[7] Englewood simply chose not to do so. Now, long after the May 2, 2005 discovery cut-off date ordered by this Court, Englewood is looking to this Court, under the false guise of a "new issue," to conduct the deposition of the Hub Director. Englewood's attempt here should be rejected.

Finally, notwithstanding HUD's objection to Englewood's demand for documentation regarding Mr. Hinsberger's delegated authority, we have included in the appendix to this response the delegation in effect at the time that HUD took its actions with respect to the HAP Contract. See Def. App. 23-50. As we explained earlier, HUD provides this document in the interest of moving this matter forward towards final resolution. Additionally, in response to

---

[7] To the contrary, Englewood deposed Veronica Coleman and Gwen Thomas, two HUD employees that, through its prolonged course of dealings with HUD, Englewood quite obviously knew were subject to Mr. Hinsberger's supervision and authority; and if not, Englewood might have asked questions at deposition to satisfy its need before discovery closed. The only other deposition Englewood took was of Margarita Maisonet, who, for the periods at issue in the litigation, was HUD Chicago's DEC Director. Ms. Maisonet co-signed the Notices of HAP Contract Default, Continuing Notice of HAP Contract Default, and HUD's Notice to Abate and Terminate the HAP Contract. At Ms. Maisonet's deposition, Englewood certainly could have asked Ms. Maisonet why she co-signed the notices with Mr. Hinsberger. Instead, Englewood did not ask this question of Ms. Maisonet. Any reasonable person who is familiar with the facts of this case would clearly think that Englewood did not ask about Mr. Hinsberger's authority because Englewood was fully aware of Mr. Hinsberger's authority and the reasons for Mr. Hinsberger's actions for HUD.

Englewood's complaint that it was unable to locate any delegation of authority in HUD's public database, HUD notes that Circular 99-36, cited by Englewood in its motion under Footnote 2, in fact also states: "Any decision not to renew a Contract or terminate must be made by the Program Center Director or a Supervisor in the Hubs." Circular 99-36 Part XX(C). Mr. Hinsberger, as Englewood knows, is HUD's Region 5 Multifamily Housing Hub Director.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that this Court deny plaintiff's motion.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Brian M. Simkin
BRIAN M. SIMKIN
Assistant Director

s/ Douglas K. Mickle
DOUGLAS MICKLE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530

Tel: (202) 307-0383
Fax: (202) 307-0972

Attorneys for Defendant

OF COUNSEL:

GREGORY G. GUSTIN
MARIA T. BAGUIO

Office of General Counsel
U.S. Department of Housing
and Urban Development

May 15, 2006

**CERTIFICATE OF FILING**

I hereby certify that on May 15, 2006, a copy of the foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL" with accompanying appendix was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Douglas K. Mickle
Douglas K. Mickle