**IN THE**
**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ENGLEWOOD TERRACE LIMITED PATNERSHIP, Plaintiff, | ) | No. 03-2209C |
| v. | ) | Judge Marian Blank Horn |
| THE UNITED STATES, Defendant, | ) | |

**PLAINTIFF ENGLEWOOD'S REPLY**
**IN SUPPORT OF ITS MOTION TO COMPEL**

HUD's Response to Englewood's Motion to Compel ignores the issues raised by Englewood's Motion. HUD's Response does not address the deficiencies of the Declarations of Greg Gustin and Edward Hinsberger. Rather, HUD merely references the Declarations, and argues that it has no obligation to provide additional information regarding the issues raised by the Declarations.

HUD's Response fails to (a) explain the discrepancy between the testimony of HUD witnesses regarding the concurrence process and their absence from the record; or (b) provide sufficient documents or testimony to explain the "delegated authority" that HUD claims provided the authority for the HUD decisions at issue in this action. Indeed, Englewood's Motion establishes that concurrences must exist, and that Gustin is not a disinterested party to this litigation. Moreover, the exhibits to HUD's Response prove that HUD is withholding additional documents regarding the "delegated authority" of the Chicago HUB. An order compelling HUD to produce all concurrences and documents regarding the "delegated authority"

of the Chicago HUB will close open issues so that parties can properly prepare for trial, and will narrow or frame issues for trial, expediting trial itself.

## ARGUMENT

### I. HUD SHOULD PRODUCE AN AFFIDAVIT EXPLAINING ITS SEARCH FOR CONCURRENCE DOCUMENTS, AND CLEARLY CERTIFYING THAT FURTHER CONCURRENCE DOCUMENTS DO NOT EXIST AND HAVE NOT BEEN DESTROYED.

#### A. Documents Produced During Discovery Show That HUD And The Chicago HUB Use Written Concurrences.

HUD's "concurrences" are relevant for all of the following reasons:

- First, through concurrences for the Final Team Report, attached as Exhibit A to this Reply, Englewood has established that HUD stated, as of January 2000, that Englewood had made "substantial progress" in its efforts to improve the conditions at South Pointe. Greg Gustin and others signed the concurrence form attached the document.
- Second, concurrences for the October 2000 HAP Contract will show that the Contract was properly executed, and not made "in error."
- Third, written redelegations and concurrences will show whether or how HUD attempted to "amend" the HAP Contract in December 2000 or January 2001.
- Fourth, concurrences related to HUD's preparation of the April 9, 2001 Notice of Default will show that the document was drafted and all of the relevant concurrences were obtained *before* Englewood submitted its Response to the March 8, 2001 REAC Report.
- Fifth, concurrences will document HUD's actions during the events that led to the 90 Day Renewal Contract in September 2001.
- Sixth, concurrences will show the actions and involvement of various HUD officials in the events leading the Notice of Abatement in November 2001.

(*See* Mot. to Compel at 6, listing HUD decisions in this dispute.)

#### B. HUD Fails To Explain HUD's Witnesses' Deposition Testimony Regarding Concurrences.

During discovery, HUD witnesses testified that HUD used "concurrences" to track and record official approval of agency decisions. *See, e.g.*, Ex. B, Coleman Dep. at 272, 280, 281, (February 21, 2006 Joint Appendix ("JA") 012, Docket Nos. 83-90), referring to

concurrence pages in the context of a December 6, 2000 letter from HUD to Englewood asserting an "error" in the HAP Contract, and HUD's "amendment" of the HAP contract). Margarita Maisonet referred to the concurrence process when describing the process used by HUD in issuing: (a) the April 9, 2001 Notice of Default, (b) the May 16, 2001 Continuing Notice of Default, and (c) the November 30, 2001 Notice of Abatement and Termination; and (d) the May 2, 2002 HUD Final Decision in its review of Englewood's administrative challenge to HUD's decision not to renew the automatic renewal provisions of the 2000 HAP Renewal Contract. (Ex. C, Maisonet Dep. at 99, 105, 149-50, 208, 254 [JA 013]). HUD has failed to produce concurrences related to any of these decisions.

In its Response, HUD effectively ignores this testimony. (Resp. at 2-4.) Without any support in the record, HUD argues that concurrences "may" have occurred orally. (Resp. at 2, n. 2.) HUD relies on testimony, however, that suggests that a written approval (through email) would be required for approval of HUD "flags" of building owners. (Maisonet Dep. at 111 [JA 013]). Similarly, HUD cites deposition testimony of Veronica Coleman that merely states that she would not need the concurrences of persons who do not report to her to send a letter. (Coleman Dep. at 273 [JA 012]).

### C. HUD's Reliance On The Declaration Of Greg Gustin Is Unavailing.

HUD relies principally on the Declaration of Greg Gustin – the impetus for the motion to compel that Englewood hoped would be unnecessary. As discussed in Englewood's Motion, but not addressed by HUD, Gustin's response *does not* state that all concurrences have been located and produced. Gustin stated merely that "to the best of [his] knowledge, belief and efforts" responsive documents were not being "improperly withheld and/or destroyed." Gustin does not even state that he checked his own files. Accordingly, neither Englewood nor the

Court, (nor, perhaps, the Department of Justice) can be sure that HUD has produced all concurrences.

Gustin's prior involvement in the events in dispute in this matter demonstrate that Gustin is not a disinterested party.[1] Gustin played a role in many of the events that led to this lawsuit. Gustin participated in reviewing reports regarding the South Pointe project in early 2000, and was involved in the events surrounding the termination of the 2000 HAP Contract. (Jt. Stat. Facts ¶¶ 51, 119, 120, 123.) Indeed, Gustin's *concurrence* was required for a Final Team Report – Resolution in February of 2000 (attached as Exhibit A). Additionally, the forms for a Draft Team Report and Final Action Plan contained blanks for his concurrence. (Exhibits D and E.) Ms. Maisonet testified that the concurrence chain for the Notice of Default, the Notice of Continuing Default and the Notice of Abatement and Termination included Gustin. (Exhibit C.) Moreover, in violation of applicable HUD regulations, Gustin drafted the opinion denying Englewood's administrative challenge to HUD. (Jt. Stat. Facts, Plaintiff's Stmt. ¶¶ 96-97.)

The presumption of proper behavior and good faith concerning the actions of a government official should not apply to Gustin's actions in this case. This Court should compel HUD to produce all the concurrences in its possession, or explain the absence of additional concurrences through the Declaration of a disinterested and knowledgeable HUD official, preferably outside of the Chicago HUB.

## II. HUD SHOULD PRODUCE ADDITIONAL INFORMATION REGARDING THE "DELEGATED AUTHORITY" OF THE CHICAGO HUB.

HUD's Response attempts to sidestep its obligation to provide additional information regarding its claim that "delegated authority" to the Chicago HUB provided

---

[1] HUD now lists Gustin as "of counsel" on HUD's Response Brief. Indeed, many of the documents attached to HUD's Response were faxed on May 11, 2006 from HUD's Chicago offices. (*See* Dep. App. 1-50.)

sufficient authority for all of the disputed HUD decisions. *See, e.g.*, HUD's Resp. to Plaintiff's First Requests for Production, Request 10. HUD implicitly concedes that it did not produce documents associated with the "delegated authority" of the Chicago HUB during discovery, and attempts to rectify its failure by producing a 1998 document, the "Revocation and Redelegation of Authority" to HUB directors (the "Redelegation"). (Def. App. 23-50.) HUD states that the Redelegation is "the delegation in effect at the time HUD took its actions with respect to the HAP Contract." (Resp. at 7.)

HUD fails to point out, however, that the Redelegation requires HUB directors (such as Mr. Hinsberger) to memorialize any further "redelegations" of authority to their staff *in writing*. (Def. App. 30, authority "may be further delegated *in writing* to appropriate field office staff to maximize efficiency" (emphasis added)). In his Declaration, Hinsberger states that HUD actions concerning the HAP Contract "were taken by HUD by me, *or by my staff that I authorized to do so, and pursuant to my delegated authority.*" (Hinsberger Decl. ¶ 8, Def. App. 55 (emphasis added).) Accordingly, if Hinsberger and the Chicago HUB followed the terms of the Redelegation, HUD *must* possess additional writings showing the delegation of authority from Hinsberger to his staff for the disputed decisions in this case.[2] This Court should order HUD to produce those writings, and any other writings regarding the Chicago HUB's "delegated authority," as soon as possible. Alternatively, if Mr. Hinsberger contends that such redelegations were made orally, HUD should produce Mr. Hinsberger for a deposition.

[2] HUD's Response fails to explain whether and how HUD complied with HUD Circular 99-36, Section XX, requiring HUD to contact Frank Malone at HUD headquarters prior to terminating a contract. (Mot. at 7, n. 2. and Mot. Ex. 4.)

## CONCLUSION

When plaintiff Englewood raised the concurrence problem at the March 17 conference with the court, it hoped that the government's further production or declaration would bring matters to a conclusion. Instead, HUD's declarations raise new issues. Englewood thus respectfully requests this Court to grant Plaintiff's Motion to Compel, and to enter an order directing HUD to:

a) Produce all "concurrence" documents relating to the South Pointe project; and produce an affidavit from a non-involved declarant outside the Chicago HUB who definitively states that no additional such concurrences now exist or have ever existed;

b) Produce (i) documents showing HUD's basis for its claim that its actions were taken pursuant to appropriate delegated authority; and (ii) declarant Edward Hinsberger, or an official with knowledge regarding the "delegated authority" of the Chicago HUB, for a deposition.

Dated: May 19, 2006

s/Peter V. Baugher______________________
One of the Attorneys for Plaintiff
Englewood Terrace Limited Partnership

Peter V. Baugher
Schopf & Weiss LLP
312 West Randolph Street
Suite 300
Chicago, IL 60606
312.701.9300

**CERTIFICATE OF SERVICE**

I, Peter V. Baugher, an attorney, certify that on this 19th day of May, 2006, the foregoing **Plaintiff Englewood's Reply in Support of Its Motion to Compel** was filed electronically with the Clerk of the Court using the CM/ECF system, which will automatically send email notifications of such filing to the following:

DOUGLAS K. MICKLE
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
1100 L Street, NW
Washington, D.C. 20530

s/ Peter V. Baugher