**IN THE**
**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ENGLEWOOD TERRACE LIMITED PARTNERSHIP,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 03-2209C<br>(Judge Marian Blank Horn) |

**DECLARATION OF JADRANKA M. SCHECHINGER**

I, JADRANKA M. SCHECHINGER, on oath and under penalty of perjury pursuant to 28 U.S.C. § 1746, state as follows:

1. I am an Enforcement Analyst with the Chicago Office of the United States Department of Housing and Urban Development (HUD), Departmental Enforcement Center (DEC). I have been with HUD since October of 2002 and worked as an Enforcement Analyst since February of 2005. Until my marriage in 2005, I was known by my maiden name, Berkec.

2. Prior to being an Enforcement Analyst, I was a paralegal assigned to HUD attorneys Gregory Gustin, Maria Baguio, and former HUD attorney Peter Ries (HUD attorneys). During that time, my immediate supervisor was Associate Regional Counsel (ARC) Gregory G. Gustin.

3. This declaration is made in my official capacity as a current Enforcement Analyst and former paralegal and only for the matters at issue in the above styled litigation.

4. In September of 2004, I was assigned to assist the HUD attorneys with gathering documents responsive to Plaintiff's discovery request for documents dating from 2000 pertaining to South Pointe Towers in Chicago, Illinois.

5. I am aware that Ms. Baguio and Mr. Gustin issued a request to OGC Chicago and Headquarters, Housing Headquarters, the Chicago Multifamily Office and the Chicago Public Housing Office Multifamily, to deliver any and all documents relating to South Pointe Towers to the HUD attorneys or to me.

6. I received documents from staff of the Office of Multifamily Housing (MFH), Office of General Counsel (OGC), Public Housing and the DEC that pertained to South Pointe. These documents were deposited into a then-vacant DEC office reserved for handling South Pointe discovery. I observed Mr. Ries and Ms. Baguio reviewing the documents that were brought to the vacant office. The documents included Mr. Gustin's and Ms. Baguio's South Pointe files.

7. While Mr. Gustin was out of the office, he gave me access and he assigned me to print all electronic mail and other documents relating to South Pointe, from his computer. I deposited the printed e-mail and other documents into the vacant office for Mr. Ries and Ms. Baguio to review. In addition, I printed screens relating to South Pointe from the HUD database commonly known as REMS, and also deposited these printed documents into the vacant office for Mr. Ries and Ms. Baguio to review. I also entered the DEC's imaging system, printed all

documents from the imaging screens, and determined that all imaged documents had already been photocopied for production review.

8. I photocopied and Bates stamped all documents as they were organized and identified by Mr. Ries and Ms. Baguio for production. I also assisted Ms. Baguio with redacting documents identified by the HUD attorneys as containing privileged information. I eventually drafted a privilege log for the reviewed items the HUD attorneys had given to me for privileged recommendations to DOJ. I gathered the photocopies of the responsive documents, including those identified in the privilege log, and shipped them to DOJ in Washington, DC.

9. On or about December 6, 2004, DOJ attorney Lisa Donis advised that the original scope of discovery had been expanded to include documents from 1999. At that time, Ms. Baguio was out of the office on maternity leave and Mr. Ries was on a military leave of absence from HUD, serving in Iraq. The ARC took over principal responsibility for collecting and directing the collection of documents responsive to the expanded scope.

10. I am aware that Plaintiff insisted additional "concurrence" and "imaged" documents existed and were not produced.

11. The ARC solicited additional responsive documents from the several HUD offices relative to South Pointe dating from 1999. No additional documents were delivered from any other HUD office.

12. I went through all the South Pointe documents deposited in the vacant office and gathered any that fell within the newly expanded timeframe. I gave these documents to the ARC for review, and then, as was done with the prior

documents, photocopied and Bates stamped them with any privileged recommendations before sending them to DOJ. I then shipped the documents to DOJ.

13. In February 2005, additional material was provided to our office, necessitating supplemental responses to Plaintiff's discovery.

14. On or about February 4, 2005, then-HUD DEC employee Joan Kiening provided me with printouts of supplemental REMS screens that had not been previously produced, and which I then photocopied and Bates stamped. These documents were given to the ARC for review and then Bates stamped, photocopied and shipped to DOJ.

15. In addition, on or about February 8, 2005, our office was advised that additional e-mails were found from DEC Director Margarita Maisonet. These documents were also reviewed by the ARC, and delivered to me to be photocopied, Bates stamped, and sent to DOJ.

16. Sometime in or about February 2005, DOJ advised HUD that Plaintiff again requested that the scope of discovery be expanded to include the fall of 1998. Another solicitation was sent out by the ARC to the various HUD offices for those documents responsive to the again-expanded scope. No additional documents were delivered to counsel.

17. I again went through all documents contained in the vacant office that were previously delivered to HUD counsel, and pulled those documents falling within the new timeframe. These documents were reviewed by the ARC, photocopied, Bates stamped, and sent to DOJ by myself.

18. During this February 2005 review, I noted many documents within the vacant office were duplicative. I asked the ARC whether I should dispose of the duplicates, and I was directed specifically not to do so, as he was concerned that the Plaintiff would then accuse HUD of improperly destroying documents. I did not remove, destroy or otherwise dispose of any documents in the vacant office in any way except to photocopy, Bates stamp and forward them to DOJ.

19. On or about March 2005, we received Plaintiff's response to HUD's Request to Produce. I immediately recognized that some documents were new and had never been seen by me even though they appeared to be internal HUD documents. I then immediately notified Ms. Baguio, who had returned to the office in late February 2005.

20. To the best of my information, belief, and knowledge, all documents responsive to Plaintiff's request were produced to DOJ for production to Plaintiff.

21. Further, Declarant sayeth naught.

Executed and affirmed this 12th day of June 2006.

Jadranka M. Schechinger

Jadranka M. Schechinger
Enforcement Analyst
Departmental Enforcement Center
Chicago Satellite Office