**IN THE**
**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ENGLEWOOD TERRACE LIMITED PARTNERSHIP, a Michigan Limited Partnership,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 03-2209C** |
| **UNITED STATES OF AMERICA, and MEL MARTINEZ, Secretary of the Department of Housing and Urban Development,** | ) | **Judge Marian Blank Horn** |
| **Defendants.** | ) | |

**PLAINTIFF'S STATUS REPORT AND REQUEST**
**FOR AN ORDER REGARDING PLAINTIFF'S MOTION TO COMPEL**

We need the Court's help. As directed in the Court's May 23, 2006 Order, the parties have engaged in discussions regarding Defendant's failure to produce documents or clarifying affidavits about its decisions on the key contract in this action. The parties are at a standstill. Plaintiff requests this Court to issue a decision directing Defendant to produce two witnesses for short depositions, and to instruct the parties to proceed with preparation for trial.

**A. The Events Leading To Englewood's April 27, 2006 Motion To Compel**

1. The central fact in this case is the parties' October 2000 Housing Assistance Program (HAP) Contract, a one-year agreement with three "automatic" annual renewals worth approximately $10 million over the contract's four years. Much of Englewood's deposition and written discovery in 2004 and 2005 concerned who at HUD made what decisions on what grounds concerning the HAP Contract. HUD withheld as privileged nearly 1,000 documents, many of which are emails pertaining to its decision-making on default, insistence on

a new owner/manager, implementation of vouchers, the non-renewal of the Contract, and its termination. (February 21, 2006 Joint Appendix "JA" 0143.)

2. Because they show who was involved in agency decision-making, Englewood particularly sought decision-making "concurrences," which HUD's deponents said were frequently used. For example, Margarita Maisonet referred to concurrences when describing the process used by HUD in issuing: (a) the April 9, 2001 Notice of Default, (b) the May 16, 2001 Continuing Notice of Default, and (c) the November 30, 2001 Notice of Abatement and Termination; and (d) the May 2, 2002 HUD Final Decision denying Englewood's administrative challenge to HUD's non-renewal of the October 2000 HAP Contract, which provided for automatic renewals. (Maisonet Dep. at 99, 105, 149-50, 208, 254 [JA 009]). Despite this testimony, few concurrences were produced, leading to many letters and conversations with counsel for HUD, and ultimately Plaintiff's April 27, 2006 Motion to Compel.

**B. HUD Has Failed To Respond Adequately To The Issues Raised By Plaintiff's Motion To Compel.**

3. In its initial response to Plaintiff's Motion to Compel, HUD submitted the affidavit of Edward Hinsberger, the Director of HUD's Chicago "Hub." Mr. Hinsberger stated generally that HUD actions concerning the HAP Contract "were taken by HUD by me, or by my staff that I authorized to do so, and pursuant to my *delegated authority*." (Hinsberger Decl. ¶ 8, Def. App. 55 (emphasis added).) HUD declined Englewood's request for clarification regarding (a) who Hinsberger authorized to exercise his "delegated authority"; and (b) whether that authorization was in writing. The parties stated their positions to the Court on May 23. The Court suspended the briefing on HUD's revised summary judgment motion, vacated the other

dates set in its April 20, 2006 Scheduling Order, and directed the parties to report back to the Court after they had further attempted to resolve their differences.

4. Subsequently, HUD requested leave to file additional affidavits of Mr. Hinsberger, Maria Baguio, and Jadranka Schechinger. Englewood asked HUD to clarify a statement in Hinsberger's supplemental affidavit -- that he was required to notify Beverly Miller in Washington of any election to terminate a HAP Contract. (Hinsberger Supp. Decl. ¶¶ 4, 6, attached as Exhibit A.)

5. During the past three months, despite numerous telephone calls, letters and emails from Englewood to counsel for HUD, no appreciable progress has been made. Most recently, on August 2, the parties discussed their impasse with the Court's Law Clerk, Mr. Fitzsimmons. Englewood urged at that time that a final clarifying supplement to Mr. Hinsberger's affidavit to put to rest the question of the time and nature of HUD Washington's involvement in the contract default/non-renewal/termination decisions. Englewood requested HUD to provide additional information regarding (a) the date and form of the communication between Mr. Hinsberger and Ms. Miller regarding HUD's decision to "non-renew" and/or "terminate" Englewood's October 2000 HAP Contract; and (b) the date and form of communication by which HUD made those decisions.

6. These are straightforward requests for simple facts, and are directly relevant to whether HUD followed its own procedures in not renewing and then terminating the HAP Contract. Indeed, despite Englewood's requests for information about HUD's decision-making process, HUD has never clearly stated: (a) when HUD made the decision not to renew the October 2000 HAP Contract; (b) when HUD decided to terminate that Contract; (c) when HUD gave notice of its intent to terminate to HUD Washington; and (d) when HUD terminated

the Contract. Despite Englewood's persistent requests since late June, HUD has failed to supplement the Hinsberger affidavit or state a position on these basic points. Clarification of HUD's position is important to narrow the issues for trial.

7. Most recently, Englewood's principal, Don Samuelson, telephoned the Court's Law Clerk on August 11 to inquire whether anything could be done to expedite this case, now approaching its third anniversary. At the time of his call, Mr. Samuelson was about to undergo surgery on what he feared might be a fatal health problem. Fortunately, his post-operative prognosis is improved. Nevertheless, Mr. Samuelson's heartfelt frustration is warranted. Almost no progress has been made in this case in the last year -- none in the last three months.

**C. Englewood Requests Leave To Conduct Two Short Depositions And For Entry of A Schedule Setting This Matter For Trial.**

8. Rather than attempting to negotiate further concerning affidavits and supplemental affidavits with the Government's counsel, who must himself seek agreement from HUD personnel in Chicago, Englewood asks that it be allowed to take half-day depositions of Mr. Hinsberger and Ms. Miller on their roles and decision-making concerning the 2000 HAP Contract. Englewood's counsel is prepared to take these depositions within two weeks of the order permitting it to do so. Englewood will be prepared within one week after these depositions to respond to HUD's summary judgment motion, assuming the Government intends to persist in that motion.

9. Additionally, Englewood believes that the best way to resolve this case is to set it for a trial. The parties concluded their discovery in the spring of 2005, submitted comprehensive statements of issues, stipulated facts, and a joint document appendix in early 2006, and should now present their evidence. Requiring two short depositions, conducted

promptly, regarding the Government's decision-making process will facilitate this end. In any event, the Motion to Compel should be decided so that a trial schedule can be set, and so that both parties can begin their final preparation.

For the foregoing reasons, Plaintiff Englewood thus requests that this Court enter an Order directing Defendant to produce Edward Hinsberger and Beverly Miller for depositions of not more than four hours in duration, on or before September 8, 2006, and to enter a scheduling order setting the deadlines for all pretrial matters similar to the schedule entered by this Court on April 20, 2006.

Dated: August 17, 2006

Respectfully submitted,

/s/ Peter V. Baugher

Peter V. Baugher
Schopf & Weiss LLP
312 West Randolph Street
Chicago, IL 60606
(312) 701-9300

Attorneys for Plaintiff

**CERTIFICATE OF FILING**

I hereby certify that on August 17, 2006, a copy of the foregoing **"**PLAINTIFF'S STATUS REPORT AND REQUEST FOR AN ORDER REGARDING PLAINTIFF'S MOTION TO COMPEL**"** was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Peter V. Baugher