**IN THE**
**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ENGLEWOOD TERRACE LIMITED PARTNERSHIP,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 03-2209C<br>(Judge Marian Blank Horn) |

**SUPPLEMENTAL DECLARATION OF EDWARD J. HINSBERGER**

I, EDWARD J. HINSBERGER, on oath and under penalty of perjury pursuant to 28 U.S.C. § 1746, state as follows:

1. I am the Director of the Chicago, Illinois, Region 5, HUD Office of Multifamily Housing (Chicago Hub).

2. This declaration is made in supplement of my March 24, 2006, Declaration filed with this Court in respect to the above-captioned litigation.

3. This Supplemental Declaration is made in my official capacity as Chicago Hub Director and only for the matters at issue in the above styled litigation.

4. As Hub Director, and as stated in my Declaration of March 24, 2006, I have the authority to take action on those matters within my delegated authority, including any action taken to renew, amend, abate and terminate project-based Section 8 rental assistance ("HAP Contracts") for South Pointe Towers, Chicago; except, by way of clarification of my prior Declaration, the election to terminate requires me

to advise the Multifamily Housing Director of Asset Management in Headquarters, Beverly Miller, of my intent; and to non-renew may, in certain circumstances, be appealed to a Headquarters Multifamily Assisted Housing Reform and Affordability Act (MAHRA) deciding official.

5. As for the HAP Contracts for South Pointe, actions taken under my delegations did not require the concurrence of the Departmental Enforcement Center, the Office of General Counsel, any of my staff, or of any other person in the Chicago Multifamily Housing Office, except with regard to the clarifications noted above in paragraph 4.

6. All HAP contract actions to renew, amend, abate and terminate (with notice to Ms. Miller, who succeeded former director Frank Malone) occurred and were authorized under my delegations as said Hub Director, notwithstanding the existence, or not, of written concurrences.

7. Except for the position memoranda and my participation in the MAHRA hearing convened at Plaintiff's election, I did not otherwise influence Deputy Director Howard Mayfield's decision to affirm my prior decision to terminate the South Pointe HAP Contract, nor to the best of my information and belief, did any other HUD employee after the hearing before Mr. Mayfield.

8. On March 10, 1998, I redelegated authority to sign or approve documents related to the operation of Multifamily Housing within Region 5, including HAP contracts, to two members of my senior staff. Copies of my March 10, 1998, written redelegations to Veronica Coleman, Director of Project Management, and Mary Anderson, Director of Operations, are attached hereto.

9. In redelegating my authority, I intended for both Ms. Coleman and Ms. Anderson, and those acting for them, to have authority to sign or approve any documents related to Region 5 Multifamily Housing that would normally rest with me, as Director of the Chicago Multifamily Hub, if I was not available to sign or approve such documents. These redelegations were not rescinded and remained applicable for all periods pertinent to this litigation.

10. With respect to the production of documents relative to South Pointe, on or about September 2004, I was first advised by HUD counsel, Gregory Gustin and Maria Baguio, that they were gathering all records, including e-mails, relating to South Pointe Towers Apartments as part of the above-captioned litigation. I was asked to ensure that all personnel within my office who may have had any dealings with South Pointe provide any and all documents relative to South Pointe to HUD counsel.

11. I directed all persons in the Chicago Hub who had any involvement or contact with South Pointe to search their files and submit any responsive documents to Mr. Gustin, Ms. Baguio, or their paralegal, Jadranka (Berkec) Schechinger. In addition, I reviewed my own files and provided Mr. Gustin, Ms. Baguio, and Ms. Schechinger with any and all documents in my possession or control, including e-mail, relative to South Pointe.

12. On several occasions, HUD counsel informed me, Ms. Anderson, Ms. Coleman, and other Multifamily Housing Region 5 staff that Plaintiff had broadened or clarified its discovery and/or insisted that HUD had additional documents we had not produced.

13. My staff complied with my directive, and using all reasonable diligence and efforts and repeated searches, to the best of my information and belief, all documents relative to South Pointe were turned over to HUD counsel, which we are informed were then delivered to Department of Justice counsel.

14. Further, Declarant sayeth naught.

Executed and affirmed this 6th day of June 2006.

Edward J. Hinsberger
Hub Director
Region 5