**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ENGLEWOOD TERRACE LIMITED PARTNERSHIP,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 03-2209C** |
| | ) | **(Judge Marian Blank Horn)** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S STATUS REPORT AND**
**OFFER OF DEPOSITIONS BY WRITTEN QUESTIONS PURSUANT TO RCFC 31**

Pursuant to the Court's August 2, 2006 order, defendant, the United States, respectfully submits the following status report reporting to the Court its efforts to resolve issues plaintiff, Englewood Terrace Limited Partnership's ("Englewood"), raised in its motion to compel.

As the Court is aware, on March 24, 2006, the Government filed declarations from senior personnel associated with United States Department of Housing and Urban Development's ("HUD") Chicago office. Specifically, we filed declarations from Gregory G. Gustin, Associate Regional Counsel for Program Enforcement, regarding, among other things, production of documents and concurrences, and from Edward J. Hinsberger, Director of the Chicago, Region 5, HUD Office of Multifamily Housing, regarding, among other things, his authority for Housing Assistance Payments ("HAP") contracts pertinent to this litigation.

On June 15, 2006, the Government filed three additional declarations that provided additional information to Englewood regarding: (1) the thoroughness of HUD's search of its

files, (2) testifying that no additional evidence or concurrences can be produced, and, (3) explaining the scope of Mr. Hinsberger's authority and his delegated authority.[1]

On and before August 1, 2006, Englewood's counsel continued to question whether Mr. Hinsberger provided a notification of HUD's election to terminate the HAP contract, under his delegated authority and as pursuant to a HUD Handbook that Englewood cited in its motion to compel, to Beverly J. Miller, HUD Headquarters Office of Multifamily Housing Director of Asset Management. After the Government's review and search of documents previously produced to Englewood, the Government again delivered approximately 100 pages of documents concerning Mr. Hinsberger's notification of Ms. Miller in October 2001 (the month before HUD issued its November 30, 2001, formal notice of its intent to, among other things, terminate the HAP contract). Those e-mails clearly confirm that Mr. Hinsberger notified Ms. Miller. In fact, those documents evidence that Mr. Hinsberger contacted Ms. Miller again, subsequent to his prior notification of Ms. Miller (but prior to HUD's November 30, 2001, official termination notice to Englewood), and, upon the request of Englewood that he modify his decision to fully terminate the HAP contract and only partially terminate the contract. After Mr. Hinsberger's additional notification of Ms. Miller, Englewood was told the answer was still "no."

---

[1] In addition to the supplemental declaration of Mr. Hinsberger, we also provided to Englewood's counsel copies of delegation memorandums from Mr. Hinsberger to subordinate directors in Chicago and Indianapolis (i.e. Kathy McMahon, Veronica Coleman, Mary Anderson, and Will Sly). We further notified Englewood's counsel of a citation to a HUD Regulation (24 C.F.R. 200.857(i)(4)), which we thought would resolve Englewood's present concern regarding delegated authority and the need for written concurrences.

Accordingly, the various notices that Mr. Hinsberger executed for HUD, under his delegated authority, to formally declare a HAP contract default, and to abate, terminate, and cease renewal of the HAP contract, as stated in the notices that Mr. Hinsberger executed, occurred under his delegated authority, as Mr. Hinsberger has stated in his declarations. It is not reasonably disputed that the termination of the HAP contract occurred with notice to Ms. Miller, despite Englewood's repeated questions on the subject.

On or about August 9, 2006, the Government responded to Englewood's renewed request that certain documents contained in the Government's privilege log contained "concurrences" within the scope of Englewood's needs. The Government again examined the privileged documents cited by Englewood and again confirmed that the documents are privileged and properly withheld from production to Englewood. The Government has explained to Englewood that while Government counsel product and communications with its clients may well be in the nature of a "concurrence" for legal sufficiency of HUD's actions, the mere fact that such privileged communications may be "concurrences," as Englewood characterizes them, does not extinguish the privilege. Moreover, as Mr. Hinsberger has provided in his declarations, the concurrence of legal counsel (or his subordinate staff for that matter) is not requisite to Mr. Hinsberger acting for HUD under his delegated authority, and Mr. Hinsberger doing so is not inconsistent with the deposition testimony Englewood cites in its recent status report.

Despite the Government's efforts, the parties are now at an impasse. Despite receiving the above declarations, the repeated production of discoverable media, and the Government's efforts to explain away whatever good faith confusions Englewood may have in these regards, and that specifically respond to matters Englewood raised in its motion to compel, Englewood

still wants to reopen formal discovery and conduct the depositions of two senior HUD officials, Mr. Edward Hinsberger and Ms. Beverly Miller. The United States opposes reopening discovery.

Englewood's recent status report implies that it needs to depose Ms. Miller and Mr. Hinsberger because the Government refuses to provide a third affidavit by Mr. Hinsberger explaining his statement in his second declaration that he was required to notify Ms. Miller of his decision to terminate this HAP contract. See Plaintiff's Status Report, filed August 17, 2006, p. 3, ¶ 4. Englewood also wanted information regarding: "(a) the date and from of the communication between Mr. Hinsberger and Ms. Miller regarding HUD's decision to 'non-renew' and/or 'terminate' Englewood's October 2000 HAP Contract; and (b) the date and from of communication by which HUD made those decisions." Id. ¶ 5.

As discussed above, in response to Englewood's request for information, for the time frame at concern as discussed and confirmed with Englewood's counsel, we conducted a 100 percent review of the documents we produced to ensure we provided Englewood's counsel with the information HUD possessed upon this subject. At the conclusion of our review, we identified to Englewood's counsel a number of documents that had been previously produced to Englewood during discovery that were specifically relevant to the issues Englewood raises in its status report. We also noted that counsel for Englewood has been in possession of these documents prior to discovery closing, and that they did not seek to take the depositions of Mr. Hinsberger or Ms. Miller at that time. Indeed, it is clear that counsel for Englewood has known about the roles Ms. Miller and Mr. Hinsberger have played in terminating/abating the

HAP contract for some time now. In a joint status report filed with the Court last year, Englewood's counsel states:

> [Ms. Miller] oversaw the decisions made by the Chicago Multifamily Office (Mr. Hinsberger) in Chicago in the summer and fall of 2001 that lead to this lawsuit. There were numerous phone calls and email messages between Ms. Miller and Mr. Hinsberger during this period discussing the decision to continue issuing vouchers and to stop Englewood's HAP payments.

Joint Status Report, December 2, 2005, page 5.

Given that it appears that Englewood has possessed information about the roles played by Ms. Miller and Mr. Hinsberger for some time now, but simply chose at the time discovery was continuing to forego deposing Ms. Miller and Mr. Hinsberger, the Government has not agreed to reopen formal discovery and permit Englewood's counsel to take two "short" depositions of these two senior Government officials. Furthermore, Government counsel's prior work commitments would not allow him time to prepare Ms. Miller and Mr. Hinsberger for their depositions and subsequently defend them until October 2006.

Nevertheless, unless the Court believes it to be unnecessary, and despite the Government's opposition to reopening discovery in this case, the United States has proposed a compromise to Englewood regarding its request to reopen discovery and conduct two formal depositions. The United States has offered Ms. Miller's and Mr. Hinsberger's deposition by written question pursuant to RCFC 31. Although we believe it to, again, be redundant of our prior efforts, we believe this compromise offer will ensure Englewood's questions are answered, while also ensuring the United States gets finality to these issues. Moreover, depositions by written question can also be accomplished in an expeditious manner and at a great savings to all parties.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Brian M. Simkin
BRIAN M. SIMKIN
Assistant Director

s/ Douglas K. Mickle
DOUGLAS MICKLE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530

Tel: (202) 307-0383
Fax: (202) 307-0972

Attorneys for Defendant

OF COUNSEL:

GREGORY G. GUSTIN
MARIA T. BAGUIO

Office of General Counsel
U.S. Department of Housing
and Urban Development

August 22, 2006

# CERTIFICATE OF FILING

I hereby certify that on August 22, 2006, a copy of the foregoing "**DEFENDANT'S STATUS REPORT AND OFFER OF DEPOSITIONS BY WRITTEN QUESTIONS PURSUANT TO RCFC 31**" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Douglas K. Mickle
Douglas K. Mickle