**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ENGLEWOOD TERRACE LIMITED PARTNERSHIP,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 03-2209C** |
| | ) | **Judge Marian Blank Horn** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**JOINT STATEMENT OF THE ISSUES**
**<u>OF FACT AND LAW TO BE DECIDED BY THE COURT</u>**

Pursuant to Appendix A of the Rules of the United States Court of Federal Claims, as modified by this Court's Order of August 23, 2006, the parties respectfully submit the following joint statement of the issues of fact and law to be determined by the Court.

1. Whether HUD illegally terminated any contract between it and Englewood Terrace Limited Partnership ("Englewood").

2. Whether HUD breached or repudiated any contract between it and Englewood.

3. Whether HUD breached any duty of good faith and fair dealing it owed to Englewood.

4. Whether Englewood's claims are barred by prior material breach.

5. Whether Englewood's claims are barred by waiver.

6. Whether the HAP renewal contracts executed by the parties in 2001 and 2002 are bilateral amendments, modifications, or corrections to the parties' previous contracts.

7. Whether the parties' HAP renewal contracts concluded their previous contractual obligations to one another under the doctrine of accord and satisfaction.

8. Whether Englewood is entitled to contract damages from HUD.

9. Whether Englewood is entitled to attorneys fees and litigation costs under the Equal Access to Justice Act or otherwise.[1]

10. **Englewood and HUD's Agreement Regarding Amendments To The Statement Of Issues.** Counsel for Englewood and counsel for HUD have agreed that, with the Court's approval, in the event that additional issues arise during the preparation of the Stipulations and Joint Exhibits, due to be filed with the Court on November 3, 2006, they will not object to any "Amended" Statement of Issues filed by the other party.

**Englewood's Statement**
**<u>Of Issues Of Fact And Law Not Agreed To By Defendant</u>**

1. Did the contract between the parties provide for an initial one year term with three automatic one year renewals, or was it made in error and then amended?

a. were there errors in the contract; was it to have been for an initial 3 month term with no automatic one year renewals?

b. was the contract amended in December 2000 to provide for an initial three month term with zero one year renewals?

c. was the contract amended again in January 2001 to provide for an initial one year term with zero one year renewals?

2. Did HUD breach and repudiate its contract obligations and covenant of good faith and fair dealing:

a. by attempting to unilaterally alter the basic terms of the contract without the approval of Englewood?

---

[1] The parties propose that the issue of the availability and amount of attorneys' fees to be awarded in this action be resolved after the Court rules on Englewood's other claims.

b. by declaring that Englewood had not completed its March 2001 EH&S corrections prior to the time that Englewood had been given to complete the corrections?

c. by falsely stating that Englewood had not completed the EH&S corrections?

d. by not complying with its obligations and responsibilities it was given in the March 8, 2001 REAC Report?

e. by refusing to review and discuss with Englewood the Englewood responses to the March 8, 2001 REAC Report as it was obligated to do?

f. by wrongfully issuing a Notice of Default in April 2001 without following the Determination of Default provisions in the 1998 HAP Contract?

g. by wrongfully issuing a Notice of Default in April 2001 without a factual basis for the alleged "events of default?"

h. by wrongfully declaring that South Pointe was not in "decent, safe and sanitary" condition[2] without a proper factual basis and without following proper contractual and regulatory procedures?

i. by refusing to discuss with Englewood the ways in which Englewood's rehab proposal did not meet the corrections required by the March 8, 2001 REAC Report, by not discussing with Englewood its alleged failure to respond to its obligations under the March 8, 2001 REAC Report, and by not discussing with Englewood the lack of a factual basis for its alleged "events of default?"

---

[2] Englewood contends that the term "decent, safe and sanitary," is neither precise nor measurable. See United States v. Southland Management Corp., 326 F.3d 669, 675 (5th Cir. 2003).

j. by refusing to deal with Englewood as owner or management agent and requiring that Englewood replace itself as owner and manager?

k. by notifying residents that they would be receiving vouchers to leave Englewood prior to properly terminating its contract obligations to Englewood?

l. by refusing to process in good faith Englewood's periodic requests for customary HAP Contract benefits, including rent increase requests, damages caused by tenants, lost revenues due to vacancies, and extraordinary energy costs?

m. by refusing to renew the 2000 HAP Contract without following applicable contractual and regulatory procedures?

n. by abating the 2000 HAP Contract without following applicable contractual and regulatory procedures?

o. by issuing a Notice of Abatement and Termination on November 30, 2001 without following applicable contractual and regulatory procedures?

p. by failing to comply with its obligations under the Determination of Default provisions in Paragraph 20 in the 1998 HAP Contract?

q. by taking six months to process Englewood's request for a rent increase in March 1999?

r. by failing to cooperate with Englewood for nine months in finalizing the MIO Plan that had been approved by HUD in December 1999?

s. by failing to process special claims submitted by Englewood in March 2000 until November 2000?

t. by declaring the 2000 HAP Contract to be made in error on December 6, 2000?

u. by not reviewing or discussing Englewood's response to the March 8, 2001 REAC Report prior to its issuance of the Notice of Default?

v. by misstating the status of Englewood and South Pointe in communications between HUD Chicago and HUD headquarters?

w. by completing the drafting of the Notice of Default on a "fast track" basis on April 6, 2001, prior to the date on which Englewood was to have submitted its response to the March 8, 2001 REAC Report?

x. by declaring its intention to abate the 2000 HAP Contract in mid-2001?

y. by other actions inconsistent with its contractual obligations and duty to act in accordance with its duty of good faith and fair dealing, including failing to cooperate with Englewood and hindering Englewood's fulfillment of its contractual responsibilities?

3. Did Englewood breach the 2000 HAP Contract?

a. Should HUD be precluded from asserting that Englewood failed to maintain the South Pointe property in appropriate condition, or failed to respond to alleged deficiencies noted by HUD? ( HUD declined to provide responses to Plaintiff's Interrogatories requesting HUD to describe any failure by Englewood to respond to HUD's April 1999 and March 2001 REAC inspections. See Defendant's Resp. To Pl's. Interrogatories, at pp. 19-20, Interrogatories 11-13. Rather than respond to Englewood's discovery requests, HUD asserted that the REAC inspections and Englewood's responses to all other official inspections were "irrelevant to the issues being litigated in this case." Id.)

b. Should HUD be precluded from asserting that Englewood failed to submit an appropriate application for a rehabilitation loan? (HUD declined to provide responses to

Plaintiff's Interrogatories requesting HUD to identify the differences between the scope of work proposed by Englewood and HUD in their discussions of a rehabilitation loan in March 2001. See Defendant's Resp. To Pl's. Interrogatories, at p. 21, Interrogatory 14. Rather than respond to Englewood's discovery requests with respect to the different scopes of work for the rehab loan, HUD asserted that these matters are "irrelevant to the issues being litigated in this case." Id.)

4. Did Englewood take substantial actions in good faith to rehabilitate South Pointe, from at least 1998, including:

a. working with the Department Enforcement Center ("DEC") to identify existing deficiencies in the condition of South Pointe;

b. developing and implementing MIO and other plans to correct those deficiencies;

c. attempting to finalize the MIO Plan throughout 2000;

d. infusing additional capital to pay for capital repairs;

e. applying for a rehabilitation loan to finance other capital repairs;

f. and did HUD recognize and approve Englewood's actions and intentions regarding the South Pointe building, through its acceptance of Englewood's Management Improvement and Operating ("MIO") Plan in 1999 and 2000, the drafting of the "Final Team Report" in January 2000, the approval of Englewood's prompt response to HUD's 2000 management/occupancy review, and through the events leading to the execution of the 2000 HAP Contract in October 2000.

5. The following issues relate to Englewood's claim for damages:

a. whether Englewood may recover damages for lost revenues during the four years covered by the 2000 HAP Contract, and the amount of such damages;

b. whether Englewood may recover damages for the loss of equity in South Pointe, and the amount of such damages;

c. whether Englewood may recover damages for HUD's failure to implement rent increases, and the amount of such damages;

d. whether Englewood may recover damages for HUD's failure to reimburse Englewood for extraordinary energy costs, tenant-caused damage, and tenant vacancies, and the amount of such damages;

e. whether Englewood may recover damages for the loss of business to Englewood, DSSA Management, Inc., PM Group, Don Samuelson and John Hayes, and the amount of such damages.

**Defendant's Proposed Stipulations**
**Of Issues Of Law Not Agreed To By Plaintiffs**

1. Whether HUD breached any contract or violated any money mandating provision of law by denying Englewood's requests for reimbursement for vacant units.[3]

2. Whether any contract or money mandating provision of law confers jurisdiction upon this Court to entertain Englewood's "special claims" pertaining to unpaid rent and tenant-caused damage to units.[4]

3. Assuming the Court possesses jurisdiction to entertain Englewood's "special claims," whether HUD wrongfully denied any such claims.

4. Whether any contract or money mandating provision of law confers jurisdiction upon this Court to entertain Englewood's claim pertaining to excess energy costs.[5]

5. Assuming the Court possesses jurisdiction to entertain Englewood's claims seeking excess energy costs, whether HUD wrongfully denied any such claims.

6. Whether the Court possesses jurisdiction to entertain Englewood's claims that HUD improperly failed to implement any rent increase.[6]

---

[3] Defendant recognizes that this issue was addressed in its April 28, 2006 Motion To Dismiss In Part And Motion For Partial Summary Judgment. We raise it here solely to preserve the issue.

[4] Defendant recognizes that this issue was addressed in its April 28, 2006 Motion To Dismiss In Part And Motion For Partial Summary Judgment. We raise it here solely to preserve the issue.

[5] Defendant recognizes that this issue was addressed in its April 28, 2006 Motion To Dismiss In Part And Motion For Partial Summary Judgment. We raise it here solely to preserve the issue.

[6] Defendant recognizes that this issue was addressed in its April 28, 2006 Motion To Dismiss In Part And Motion For Partial Summary Judgment. We raise it here solely to preserve the issue.

7. Assuming the Court possesses jurisdiction to entertain Englewood's claim for a requested rent increase, whether HUD improperly failed to implement the requested rent increase.

8. Whether Englewood's claims are barred by estoppel.

9. Whether the decision of the Federal District Court for the Northern District of Illinois dated November 14, 2001 precludes Englewood's claim that HUD illegally terminated the parties' October 2000 HAP Renewal Contract.[7]

10. Whether Englewood's pleadings before the Federal District Court for the Northern District of Illinois preclude Englewood from alleging that HUD illegally terminated the parties' October 2000 HAP Renewal Contract.

11. Whether Englewood's letter to the Court dated April 1, 2004 (in which plaintiff acknowledged that "Englewood's HAP Contract was renewed with the express incorporation of all the provisions related to this lawsuit-breach, notice, default, remedies") precludes Englewood from alleging that HUD illegally terminated the parties' October 2000 HAP Renewal Contract.

12. Whether Englewood may seek damages in this case by claiming that HUD repudiated any HAP contract by making a cardinal change to its terms, when Englewood raised this claim for the first time in response to the Government's first motion for summary judgment.[8]

---

[7] "October 2000 HAP Renewal Contract" refers to the second renewal of the 1998 HAP Contract. The 2000 HAP Renewal Contract stated that the "Contract shall run an initial 1 Year period" and that, "[a]fter expiration of the initial term, this Contract shall renew automatically for 3 additional one-year terms, subject to the availability of appropriations in any year."

[8] Defendant recognizes that this issue was addressed in its April 28, 2006 Motion To Dismiss In Part And Motion For Partial Summary Judgment. We raise it here solely to preserve the issue.

13. Assuming Englewood seeks damages in this case for its alleged inability to make payments towards a HUD-insured mortgage, whether Englewood may obtain such damages when Englewood failed to plead such damages in its complaint.[9]

14. Assuming Englewood seeks damages in this case for its alleged inability to make payments towards a HUD-insured mortgage, whether Englewood may obtain such damages in this case when Englewood obtained its mortgage in a collateral undertaking entered into after the parties' HAP contract was terminated and all renewals/extensions had ended.

15. Assuming Englewood seeks damages in this case for its alleged inability to make payments towards a HUD-insured mortgage, whether Englewood may obtain such damages in this case when Englewood's application for a mortgage indicated that Englewood would rely upon no HAP contract payments with which to repay the mortgage or otherwise.

16. Assuming Englewood's former or current general partners or owners seek damages in this case for collateral business opportunities allegedly lost as a result of HUD's issuance of internal program participant "flags," whether the Court possesses jurisdiction to entertain such claims.[10]

17. Assuming Englewood's former or current general partners or owners seek damages in this case for collateral business opportunities allegedly lost as a result of HUD's

---

[9] Defendant recognizes that this issue was addressed in its April 28, 2006 Motion To Dismiss In Part And Motion For Partial Summary Judgment. We raise it here solely to preserve the issue.

[10] Defendant recognizes that this issue was addressed in its April 28, 2006 Motion To Dismiss In Part And Motion For Partial Summary Judgment. We raise it here solely to preserve the issue.

issuance of internal program participant "flags," whether such damages are recoverable in this case when Englewood failed to plead such damages in its complaint.[11]

18. Whether Englewood's failure to mitigate its losses precludes it from seeking damages.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Brian M. Simkin
BRIAN M. SIMKIN
Assistant Director

s/Peter V. Baugher
PETER V. BAUGHER
Schopf & Weiss LLP
312 West Randolph Street, Suite 300
Chicago, IL 60606-1720
Tel: (312) 701-9300
fax: (312) 701-9335

WILL BERNDT
Schopf & Weiss LLP

s/ Douglas K. Mickle
DOUGLAS MICKLE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 307-0383
Fax: (202) 307-0972

[11] Defendant recognizes that this issue was addressed in its April 28, 2006 Motion To Dismiss In Part And Motion For Partial Summary Judgment. We raise it here solely to preserve the issue.

OF COUNSEL:
GREGORY G. GUSTIN
MARIA T. BAGUIO
RUSSELL J. COHEN
LORRAINE C. SHOTO
THOMAS G. MASSOURAS
Office of General Counsel
U.S. Department of Housing
and Urban Development

October 27, 2006

**CERTIFICATE OF FILING**

I hereby certify that on October 27, 2006, a copy of the foregoing "**JOINT STATEMENT OF THE ISSUES OF FACT AND LAW TO BE DECIDED BY THE COURT**" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Douglas K. Mickle
Douglas K. Mickle