**NO. 03-2209C**
**(Judge Marian Blank Horn)**

---

**IN THE UNITED STATES COURT OF THE FEDERAL CLAIMS**

---

**ENGLEWOOD TERRACE**
**LIMITED PARTNERSHIP,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF GREGORY GUSTIN AND BEVERLY MILLER; LIMIT THE TESTIMONY OF FREDDIE BATCHELOR, TED DUNAJ, JOHN HAYES AND DONALD SAMUELSON; AND, PRECLUDE ANY TESTIMONY REGARDING MATTERS IN WHICH THE COURT DOES NOT POSSESS JURISDICTION

---

**PETER D. KEISLER**
**Assistant Attorney General**

**DAVID M. COHEN**
**Director**

**BRIAN M. SIMKIN**
**Assistant Director**

**DOUGLAS K. MICKLE**
**Commercial Litigation Branch**
**Civil Division**
**Department of Justice**
**Attn: Classification Unit, 8th Floor**
**1100 L St., N.W.**
**Washington, D.C. 20530**
**Tel: (202) 307-0383**
**Fax: (202) 353-7988**

**Attorneys for Defendant**

**OF COUNSEL:**

**GREGORY G. GUSTIN**
**MARIA T. BAGUIO**
**RUSSELL J. COHEN**
**LORRAINE C. SHOTO**
**THOMAS G. MASSOURAS**

**Office of General Counsel**
**U.S. Department of Housing**
**and Urban Development**

**November 20, 2006**

# TABLE OF CONTENTS

DEFENDANT'S MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF GREGORY GUSTIN AND BEVERLY MILLER; LIMIT THE TESTIMONY OF FREDDIE BATCHELOR, TED DUNAJ, JOHN HAYES AND DONALD SAMUELSON; AND, PRECLUDE ANY TESTIMONY REGARDING MATTERS IN WHICH THE COURT DOES NOT POSSESS JURISDICTION . . . . . . . . . . . . . . . . . . . . . . 1

I. Englewood Should Be Precluded From Calling Gregory Gustin And Beverly Miller To Testify At Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

A. Gregory Gustin's Testimony Is Protected By The Attorney Client and Work Product Privilege . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

B. Beverly Miller Does Not Possess Personal Knowledge Regarding The Issues Before The Court . . . . . . . . . . . . . . . . . . . . . . . . . 6

II. The Testimony of Freddie Batchelor, Ted Dunaj, John Hayes And Donald Samuelson Should Be Limited To Factual Matters In Which They Possess Personal Knowledge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

A. Freddie Batchelor's Testimony Should Be Limited . . . . . . . . . . . . . . . . . 8

1. HUD Touhy Regulations Limit Ms. Batchelor's Testimony To Non-Opinion Matters . . . . . . . . . . . . . . . . . . . . . . . 8

2. Ms. Batchelor Lacks Personnel Knowledge Of Many Issues She Is Expected To Testify About . . . . . . . . . . . . . . . . . . 10

B. Ted Dunaj's Testimony Should Be Limited . . . . . . . . . . . . . . . . . . . . . . 11

C. John J. Hayes's Testimony Should Be Limited . . . . . . . . . . . . . . . . . . . 13

D. Don Samuelson's Testimony Should Be Limited . . . . . . . . . . . . . . . . . . 14

III. The Court Does Not Possess Jurisdiction To Entertain Englewood's Special Claims And Any Testimony Regarding These Matters Should Be Precluded . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

A. The Standard Of Review Pursuant To RCFC 12(b)(1) . . . . . . . . . . . . . . 16

B. The Court Lacks Jurisdiction To Consider Englewood's Claims Regarding A Rent Increase Request, And Thus, Testimony And Evidence About This Subject Should Be Precluded . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

C. The Court Lacks Jurisdiction To Consider Englewood's Claims For Energy Costs , And Thus, Testimony And Evidence About This Subject Should Be Precluded . . . . . . . . . . . . . . . . . 21

D. The Court Lacks Jurisdiction To Consider Englewood's Claims For Unpaid Rent And Tenant-Caused Damage, Ant Thus, Testimony And Evidence About This Subject Should Be Precluded . . . . . . . . . . . . . . . . . 23

E. The Court Lacks Jurisdiction To Consider Claims Related To "Risk Flags" That HUD Recorded Regarding Englewood's Owners . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

F. The Court Lacks Jurisdiction To Consider Claims Related To Englewood's Default Of A Separate $11.6 Million HUD-Insured Mortgage, And Thus, Testimony And Evidence About This Subject Should Be Precluded . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## TABLE OF AUTHORITIES

**CASES:** **PAGES:**

Aetna Cas. & Sur. Co. v. United States,
228 Ct. Cl. 146 (1981) . . . . . . . . . . 16

American Standard Inc. v. Pfizer Inc.,
828 F.2d 734 (Fed. Cir. 1987) . . . . . . . . . . 5

Asplundh Mfg. Div. v. Benton Harbor Eng'g,
57 F.3d 1190 (3rd Cir. 1995) . . . . . . . . . . 7

Baskett v. United States,
2 Cl. Ct. 356 (1983) . . . . . . . . . . passim

Casa de Cambio Comdiv S.A., de C.V. v. United States,
291 F.3d 1356 (Fed. Cir. 2002) . . . . . . . . . . 16, 24

Christianson v. Colt Industrs. Operating Corp.,
486 U.S. 800 (1988) . . . . . . . . . . 16

Dynalectron Corp. v. United States,
4 Cl. Ct. 424, (1984) . . . . . . . . . . 16

Eastport S.S. Corp. v. United States,
178 Ct. Cl. 599 (1967) . . . . . . . . . . 17

Englewood Terrace Ltd. Partnership v. United States,
61 Fed. Cl. 583 (2004) . . . . . . . . . . 20

Falzarano v. United States,
607 F.2d 506 (1st Cir. 1979) . . . . . . . . . . 19

Fid. Constr. Co. v. United States,
700 F.2d 1379 (Fed. Cir. 1983) . . . . . . . . . . 16

Frakes v. Pierce,
700 F.2d 501 (9th Cir. 1983) . . . . . . . . . . 19

Grace Towers Tenants Assoc. v. Grace House Dev. Fund Co.,
538 F.2d 491 (2d. Cir 1976) . . . . . . . . . . 19

Hahn v. Gottlieb,
430 F.2d 1243 (1st Cir. 1970) . . . . . . . . . . 19

Harlib v. Lynn,
511 F.2d 51 (7th Cir. 1975) . . . . . . . . . . 19

Hickman v. Taylor,
329 U.S. 495 (1947) . . . . . . . . . . 5

Inslaw, Inc. v. United States,
35 Fed. Cl. 295 (1996)
unanimously aff'd, 40 Fed. Cl. 843 (1998) . . . . . . . . . . 3, 4

International Graphics Div. of Moore Business Forms, Inc. v. United States,
5 Cl. Ct. 100, 104 (1984) . . . . . . . . . . 4

Kennedy Heights Apartments, Ltd. I v. United States,
48 Fed. Cl. 574 (2001) . . . . . . . . . . 18, 19

McCauley v. United States,
38 Fed. Cl. 250 (1997) . . . . . . . . . . 17

Medgar Evers Houses Assocs., L.P. v. United States,
Fed. Cl. No. 96-809 (Nov. 10, 2005) . . . . . . . . . . 20

Mients v. United States,
50 Fed. Cl. 665 (2001) . . . . . . . . . . 16, 24

Palmerin v. City of Riverside,
794 F.2d 1409 (9th Cir. 1986) . . . . . . . . . . 17

Phaidin v. United States,
28 Fed. Cl. 231 (1993) . . . . . . . . . . 16

Reiner v. West Village Assocs.,
768 F.2d 31 (2d Cir. 1985) . . . . . . . . . . 19

Reynolds Assocs. v. United States,
31 Fed. Cl. 335 (1994) . . . . . . . . . . passim

Rice v. United States,
31 Fed. Cl. 156 (1994) . . . . . . . . . . 17

Shelton v. American Motors Corp.,
805 F.2d 1323 (8th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6

So. Comfort Builders, Inc. v. United States,
67 Fed. Cl. 124 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Sparton Corporation v. United States,
44 Fed. Cl. 557 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Texas v. United States, ,
210 Ct. Cl. 522 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

United States v. All Funds on Deposit in Any Accounts Maintained at Merrill Lynch, Pierce, Fenner & Smith,
801 F.Supp. 984 (E.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Connolly,
716 F.2d 882 (Fed. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 27

United States v. Daccarett
6 F.3d 37 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. King,
395 U.S. 1 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

United States v. Mitchell,
445 U.S. 535 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

United States ex rel. Touhy v. Ragen,
340 U.S. 462 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10

United States v. Sherwood,
312 U.S. 584 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

United States v. Testan,
424 U.S. 392 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

UNR Industrs., Inc. v. United States,
962 F.2d 1013 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Weeks Dredging & Contracting, Inc. v. United States,
11 Cl. Ct. 37 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

White Mountain Apache Tribe of Az. v. United States,
10 Cl. Ct. 115 (1986) . . . . . 17

Zenith Radio Corp. v. Matshushita Elec. Indus. Co., Ltd.,
505 F. Supp. 1125 (E.D. Pa. 1980) . . . . . 3

## STATUTES

5 U.S.C. § 301 . . . . . 9

28 U.S.C. 1491(b)(1) . . . . . 26

28 U.S.C. §1491 . . . . . 16

## REGULATIONS

5 C.F.R. § 2637.208 . . . . . 9

10 C.F.R. § 202.22 . . . . . 9

24 C.F.R. § 15.301 . . . . . 10

24 C.F.R. § 15.302 . . . . . 9, 10

24 C.F.R. § 200.210 . . . . . 25

24 C.F.R. § 200.213 . . . . . 25

24 C.F.R. § 218 . . . . . 25

24 C.F.R. § 219 . . . . . 25

24 C.F.R. § 200.230 . . . . . 25

24 C.F.R. § 200.241 . . . . . 26

28 C.F.R. § 16.21(a) . . . . . 9

28 C.F.R. § 16.22(a) . . . . . 9

28 C.F.R. § 16.28 . . . . . 9

32 C.F.R. § 97.3(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

49 C.F.R. § 9.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## INDEX TO DEFENDANT'S APPENDIX


Ms. Beverly Miller's Responses to Englewood's Deposition
By Written Question . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 1

2001 90-day HAP Renewal Contract (Joint Exhibit ("JE") 24) . . . . . . . . . . . . . . . . . . . Exhibit 2

2000 HAP Renewal Contract (JE 21) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 3

Guidelines for Processing Renewal Adjustment
for Escalating Energy Costs (JE 90) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 4

Memo To Owners Re: Energy Reimbursement Guidelines,
May 10, 2001 (JE 92) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 5

1998 HAP Contract at 3 (JE 19) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 6

HUD Directive Number 4350.3(JE 136) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 7

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ENGLEWOOD TERRACE LIMITED PARTNERSHIP,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 03-2209C** |
| | ) | **(Judge Marian Blank Horn)** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF GREGORY GUSTIN AND BEVERLY MILLER; LIMIT THE TESTIMONY OF FREDDIE BATCHELOR, TED DUNAJ, JOHN HAYES AND DONALD SAMUELSON; AND, PRECLUDE ANY TESTIMONY REGARDING MATTERS IN WHICH THE COURT DOES NOT POSSESS JURISDICTION**

Defendant, the United States, pursuant to Rule 12 of the Rules of the United States Court of Federal Claims ("RCFC"), respectfully moves in limine to exclude the testimony of Gregory Gustin and Beverly Miller.

Mr. Gustin is the Associate Regional Counsel for Program Enforcement, and thus, is a senior HUD legal advisor to Director Edward Hinsberger,[1] the Chicago HUD office, other HUD staff, the United States Attorney involved in Englewood's predecessor litigation in Federal district court, and the Department of Justice for this case. The information sought from Mr. Gustin by Englewood is protected by the attorney-client and work-product privileges.

Ms. Miller is the national Asset Management Director of HUD's Office of Multifamily Housing in Washington, D.C. As she testified in her deposition upon written questions,

[1] Mr. Hinsberger is the Chicago HUB Director, Office of Multifamily Housing, United States Department of Housing and Urban Development ("HUD"), who was the final decision-maker regarding, among other things, the termination and abatement of Englewood's Section 8 contract.

Ms. Miller does not possess any relevant first-hand knowledge regarding the issues before the Court.[2]

Additionally, we respectfully move to limit the scope of the testimony given by several witnesses Englewood listed upon the joint witness list. Specifically, the testimony of Freddie Batchelor, Ted Dunaj, John Hayes and Donald Samuelson should be limited because these witnesses do not possess personal knowledge regarding many of the areas about which Englewood seeks to have them testify. Additionally, it appears that these witnesses will attempt to offer opinion testimony prohibited by Rules 602 and 701 of the Federal Rules of Evidence ("FRE"). Finally, as we explain in greater detail below, Ms. Batchelor, as a former employee of HUD, is precluded from providing opinion testimony without the prior consent of HUD.

Finally, we respectfully move to limit the scope of the testimony and evidence given by all Englewood witnesses at trial to only those matters for which the Court possesses jurisdiction. In its complaint, Englewood seeks money damages that it claims HUD was obligated to pay it. These alleged damages include: 1) the proceeds from a post-default August 2001 request for an increase in the rent Englewood could charge its tenants; 2) reimbursement for alleged high energy costs; and 3) reimbursement for uncollected rent and alleged tenant-caused damage to apartments. See Compl. ¶¶ 93, 94. Although Englewood attempts to label these claims as arising under a breach of contract theory, these claims are not based upon any agreement between Englewood and HUD that could confer jurisdiction upon the Court. Compl. at 23.

---

[2] Counsel for Englewood has informed us that Englewood will not be calling Willie Spearmon as witnesses at trial, and Englewood has also indicated that it would probably not call Ray Etzkorn as a witness either. Pursuant to this understanding, the Government will not seek to exclude their testimony in this motion.

Neither are these claims based upon any money mandating provision of law conferring jurisdiction.

Furthermore, although not pled in its complaint, but clearly suggested in the joint witness list and joint exhibit list, Englewood intends to provide evidence and testimony at trial for alleged lost business opportunities resulting from internal program participant "flags" that HUD used to record instances in which Englewood, and its principals and representatives who are not a party to this lawsuit, violated HUD requirements; for losses allegedly incurred when Englewood defaulted upon its HUD-insured mortgage and subsequent loss of the property to a third party foreclosure; and alleged mitigation efforts by making the $11.6 million, foreclosed, HUD insured loan. We also contend that the Court possesses no jurisdiction to entertain these claims. Moreover, even if the Court possessed jurisdiction to entertain these claims, Englewood waived them by failing to assert them in its complaint.

The purpose of a motion in limine is “to prevent a party before trial from encumbering the record with irrelevant, immaterial or cumulative matters.” Inslaw, Inc. v. United States, 35 Fed. Cl. 295, 302-303 (1996), unanimously aff'd, 40 Fed. Cl. 843 (1998). "Such a motion enables a court to rule in advance on the admissibility of documentary or testimonial evidence and thus expedite and render efficient a subsequent trial.” Id. (citing Baskett v. United States, 2 Cl. Ct. 356, 359 (1983)). This Court has consistently held that a ruling in limine "is a remedy designed to increas[e] trial efficiency and promot[e] improved accuracy of evidentiary determinations by virtue of the more thorough briefing and argument of the issues that are possible prior to the crush of trial." Weeks Dredging & Contracting, Inc. v. United States, 11 Cl. Ct. 37, 45 (1986) (citing Zenith Radio Corp. v. Matshushita Elec. Indus. Co., Ltd., 505 F. Supp.

1125, 1140 (E.D. Pa. 1980)); International Graphics Div. of Moore Business Forms, Inc. v. United States, 5 Cl. Ct. 100, 104 (1984); see Inslaw, Inc., 35 Fed. Cl. at 302-303 (1996).

In support of this motion in limine, the United States relies upon the Complaint ("Compl."), the accompanying appendix ("DA"),[3] and the following brief.

## I. Englewood Should Be Precluded From Calling Gregory Gustin And Beverly Miller To Testify At Trial

### A. Gregory Gustin's Testimony Is Protected By The Attorney Client and Work Product Privilege

Englewood seeks to call Gregory Gustin to testify about "his experience with South Pointe as lead counsel" including conversations he participated in as "Lead Counsel in the Departmental Enforcement Center ("DEC")." As such, there is no relevant testimony Mr. Gustin could provide that would not infringe upon the attorney-client and work product privileges. The Court should strike Mr. Gustin's name from Englewood's witness list and prevent Englewood from calling Mr. Gustin at trial.

The Court of Federal Claims has adopted a three-part test from Shelton v. American Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986), to determine whether a party may compel testimony from an attorney employed by the opposing party. Sparton Corporation v. United States, 44 Fed. Cl. 557 (1999)(Senior J. Merow)(applying three-part test to determine whether plaintiff could depose Government attorney). See also United States v. All Funds on Deposit in Any Accounts Maintained at Merrill Lynch, Pierce, Fenner & Smith, 801 F.Supp. 984, 996 (E.D.N.Y. 1992), aff'd sub nom. United States v. Daccarett 6 F.3d 37 (2d Cir. 1993).

---

[3] Defendant's appendix includes documents we cite for support in this motion.

Pursuant to the Shelton test, a party may examine an opposing counsel only if the party can demonstrate that: 1) no other means exist to obtain the information, 2) the information sought is relevant and non-privileged, and 3) the information is crucial to the party's case. Id. As Englewood cannot meet the Shelton test's rigorous requirements, it cannot call Mr. Gustin to testify.

The joint witness list contains numerous names of individuals who can testify regarding the items Englewood is proposing that Mr. Gustin testify. Clearly, Englewood's own representatives can testify about these items. As such, Englewood cannot satisfy the first prong of the Shelton test.

To the extent Englewood intends to question Mr. Gustin about his communications with HUD staff or perception, understandings, and beliefs about the nature of the various meeting he had with Englewood officials, such perceptions, understandings, and beliefs are clearly covered by the attorney-client and work product privileges. See Hickman v. Taylor, 329 U.S. 495 (1947); American Standard Inc. v. Pfizer Inc., 828 F.2d 734, 745 (Fed. Cir. 1987). Thus, Englewood cannot satisfy the second prong of the Shelton test.

Finally, Englewood has not explained why Mr. Gustin's testimony would be relevant to Englewood's claim that the Government improperly terminated the HAP contract. Because Englewood did not attempt to depose Mr. Gustin during discovery, Englewood does not know what Mr. Gustin’s trial testimony would be. Indeed, the fact that Englewood did not notice Mr. Gustin’s deposition creates a strong presumption that Englewood did not perceive Mr. Gustin’s testimony as “crucial.” Moreover, Mr. Gustin, as an attorney, possessed no authority to make any decisions regarding the termination or any other election concerning

Englewood's HAP contract. Clearly, Englewood cannot satisfy the third prong of the Shelton test.

Accordingly, Englewood should be precluded from calling Gregory Gustin to testify at trial.

**B. Beverly Miller Does Not Possess Personal Knowledge Regarding The Issues Before The Court**

Federal Rule of Evidence 602 provides that a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Englewood seeks to compel the testimony of a senior official in HUD, Beverly Miller. Ms. Miller does not possess personal knowledge of any of the relevant matters before this Court. Indeed, in her response to Englewood's deposition by written question, Ms. Miller admitted this. DA Exhibit 1. Given her lack of involvement in the matters central to its case, Englewood has simply failed to explain why her testimony would be relevant to Englewood's claim that the Government improperly terminated the HAP contract. Furthermore, Ms. Miller's senior position at HUD provides additional reason to exclude her testimony. It is difficult to see how calling a senior official to testify at trial upon events she admits she knows nothing about, is in the best interest of justice and the United States taxpayer.

**II. The Testimony of Freddie Batchelor, Ted Dunaj, John Hayes And Donald Samuelson Should Be Limited To Factual Matters In Which They Possess Personal Knowledge**

Englewood has listed several witnesses whose expected testimony should be limited for several reasons. Specifically, the testimony of Freddie Batchelor, Ted Dunaj, John Hayes and Donald Samuelson should be limited because these witnesses do not possess personal knowledge regarding many of the areas upon which Englewood seeks to have them testify. Additionally, it

appears that these witnesses will attempt to offer opinion testimony that runs afoul of Rules 602 and 701 of the Federal Rules of Evidence. Finally, as we explain in greater detail below, Ms. Batchelor, as a former employee of the HUD, is also precluded from providing opinion and expert testimony regarding HUD matters without the prior consent of HUD.

Federal Rule of Evidence 701 states:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based upon the perceptions of a witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) <u>not based on scientific, technical or other specialized knowledge within the scope of Rule 702.</u>

FRE 701 (emphasis supplied). Additionally, as discussed above, FRE 602 states that a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. As the Advisory Committee observed when amending the Federal Rules of Evidence,

> Rule 701 has been amended to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing. The amendment makes clear that any part of a witness' testimony that is based upon scientific, technical, or other specialized knowledge within the scope of Rule 702 is governed by standards of 702 and the corresponding disclosure requirements of the Civil and Criminal Rules.

FRE 701 (2000 Notes of Advisory Committee).

By their terms, FRE 602 and 701 only permit lay opinion testimony that is based upon the perception of a witness – <u>i.e.</u>, the witness' firsthand knowledge of the relevant facts, such as "degrees of light or darkness, sound, size, weight, distance . . . ." FRE 701 (2000 Notes of Advisory Committee), <u>citing</u> <u>Asplundh Mfg. Div. v. Benton Harbor Eng'g</u>, 57 F.3d 1190, 1196

(3rd Cir. 1995). As we explain below, several aspects of these witnesses proposed testimony fails this test because their testimony would not be based upon their perceptions of facts relevant to this litigation, but would instead be based upon their views of events presented to them by third parties.

### A. Freddie Batchelor's Testimony Should Be Limited

#### 1. HUD Touhy Regulations Limit Ms. Batchelor's Testimony To Non - Opinion Matters

Englewood has listed a former employee of the Chicago HUD's DEC, Ms. Freddie Batchelor, as a witness who will purportedly testify to:

> her experience in public housing and as an employee of the Department of Housing and Urban Development ("HUD") and its Departmental Enforcement Center ("DEC"); her experience with the South Pointe building and the management and owners of Englewood; contacts between the management and owners of Englewood and other HUD officials; the contract between Englewood and HUD; HUD's decision-making procedures and customs regarding the review of its housing projects; HUD's procedures and customs regarding the creation, termination and abatement of Section 8 contracts; Englewood's plan and efforts to renovate the South Pointe building in response to the 1997 REAC Report; Englewood's applications for loans related to the renovation of the South Pointe building; notices of default issued to Englewood; the termination of Englewood's Section 8 contract; and the condition of the South Pointe building.

See Jt. Witness List, Docket Entry 109, pp. 1-2.

As a former HUD employee, Ms. Batchelor is able to testify as to non-privileged[4] facts she knows, but she is restricted from testifying as an expert or to offer her opinion regarding HUD's activities, procedures and policies. HUD regulations expressly provide that:

---

[4] HUD has not waived any attorney-client privilege for Ms. Batchelor's tesimony, or otherwise.

> [i]n any legal proceeding in which the United States is a party, an employee of the Department may not be called to testify as an expert or opinion witness by any party other than the United States unless specifically authorized by the Secretary or the General Counsel for good cause shown. An employee may be called by a non-federal party to testify as to facts.

24 C.F.R. § 15.302(a). The term "employee" includes both current and former employees of HUD.[5] 24 C.F.R. § 15.301(b).

Currently, the primary source of statutory authority for such regulations is 5 U.S.C. § 301,[6] the Federal Government's so-called "housekeeping" statute, which authorizes the head of every Executive Branch agency to "prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property." 5 U.S.C. § 301.

The courts recognize that Federal agencies must be allowed to make "centralized determination[s]" as to the production of evidence due to the "variety of information" available from the Government and the "possibilities of harm from unrestricted disclosure in court." Touhy, 340 U.S. at 469.

---

[5] Regulations of many other agencies explicitly apply to attempts to obtain testimony or other evidence from former agency employees. See e.g. 32 C.F.R. § 97.3(b) (Department of Defense); 10 C.F.R. § 202.22 (Department of Energy); 49 C.F.R. § 9.3 (Department of Transportation); 28 C.F.R. §§ 16.21(a), 16.22(a), 16.28 (Department of Justice). Such coverage is beneficial to an agency because it allows the agency to exercise control over official information that may be possessed, and potentially released, by former employees. The general prohibition for all Federal employees, both current and former, is found at 5 C.F.R. § 2637.208.

[6] The agency regulations promulgated under 5 U.S.C. § 301 have become known as Touhy regulations. The name comes from the Supreme Court's decision in United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951), which upheld the validity of such regulations under the predecessor to the current 5 U.S.C. § 301.

HUD has not consented to Ms. Batchelor's testimony. Moreover, if either Englewood or Ms. Batchelor had requested HUD's approval to offer her opinions, they would have been informed why she is prohibited from offering her opinion. Ms. Batchelor's proposed opinion testimony as to "HUD's decision-making procedures and customs regarding the review of its housing projects" and "HUD's procedures and customs regarding the creation, termination and abatement of Section 8 contracts" violates the flat prohibition set forth in 24 C.F.R. § 15.302. First, Ms. Batchelor is an employee of HUD within the meaning of 24 C.F.R. § 15.301 and second, she is not testifying upon behalf of the United States. Simply put, Ms. Batchelor has no authority to set HUD policy, speak for the agency upon policy matters, or otherwise testify as to HUD activities beyond her own personal direct knowledge of unprivileged facts. That authority to testify otherwise belongs to the Secretary of the agency, not a former employee hired as by the plaintiff. To permit an employee of Englewood to state "HUD's decision-making procedures and customs regarding the review of its housing projects" and "HUD's procedures and customs regarding the creation, termination and abatement of Section 8 contracts," cloaking her opinion in the putative authority of her former employment, will lead directly to the harm the Touhy regulations were designed to prevent. Thus, Ms. Batchelor should only be allowed to testify regarding factual matters that are not privileged, and about which she possesses personal knowledge (which as we demonstrate below, provides an additional reason to limit her testimony even further).

### 2. Ms. Batchelor Lacks Personal Knowledge Of Many Issues She Is Expected To Testify About

Another basis for limiting Ms. Batchelor's testimony is that she does not possess personal knowledge of many of the events she is expected to testify about. Ms. Batchelor admits

she worked in the Chicago's HUD DEC; however, she possesses absolutely no first hand knowledge regarding: 1) "the contract between Englewood and HUD," 2) "Englewood's applications for loans related to the renovation of the South Pointe building," and 3) the termination of Englewood's Section 8 contract," because all of Ms. Batchelor's authorized responsibilities for South Pointe ended not later than February 2000. Additionally, Ms. Batchelor's experience with respect to South Pointe, a project with oversight by HUD's Office of Multi-family Housing, involved her work in the DEC. Ms. Batchelor has **never** worked in HUD's Office of Multifamily Housing – whose responsibility was to provide oversight of projects like South Pointe. Rather, prior to being a DEC staff member, Ms. Batchelor was employed by HUD's Office of Public and Indian Housing, wholly different HUD programs. Any testimony that Ms. Batchelor presents upon these matters simply would be pure speculation upon her part.

Furthermore, as we noted above, Ms. Batchelor's authorized involvement with South Point while she worked in HUD Chicago's DEC officially ended no later than February 2000 – the date of the "final" DEC team report that Ms. Batchelor signed. Thus, if she is allowed to testify about the facts she is personally aware of involving the DEC and Englewood, the testimony must be limited to unprivileged facts that occurred during the time period of the Fall 1998 to February 2000.

**B. Ted Dunaj's Testimony Should Be Limited**

According to the joint witness list, Mr. Dunaj is "an architect who developed plans for the rehabilitation of the South Pointe building." Englewood has listed him as a witness to testify about a variety of areas, including several areas that appear to be outside the scope of an

"architect who developed plans for the rehabilitation of the South Pointe building." Specifically, Mr. Dunaj should not be permitted to testify about matters involving: 1) "contacts between the management and owners of Englewood and HUD officials," 2) "Englewood's applications for loans related to the renovation of the South Pointe building," 3) "notices of default issued to Englewood, 4) "HUD's breach of its contract with Englewood and HUD's violation of its covenant of good faith and fair dealing," and "damages suffered by Englewood as a result of HUD's breach of contract and violation of the covenant of good faith and fair dealing" because that testimony would be improper opinion testimony given that Mr. Dunaj lacks personnel knowledge of these areas.

Clearly discussions "between the management and owners of Englewood and HUD officials" would constitute hearsay. Additionally, any testimony regarding "HUD's breach of its contract with Englewood and HUD's violation of its covenant of good faith and fair dealing," and "damages suffered by Englewood as a result of HUD's breach of contract and violation of the covenant of good faith and fair dealing" are legal conclusions which are matters the Court must decide. Mr. Dunaj's expected testimony regarding these latter two points is even more surprising given that Mr. Dunaj's involvement with South Point is limited to that of an architect, and is not found in any of the documents associated with the termination of Englewood's HAP contract.

Accordingly, Mr. Dunaj's testimony should be limited to those matters that he possesses direct, personal knowledge, and not his mere speculation as to the events at issue.

**C. <u>John J. Hayes's Testimony Should Be Limited</u>**

According to the joint witness list, Mr. Hayes is the former general partner of Englewood. Englewood has listed Mr. Hayes as a witness who may testify regarding a variety of subjects, to include "the termination of Englewood's Section 8 contract," "HUD's breach of its contract with Englewood and HUD's violation of its covenant of good faith and fair dealing," "damages suffered by Englewood as a result of HUD's breach of contract and violation of the covenant of good faith and fair dealing," "Englewood's efforts to mitigate its damages," and "HUD's imposition of "flags" on Englewood and its owners and management."

It is beyond dispute that HUD's official decision to terminate Englewood's Section 8 HAP contract was made on November 30, 2001. It is also beyond dispute that Mr. Hayes's involvement with South Pointe, as principal for Englewood ended on December 13, 2002 (when Englewood and its new general partner DSSA/Samuelson obtained the now defaulted $11.6 million HUD-insured loan), and Mr. Hayes's involvement as principal for South Pointe's management agent ended not later than December 2001 (when DSSA/Samuelson succeeded PM One as Englewood's management agent). Thus, to the extent the subject areas we listed above occurred after Mr. Hayes left the employ of Englewood, they are clearly beyond his personal knowledge and should be precluded. Furthermore, as we demonstrate in section III below, many areas that Mr. Hayes is being called to testify concern areas that are outside the jurisdictional boundaries of the Court, or concern claims that Englewood did not plead in its complaint and are thus waived. Accordingly, Mr. Hayes should be precluded from testifying about these matters as well.

**D. <u>Don Samuelson's Testimony Should Be Limited</u>**

Like Mr. Hayes, Englewood has listed Mr. Samuelson to testify at trial regarding a variety of issues, many of which he lacks personal knowledge. Specifically, the joint witness list states that Mr. Samuelson will testify regarding: 1) "contacts between the management and owners of Englewood and HUD officials," 2) "the contract between Englewood and HUD," 3) "notices of default issued to Englewood," 4) "the termination of Englewood's Section 8 contract," and "HUD's breach of its contract with Englewood and HUD's violation of its covenant of good faith and fair dealing."

As we explained above when discussing Mr. Hayes's limited exposure to certain areas of HUD's dealings with Englewood, it is also beyond dispute that Mr. Samuelson's official involvement with South Pointe and Englewood began not earlier than December 2001. However, many of the events we listed above had concluded by this time. Thus, the subject areas Mr. Samuelson is listed to testify about occurred before Mr. Samuelson had any official involvement with Englewood, and anything he would say regarding these issues would certainly be based upon hearsay. This includes all events leading up to, and including, HUD's official election to terminate Englewood's Section 8 HAP contract. Finally, as we demonstrate in section III below, many areas that Mr. Samuelson is being called to testify concern areas that are outside the jurisdictional boundaries of the Court, or concern claims that Englewood did not plead in its complaint and are thus waived. Accordingly, Mr. Samuelson should be precluded from testifying about these matters as well.

## III. The Court Does Not Possess Jurisdiction To Entertain Englewood's Special Claims And Any Testimony Regarding These Matters Should Be Precluded

In its complaint, Englewood seeks money damages that it claims HUD was obligated to pay it. These claims include: 1) the proceeds from a post-default August 2001 request for an increase in the rent Englewood could charge its tenants; 2) reimbursement for alleged high energy costs; and 3) reimbursement for uncollected rent and alleged tenant-caused damage to apartments. Compl. ¶¶ 93, 94. Although Englewood attempts to label these claims as arising under a breach of contract theory, these claims are not based upon any agreement between Englewood and HUD that could confer jurisdiction upon the Court. Compl. at 23. Neither are these claims based upon any money mandating provision of law conferring jurisdiction.

Not pled in its complaint, but clearly suggested in the joint witness and exhibit lists, is that Englewood apparently will seek damages at trial for alleged lost business opportunities resulting from program participant "flags" that HUD used, internally, to record instances in which Englewood, and its responsible principals and agents, violated HUD requirements, for losses allegedly incurred when Englewood defaulted upon its HUD-insured mortgage (an $11.6 million principal mortgage that was made 3-months after the HAP contract assistance ended), and its subsequent loss of the property by a third party assignee's foreclosure. Seemingly, Englewood also intends to argue at trial that the defaulted mortgage loan was somehow obtained in an effort to mitigate its alleged HAP contract damages; inconsistent with Englewood's footnote 9 to the joint witness list that damages accruing from that defaulted mortgage loan are not relevant to the actual issues before this Court.

We contend that the Court lacks jurisdiction to entertain these claims. Moreover, even if the Court possessed jurisdiction to entertain these claims, Englewood waived them by failing to

assert them in its complaint. It is settled law that "a plaintiff's failure to raise a claim or argument in its complaint may be deemed as a waiver of that argument by the plaintiff." So. Comfort Builders, Inc. v. United States, 67 Fed. Cl. 124, 153 (2005) (citing Casa de Cambio Comdiv S.A., de C.V. v. United States, 291 F.3d 1356, 1366 (Fed. Cir. 2002); Mients v. United States, 50 Fed. Cl. 665, 671 (2001)).

**A. The Standard Of Review Pursuant To RCFC 12(b)(1)**

As this Court is keenly aware, like its predecessors, this is a court of limited jurisdiction. Phaidin v. United States, 28 Fed. Cl. 231, 233 (1993); Dynalectron Corp. v. United States, 4 Cl. Ct. 424, 428, (1984). Absent congressional consent to entertain a claim against the United States, the Court lacks authority to grant relief. United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941).

Congressional consent to suit in this Court, which thereby waives sovereign immunity, must be explicit and is strictly construed. United States v. Mitchell, 445 U.S. 535, 538 (1980); Fid. Constr. Co. v. United States, 700 F.2d 1379, 1383 (Fed. Cir. 1983). A waiver of sovereign immunity cannot be implied, but must be expressed unequivocally. Testan, 424 U.S. at 399; United States v. King, 395 U.S. 1, 4 (1969). Moreover, “a court may not in any case, even in the interest of justice, extend its jurisdiction where none exists.” Christianson v. Colt Industrs. Operating Corp., 486 U.S. 800, 818 (1988); accord UNR Industrs., Inc. v. United States, 962 F.2d 1013, 1022-23, 1025 (Fed. Cir. 1992).

The central provision granting consent to suit in this Court is the Tucker Act, 28 U.S.C. § 1491. Testan, 424 U.S. at 397; Aetna Cas. & Sur. Co. v. United States, 228 Ct. Cl. 146, 151, 655 F.2d 1047, 1051 (1981). This provision, however, does not create any substantive right of

recovery against the United States for money damages. Testan, 424 U.S. at 398; Eastport S.S. Corp. v. United States, 178 Ct. Cl. 599, 605-07, 372 F.2d 1002, 1007-09 (1967). Rather, it merely confers jurisdiction upon the Court whenever the substantive right exists. Testan, 424 U.S. at 398; United States v. Connolly, 716 F.2d 882, 885 (Fed. Cir. 1983). Thus, in order to state a claim within the jurisdiction of this Court, a claimant must look beyond this jurisdictional statute and establish some substantive provision of law, regulation, or the Constitution, which fairly can be construed as mandating compensation. Mitchell, 445 U.S. at 538; Connolly, 716 F.2d at 885.

Although the factual allegations, as pled, must be presumed true and viewed in the light most favorable to the plaintiff, the burden of establishing the Court's jurisdiction falls squarely upon the plaintiff. McCauley v. United States, 38 Fed. Cl. 250, 262-63 (1997); Rice v. United States, 31 Fed. Cl. 156, 161 (1994).

Application of these principles to this case demonstrate that the Court lacks jurisdiction to consider several of Englewood's claims. A decision regarding these issues should be rendered before trial to simplify the issues at trial. White Mountain Apache Tribe of Az. v. United States, 10 Cl. Ct. 115, 116 (1986) (a motion in limine is a recognized method for obtaining a pretrial order simplifying issues for trial); Baskett v. United States, 2 Cl. Ct. 356, 367-68 (1983) (A motion in limine "is a useful tool to prevent a party before trial from encumbering the record with irrelevant, immaterial or cumulative matters."); see Palmerin v. City of Riverside, 794 F.2d 1409, 1413 (9th Cir. 1986) (motion in limine is useful to "resolve issues which would otherwise 'clutter up' the trial"). In fact, as this Court has previously acknowledged, the Court has a duty to exercise its power to exclude testimony or evidence in appropriate cases:

> There is no question under [RCFC] 16, that this court, as a trial court, has the power to issue pretrial orders simplifying issues for trial. Not only does this court have such power, it has a duty to exercise it in appropriate cases. This power allows the court, inter alia, to define the issues, facts, and theories actually in contention and to weed out extraneous issues. Too, this court also has the authority to issue pretrial rulings concerning the admissibility at trial of proposed testimony and documentary evidence.

Baskett, 2 Cl. Ct. at 359 (emphasis added). Accordingly, testimony or evidence going towards these alleged "extraneous" claims should be precluded at trial.

**B. The Court Lacks Jurisdiction To Consider Englewood's Claims Regarding A Rent Increase Request, And Thus, Testimony And Evidence About This Subject Should Be Precluded**

It is well-established that HUD has the authority to regulate the rents charged by owners receiving HUD-funded HAP subsidies. 42 U.S.C.A. § 1437f. Thus, unless HUD agrees to a rent increase, an owner cannot exceed the rent levels agreed upon in the parties' HAP contract. In this case, Englewood alleges that it submitted a post-default rent increase request to HUD in August 2001 and that HUD "fail[ed] to implement the rental increase it acknowledged was proper in August 2001."[7] Compl. ¶ 94.

In order to invoke the jurisdiction of this Court, Englewood would have to assert either that (1) HUD violated some contract provision requiring it to approve Englewood's rent increase request in August 2001; or (2) HUD violated some statute or regulation that was compensation mandating, that is, mandated the payment of money for its violation. See Kennedy Heights

[7] Englewood's subsequent filings also attempt to include HUD's denial of rent increase requests prior to August 2001, although Englewood did not amend its complaint to include these prior requests. Thus, notwithstanding HUD's jurisdictional argument, if Englewood is permitted to introduce testimony regarding its rent increase claim, it should be precluded from providing testimony with respect to rent increase requests prior to August 2001 because Englewood waived these claims by failing to amend its complaint to include them.

Apartments, Ltd. I v. United States, 48 Fed. Cl. 574, 577-79 (2001). Englewood can satisfy neither requirement.

First, Englewood cannot demonstrate that HUD violated any money mandating provision of law conferring jurisdiction upon this Court by denying it a rent increase. After all, HUD's decisions regarding whether to grant a rent increase request are not subject to judicial review and, thus, cannot confer jurisdiction upon the Court. See Reynolds Assocs. v. United States, 31 Fed. Cl. 335, 340 (1994) (holding that HUD handbook provisions regarding processing rent increase requests did not confer jurisdiction upon the Court); Reiner v. West Village Assocs., 768 F.2d 31, 33 (2d Cir. 1985) ("The courts that have addressed the issue agree that the Secretary's decision to approve a rent increase is unreviewable . . ."); Frakes v. Pierce, 700 F.2d 501, 505 (9th Cir. 1983) ("Similarly, we think HUD's rental determinations in the instant appeal are the kind of decisions which are within agency discretion."); Falzarano v. United States, 607 F.2d 506, 513 (1st Cir. 1979) ("The Secretary's decision regarding the rents and charges at the two projects is not properly a subject for mandamus jurisdiction in the posture presented to us."); Grace Towers Tenants Assoc. v. Grace House Dev. Fund Co., 538 F.2d 491, 495 (2d. Cir 1976) (holding plaintiffs did not have due process right to challenge HUD decision regarding rental increase); Harlib v. Lynn, 511 F.2d 51, 55 (7th Cir. 1975) (rejecting claim that tenants had due process right to a hearing regarding rent increase decision); Hahn v. Gottlieb, 430 F.2d 1243, 1250-51 (1st Cir. 1970) (holding that plainitffs had no right to judicial review of decisions regarding rent increases). This rule is sensible. After all, "courts are ill-equipped to superintend economic managerial decisions of the kind involved" when HUD must decide whether to grant a rent increase request. Hahn, 430 F.2d at 1249.

Second, even if, as Englewood alleges, a HUD official suggested that a rent increase might be "proper" under certain circumstances, Englewood cannot identify any contract provision that HUD violated by failing to approve Englewood's request for a rent increase. As noted, it is "well-settled that HUD's decision to grant or deny rent increase requests are committed to agency discretion as a matter of law, and are thus not subject to judicial review . . . . In such circumstances a failure to approve rent increases cannot give rise to a breach of contract." Medgar Evers Houses Assocs., L.P. v. United States, Fed. Cl. No. 96-809 (Nov. 10, 2005), slip op. 19 (unpublished).

Further, Englewood's claim that HUD failed to approve a August 2001 rent increase request also is precluded by the agreements the parties executed. In September 2001, the parties executed a 90-day HAP Renewal Contract. In this agreement, like the predecessor agreements at issue in this matter, the parties agreed upon the same rents Englewood would charge its residents. DA Exhibit 2 [2001 90-day HAP Renewal Contract at 12 (Joint Exhibit ("JE") 24, p. 719 at 730)]. By signing this agreement, Englewood accepted that it would not charge its tenants any amount higher than that agreed upon. Id. If Englewood believed it was entitled to higher rents based upon a request filed in August 2001, it could have declined to sign a renewal contract in September 2001 mandating agreed-upon rents.

In addition, and perhaps more importantly, the Court already has noted that HUD's denial of the August 2001 rent increase request could not have violated any contract terms in effect at the time Englewood submitted its request. In its decision dated August 10, 2004, the Court correctly observed that Englewood based its August 2001 rent increase request upon a provision of the parties' 1998 HAP Contract that no longer was in effect. Englewood Terrace Ltd. Partnership v. United States, 61 Fed. Cl. 583, 584 (2004).

Specifically, Englewood based its request upon section 8 of the 1998 HAP Contract. However, the parties' 2000 HAP Renewal Contract eliminated section 8 of the 1998 HAP Contract: "All terms of the Expiring Contract are renewed except for those provisions relating to contract rents and rent adjustments." Joint Stip. Fact No. 24 at Docket Entry 111; DA Exhibit 3 [2000 HAP Renewal Contract at 1 (JE 21, p. 696)]. As the Court observed, the 2000 HAP Renewal Contract established new procedures for requesting rent increases. Thus, when Englewood submitted its August 2001 rent increase request, it "requested a rent adjustment, apparently invoking a paragraph from its 1998-99 HAP contract that no longer applied." Id. at 584.

HUD's decisions regarding rent increase requests are not subject to judicial review. Further, Englewood's claims regarding an alleged failure to approve a rent increase request are not based upon any contract terms in effect between the parties or any money mandating provision of law. For these reasons, Englewood's claims here should be dismissed before trial, and no evidence or testimony would be thus necessary at trial.

### C. The Court Lacks Jurisdiction To Consider Englewood's Claims For Energy Costs , And Thus, Testimony And Evidence About This Subject Should Be Precluded

Englewood alleges that HUD failed to provide certain reimbursements to which Englewood claims it was entitled. This includes "an energy cost reimbursement for extraordinary energy costs for the 4th quarter of 2000 and the 1st quarter of 2001." Compl. ¶ 94. However, no provision of the parties' 1998 HAP Contract or any subsequent HAP renewal contract between the parties obligates HUD to provide Englewood with reimbursement for energy costs. Neither does any money mandating statute entitle Englewood to such payments. For these reasons, the Court lacks jurisdiction to consider this claim.

As the Court is aware, in order to state a claim within the jurisdiction of this Court, a claimant must look beyond the Court's jurisdictional statute and establish some substantive provision of law, regulation, or the Constitution, which fairly can be construed as mandating compensation. Mitchell, 445 U.S. at 538. It is well settled that HUD handbooks and guidelines, which are not codified in the Code of Federal Regulations, do not qualify as money mandating provisions of law: "Although plaintiff does not so contend, the HUD Handbook, on its own fails to rise to the level of an executive regulation sufficient to establish independent jurisdiction under the Tucker Act." Reynolds Assocs., 31 Fed. Cl. at 340. See also Texas v. United States, 210 Ct. Cl. 522, 537 F.2d 466, 470-71 (1976) (finding that Office of Emergency Planning circulars were not money mandating where they were "neither promulgated by the agency as regulations, identified in the parties' Agreement nor even attached to the Agreement.").

Englewood is correct that, in 2001, HUD issued guidelines pursuant to which property owners could timely request reimbursement for high energy costs. DA Exhibit 4 [Guidelines for Processing Renewal Adjustment for Escalating Energy Costs at 3 (JE 90, p. 1092 at 1094)]; DA Exhibit 5 [Memo To Owners Re: Energy Reimbursement Guidelines dated May 10, 2001 (JE 92, p. 1097)]. These guidelines are not incorporated into, or even mentioned, in any of the parties' agreements. Neither were these guidelines substantive provisions of law mandating compensation to Englewood. In fact, the decision whether to reimburse an owner for energy costs remained solely at HUD's discretion. And even if these guidelines could be construed to require HUD to compensate Englewood for energy costs under certain circumstances, Englewood has not alleged that HUD violated any portion of these guidelines.

HUD's guidelines for approving energy cost reimbursements are not embodied in any contract between the parties, and are not money mandating provisions of law. As a result,

Englewood's claims for reimbursement for energy costs should be dismissed. Reynolds Assocs., 31 Fed. Cl. at 340; Texas, 210 Ct. Cl. 522, 537 F.2d at 470-71. Once dismissed, it necessarily follows that no evidence or testimony need be taken upon this topic at trial.

**D. The Court Lacks Jurisdiction To Consider Englewood's Claims For Unpaid Rent And Tenant-Caused Damage, And Thus, Testimony And Evidence About This Subject Should Be Precluded**

Englewood also claims that HUD owes it money for "special claims related to rent payments and damages caused by South Pointe residents subsidized by the Hap Contract." Compl. ¶ 94. However, no provision of the parties' 1998 HAP Contract or any of the parties' subsequent HAP renewal contracts obligates HUD to reimburse Englewood for tenant-caused damage. To the contrary, the 1998 HAP Contract specifically states that HUD "has not assumed any obligation for the amount of rent payable by any Family or the satisfaction of any claim by the Owner against any family." DA Exhibit 6 [1998 HAP Contract at 3 (JE 19, p. 677 at 679)].

Englewood is correct that, under certain circumstances, HUD may reimburse owners for uncollected rent or tenant-caused damage to property. This willingness, which is at HUD's sole discretion, is expressed in an agency handbook: Occupancy Requirements of Subsidized Multifamily Housing Programs Handbook Number 4350.3 ("HUD Directive Number 4350.3").

This handbook is not incorporated into any of the parties' agreements. Neither is it a substantive provision of law that mandated payment to Englewood. DA Exhibit 7 [HUD Directive Number 4350.3 at 7-8 ¶ 6-15 (JE 136, p. 1273 at 1279-80)]; Reynolds Assocs., 31 Fed. Cl. at 340; Texas, 210 Ct. Cl. 522, 537 F.2d at 470-71. Finally, even if HUD's handbook imposed a legal obligation upon HUD to reimburse Englewood under certain circumstances, Englewood has not alleged that HUD violated any portion of the handbook in denying Englewood's requests for reimbursement for uncollected rent or tenant-caused damage.

HUD's handbook regarding reimbursements for unpaid rent and tenant-caused damage is not incorporated into any contract between the parties, nor is it a money mandating provision of law. Thus, for these reasons, Englewood's claims for reimbursement for unpaid rent and tenant-caused damage should be dismissed, and no evidence or testimony should be allowed regarding this subject at trial.

### E. The Court Lacks Jurisdiction To Consider Claims Related To "Risk Flags" That HUD Recorded Regarding Englewood And Its Principals

In the joint witness list, plaintiff listed several witnesses who would testify about HUD's recording of "flags" against Englewood and its principals and agents, and the alleged harm these internal agency flags caused Englewood.[8] Englewood did not seek these alleged damages in its complaint, but did list it as an issue for trial. Jt. Stmt. of Issues, Docket # 108, p. 7, ¶ 5.e.

The Court lacks jurisdiction to consider these claims, which are not based upon any contract obligation or money mandating provision of law. Even if the Court possessed jurisdiction to entertain these claims, Englewood waived them by failing to assert them in its complaint.

It is settled law that "a plaintiff's failure to raise a claim or argument in its complaint may be deemed as a waiver of that argument by the plaintiff." So. Comfort Builders, Inc. v. United States, 67 Fed. Cl. 124, 153 (2005) (citing Casa de Cambio Comdiv S.A., de C.V. v. United States, 291 F.3d 1356, 1366 (Fed. Cir. 2002); Mients v. United States, 50 Fed. Cl. 665, 671

---

[8] This claim was first seen when Englewood indicated in its proposed findings of fact, which was filed with the parties Joint Statement of Facts on February 16, 2006, that Englewood may seek damages at trial for HUD's "imposition of #2530 flags which prohibited Englewood from doing business with HUD programs thereby denying to [Englewood's former owners] their long standing businesses involving HUD insurance and subsidies." See Pl.'s Proposed Fact No. 136, Docket # 82, p. 81.

(2001)). This is true even when a plaintiff lists a waived claim in its statement of proposed facts filed before trial. So. Comfort Builders, Inc., 67 Fed. Cl. at 124.

The damages Englewood seeks pertain to HUD's policy that persons and organizations applying to do business with HUD's multifamily insured and subsidized housing programs be responsible and comply with their legal, financial, and contractual obligations. 24 C.F.R. § 200.210. To assure that this policy is carried out, HUD requires that an owner, management agent, or other party seeking to conduct new business in the relevant HUD multifamily housing programs must submit a previous participation certificate (HUD form 2530) disclosing all prior participation in those programs. 24 C.F.R. §§ 200.213, 218, and 219. In addition, HUD records internal "flags" against current program participants when they violate HUD requirements. When applicants for new HUD business are found to have flags against them, the application is subject to additional scrutiny. However, applicants with flags against them may not be disapproved unless HUD's Multifamily Participation Review Committee ("Committee") finds that one of the criteria contained in 24 CFR § 200.230 has been met.

As noted, in its proposed findings of fact, Englewood claims that HUD flags "prohibited Englewood from doing business with HUD programs." Pl.'s Proposed Fact No. 136. However, Englewood has not identified any new business that it has been denied because of any "2530 flag," let alone explained how any money mandating provision of law gave Englewood an entitlement to new business.[9] Because Englewood, and these non-parties it purports to claim for, failed in its complaint to allege that it had suffered damages by the denial of any new business

---

[9] In fact, Englewood has not been denied the opportunity to conduct new business with HUD. In December 2002, HUD insured an $11.6 million rehabilitation loan to Englewood. Compl. at 4 ¶ 16. Englewood subsequently defaulted upon this loan.

opportunities, Englewood has waived any such claims. So. Comfort Builders, Inc., 67 Fed. Cl. at 124.

In addition, and perhaps more importantly, the Court would lack jurisdiction to consider claims for allegedly lost new business opportunities, even if Englewood had included them in its complaint. Nothing in any agreement between the parties prohibited HUD from recording Englewood's violation of HUD requirements. This process is based entirely upon applicable regulations and is not embodied in any contract between the parties.

Even if the Committee had denied Englewood the opportunity to conduct new business with HUD, Englewood has not, and indeed cannot, allege that it exhausted its administrative remedies for redressing such a denial. See 24 C.F.R. § 200.241. Moreover, the Court could not entertain a claim for a wrongful denial of new business. 28 U.S.C. § 1491(b)(1); Crocker, 125 F.3d 1475, 1476 (Fed. Cir. 1997) (holding that the Court lacks general Federal question jurisdiction).

Englewood failed to plead in its complaint any damages allegedly resulting from the denial of new business opportunities with HUD. Moreover, the Court would lack jurisdiction to entertain such claims. Thus, to the extent the Court determines such claims to be pending in this case, those claims should be dismissed before trial, and any testimony or evidence regarding this issue should be precluded.

### F. The Court Lacks Jurisdiction To Consider Claims Related To Englewood's Default Of A Separate $11.6 Million HUD-Insured Mortgage, And Thus, Testimony And Evidence About This Subject Should Be Precluded

Englewood apparently seeks to introduce testimony and other evidence regarding its default of its $11.6 million HUD-insured mortgage that Englewood obtained 13-months after HUD formally elected to terminate the HAP contract (November 30, 2001), and 3-months after the HAP contract payments ended (September 2002). See Jt. Witness List, Docket Entry 109, p. 9. Englewood closed the mortgage that HUD insured against default in December 2002. For the same reasons previously discussed, Englewood should be precluded from presenting testimony and other evidence at trial relative to its defaulted, foreclosed mortgage.

As is the case with the internal program flags, Englewood failed to plead, or to amend its complaint, with respect to any alleged damages resulting from its own default of its HUD-insured mortgage that was foreclosed by a third party. As discussed more fully in the preceding sections, it is settled law that Plaintiff's failure to raise a claim in its complaint may be deemed as a waiver. See, e.g., So. Comfort Builders, Inc., 67 Fed. Cl. at 153.

Also as discussed more fully in the preceding sections, Englewood's untimely attempt to characterize its defaulted mortgage loan as a transaction Englewood intended to mitigate its HAP contract breach is equally flawed. In order to state a claim within the jurisdiction of this Court, a claimant must look beyond the jurisdictional statute and establish some substantive provision of law, regulation, or the Constitution that can be construed as mandating compensation. See, e.g., Mitchell, 445 U.S. at 538; Connolly, 716 F.2d at 885.

Englewood neither pled its claim for damages, nor any substantive basis for the Court's jurisdiction. Instead, Englewood appears to consider the default of its HUD-insured mortgage loan as somehow incidental to the default and termination of its HAP contract. However, it is

not disputed that Englewood's HAP contract ended in September of 2002, and that it obtained its $11.6 million dollar mortgage in December 2002, three months later. Accordingly, it cannot be disputed that the mortgage was obtained without project-based HAP contract assistance.

It is axiomatic that Englewood's terminated HAP contract could not have caused its subsequent default of its $11.6 million mortgage. Consistently, and not surprisingly, no correlation between Englewood's two separate obligations is alleged in Englewood's complaint, and Englewood has not amended the complaint to purport to somehow add any such claim.

Accordingly, since Englewood failed to plead in its complaint any damages regarding the default of its HUD-insured mortgage, those claims should be dismissed before trial, and any testimony or evidence regarding this issue should be precluded.

## CONCLUSION

For the reasons set forth above, we respectfully request that the Court exclude the testimony of Gregory Gustin and Beverly Miller. The information sought from Mr. Gustin by Englewood is protected by the attorney-client and work-product privileges. Ms. Miller does not possess any relevant first-hand knowledge regarding the issues before the Court. Additionally, the Court should limit the scope of the testimony given by Freddie Batchelor, Ted Dunaj, John Hayes and Donald Samuelson because these witnesses do not possess personal knowledge regarding many of the areas about which Englewood seeks to have them testify and will attempt to offer improper opinion testimony. Moreover, Ms. Batchelor, as a former employee of the HUD, is precluded from providing opinion testimony without the prior consent of HUD. Finally, we respectfully move to limit the scope of the testimony given by all witnesses at trial to those matters of which the Court possesses jurisdiction or Englewood has not waived by failing to assert them in its complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Brian M. Simkin
BRIAN M. SIMKIN
Assistant Director

s/ Douglas K. Mickle
DOUGLAS MICKLE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
1100 L Street, N.W.
Tel: (202) 307-0383
Fax: (202) 307-0972

Attorneys for Defendant

OF COUNSEL:

GREGORY G. GUSTIN
MARIA T. BAGUIO
RUSSELL J. COHEN
LORRAINE C. SHOTO
THOMAS G. MASSOURAS

Office of General Counsel
U.S. Department of Housing
and Urban Development

November 20, 2006

**CERTIFICATE OF FILING**

I hereby certify that on November 20, 2006, a copy of the foregoing "**DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF GREGORY GUSTIN AND BEVERLY MILLER; LIMIT THE TESTIMONY OF FREDDIE BATCHELOR, TED DUNAJ, JOHN HAYES AND DONALD SAMUELSON; AND, PRECLUDE ANY TESTIMONY REGARDING MATTERS IN WHICH THE COURT DOES NOT POSSESS JURISDICTION"** with its accompanying appendix was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Douglas K. Mickle
Douglas K. Mickle