# Exhibit 1

# Ms. Beverly Miller's Responses to Englewood's Deposition By Written Question

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ENGLEWOOD TERRACE LIMITED PARTNERSHIP, a Michigan Limited Partnership, | ) | |
| | ) | No. 03-2209C |
| Plaintiff, | ) | |
| | ) | Judge Marian Blank Horn |
| UNITED STATES OF AMERICA, and MEL MARTINEZ, Secretary of the Department of Housing and Urban Development, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S DEPOSITION UPON WRITTEN QUESTIONS OF BEVERLY J. MILLER

Pursuant to Rules 31 and 36, Rules of the United States Court of Federal Claims ("RCFC"), defendant responds as follows:

Defendant, the United States, submits these Answers to plaintiff's, Englewood Terrace Limited Partnership, deposition upon written questions of Beverly J. Miller, in her capacity as HUD Director Office of Asset Management ("Miller"), being first duly sworn, and provides these Answers as set forth herein, subject to the defendant's general objections set forth herein below.

## GENERAL OBJECTIONS

In response to Englewood's questions, defendant objects as follows as if each objection is restated before each question:

A. Defendant objects to the question to the extent that it states or seeks a legal conclusion as to the actual Housing Assistance Payment ("HAP" contract at issue in this litigation.

B. Defendant objects to the question to the extent that it does or seeks to mischaracterize the actual HAP contract at issue in this litigation.

C. Defendant objects to the question insofar as it incorrectly states the "2000 HAP Contract," as Englewood has defined that term, is the correct HAP Contract at issue in this litigation.

D. Defendant objects to the question insofar as it incorrectly states the HAP Contract at issue in this litigation was incorrectly terminated, or alternatively incorrectly not renewed or extended by HUD.

E. Defendant objects to the question to the extent that it calls for or seeks pre-decisional and/or privileged communications.

F. Defendant objects to the question to the extent that it exceeds the scope and limitation of inquiry set by the Court's August 23, 2006, Order.

G. Defendant objects to the question to the extent it calls for speculation and/or is outside the scope of Miller's personal knowledge.

H. Defendant objects to the questions to the extent they seek the identification of any media previously produced to Englewood.

I. Defendant objects to the question to the extent it seeks information that was obtained during settlement discussions.

J. Englewood has authorized Miller to review the Answers to Written Questions of Hub Director Edward J. Hinsberger ("Hinsberger Answers"), and to the

extent that the Englewood's questions seek for Miller to identify documents involving her communications with Hinsberger, or other HUD Headquarters personnel with Hinsberger, that were already identified by Hinsberger in the Hinsberger Answers, defendant objects.

Ms. Miller has attempted to answer each question to the best of her understanding of the information requested, but an answer does not ensure that Ms. Miller did, in fact, understand the question posed.

Given these general objections, Ms. Miller responds as follows:

**ANSWERS**

1. Describe your involvement and that of HUD Washington in the decision to terminate the HAP Contract.

**ANSWER:** Without waiving the defendant's objections, Miller responds as follows: Decisions to terminate HAP Contracts, non-renew HAP Contracts, abate HAP Contracts and to issue vouchers are made by the Hub Director, under the Hub Director's authority, not by HUD Washington. Chicago Hub Director Edward J. Hinsberger, or staff that he authorized to act for him, made the HAP Contract decisions for Englewood. For Englewood, I was informed of any decisions to terminate, non-renew, abate, and issue vouchers. I had no involvement in any such decision other than notification from Ed Hinsberger.

2. Under what regulatory and or contractual authority did HUD terminate the HAP Contract?

**ANSWER:** Without waiving the defendant's objections, Miller responds as follows: Mr. Hinsberger based his decisions on a breach of the HAP Contract for failure

to maintain the property in decent, safe, and sanitary condition. HUD's actual decision would have been set forth in an official HUD notice.

3. Describe your involvement and that of HUD Washington in making the decision to issue vouchers to the residents of South Pointe.

**ANSWER:** Without waiving the defendant's objections, Miller responds as follows: I had no involvement. See answer to number 1.

4. Under what regulatory and or contractual authority did HUD make the decision to issue vouchers to the residents of South Pointe?

**ANSWER:** Without waiving the defendant's objections, Miller responds as follows: See answer to number 2.

5. When did HUD make the decision to issue vouchers to the residents of South Pointe?

**ANSWER:** Without waiving the defendant's objections, Miller responds as follows: HUD's decision would have been as stated in an official HUD notice.

6. Who made the decision to issue vouchers to the residents of South Pointe?

**ANSWER:** Without waiving the defendant's objections, Miller responds as follows: Edward Hinsberger, Chicago Hub Director. See answer to number 1.

7. Describe your involvement and that of HUD Washington in making the decision not to renew the HAP Contract?

**ANSWER:** Without waiving the defendant's objections, Miller responds as follows: See answers to number 1 and 2.

8. Under what regulatory and or/contractual authority did HUD make the decision not to renew the HAP Contract?

**ANSWER:** Without waiving the defendant's objections, Miller responds as follows: See answer to number 2.

9. Describe your involvement and that of HUD Washington, in making the decision to abate the HAP Contract.

**ANSWER:** Without waiving the defendant's objections, Miller responds as follows: See answer to number 1.

10. Under what regulatory and/or contractual authority did HUD make the decision to abate the HAP Contract?

**ANSWER:** Without waiving the defendant's objections, Miller responds as follows: See answer to number 2.

11. Did HUD staff in Chicago convey information concerning HUD's decision to issue its Notice of Default against Englewood on April 9, 2001?

a) If so, who conveyed such information to you?

b) When was such information conveyed to you?

c) What was the form of the communication in which such information was conveyed to you?

d) What information was conveyed to you regarding HUD's decision to issue its Notice of Default against Englewood on April 9, 2001?

**ANSWER:** Without waiving the defendant's objections, Miller responds as follows: The Chicago HUD Office had no requirement to notify me of this decision. I may have had discussions with Ed Hinsberger about the decision to issue that notice, but I do not recall them now.

12. Did HUD staff in Chicago convey information concerning HUD's decision to issue its Notice of Termination and Abatement on November 30, 2001?

a) If so, who conveyed such information to you?

b) When was such information conveyed to you?

c) What was the form of the communication in which such information was conveyed to you?

d) What information was conveyed to you regarding HUD's decision to issue its Notice of Termination and Abatement on November 30, 2001?

**ANSWER:** Without waiving the defendant's objections, Miller responds as follows: For these answers, I reviewed documents with Bates numbers A1609, A1735, A1741, A1749, B3093, D1178, D1185, and D1192 that describe communications that I had with Ed Hinsberger both before and after that notice issued. Typically, I would communicate with Ed Hinsberger about these matters, not his staff, and that's what I recall in this situation. I may have had other discussions with Mr. Hinsberger, and maybe his or other HUD staff, but I do not recall them now. Also, see Hinsberger Answer 17.

13. Did HUD staff in Chicago convey information concerning HUD's decision to terminate the HAP Contract?

a) If so, who conveyed such information to you?

b) When was such information conveyed to you?

c) What was the form of the communication in which such information was conveyed to you?

d) What information was conveyed to you regarding HUD's decision to terminate the HAP Contract?

**ANSWER:** Without waiving the defendant's objections, Miller responds as follows: See answer to number 12.

14. Did HUD staff in Chicago convey information concerning HUD's decision to abate the HAP Contract?

a) If so, who conveyed the information to you?

b) When was such information conveyed to you?

c) What was the form of the communication in which such information was conveyed to you?

d) What information was conveyed to you regarding HUD's decision to abate the HAP Contract?

ANSWER: Without waiving the defendant's objections, Miller responds as follows: See answer to number 12.

15. Did HUD staff in Chicago convey information concerning HUD's decision not to renew the HAP Contract?

a. If so, who conveyed such information to you?

b. When was such information conveyed to you?

c. What was the form of communication in which such information was conveyed to you?

d. What information was conveyed to you regarding HUD's decision not to renew the HAP Contract?

**ANSWER:** Without waiving the defendant's objections, Miller responds as follows: See answer to number 12.

16. Did HUD staff in Chicago convey information concerning HUD's decision to issue vouchers to the residents of South Pointe?

a. If so, who conveyed such information to you?

b. When was such information conveyed to you?

c. What was the form of communication in which such information was conveyed to you?

d. What information was conveyed to you regarding HUD's decision to issue vouchers to the residents of South Pointe?

**ANSWER:** Without waiving the defendant's objections, Miller responds as follows: See answer to number 12.

17. Which HUD decision and/or the 2000 HAP Contract regarding Englewood required notification to Willie Spearmon and/or anyone else in HUD Washington?

**ANSWER:** Without waiving the defendant's objections, Miller responds as follows: I believe Ed Hinsberger has correctly answered this question, as I understand it. See Hinsberger Answer number 30.

18. Did HUD staff in Chicago convey information to Willie Spearmon concerning Englewood and/or the HAP Contract?

a. If so, who conveyed such information to Mr. Spearmon?

b. When was such information conveyed to Mr. Spearmon?

c. What was the form of communication in which such information was conveyed to Mr. Spearmon?

d. What information was conveyed to Mr. Spearmon concerning Englewood and/or the HAP Contract?

**ANSWER:** I believe Ed Hinsberger has correctly answered this question, as I understand it. See Hinsberger Answer number 30.

19. State the title of Willie Spearmon from the year 2000 to the present.

**ANSWER:** Without waiving the defendant's objections, Miller responds as follows: Director, Office of Housing Assistance and Grant Administration.

20. Did HUD staff in Chicago convey information to Richard Pace concerning Englewood and/or the HAP Contract?

a. If so, who conveyed such information to Mr. Pace?

b. When was such information conveyed to Mr. Pace?

c. What was the form of communication in which such information was conveyed to Mr. Pace?

d. What information was conveyed to Mr. Pace concerning Englewood and/or the HAP Contract?

**ANSWER:** Without waiving the defendant's objections, Miller responds as follows: I don't know.

21. State the title of Richard Pace from the year 2000 to the present.

**ANSWER:** Without waiving the defendant's objections, Miller responds as follows: Project Manager.

22. Describe any communication with Richard Pace concerning Englewood and/or the HAP Contract?

**ANSWER:** Without waiving the defendant's objections, Miller responds as follows: I do not recall having any communication with Richard Pace regarding Englewood.

23. Who participated in preparing the answers to these Questions?

**ANSWER:** Without waiving the defendant's objections, Miller responds as follows: The answers are mine. Attorneys Gregory Gustin, Maria Baguio, and Doug Mickle assisted.

I, Beverly J. Miller, in my official capacity as Director, Office of Asset Management of the United States Department of Housing and Urban Development (HUD), hereby affirm that I have read the foregoing Defendant's Response to Plaintiff's Deposition Upon Written Questions of Beverly J. Miller and, based on my knowledge as said HUD official, the Answers are true and correct to the best of my knowledge.

Beverly J. Miller

Beverly J. Miller

Sworn and subscribed before me this 25 day of October, 2006.

Peggy A. Russo

Notary Public

Peggy A. Russo
Notary Public, District of Columbia
My Commission Expires 03/14/2011

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/ Brian M. Simkin
BRIAN M. SIMKIN
Assistant Director

/s/ Douglas K. Mickle
DOUGLAS K. MICKLE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L. Street, N.W.
Washington, D.C. 20530

Tel: (202) 307-0383
Fax: (202) 307-0972

Attorney for Defendant

OF COUNSEL

GREGORY G. GUSTIN
MARIA T. BAGUIO

Office of General Counsel
U.S. Department of Housing
and Urban Development

October 25, 2006