# Exhibit 10

## JE 86 (Apr. 8, 2001 Letter From Kelly Brown, Regional Property Manager, P.M. One, To Ms. Coleman Re: REAC Inspection)

PM ONE, LTD.

First in Property Management

April 8, 2001

Ms. Veronica Coleman
Director, Project Management
Chicago Multifamily Hub
U. S. Department of Housing and Urban Development
77 W. Jackson Blvd.
Chicago, Illinois 60604-3507

*RE: REAC Inspection on 3/8/01 for Southpointe Tower*

Dear Ms. Coleman,

Enclosed please find the Management Improvement and Operating (MIO) plan and the Emergency Health and Safety (EH&S) Certification from the owner, the information is in response to the REAC Inspection Findings submitted March 8, 2001 to P.M. One.

This letter is to document the action taken to correct the items referenced in the REAC inspection, as well as the plans to address capital items needed for the property. A scope of work has been obtained from BABCO Construction, Inc. identifying capital and structural items to be completed on the property.

Finally, the EH& Safety items certification is being submitted with the signature of the owner, it is my understanding that the original documentation and the pictures have all been submitted to Ms. Thomas, the Project Manager as early as March 12, 2001. Pursuant to my conversation with Ms. Thomas, a signed letter from the owner certifying that the information provided has been done must be included to bring closure to the outstanding issue.

1621 E. 55th Street • Chicago, IL 60615
773-324-9010 • Fax 773-324-9082 • www.pmone.com

Thank you for your consideration in this matter, as we work together to provide safe decent and sanitary housing for the residents of Southpointe Tower.

Sincerely,

Kelly Brown
Regional Property Manager

Cc: Joan Kiening
Gwen Thomas
Marlene Dau
John Hayes
Diane Lemieux

Attachment(s)

#1 = MIO Plan
#2 = Scope of Work for Capitol Improvements
#3 = Owner Certified Letter for EH&S

KB/mb

# Exhibit 11

# JE 99 (Notice of Public Nuisance dated July 7, 2001)

OFFICE OF THE STATE'S ATTORNEY
COOK COUNTY, ILLINOIS

RICHARD A. DEVINE
STATE'S ATTORNEY

CRIMINAL DIVISION
69 W. WASHINGTON, SUITE 700
CHICAGO, ILLINOIS 60602

July 2, 2001

Personal Service

Angela McNair
South Point Towers
6425 S. Lowe
Chicago, IL 60621

RE: Notice of Public Nuisance at 6425 S. Lowe, Apts. 1301 & 2201, Chicago
Case Number NA93-1365

Dear Angela McNair:

Public records indicate that you own, manage, and/or have a possessory interest in the property located at 6425 S. Lowe, Apts. 1301 & 2201. Our office has received information that illegal drug activity has taken place at the above-mentioned address more than once within a one year period. Citizens in the community have complained that narcotics are being bought and sold in and around this property. In addition, the Chicago Police Department has expressed concern that this property is being used for illegal drug activity.

We are hereby informing you that a public nuisance as defined in 740 ILCS 40/0.01 et seq. (1993), exists at your property. Section 40/1 states that a "Nuisance" is any place at which or in which controlled substances are unlawfully sold, possessed, served, stored, delivered, manufactured, cultivated, given away or used more that once within a period of one year. Moreover, pursuant to 720 ILCS 5/37-1 (1993), any building used in the commission of offenses prohibited by the Illinois Controlled Substances Act and the Cannabis Control Act constitutes a public nuisance. A person who knowingly maintains such a public nuisance commits a Class A misdemeanor and each subsequent violation constitutes a Class 4 Felony.

We are hereby putting you on notice that as the owner of this property you have 14 days from the mailing of this notice or 7 days from personal service of this notice, to appear at the State's Attorney's Office to arrange to take action to abate the nuisance. Your failure to arrange to appear at the State's Attorney's Office within the applicable time frame indicated above may subject you to prosecution for maintaining a public nuisance and your property may be subject to a permanent injunction thereby depriving you of use

FAX NO. : May. 11. 2000 12:23PM P13

of the property for one year.

We trust that you share our concern in eliminating narcotics activity in the community and will take the appropriate steps to eliminate the nuisance. Please contact us to arrange a meeting to discuss the problem of illegal drug activity as it relates to this property. Our telephone number is (312) 603-8771.

Sincerely,

RICHARD A. DEVINE
State's Attorney of Cook County

BY: ____________________________

Delores Robinson
Assistant State's Attorney
Narcotics Nuisance Abatement Unit

DR:dm

# Exhibit 12

## JE 115 (E-mail from Lillye Simmons dated Oct. 22, 2001 )

Cc: Margie Marsonet
Maria Baquio

Lillye R. Simmons

10/22/01 11:02 AM

To: Veronica Coleman/HSNG/CHI/HUD
cc: Gwendolyn X. Thomas/HSNG/CHI/HUD, Debbie Gray/HSNG/CHI/HUD, Kathy Merritt/HSNG/CHI/HUD
cc: Gwendolyn X. Thomas/HSNG/CHI/HUD, Debbie Gray/HSNG/CHI/HUD, Kathy Merritt/HSNG/CHI/HUD
Subject: South Pointe Towers —— October 19, 2001

On Friday, October 19, 2001, an inspection of some of the units and common areas was conducted on the above property. Listed below are some of the observed deficiencies.

COMMON AREAS & HALLWAYS

smell of urine throughout the building
missing hard wired smoke detectors, hardware and casings on some floors
missing, broken light fixtures-some fixtures missing light bulbs
non-functioning emergency lighting
broken garbage chute doors-some doors to the trash rooms are missing
exit lights missing bulbs, some exit signs broken and/or missing
roaches in the hallways and on the walls
hallway floors are paint splattered with green paint
tags on the fire extinguishers are missing
broken fire-rated doors
conduit pipes in the ceiling on some floors are missing
light covers missing
flammable cannisters (janitorial supplies) stored on shelves instead of a metal, insulated fire cabinet
garbage/trash room needs to be deodorized and cleaned

STAIRWELLS

missing fire hoses
broken light fixtures
missing and broken stairwell doors
missing and broken panic bars
graffiti on the floor/steps and walls

UNITS

some GFCIs (ground fault circuit interrupter) not working
some electrical outlets not working
units need to be painted
id number for the primary entry door missing, door not painted
closet doors are broken and missing
floor tile is missing, broken, mismatched in bedrooms, bathrooms
window screens are missing and torn
holes are in the walls
countertops, cabinets and cupboards need replacing
water damaged ceilings in the bathrooms
damaged bedroom doors
wall switch cover missing, wires exposed
kitchen and bathroom vents need to be cleaned/replaced
exposed re-bar in the living room window, appears to be water damaged
bathroom hardware/accessories missing
electrical outlets are painted over

A 2378

- repaired walls not painted
- old hardware such as smoke detectors and intercom racks not removed from the walls
- bathtubs need to be recaulked, glazed, etc.
- legs missing from the pedestal sinks
- hardware on the primary entrance doors damaged

ELEVATORS

- interior of the elevator has burn marks
- needs to be cleaned

ATTENDEES:

- Michelle Gee, Management Staff
- Security, South Pointe
- John Schneider, HUD
- Kathy Merritt, HUD
- Lillye R. Simmons, HUD

A 2379

Maintenance Area





Maintenance Area





Dumpsters

A 2380



Front View



Employee Rest Room



Rear View

A 2381



Lowe Street Facing North



Parking Area



Lowe Street Facing South



Playground

A 2382



Unit 1313 Damaged Bedroom Door



Damaged Wall



Unit 1313 Cracked Floor Tile



Missing Switchplate

A 2383

A 2384





Unit 1313 Bedroom Wall



Unit 1313 Shower Area



Unit 1313 Closet Door



Unit 1313 Peeling Paint Ceiling

A 2385



Unit 1307 Peeling Paint Ceiling



Unit 1307 Damaged Wall



Unit 1307 Damage Door



Unit 1307 Shower Area

A 2386





Unit 1307 Missing Closet Doors



Unit 1307 Damaged Wall



Exposed Wiring



Evidence of Rodent Infestation

# Exhibit 13

# JE 7 (District court's Order)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ENGLEWOOD TERRACE LIMITED PARTNERSHIP, a Michigan limited partnership,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, MEL MARTINEZ, Secretary of the United States Department of Housing and Urban Development, and CHAC, INC., an Illinois corporation,<br><br>Defendants. | ) | No. 01 C 8285<br><br>Judge Ruben Castillo |

## ORDER

Plaintiff Englewood Terrace Limited Partnership ("Englewood") moves this Court for an order, pursuant to Federal Rule of Civil Procedure 65, preliminarily enjoining Defendants, United States of America ("United States"), Secretary Mel Martinez of the United States Department of Housing and Urban Development ("HUD") and CHAC, Inc. ("CHAC") from issuing or continuing to issue vouchers under Section 8 of the National Housing Act, 42 U.S.C. § 1437f. For the reasons contained herein, Englewood's emergency motion for preliminary injunction is denied. (R. 2-1.)

## RELEVANT FACTS

Englewood owns and operates South Pointe Towers, a low-income multifamily housing project located at 6425 South Lowe in Chicago, Illinois. On October 29, 2001, Englewood filed a complaint against Defendants United States, Secretary Mel Martinez and CHAC seeking a declaratory judgment that Defendants: (1) failed to renew the Housing Assistance Payments

EXHIBIT O

contract ("HAP contract"); and (2) issued Section 8 vouchers to tenants in violation of the Multifamily Assisted Housing Reform and Affordability Act (MAHRA). (R. 1-1, Compl. at ¶¶ 32-34.) Englewood also seeks mandamus relief to compel Defendants to comply with MAHRA before terminating its HAP contract and to cease the issuance of vouchers to the South Pointe Tower residents. (*Id.* at ¶¶ 35-38.) Currently before this Court is Englewood's emergency motion for preliminary injunction seeking an order enjoining Defendants from continuing to issue Section 8 vouchers to South Pointe Tower residents. We hereby deny Englewood's motion, for the reasons that follow. Furthermore, we see no need to proceed with an evidentiary hearing because, in issuing this order, we have accepted as true all of the facts contained in Englewood's pleadings.

ANALYSIS

**I. Legal Standards for a Preliminary Injunction**

A preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant carries the burden of persuasion by a clear showing. *See Boucher v. Sch. Bd. of Greenfield*, 134 F.3d 821, 823 (7th Cir. 1998). In order to obtain a preliminary injunction, the movant must show that: (1) its case has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) it will suffer irreparable harm if the injunction is not granted. *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). If these requirements are met, the Court "must then consider the balance of hardships between the plaintiffs and the defendants, adjusting the hardships for the probability of success on the merits," *Planned Parenthood v. Doyle*, 162 F.3d 463, 473 (7th Cir. 1998), and "the public interest, meaning the consequences of granting or denying the injunction to non-parties," *Abbott*

*Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11-12 (7th Cir. 1992).

**II. Englewood Cannot Meet the Legal Standards for a Preliminary Injunction**

First, Englewood cannot show a likelihood of success on the merits. Englewood argues that it could likely succeed in showing that HUD never provided sufficient notice under MAHRA that it had terminated or was terminating the HAP contract, resulting in Englewood's inability to assert its procedural rights to challenge the termination. We disagree. Despite Englewood's extensive citation to MAHRA and its argument that "[t]here is no question that the HAP contract has been abated," (R. _, Pl.'s Reply Mem. in Supp. of Emergency Mot. at 2-4), HUD never formally terminated Englewood's HAP contract. Rather, HUD provided Englewood with notice that it was in continuing default under the HAP contract and that HUD would begin the process of providing vouchers for relocation of eligible tenants. (R. 6, Gov't's Resp. to Emergency Mot., Exs. B2, B4, B6.) If HUD decides to terminate the HAP contract, then its actions will be governed by the MAHRA and it must provide Englewood with the proper notice and the opportunity to assert procedural rights. At this time, however, Englewood has no likelihood of succeeding on its allegations that HUD did not provide Englewood with notice that it had terminated or was terminating the HAP contract because the HAP contract, in fact, has not been terminated and is not yet in the process of being terminated.

Second, Englewood cannot show irreparable harm. Englewood claims that, unless the Court enjoins the issuance of vouchers to South Pointe Tower residents, it would irreparably lose its opportunity to challenge HUD's decision to terminate the HAP contract. As stated above, the HAP contract has not been terminated. Moreover, the harm that Englewood asserts is not irreparable because it is a loss of project-based revenue provided by the HAP contract which,

should Englewood prevail, may be compensated at the conclusion of this litigation. *See Goldie's Bookstore, Inc. v. Super. Ct.*, 739 F.2d 466, 471-72 (9th Cir. 1984) (holding that "[m]ere financial injury, however, will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation").

Third, Englewood cannot show the inadequacy of a remedy at law. Englewood contends that its legal remedies are inadequate because the dispute involved unique real estate and an economic loss so great that it would put Englewood out of business. As shown above, however, while real property is often judicially perceived as unique, the loss of commercial, and not residential, property threatens only an economic loss which is compensable in damages. *See id.* Furthermore, despite Englewood's citation to a HUD email stating that "once the housing authority issues vouchers, the Sec 8 contract dies," (R. 6, Gov't's Resp. to Emergency Mot., Ex. C4), the Court is not convinced at this time that Englewood will go out of business, because if Defendants terminate the HAP contract, Englewood will have thirty days within which to dispute this decision and cure any deficiencies, as well as to exhaust any subsequent appeal through the administrative process.

Fourth, the balance of equities does not favor granting the preliminary injunction. Englewood maintains that it has more to lose than HUD because it is seeking to protect its sole meaningful asset, South Pointe Towers, whereas the only burden that would be placed on Defendants is that they cease the issuance of Section 8 vouchers to the residents until this case is resolved. We disagree. Without issuing any findings of fact, we believe that, given the dispute between the parties over whether South Pointe Towers is in suitable condition and in compliance with the HAP contract, the balance of equities does not favor Englewood. *See, e.g., Geneva Ltd.*

*Partners v. Kemp*, 779 F. Supp. 1237, 1241-42 (denying plaintiff's motion for a preliminary injunction and finding that the balance of hardships does not tip sharply in plaintiff's favor).

Finally, the public interest of the South Pointe Tower residents weighs against an order of injunction. Englewood claims that an injunction would be in the best interests of the residents and the surrounding community because it would prevent the effective shutdown of South Pointe Towers, resulting in the loss of 303 apartment units and the creation of a "large white elephant" in the community. (R. 2-1, Emergency Mot. at 11.) Again, given the dispute between the parties over the conditions of South Pointe Towers, this Court believes that all of the residents, including those who have already received vouchers and those who may be hoping to receive them, have a very real interest in finding the best housing available right now. *See Geneva Ltd. Partners*, 779 F. Supp. at 1241-42. Therefore, we encourage the parties to communicate the proposed South Pointe Towers renovation plan to the residents, but we conclude that the public interest would best be served by continuing the issuance of Section 8 vouchers to those residents in order to give them the opportunity to improve their living conditions immediately.

## CONCLUSION

For the foregoing reasons, Englewood's emergency motion for preliminary injunction is denied. (R. 2-1.) Englewood has not made a clear showing of need for the extraordinary remedy of the type of broad and mandatory preliminary injunction it has requested.

ENTERED:

**Judge Ruben Castillo**
**United States District Court**

**Dated: November 15, 2001**

*Partners v. Kemp*, 779 F. Supp. 1237, 1241-42 (denying plaintiff's motion for a preliminary injunction and finding that the balance of hardships does not tip sharply in plaintiff's favor).

Finally, the public interest of the South Pointe Tower residents weighs against an order of injunction. Englewood claims that an injunction would be in the best interests of the residents and the surrounding community because it would prevent the effective shutdown of South Pointe Towers, resulting in the loss of 303 apartment units and the creation of a "large white elephant" in the community. (R. 2-1, Emergency Mot. at 11.) Again, given the dispute between the parties over the conditions of South Pointe Towers, this Court believes that all of the residents, including those who have already received vouchers and those who may be hoping to receive them, have a very real interest in finding the best housing available right now. *See Geneva Ltd. Partners*, 779 F. Supp. at 1241-42. Therefore, we encourage the parties to communicate the proposed South Pointe Towers renovation plan to the residents, but we conclude that the public interest would best be served by continuing the issuance of Section 8 vouchers to those residents in order to give them the opportunity to improve their living conditions immediately.

CONCLUSION

For the foregoing reasons, Englewood's emergency motion for preliminary injunction is denied. (R. 2-1.) Englewood has not made a clear showing of need for the extraordinary remedy of the type of broad and mandatory preliminary injunction it has requested.

ENTERED:

**Judge Ruben Castillo**
**United States District Court**

**Dated: November 15, 2001**

# Exhibit 14

# (Government's Initial Disclosures)

**U. S. Department of Justice**

Civil Division

LBDonis:
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

(202) 616-0334
FAX (202) 305-7644

*Washington, D.C. 20530*

November 15, 2004

By Fax and First Class Mail

(312)701-9335
Peter V. Baugher
Shopf & Weiss
312 West Randolph Street
Suite 300
Chicago, IL 60606-1721

Re: Englewood Terrace v. United States;
Fed. Cl. No. 03-2209

Dear Mr. Baugher:

Enclosed please find, pursuant to Rule 26(1)(A), our initial disclosures of individuals who are likely to have discoverable information.

Sincerely,

LISA B. DONIS
Attorney
Commercial Litigation Branch
Civil Division

154 03 2209

RULE 26(1)(A) INDIVIDUALS LIKELY TO
HAVE DISCOVERABLE INFORMATION

HUD Multifamily Housing Office

Ed Hinsberger, Director of Multifamily Housing
Veronica Coleman, Director of Project Management
Gwendolyn Thomas, Project Manager
Kathy Merritt, Project Manager
Debra Head, Project Manager (assisted)
Lily Simmons, Construction Analyst
Teresa DiPietro, Luella Stevenson, Lucille Ellison, Karen Valentine: Project Managers
Debra Monroe, Karen Stamps, Project Managers
Ben Tessler, Housing Program Advisor
Mary Anderson, Director of Projduction
Mohammad Ahmad, Construction Analyst
John Schneider, Appraiser
Robert Kral, Fee Inspector

HUD Departmental Enforcement Center

Margarita Maisonet, Director
Sandra Suiter, Enforcement Analyst

HUD Multifamily Housing - Washington, D.C.

Howard Mayfield, Deputy Director, Office of Asset Management

Outside of HUD

John Hayes, President, PM One
Other to-be-identified PM One personnel
Michelle Gee, former Assistant Manager at South Pointe for PM One
Alan Cravitz, President, Developer's Mortgage
Don Samuelson, DSSA
Keith Daniels, Michelle Mitchell, and T. Jenkins, Illinois Housing Development Authority
Tira Tunstill, Team Leader, CHAC

Other, as-yet-to-be identified individuals include:
Individuals at CHAC
Building Inspectors, City of Chicago Department of Buildings
Firefighters and Police Officers with the City of Chicago
Unidentified persons with original mortgagee, CIC
Unidentified representative with Chevron, Inc.