No. 03-2209C
Judge Marian Blank Horn

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ENGLEWOOD TERRACE LIMITED
PARTNERSHIP, a Michigan Limited Partnership,

Plaintiff,

v.

UNITED STATES OF AMERICA
and MEL MARTINEZ,
Secretary of the Department
of Housing and Urban Development,

Defendants.

---

PLAINTIFF ENGLEWOOD'S RESPONSE TO HUD'S MOTION IN LIMINE REGARDING HUD'S JURISDICTIONAL ARGUMENTS

---

Peter V. Baugher
Schopf & Weiss LLP
312 West Randolph Street
Suite 300
Chicago, IL 60606
312.701.9300

November 28, 2006

## INTRODUCTION

Reformulated as a Motion in Limine, HUD moves again to dismiss Englewood's claims for contract damages. HUD's Motion represents its ***fourth*** attempt to dismiss Englewood's breach of contract claims on jurisdictional grounds. This Court has previously rejected these arguments, and HUD presents no rationale for any revision of this Court's earlier rulings, most recently in its August 23, 2006 denial of HUD's Motion for Summary Judgment. Rather than moving to reconsider the Court's order at that time, HUD has waited until the eve of trial to bring its argument once again.

This is not the first occasion on which HUD has persisted in positions that have already been rejected. In an August 31, 2004, opinion on HUD's Motion to Reconsider the Court's denial of HUD's *original* Motion to Dismiss, the Court (Judge Wolski) stated that HUD's arguments "bordered on the frivolous" because of the existence of obvious disputes of fact. (JA[1] 9.) HUD's refusal to accept this Court's rulings has unfairly taxed the resources of both Englewood and this Court. The Court should deny HUD's Motion to Dismiss.

## BACKGROUND

This case is about HUD's breach of its multiyear October 2000 Housing Assistance Payment contract ("HAP") with Englewood Terrace Limited Partnership ("Englewood").[2] That Contract was to extend for four years (a one year term with three

---

[1] The parties' February 21, 2006 Joint Appendix to Joint Stipulations of Fact (hereinafter "JA").

[2] The building in question, South Pointe, was owned by Englewood Terrace Limited Partnership. PM Equities, Inc. was its corporate general partner. Property management agent services were provided by PM One, Ltd. (JA 16, Hayes Decl. ¶¶ 1-6). For purposes of this response, the building's owner is referred to as "Englewood." Englewood is also the name of the Chicago neighborhood in which South Pointe is located.

automatic one-year extensions), generating project-based subsidy payments to Englewood totaling over $2.5 million a year (more than $10 million in the aggregate). Instead, in April 2001, during the first year of the contract, HUD wrongly declared Englewood to be in default. Based on its wrongful notice of default, HUD demanded that Englewood make major, long-term capital improvements going far beyond then current operational conditions. HUD concurrently demanded that Englewood withdraw from the contract and find a new owner and new management, and subsequently denied Englewood's proper claims for rent adjustments, energy reimbursement and unpaid rent. HUD simply wanted out of its multiyear subsidy obligations that were set out in the 2000 HAP Contract. By late spring of 2001, less than a year into what was to have been a four-year contract, HUD repudiated its contractual obligations and proceeded as if Englewood had no further contractual rights. Soon thereafter, it began to issue vouchers to all residents who HUD then urged to move to other housing.

HUD moves again to dismiss certain of Englewood's damage claims under the theory that this Court lacks jurisdiction. HUD's Motion does <u>not</u> challenge this Court's jurisdiction to consider the central issue in dispute -- whether Englewood is entitled to damages arising from HUD's wrongful termination of the 2000 contract, an issue Judge Wolski decided in 2004.[3] Indeed, HUD's breach caused Englewood to lose more than $7 million dollars in revenues under the contract, as well as Englewood's millions of dollars of equity in the South Pointe building. HUD also used the its wrongful default notice to deny rent increases and hundreds of thousands of dollars of reimbursements for energy costs, vacancies and tenant-caused damage. Finally, HUD imposed "flags" on the owners of Englewood, limiting their ability to do HUD related business anywhere in the country based on the purported default,

which prevented Englewood principals to continue to do business in the area of their long time specialties. All of these damages flow directly from HUD's breach of contract, and, as this Court has previously ruled, all such claims are properly before this Court.

## ARGUMENT

**THIS COURT HAS JURISDICTION OVER ENGLEWOOD'S CLAIMS FOR CONTRACT DAMAGES.**

Framed as a Motion in Limine, HUD moves to dismiss several HUD claims pursuant to RCFC 12(b)(1). Indeed, HUD acknowledges that the standard that should be applied to its Motion in Limine is *identical* to that applied to a Motion to Dismiss under RCFC 12(b)(1). (Mot. at 16-17.) When determining jurisdiction in the context of a Motion to Dismiss, the court must accept as true any undisputed factual allegations made by the nonmoving party and draw all reasonable inferences in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974). If the allegations and facts reveal any possible basis upon which the nonmoving party might prevail, the court must deny the motion. *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683; *W.R. Cooper Gen. Contractor, Inc. v. United States*, 843 F.2d 1362, 1364 (Fed. Cir. 1988).

### I. THIS COURT HAS PREVIOUSLY DENIED THE ARGUMENTS REASSERTED IN HUD's MOTION IN LIMINE.

This Court has already rejected HUD's December 2003 Motion to Dismiss, August 2004 Motion for Reconsideration, and April 2006 Motion for Summary Judgment and Motion to Dismiss – all of which raised jurisdictional defenses to Englewood's claims. Accordingly, this Court has already held that Englewood's claims for breach of contract are properly before this Court.

---

[3] In denying HUD's Motion to Dismiss, Judge Wolski found that this Court had jurisdiction to

This Court has jurisdiction over Englewood's claims under the Tucker Act, 28 U.S.C. § 1491(a)(1):

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

To establish jurisdiction under the Tucker Act, a party must simply plead the existence of a contract or implied contract with the United States, its breach, and resulting damages. *Trauma Services Group v. United States*, 104 F.3d 1321 (Fed. Cir. 1997). Although the Tucker Act does not itself create substantive rights giving rise to jurisdiction, Englewood's substantive right here is to recover for breach of contract under the National Housing Act of 1937, 42 U.S.C. §§ 1437, et seq. Englewood has adequately pled jurisdiction. There was a contract. There was a breach. There were damages. The damages were foreseeable at the time of the contract. There is a statutory scheme mandating compensation (42 U.S.C. § 1437f) (Supp. V 1999). Therefore, this Court has jurisdiction over Englewood's breach of contract claim.

In ruling on HUD's Motion to Dismiss in this action, Judge Wolski held that "no laws or regulations incorporated into that contract deprive this Court of jurisdiction." 61 Fed. Cl. 583, 590 (Fed. Cl. 2004). Judge Wolski noted that "[t]he substantive rights asserted by Englewood in this case without question are grounded in an express contract, as alleged in the complaint." *Id.* at 589. Accordingly: "The [breach of contract claims] against the Government by Englewood are not limited by the Multifamily Assisted Housing Reform and Affordability Act of 1997 ('MAHRA') and are subject to judicial review." *Id.* HUD's Motion in Limine does not challenge Judge Wolski's ruling.

---

consider Englewood's claims for breach of the 2000 HAP Contract. (JA 008, 61 Fed. Cl. 583.)

Under Rule 12(b)(1), however, HUD now *again* seeks judgment on four Englewood damage claims regarding HUD's performance under the HAP Contract: (1) HUD's failure to award an *approved* rent increase to Englewood's owners; (2) HUD's failure to *even review* Englewood's request for reimbursement for the extraordinary energy costs it had incurred during the winter of 2000/2001, tenant unpaid rent and tenant damage based on HUD's wrongful notice of default; (3) HUD's recording of program participation "flags" based on alleged breaches of the HAP Contract preventing Englewood from participating in HUD programs; and (4) the loss of Englewood's equity interest in the South Pointe project. HUD wrongly argues that these claims arise from Englewood's challenges to the manner it exercised its discretion. On the contrary, Englewood's claims arise from HUD's failure to perform its express obligations under the HAP Contract, and thus are subject to jurisdiction in this Court under the Tucker Act and controlling precedent. For the same reasons that this Court rejected HUD's original Motions to Dismiss in 2004 and 2006, this Court should deny HUD's belated new attempt to dismiss Englewood's claims related to HUD's breach of the parties' contract.

## II. THIS COURT HAS JURISDICTION OVER ENGLEWOOD'S CLAIM FOR THE IMPLEMENTATION OF AN APPROVED RENT INCREASE.

Ignoring ample authority to the contrary, HUD argues that Englewood's claims for rent increases under the HAP Contract are not subject to judicial review. (Mot. at 14-18.) HUD seeks to immunize its failure to award an *approved* rent increase in September 2001. (Jt. Stmt.[4] ¶ 107.) At the time of the critical events in this dispute – from late 2000 through 2002 – Englewood's rents remained at 1998 levels, causing Englewood substantial losses. (Pl's. Stmt. ¶ 131, Sanders Decl. at 4, 6, ¶¶ 15-20, JA 17.) HUD's argument that its failure to award rent

increases are not subject to judicial review is erroneous as a matter of law, where, as here HUD *approved* a rent increase in August 2001 but refused to implement it. (Jt. Stmt. ¶ 107; Pl's. Stmt. ¶ 120.)

### A. HUD Approved A Rent Increase for Englewood, But Failed to Implement The Increase.

HUD's Motion relies on its purported unfettered discretion to deny rent increases, arguing that such decisions are not subject to judicial review. Here, HUD *approved* Englewood's application for a rent increase but simply failed to implement the increase. Specifically, in September 2001, HUD approved an August 2001 application for a rent increase submitted by Englewood. (Jt. Stmt. ¶ 107; Pl's. Stmt. ¶ 120; JA 107, referring to JA 104.) Chicago HUB Director Hinsberger wrote to an Englewood representative, stating "[t]he rent comp study supports the proposed rents." (*Id.*) Hinsberger further stated "[w]e will allow the new rents to kick in at the time of closing" on the subsidy extension contracts. (*Id.*) HUD, however, never implemented the approved increase. (Pl's. Stmt. ¶¶ 82, 85.)

### B. Federal Courts May Hear Claims Arising From HUD's Failure To Implement An Approved Rent Increase.

This Court has held that it has jurisdiction over claims that HUD failed to follow its obligation to properly process rent increases. *See, e.g., Crest A Apartments v. United States*, 52 Fed. Cl. 607, 612-13 (Fed. Cl. 2002) (Court of Claims has jurisdiction over claimed breach of HAP contract by failure to properly process rent increases). Accordingly, this Court has jurisdiction over HUD's failure to *implement* – as distinguished from approving – a rent increase for Englewood.

---

[4] Citations to "Jt. Stmt.", "Pl's. Stmt.", and "Def's. Stmt." refer to the parties' February 21, 2006 statements of facts filed with the Court together with the Joint Appendix containing exhibits cited in those statements.

Indeed, courts have repeatedly held that claims for rent increases under the Tucker Act are subject to the jurisdiction of this Court. *Brighton Vill. Assocs. v. United States*, 52 F.3d 1056 (Fed. Cir. 1995) (Tucker Act vests Court of Federal Claims with jurisdiction over claims that HUD failed to grant rent increases in a HAP contract); *Cuyahoga Metropolitan Housing Authority v. United States*, 57 Fed. Cl. 751 (2003) (considering denial of rent increases); *see Christopher Village, L.P. v. United States*, 360 F.3d 1319 (Fed. Cir. 2004) (no APA jurisdiction because adequate remedy available under Tucker Act). As these decisions illustrate, HUD's assertion that "HUD's decisions regarding whether to grant a rent increase request are not subject to judicial review" is simply erroneous.

### C. Lost Rent Increases Are Damages Arising From HUD's Wrongful Notice of Default.

In failing to implement rent increases, HUD cited Englewood's purported default as its basis. (Pl's. Stmt. ¶ 76.) The issue of whether HUD properly found Englewood in default under the 2000 HAP Contract is sharply disputed. (*See* Jt. Stmt. ¶¶ 132.) Englewood will show that HUD's finding of default was wrongful. "The general rule in common law breach of contract cases is to award damages sufficient to place the injured party in as good a position as he or she would have been had the breaching party fully performed." *San Carlos Irrigation & Drainage Dist. v. United States*, 111 F.3d 1557, 1562-63 (Fed. Cir. 1997). If HUD had not wrongly declared a default, Englewood would have received rent increases after September 2001. In other words, but for HUD's breach of the 2000 HAP Contract, Englewood would have been granted those rent increases. Accordingly, this Court has jurisdiction over Englewood's claim to the value of those lost rent increases as damages in this action.

## III. THIS COURT HAS JURISDICTION OVER CLAIMS INVOLVING ENERGY COSTS, UNPAID RENT, AND "FLAGS" IMPOSED ON ENGLEWOOD AND ITS OWNERS.

Citing the same authority that it uses to support its argument regarding rent increases, HUD argues that this Court lacks jurisdiction to hear claims regarding HUD's failure to reimburse energy costs, unpaid rent, and tenant-caused damage. For the same reasons that this Court has jurisdiction over the claims for implementation of an approved rent increase, the Court also has jurisdiction over Englewood's claims for reimbursements.

### A. In Denying Englewood's Claim For Energy Reimbursement, Unpaid Rent and Tenant-Caused Damage, HUD Improperly Relied On Its Wrongful Default Notice.

In 2001, HUD issued guidelines under which property owners could request reimbursement for high energy costs incurred because of the especially harsh winter. (Def's. Stmt. ¶ 23, Guidelines for Processing Renewal Adjustment for Escalating Energy Costs dated April 20, 2001, JA 90; Memo To Owners Re Guidance for Processing Rental Adjustments for Escalating Energy Costs dated May 10, 2001, JA 92.) On August 6, 2001, Englewood submitted a request for reimbursement of $55,230.29 for extraordinary gas costs during the winter of 2000-2001. (Jt. ¶ 105, Energy Reimbursement Request dated August 6, 2001, JA 103, p. 4) Englewood eventually determined the amount of the excess cost reimbursement to be $139,187 in Rent Adjustments for Escalating Energy Costs. (Jt. Stmt. ¶ 105, May 31, 2002 South Pointe Financial Claims at 2, JA 128; Letter from Samuelson to Hinsberger dated July 31, 2002 at 2, JA 131.)

Again, based on its determination that Englewood was in default on its HAP Contract, HUD refused Englewood's request for an energy reimbursement. (*See* Def's. Stmt. ¶ 25, "HUD had determined that Englewood was in default … in April 2001. Thus, Englewood was not in 'good standing,' and HUD correctly exercised its discretion in denying Englewood's

request for an energy lump sum adjustment"; *see also* Notice of Default dated April 9, 2001, JA 89; Notice of Continuing Default dated May 16, 2001, JA 94; Notice of Abatement and Termination dated November 30, 2001, JA 117; Hayes Decl. at 13-14, ¶¶ 51, 53, JA 16.) As discussed above, HUD's finding of default was wrong. If Englewood prevails on its claim that HUD wrongly issued the default, Englewood is entitled to the value of its lost reimbursements as damages caused by HUD's breach of the parties' agreement. *San Carlos Irrigation*, 111 F.3d at 1562-63. Moreover, because HUD failed to *even review* Englewood's claim for energy reimbursement, this Court has jurisdiction over those claims. *Crest A Apartments*, 52 Fed. Cl. at 612-13 (factual dispute regarding whether HUD reviewed application for rent increase precluded summary judgment). Similarly, HUD also failed to timely review Englewood's claims for tenant-caused damage and unpaid rent. (JA 17, Sanders Decl. ¶ 18.) For example, although Englewood submitted claims for damage and unpaid rent in March 2000, HUD failed to respond to Englewood's request until October 2000 (seven months later), when it blamed the delay on Englewood and denied the claims as "late." (*Id.*) Again, HUD's actions amount to a failure to even review Englewood's claims and thus provide a basis for jurisdiction. *Crest A Apartments*, 52 Fed. Cl. at 612-13.

HUD's failure to reimburse Englewood for energy costs also violates an implied contract between the parties – a basis for jurisdiction expressly provided for in the Tucker Act. 28 U.S.C. § 1491(a)(1); *see also Centex Corp. v. U.S.*, 395 F.3d 1283, 1291 (Fed. Cir. 2005) (affirming Court of Claims jurisdiction and judgment for corporation for implied contract with government). All of the "necessary elements of an implied contract--mutuality of intent, offer and acceptance, and consideration" (*Id.*) are present in the agreement between HUD and Englewood. HUD offered the reimbursement plan, Englewood accepted and both submitted a

claim continued to provide utility services in reliance on HUD's offer. (Jt. Stmt. ¶ 105, May 31, 2002 South Pointe Financial Claims at 2, JA 128; Letter from Samuelson to Hinsberger dated July 31, 2002 at 2, JA 131.)

Similarly, by wrongfully declaring a default, issuing vouchers to residents, and abating the 2000 HAP Contract, HUD forced South Pointe's residents to leave the building. In the process of moving out, those residents caused substantial physical damage to Englewood in the form of unpaid rent and physical damage to the apartments themselves. Those damages are causally connected to HUD's actions and are properly recoverable as consequential damages in this action. *San Carlos Irrigation*, 111 F.3d at 1562-63.

**B. This Court May Order HUD to Remove "Flags" On Englewood's Owners, And Assess Damages Caused By The Flags.**

When this Court assumes jurisdiction over a claim under the Tucker Act for money damages, it also holds jurisdiction to enter injunctive or declaratory relief to afford the parties complete relief. *See Newby v. U.S.*, 57 Fed. Cl. 283, 292 (Fed. Cl. 2003) ("[t]he Tucker Act has been amended to permit the Court of Federal Claims to grant equitable relief ancillary to claims for monetary relief over which it has jurisdiction.") Accordingly, this Court has jurisdiction to order HUD to remove any "flags" on Englewood's owners arising from wrongful notices of default or circumstances caused by HUD's failure to honor its contractual obligations. HUD concedes that "[a]s risk indicators, flags may affect a participant's future ability to participate in HUD programs." (Kiening Tr. at 56-57, JA 10.) If this Court finds that the purported reason for the "flagging" of Englewood's owners was unwarranted, it has authority to order HUD to remove the flags. *Newby*, 57 Fed. Cl. at 292.

HUD also asserts that Englewood's request for damages caused by the HUD "flags" was not asserted in Englewood's Complaint and, hence, has been waived. (Mot. at 22.)

Englewood's Complaint requested all appropriate relief associated with its breach of contract claim. (Compl. at 24.) HUD has failed to cite any authority asserting that all claims for damages must be specifically alleged with a parties' initial complaint, a rule that would be inconsistent with federal notice pleading. Rather, HUD relies on a single decision in which a contractor failed to claim damages arising from the government's failure to pay a special claim incurred in construction – a claim based on work outside the scope of the parties' original contract. *So. Comfort Builders, Inc. v. United States*, 67 Fed. Cl. 124, 153 (Fed. Cl. 2005). In contrast, Englewood's claim for damages from the imposition of flags flows directly from HUD's wrongful notice of default and breach of contract, which HUD used to impose the flags with the knowledge that the flags would impede the business of Englewood's owners.

Moreover, a claim not specifically alleged in a Complaint will not be dismissed when the government "was not unduly burdened or substantially prejudiced by the introduction of [the claim]." *Conner Brothers Const. Co., Inc. v. United States*, 65 Fed. Cl. 657, 680 (Fed. Cl. 2005). In particular, a claim not specifically pled in a Complaint but developed during discovery and addressed at summary judgment by both parties should not be dismissed. *Id.* (upholding claim when party is given opportunity to respond to claim at summary judgment). Englewood's Motion concedes that it has known for at least ten months that Englewood intended to assert claims arising from the "flags" at trial, and filed a Motion to Dismiss on the issue that was rejected. HUD ignores, however, Englewood's disclosure of its intent to seek damages from the imposition of "flags" in its March 1, 2005 responses to HUD's interrogatories. (*See* Englewood's Resp. to HUD's Interrogatories, No. 20, attached as Exhibit B.) HUD has had an opportunity to be heard on the issue and cannot demonstrate "substantial prejudice" from the Court's consideration of the claim at trial.

**C. Under Hornbook Contract Law, Englewood May Seek Damages Arising From Englewood's Loss Of Its Equity Interest In South Pointe.**

HUD's repudiation and breach of Englewood's HAP Contract had a number of consequences. After HUD terminated the Contract and issued vouchers, many of Englewood's residents moved out, starving Englewood of needed funds. That loss of funds, in turn, caused Englewood to default on its mortgage – causing the loss of the millions of dollars of equity. Courts have recognized that damages resulting from foreclosure after the government breaches a public housing contract typically include loss of equity. *See Markowitz & Co. v. Toledo Metropolitan Housing*, 608 F.2d 699 (6th Cir. 1979) (consequential damages resulting from mortgage foreclosure properly assessed to government).

These decisions rest on long-standing principles of contract law, holding that contract claimants may recover "all damages that [are] reasonably foreseeable and contemplated by the parties when entering into the contract." *California Oregon Broadcasting, Inc. v. U.S.*, 2006 WL 3333766, at *10 (Fed. Cl. Nov. 6, 2006) (awarding lost profits to plaintiffs after breach of contract by government). Indeed, "[t]he general rule in common law breach of contract cases is to award damages sufficient to place the injured party in as good a position as he or she would have been had the breaching party fully performed." *San Carlos,* 111 F.3d at 1562-63.

There is no question that HUD knew its subsidy payments were essential to the financial viability of South Pointe. In December 1999, for example, HUD appraiser John Schneider wrote to Ed Hinsberger, Director of the Chicago HUB, stating that "[c]urrent market experience *strongly suggests* that South Pointe Terrace will not be able to survive, in a market sense, without deep-subsidy assistance." (Ex. A) (emphasis added). HUD subsequently entered into a four-year contract with Englewood, but tried to get out of that contract only three months later. HUD knew that its actions would yield catastrophic results. Like any other breach of

contract claimant, Englewood is entitled to all "reasonably foreseeable" damages, including the loss of its equity in South Pointe.

HUD asserts that Englewood's loss of equity was caused by its failure to pay mortgage insurance, not the breach of the HAP Contract[5]. The breach of the HAP Contract restricted rental income to 30% of their prior levels, which prevented Englewood from paying for operations and later its debt payments. Englewood will establish at trial, as stated in HUD's own internal memorandum, that without the HAP payments, Englewood suffered financial ruin, including the inability to pay operating costs and eventual default on its mortgage. Indeed, Englewood agreed to go forward with the rehab loan that HUD wanted to make, refinancing its debt and funding building improvements, in an attempt to mitigate the damages caused by HUD's breach. If Englewood had not applied for the new mortgage, it would have lost its equity in South Pointe even earlier. In any event, factual questions regarding the cause of Englewood's loss of equity in South Pointe should be decided at trial, not on a Motion in Limine.

## CONCLUSION

Where the Government breaches a contract, it should be held to account for damages. The evidence shows that HUD unjustifiably declared Englewood in default and itself repudiated and breached the parties' four-year $10 million HAP Contract, causing the loss of millions of dollars of revenues and lost equity. HUD ought to be held to account for its promises, just as are other parties to contracts. Its Motion in Limine should be denied.

[5] HUD also asserts that Englewood failed to plead damages arising from the loss of equity in its initial Complaint in this action. As HUD knows, Englewood did not default on its mortgage for South Pointe until 2004, long after Englewood's Complaint was filed in 2003. Englewood specifically listed its lost equity (and damages due to flags on Englewood's owners) in interrogatory responses served in March 1, 2005, while discovery remained open. (*See* Ex. B, No. 20.)

Dated: November 28, 2006

s/Peter V. Baugher
One of the Attorneys for Plaintiff
Englewood Terrace Limited Partnership

Peter V. Baugher
Schopf & Weiss LLP
312 West Randolph Street
Suite 300
Chicago, IL 60606
312.701.9300

**CERTIFICATE OF SERVICE**

I, Peter V. Baugher, one of the attorneys for Plaintiff Englewood Terrace Limited Partnership, state that on November 28, 2006, I caused a copy of **Plaintiff Englewood's Response To HUD's Motion in Limine Regarding HUD's Jurisdictional Arguments** to be served electronically on:

Mr. Douglas K. Mickle
Commercial Litigation Branch
Civil Division, United States Department of Justice
11 L Street, N.W.
Room 10130
Washington, DC 20005

s/Peter V. Baugher