No. 03-2209C
Judge Marian Blank Horn

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ENGLEWOOD TERRACE LIMITED
PARTNERSHIP, a Michigan Limited Partnership,

Plaintiff,

v.

UNITED STATES OF AMERICA
and MEL MARTINEZ,
Secretary of the Department
of Housing and Urban Development,

Defendants.

# PLAINTIFF ENGLEWOOD'S RESPONSE TO HUD'S MOTION IN LIMINE REGARDING THE TESTIMONY OF ENGLEWOOD WITNESSES

Peter V. Baugher
Schopf & Weiss LLP
312 West Randolph Street
Suite 300
Chicago, IL 60606
312.701.9300

November 28, 2006

## INTRODUCTION

HUD's Motion in Limine to preclude or greatly limit the trial testimony of Greg Gustin, Beverly Miller, Ted Dunaj, Don Samuelson and Freddie Batchelor should be denied. HUD's motion is wholesale attempt to foreclose testimony rather than object to particular questions at trial where the court can consider evidence more precisely and in context. HUD seeks to preclude the testimony of Greg Gustin, a HUD attorney who directly participated in the events leading to this dispute, under an erroneous claim that all Mr. Gustin's acts and communications are "privileged." HUD's argument is contradicted by its own trial exhibits, which include a number of emails and letters from Mr. Gustin himself regarding disputed facts. HUD seeks to preclude all testimony from Beverley Miller, a HUD official in Washington, claiming that Ms. Miller lacks *any* relevant knowledge. Again, HUD's trial exhibits show that HUD's Motion must be denied – as HUD's exhibits specifically acknowledge Ms. Miller's participation in the decision to terminate Englewood's HAP Contract.

Through a highly inaccurate statement of their experience and factual knowledge, HUD also seeks to limit the testimony of Freddie Batchelor, John Hayes, Don Samuelson and Ted Dunaj. Englewood does not intend to elicit testimony from any of those witnesses that is not admissible under Federal Rule of Evidence 602 or 701. Accordingly, HUD's Motion should be denied in its entirety.

## ARGUMENT

### I. GREG GUSTIN MAY BE QUESTIONED REGARDING HIS ACTIVE PARTICIPATION IN DISPUTED EVENTS AND DUE TO HUD'S WAIVER OF ANY APPLICABLE PRIVILEGES.

Throughout the pendency of this action, HUD has attempted to cloak the actions of Greg Gustin, a HUD attorney, under the attorney-client and work product privileges. At the same time, HUD has acknowledged that Mr. Gustin played a central role in the events leading to

this dispute. Mr. Gustin's testimony will demonstrate that HUD lacked a proper basis to issue a default, did not follow appropriate contractual and regulatory procedures in terminating Englewood's HAP Contract, and in a myriad of ways violated its contractual duty of good faith and fair dealing. Additionally, Mr. Gustin may be questioned at trial because HUD has waived any attorney-client or work product privileges that may have protected communications involving Mr. Gustin from disclosure at trial. HUD cannot seek to wield the privilege as both a sword and shield. By placing Mr. Gustin's communications at issue, HUD has waived any objection to Mr. Gustin's testimony regarding all communications on the same subject matters.

### A. Englewood May Question Mr. Gustin Regarding His Personal Participation In The Events In Dispute.

This Court has recognized that a party may question an attorney when that attorney "participated in the events that underlie the action." *King-Fisher Co. v. U.S.*, 58 Fed. Cl. 570, 571 (Fed. Cl. 2003). The *King-Fisher* court noted that the plaintiff's attorney possessed "a tremendous amount of information" regarding the facts in dispute, participated in drafting crucial documents that the plaintiff intended to introduce at trial, and failed to explain why the subjects of his testimony was protected by privilege. *Id.* Rejecting the plaintiff's attorney's reliance on the same authority cited by HUD in its Motion in Limine, *Sparton Corp. v. United States,* 44 Fed. Cl. 557 (1999), the Court both allowed a deposition of the plaintiff's attorney and ordered him to explain why he should not be disqualified from further participation in the case.

Like the *King-Fisher* plaintiff's attorney, Mr. Gustin both personally participated in the events in dispute and possesses a significant amount of information about the facts underlying HUD's defenses.

- Mr. Gustin attended the April 13, 2001 meeting during which HUD repudiated the HAP Contract by declaring its refusal to work with the owners of Englewood (Maisonet Dep. at 120–21; JA[1] 13);

- According to the deposition testimony of HUD official Margarita Maisonet, Mr. Gustin likely drafted the Notice of Default sent to Englewood on April 9, 2001 (*Id.* at 147–48, JA 13);

- Mr. Gustin also drafted the denial of Englewood's administrative appeal, issued by Howard Mayfield at HUD headquarters (*Id.* at 253–54, JA 13; HUD Privilege Log at 105, attached as Exhibit A to this Motion);

- Mr. Gustin authored (and sent) a number of letters and emails to representatives of Englewood throughout 2001 and 2002.

HUD's own trial exhibits include more than a dozen documents *that were authored by Mr. Gustin.* These documents include emails between Mr. Gustin and Mr. Hinsberger, as well as letters from Mr. Gustin to representatives of Englewood. HUD apparently now argues that it can offer these communications as evidence at trial – but that Mr. Gustin, as an attorney, cannot be cross-examined regarding his actions and statements that are admittedly not protected by any privilege. HUD's proposed trial exhibits include, for example:

- DX 2013, attached as Exhibit B, consists of two emails – one of which is a communication between Edward Hinsberger and Mr. Gustin on October 11, 2001 – more than a month prior to HUD's November 30, 2001 Notice of Termination. Mr. Hinsberger states that the earlier email "shows that they [Englewood] know that we were proceeding to abate."

- DX 2014, attached as Exhibit C, consists of a letter from Mr. Gustin to an attorney for Englewood on October 20, 2001. Mr. Gustin <u>on the day prior to the email from Mr. Hinsberger</u>, states that HUD "has not yet suspended or abated any units under the HAP Contract."

Englewood must be allowed to question Mr. Gustin on the obvious discrepancy between Mr. Hinsberger's statement to him in an internal email that Englewood "knew that we

---

[1] The parties filed a joint appendix ("JA") on February 21, 2006 that contains exhibits cited in the parties' Stipulations of Fact, filed the same day.

were proceeding to abate" and Mr. Gustin's own (and clearly non-privileged) statement to Englewood's representatives that abatement of Englewood's Contract had not yet begun, a position HUD reiterated to United States District Judge Castillo and became a key fact representation relied upon by Judge Castillo in denying Englewood's request for an injunction.

The correspondence above is only one example of Mr. Gustin's involvement in the events in dispute at trial. Englewood must be allowed to question Mr. Gustin regarding his personal participation (and communications) regarding all such issues.

**B. HUD Has Waived Any Privilege That May Have Protected Mr. Gustin's Communications From Disclosure.**

HUD has produced hundreds of pages of communications involving Mr. Gustin in this action, and now says it will introduce many of those communications as evidence at trial. At the same time, HUD seeks to preclude Englewood from obtaining other communications involving Mr. Gustin on the same subjects – or even questioning Mr. Gustin regarding the factual basis for his communications.

HUD's position violates a familiar limitation on the attorney-client and work product privileges. A party cannot use those privileges as a "sword and a shield" – disclosing privileged communications that support the parties' position, but refusing to disclose similar – but damaging – communications. *See First Heights Bank, FSB v. U.S.*, 46 Fed. Cl. 312, 317 (Fed. Cl. 2000) (party may not use "privilege as both a sword and a shield by selectively disclosing information only where it might be beneficial, and then maintaining the privilege for other communications concerning the same subject matter where disclosure might be harmful").

When a party discloses privileged communications regarding a particular subject, that party must disclose ***all*** communications on that subject, including any communications that

might otherwise be subject to the attorney-client or work product privileges. The Federal Circuit has recently explained the basis for this rule:

> [S]elective waiver of the privilege may lead to the inequitable result that the waiving party could waive its privilege for favorable advice while asserting its privilege on unfavorable advice. In such a case, the party uses the attorney-client privilege as both a sword and a shield. To prevent such abuses, we recognize that when a party defends its actions by disclosing an attorney-client communication, it waives the attorney-client privilege as to all such communications regarding the same subject matter.

*In re EchoStar Communications Corp.*, 448 F.3d 1294, 1301 (Fed. Cir. 2006) (citations omitted). HUD has disclosed communications between senior HUD officials and Mr. Gustin regarding all of the following issues:

- Englewood's requests for a HUD-insured mortgage. DX 2016, attached as Exhibit D, includes an e-mail from Edward Hinsberger to Mr. Gustin and Ms. Baguio (another HUD attorney) regarding whether HUD should follow its "normal" procedures in processing Englewood's request for a mortgage loan;

- When and how HUD decided to abate Englewood's HAP Contract. DX2013, attached as Exhibit B, consists of an email between Mr. Hinsberger and Mr. Gustin regarding HUD's decision to abate Englewood's Contract.

- Inspections of Englewood: DX 2030, attached as Exhibit E, consists of three emails involving HUD employees and Mr. Gustin regarding inspections of Englewood. All three emails were sent within a period of 31 minutes on June 19, 2002. HUD has produced two of the emails but has redacted the third email (from Mr. Gustin).

- JA 129, an internal HUD email from Gwendolyn Thomas to Mr. Gustin and others, discusses another inspection of Englewood in 2002.

- Subsidy extensions in 2001 and 2002: JA 118 and 120 consist of internal HUD emails from Mr. Hinsberger to Mr. Gustin and others regarding the need to "extend" the HAP Contract and the delay in issuing vouchers to residents. JA 120 mentions specific participation by Mr. Gustin in this process. As shown by JA 125, a page from the lengthy HUD privilege log, HUD refused to produce a number of emails on the same subject under a purported claim of privilege.

Throughout this litigation, HUD has engaged in "sword and shield" litigation – and has waived any privilege that may have attached to communications regarding the above-referenced subjects. This Court should not foreclose Englewood from interrogating Mr. Gustin on these subjects. Englewood has designated HUD's lengthy privilege log, attached to this Response as Exhibit A, moreover, in part to allow Englewood to challenge HUD's claims of privilege at trial.

## II. BEVERLY MILLER HAS PERSONAL KNOWLEDGE REGARDING HUD'S DECISION TO TERMINATE ENGLEWOOD'S CONTRACT.

HUD suggests that Beverly Miller has no knowledge – and no participation – in the events leading to the termination of Englewood's HAP Contract. HUD's position is directly contrary to the sworn testimony of Chicago HUB Director Edward Hinsberger. In the context of a Motion to Compel filed by Englewood, Mr. Hinsberger stated that he informed Ms. Miller prior to making the decision to terminate Englewood's contract. Hinsberger Supp. Decl. at ¶ 4, attached as Exhibit F.) HUD has only vaguely explained when that communication occurred and what was communicated. Englewood intends to question Miller at trial to help establish the inadequate basis for HUD's repudiation and termination of the contract.

HUD's trial exhibits also show that Ms. Miller was involved in HUD's decision-making. DX 2013 includes an internal email from Edward Hinsberger to Greg Gustin and other HUD employees. Mr. Hinsberger states:

> As I mentioned to you, I conferred with Bev Miller on Friday, October 18th. I discussed the proposal of partial project based Sec. 8 for those residents who might want to remain at the project. Ms. Miller did not support that concept and indicated, what we have been saying to Mr. Hayes and Ms. Samuelson, that if residents want to stay and their units meet HQS, then they can use their vouchers at the project.

DX 2013, Ex. B. Accordingly, Ms. Miller not only has personal knowledge of events in dispute in this action, she actively participated in HUD's decision-making. HUD's Motion to exclude Ms. Miller from the trial should be denied.

## III. HUD'S ATTEMPT TO LIMIT THE TESTIMONY OF ENGLEWOOD WITNESSES MUST BE DENIED.

HUD's Motion in Limine also seeks to limit the testimony of Freddie Batchelor, Ted Dunaj, John Hayes and Don Samuelson to "factual matters in which they possess personal knowledge." Mot. at 6. HUD's Motion, without citing a single deposition exhibit, interrogatory answer, or piece of evidence, asserts that Englewood's witnesses do not possess "personal knowledge" regarding their proposed topics of testimony. HUD is wrong – and its request for an Order limiting Englewood's witnesses to testimony regarding subjects within their personal knowledge is misguided.

Englewood does not intend to question its witnesses regarding matters that are inadmissible under Federal Rules of Evidence 602 and 701. In the event that HUD believes that a particular question will elicit such testimony, it can object at trial. HUD's Motion to limit the testimony of Ms. Batchelor and Messrs. Samuelson, Hayes and Dunaj should be denied.

### A. HUD Concedes That Freddie Batchelor May Testify Regarding Factual Issues.

Freddie Batchelor is a former HUD employee who possesses detailed knowledge regarding the South Pointe building and the efforts of Englewood to rehabilitate the building. Unlike many of HUD's witnesses (such as Veronica Coleman and Margarita Maisonet) who have never even visited South Pointe, Ms. Batchelor visited and inspected South Pointe on a number of occasions. Ms. Batchelor was assigned to the South Pointe building in 1998, when the building was referred to HUD's Departmental Enforcement Center ("DEC") (Decl. of Freddie Batchelor at 1-2, attached to this Motion as Exhibit G.) She worked closely with

Englewood over the course of the next year, and witnessed the transformation of South Pointe as Englewood hired new security services, made needed repairs, and developed plans for a large-scale renovation of the entire complex (*Id.* at 5-6). Because of her intimate familiarity with South Pointe, Ms. Batchelor continued to communicate with other HUD personnel regarding South Pointe throughout 2000 and 2001, including communications regarding the need for the multiyear 2000 HAP Contract and the error in issuing the Notice of Default on April 9, 2001. Indeed, HUD employees consulted Ms. Batchelor during the events leading to HUD's repudiation and ultimate termination of Englewood's HAP Contract (*Id.* at 9).

HUD seeks cut off Ms. Batchelor's testimony in two ways. First, HUD cites regulations stating that Ms. Batchelor may not testify as an "expert" witness due to certain regulatory restrictions. *See* Mot. in Limine at 8-10. Second, HUD asserts that Ms. Batchelor may not testify to issues beyond her personal knowledge. Both objections are easily resolved. Englewood will not elicit "expert" testimony from Ms. Batchelor. Her testimony will derive from her personal knowledge regarding issues relevant to this case. Accordingly, HUD's Motion in Limine regarding Ms. Batchelor's testimony must be denied.

### B. HUD's Motion Presents No Basis To Limit The Testimony Of Don Samuelson And John Hayes.

HUD also seeks to limit the testimony of John Hayes and Don Samuelson for supposed lack of personal knowledge regarding events at Englewood during certain time periods. HUD confuses the legal status of Mr. Samuelson and Mr. Hayes with their factual knowledge and involvement with Englewood and South Pointe. HUD asserts that Mr. Samuelson cannot have personal knowledge of events prior to December 2001 – despite the existence of *dozens* of joint exhibits and defense exhibits authored by Mr. Samuelson beginning in the summer of 2001. Accordingly, HUD's objections to Mr. Samuelson's testimony are frivolous. HUD's objections

to Mr. Hayes' testimony – that he has no personal knowledge regarding events after December 2002, are likewise meritless. Mr. Hayes remained involved in communications regarding South Pointe after 2002.

While HUD's Motion attempts to limit Englewood witnesses' testimony to "factual matters," HUD concedes that Englewood may also offer lay opinion testimony under Federal Rule of Evidence 701. Mot. at 7. HUD relies on the commentary to Rule 701 to assert that lay opinion testimony must relate to opinions based on "firsthand knowledge of [] relevant facts." Mot. at 7. HUD ignores, however, the commentary to the Rule, which expressly allows lay opinion testimony regarding damages suffered by a business based on a review of the records of that business. FED. R. EVID. 701, Advisory Committee Notes, citing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993). Indeed, this Court has explained that such testimony is routinely admitted. *See, e.g., First Annapolis Bancorp, Inc. v. U.S.*, 72 Fed. Cl. 204, 206-08 (Fed. Cl. 2006). Englewood intends to offer opinion testimony admissible under Rule 701, including damages testimony by Mr. Samuelson and Mr. Hayes. HUD's Motion presents no basis to exclude such testimony.

**C. HUD Presents No Basis To Limit The Testimony Of Ted Dunaj.**

Based only on the summary description of Ted Dunaj's role set forth on the parties' joint witness list, HUD asserts that Mr. Dunaj lacks personal knowledge regarding a number of subjects. Mot. at 12. Englewood's description of Mr. Dunaj's role is not an exhaustive recitation of Mr. Dunaj's knowledge regarding the issues in dispute in this action. Indeed, Mr. Dunaj is a licensed architect who reviewed all 303 units of South Pointe as part of a project to develop plans for a comprehensive rehabilitation of South Pointe in 2000 and 2001. (*See* JA 75.) Mr. Dunaj also participated in the implementation of Englewood's plans for the

rehabilitation of South Pointe from 2002 through 2004, and visited South Pointe many times. Accordingly, Mr. Dunaj has personal knowledge regarding the subjects listed by Englewood.

## CONCLUSION

For the foregoing reasons, HUD's Motion to Exclude The Testimony of Certain Englewood Witnesses should be denied.

Dated: November 28, 2006

s/Peter V. Baugher
One of the Attorneys for Plaintiff
Englewood Terrace Limited Partnership

Peter V. Baugher
Schopf & Weiss LLP
312 West Randolph Street
Suite 300
Chicago, IL 60606
312.701.9300

**CERTIFICATE OF SERVICE**

I, Peter V. Baugher, one of the attorneys for Plaintiff Englewood Terrace Limited Partnership, state that on November 28, 2006, I caused a copy of **Plaintiff Englewood's Response to HUD's Motion In Limine Regarding Englewood Witnesses,** to be served electronically on:

Mr. Douglas K. Mickle
Commercial Litigation Branch
Civil Division, United States Department of Justice
11 L Street, N.W.
Room 10130
Washington, DC 20005

s/Peter V. Baugher