# EXHIBIT

# C

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

DEPARTMENTAL ENFORCEMENT CENTER
Chicago Satellite Office
77 W. Jackson Blvd., Suite 2207
Chicago, Illinois 60604-3507

Tel. (312)353-5895 Fax (312)886-1405

COPY

October 10, 2001
BY TELECOPY AND REGULAR MAIL

Peter A. Silverman, Esq.
Figliulo & Silverman PC
10 South LaSalle Street
Suite 3600
Chicago, IL 60603

SUBJECT: South Pointe Towers Apartments
Chicago, IL
HAP Contract Number: IL06-E000-034

Dear Mr. Silverman:

Your letter dated October 9, 2001 to HUD Chicago Multifamily Housing Director Hinsberger concerning the subject project has been forwarded to the Departmental Enforcement Center (DEC).

On behalf of your client, the owner of the subject project, we understand your letter to seek a meeting with HUD to discuss the noticed, uncured, events of default of the project's HAP Contract. We also understand that your client wishes to further discuss the staging of the to-be-abated HAP Contract.

Although discussions have continued for some years now, HUD is always pleased to meet and discuss the appropriate preservation of decent, safe, and sanitary housing. Please contact me as soon as possible so that we can arrange, for our clients, an acceptable meeting time after Tuesday of next week.

For your consideration before the meeting and before "tak[ing] the necessary action to protect [your client's] rights and interests," I have enclosed copies of HUD's April 9, 2001 and May 16, 2001 letters styled "Notice of Default of HAP Contract" and "Continuing Default of HAP Contract," respectively. By those notices, your client was provided with all appropriate notice and opportunity to cure the defaults and was provided with notice of HUD's intentions to proceed to secure vouchers for eligible residents. Based on the facts you describe in your October 9, 2001 letter, it appears your client may not have shared these letters with you. You may wish to share the enclosed letters with the parties you have copied on your letter as well. A 2355

With respect to abatement, HUD has not yet suspended or abated any units under the HAP Contract, and HUD has not terminated the project's HAP Contract. CHAC has not yet issued letters to residents concerning vouchers.

HUD anticipates abating units after any one or more eligible residents elect to receive vouchers; by floor or by another method as HUD may determine as appropriate. By holding abatement until such time, thereby allowing Section 8 funds to be paid to the project, HUD intends to better ensure that minimum services remain available to the residents pending this process. To the extent HUD's prior communications in that regard were not clear, we trust that this notice rids any confusion and we appreciate you bringing that matter to our attention.

Again, please contact me at your convenience to establish a date and time to meet next week. I may be reached at (312) 353-6236, X2055.

Very truly yours,

Gregory G. Gustin
Lead Enforcement Attorney
DEC Chicago Satellite Office

Enclosures

cc: Edward J. Hinsberger
Margarita Maisonet

ggg
southepointe1010101

A 2356

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

DEPARTMENTAL ENFORCEMENT CENTER
Chicago Satellite Office
77 W. Jackson Blvd., Suite 2207
Chicago, Illinois 60604-3507

Tel. (312)353-5895 Fax (312)886-1405

**CERTIFIED MAIL - RETURN RECEIPT REQUESTED**
**AND FIRST CLASS MAIL, POSTAGE PREPAID, OVERNIGHT MAIL**

APR 09 2001

Englewood Terrace Limited Partnership
P.M. Group, Inc. G.P.
Attention: Mr. John Hayes, President
1050 Corporate Office Drive, Suite 150
Milford, MI 48381

Dear Mr. Hayes:

SUBJECT: Notice of Default of Housing Assistance Payments (HAP) Contract
South Pointe Towers Apartments, Chicago, IL
Contract Number: IL06-E000-034

This letter constitutes formal notice by the Secretary of the U.S. Department of Housing and Urban Development (HUD) to Englewood Terrace Limited Partnership (Owner), owner of South Pointe Towers Apartments (Project), that the Owner is in default of its obligations under the HAP Contract entered into between HUD and the Owner.

The Project was inspected on March 2, 2001 by HUD's Real Estate Assessment Center (REAC) and, out of a possible 100 points, scored a 31c*. Some of the outstanding deficiencies noted in the inspection include: holes and cracks in hallway and unit walls; broken windows; inoperable stoves and faucets; cockroaches in the units; and ponding on the roof.

On March 9, 2001, the Chicago Multifamily Hub sent the Owner a letter addressing the Exigent Health and Safety (EHS) items cited in the REAC inspection. The letter advised the Owner that few of the EHS items had been mitigated at the time. The letter also addressed that the Project was not in good repair, placing the Owner in violation of the Housing Assistance Payment (HAP) contract.

The Chicago Multifamily Hub received the Owner's letter dated March 16, 2001, in which the Owner claimed that the EHS items were corrected. The letter further stated that General Partner relies "solely on information received from the property management company," and that "we will begin the process of responding to [the REAC inspection report from March 2, 2001] within the thirty day period."

On April 3, 2001, the Chicago Multifamily Hub rejected the Owner's application for a firm commitment of funding pursuant to Section 221 (d)(4). In rejecting the application, HUD noted that "the repairs outlined in your application are inadequate when compared to the needs of the property." The letter notes that HUD has allowed 23 months from the date of the April 28, 1999 REAC inspection for this Owner to bring this property into compliance.

Pursuant to Paragraph 6(a) of the HAP Contract, you have agreed to maintain the Project's units and related facilities in decent, safe and sanitary condition. All of the Project, its units, systems, common areas and building(s) must satisfy HUD's Physical Condition Standards, 24 CFR Part 5, Subpart G. The REAC inspection confirms that the Project suffers from ongoing serious neglect, disrepair, and unsafe and unsanitary conditions throughout the units, common areas, and the building. The failure to keep and maintain the Project in a decent, safe, and sanitary condition is a default of the HAP Contract.

Pursuant to Paragraph 20 of the HAP Contract, the Owner is hereby notified that if the foregoing events of default are not corrected to the satisfaction of HUD within 30 days from the date of this Notice, HUD may seek any and all available remedies; including, without limitation, suspending or abating the HAP Contract.

If you have any questions concerning this matter, please contact Margarita Maisonet, Director, Chicago Satellite Office, Departmental Enforcement Center at (312) 353-5895 ext. 2007.

Sincerely,

Edward Hinsberger, Director
Chicago Multifamily Hub

Margarita Maisonet, Director
Chicago Satellite Office
Departmental Enforcement Center

A 2358

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

DEPARTMENTAL ENFORCEMENT CENTER
Chicago Satellite Office
77 W. Jackson Blvd., Suite 2207
Chicago, Illinois 60604-3507

Tel. (312)353-5895 Fax (312)886-1405

May 16, 2001

**CERTIFIED MAIL - RETURN RECEIPT REQUESTED**
**AND FIRST CLASS MAIL, POSTAGE PREPAID**

Englewood Terrace Limited Partnership
P.M. Group, Inc., General Partner
Attention: Mr. John Hayes, President
1050 Corporate Office Drive, Suite 150
Milford, MI 48381

Dear Mr. Hayes:

SUBJECT: Continuing Default of Housing Assistance Payments (HAP) Contract
South Pointe Towers Apartments, Chicago, IL
Contract Number: IL06-E000-034

In response to HUD's April 9, 2001, notice of HAP Contract default, your May 2, 2001, letter to Ed Hinsberger, Multifamily Hub Director, described the status of your efforts. You listed three possible acquirers and felt that a satisfactory acquisition agreement might be reached among the Owner and the acquirer within the next 30-days. Your letter did not indicate that any efforts had been taken to contain the declining physical condition of the property or to address ongoing site management deficiencies.

While HUD may appreciate that the due diligence process you reference in your letter could delay implementing a resolution preferred by the Owner, HUD must emphasize its ongoing concern for Owner and manager delays that affect, among others, the tenants. Your letter describes yet another event of delay in complying with your business agreements with HUD:

- The Project was last inspected by HUD's Real Estate Assessment Center (REAC) on March 2, 2001. Of a possible 100 points, the Project scored a 31c*.
- A notice of the EHS deficiencies was left by REAC with the Owner's agent during the inspection. REAC mailed a copy of the inspection to the Owner by a cover letter, which emphasized that an acceptable plan to return the Project to decent, safe, and sanitary condition should be delivered to HUD within the 30-days.
- In response to the Owner's March 6, 2001, certification that all EHS deficiencies were corrected, HUD staff visited the Project. On March 9, 2001, the Chicago Multifamily Hub sent the Owner a letter expressing HUD's grave concern that, despite its certification, HUD confirmed that many of the EHS items remained outstanding. Those items were to have been repaired within 72-hours of REAC's inspection. The letter again advised the Owner that since the Project remained in unacceptable physical condition, the Owner remained in violation of the Owner's HAP Contract. A 2359
- The Chicago Housing Office received the Owner's response letter dated March 16, 2001. In addition to claiming, it seems, that the EHS items were corrected, the letter further stated that with respect to any outstanding EHS and other concerns in HUD's last letter, the Owner's General Partner "does not have the ability to monitor on a daily basis specific site inspections to validate compliance with required repairs from physical inspectors." Continuing, the letter stated that the General Partner relies "solely on information received from the property management company." Last, with respect to the most recent REAC inspection, the letter provided that the Owner "will begin the process of responding

to [the March 2, 2001, REAC inspection report] within the thirty day period."

- HUD did not receive an acceptable plan addressing all the physical deficiencies from either the Owner or the Owner's identity-of-interest Project managing agent. Instead, on April 3, 2001, the Chicago Multifamily Hub rejected the Owner's application for a firm commitment of funding pursuant to Section 221(d)(4).
- In rejecting the application, HUD noted that "the repairs outlined in your application are inadequate when compared to the needs of the property." The letter emphasized that HUD has allowed 23 months from the date of an April 28, 1999, REAC inspection for the Owner to bring the Project into compliance with its HUD business agreements. In 1999, the Project scored a 42b*. Over that 23-month period, the Project's physical condition declined to a score of 31c*.
- HUD issued its notice of HAP Contract default on April 9, 2001.
- HUD met with you and amplified your need for immediate action; including the need to change Project ownership and management.
- You have responded to the notice of default and the subjects of the meeting on May 2, 2001, stating you may have an acquirer in 30-days.

The Owner's default of the HAP Contract is uncured and continues. HUD urges you to provide adequate, timely information describing the immediate efforts that the Owner is making to address the HAP default and the sale of the Project and proposed assumption of the HAP Contract. In the interim, HUD intends to contact the potential acquirers you have listed to determine their interest and ability to succeed the current Owner and management for the Project. Because of HUD's ongoing concerns for your delays and for the tenants, HUD is proceeding with its process to secure vouchers for relocation of eligible tenants.

If you have further information or concerns in these regards, please contact us immediately.

Sincerely,

Edward Hinsberger, Director
Chicago Multifamily Hub

Margarita Maisonet, Director
Chicago Satellite Office
Departmental Enforcement Center